**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JOANNE HART and AMANDA PARKE, on behalf of themselves and all others similarly situated,<br><br>               Plaintiffs,<br>    v.<br><br>BHH, LLC d/b/a Bell + Howell and VAN HAUSER LLC<br><br>               Defendants. | **CASE NO.** _____<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs Joanne Hart and Amanda Parke ("Plaintiffs"), by and through their attorneys, make the following allegations pursuant to the investigation of their counsel and based upon information and belief, except as to allegations specifically pertaining to themselves and their counsel, which are based on personal knowledge, against Defendants BHH, LLC, d/b/a Bell + Howell and Van Hauser LLC ("Defendants").

## NATURE OF THE ACTION

1.      This is a class action lawsuit on behalf of purchasers of Bell + Howell Ultrasonic Pest Repellers and Bell + Howell Solar Animal Repellers (collectively, "the Repellers").

2.      Defendants represent that their Ultrasonic Pest Repellers use "ultrasonic sound waves" to repel "mice, rats, roaches, spiders, and ants" and are effective to "Drive Pests Out!" But that is false and misleading.  Scientific evidence shows these devices do not repel pests. Defendants' Ultrasonic Pest Repellers are ineffective and worthless.

3.      Likewise, Defendants represent that their Solar Animal Repellers "PROTECT[] YOUR YARD FROM UNWANTED ANIMALS" and "KEEP ANIMALS AWAY FROM TRASH" by using sonic and ultrasonic sound waves to repel animals such as "squirrels, raccoons, skunks, deer, rabbits, mice, stray cats," and "stray dogs."  These representations are false and misleading.  Here too, scientific evidence and a live test-trial show these devices do not repel animals.  Defendants' Solar Animal Repellers are ineffective and worthless.

4.      The Pest and Animal Repellers use the same ineffective ultrasonic technology.  It does not work to repel pests or animals.

5.      Several studies have shown that the ultrasonic technology does not work.  In one study published by Utah State University, the researchers concluded that ultrasonic devices are ineffective and "not recommended as a solution to rodent problems."[1]  In another study from the

---

[1] West and Terry A. Messmer, *Commensal Rodents*, Utah State University.  Available at https://extension.usu.edu/files/publications/publication/NR_WD_010.pdf.

University of Nebraska, the researchers concluded that "there have been so many failures reported with high-frequency sound that little can be said in favor of such devices."[2]

6.      Recognizing the weight of the scientific evidence against the efficacy of electronic pest and animal control devices, the Federal Trade Commission ("FTC") has issued multiple letters to, and even instituted several actions against, manufacturers and retailers of these devices.  But unscrupulous manufacturers such as Defendants continue to dupe consumers.

7.      Plaintiffs are purchasers of the Repellers who assert claims on behalf of themselves and similarly situated purchasers of the Repellers for violations of the Magnuson-Moss Warranty Act, California Consumers Legal Remedies Act, California Unfair Competition Law, California False Advertising Law, breach of express and implied warranties, and unjust enrichment.

## PARTIES

8.      Plaintiff Joanne Hart is a citizen of California who resides in Palm Desert, California.  Ms. Hart purchased a pack of Bell & Howell Ultrasonic Pest Repellers on July 4, 2014 from the Home Shopping Network for $42.95.  Prior to purchasing the devices, Ms. Hart saw Defendants' representations on the television, including that the devices were "fast and effective" to repel "mice, rats, roaches, spiders, and ants" and were effective to "Drive Pests Out."  Ms. Hart believed these representations to be true, and relied on them in that she would not have purchased the Ultrasonic Pest Repellers had she known that these representations were false and misleading.  Ms. Hart also understood that in making the sales to her, Defendants impliedly warranted that the devices were fit for the purpose of pest control.  Upon receiving the devices in the mail, Ms. Hart used the devices as directed, but they were ineffective to rid her house of pests.

9.      Plaintiff Amanda Parke is a citizen of Texas who resides in Woodville, Texas. Ms. Parke purchased a pack of Bell & Howell Ultrasonic Pest Repellers on May 12, 2015 from

---

[2]Ann E. Koehler, Rex E. Marsh, Terrell P. Salmon, *Frightening Methods and Devices/ Stimuli to Prevent Mammal Damage—A Review*, University of Nebraska – Lincoln, at 171.  Available at http://digitalcommons.unl.edu/cgi/viewcontent.cgi?article=1049&context=vpc14.

Carol Wright Gifts Catalog for $19.99.  Prior to purchasing the devices, Ms. Parke saw a picture of the packaging in the catalog, including the representations that they were "fast and effective" to repel "mice, rats, roaches, spiders, and ants" and were effective to "Drive Pests Out."  Ms. Parke believed these representations to be true, and relied on them in that she would not have purchased the Ultrasonic Pest Repellers had she known that these representations were false and misleading.  Ms. Parke also understood that in making the sales to her, Defendants impliedly warranted that the devices were fit for the purpose of pest control.  Upon receiving the devices in the mail, Ms. Parke used the devices as directed, but they were ineffective to rid her house of pests.

10.     Defendant BHH, LLC is a New York corporation with a principal place of business at 230 Fifth Ave, New York, NY  10001.  BHH, LLC does business as "Bell + Howell" and is responsible for the sales and marketing of the Repellers in the United States.

11.     Defendant Van Hauser LLC is a New York corporation with a principal place of business at 230 Fifth Ave, New York, NY  10001.  Van Hauser LLC is responsible for the manufacture and distribution of the Repellers in the United States.

12.     At all times relevant to the allegations in this matter, each Defendant acted in concert with, with the knowledge and approval of, and/or as the agent of the other Defendant within the course and scope of the agency, regarding the acts and omissions alleged.

## JURISDICTION AND VENUE

13.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because there are more than 100 class members and the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest, fees, and costs, and at least one Class member is a citizen of a state different from Defendants.  The Court also has Federal Question jurisdiction over this action.

14.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because Defendants' principal place of business is in this district.

15.     All conditions precedent necessary for filing this Complaint have been satisfied and/or such conditions have been waived by the conduct of Defendants.

3

## FACTS COMMON TO ALL CAUSES OF ACTION

**A. Defendants' False Claims of Efficacy**

16.     Defendants represent their Ultrasonic Pest Repellers are "Fast and Effective" and use "Ultrasonic sound waves to help repel… mice, rats, roaches, spiders, and ants."  Defendants represent their devices are "Easy To Use. Just Plug It In!"  Defendants further represent that all the consumer has to do is "Plug It In … Drive Pests Out!"



17.     Defendants represent their Solar Animal Repellers use "ULTRASONIC SOUND" to "PROTECT[] YOUR YARD FROM UNWANTED ANIMALS" and "KEEP ANIMALS

AWAY FROM TRASH," including "Squirrels, Raccoons, Skunks, Deer, Rabbits, Mice, Stray Cats, [and] Stray Dogs."



18.     Defendants also aired a television commercial to market their Solar Animal Repeller which included even more false and misleading representations.  The commercial starts with a male voice asking, *"Don't you just hate it when stray animals make a mess of your yard? You don't want to hurt them, but you still don't want them around."*  The commercial continues, *"What you need is the Bell + Howell Solar Powered Animal Repeller!  It uses a high-pitched sound to rid your yard of unwanted pests such as rabbits, mice, deer, raccoons, skunks … even stray cats and dogs!"*  *"Humans can't hear it, but the sound drives pests like squirrels away! And keeps them away … for good!"*

19.     A woman appears on-screen and says *"I wish I could do something about my neighbor's dog.  It's always digging up my garden!"*  The male voice responds, *"well now you can!  The Solar Powered Animal Repeller's high frequency sound is unpleasant to animals! Once they come within range, the built-in infrared motion detector activates it … both in daylight and even at night, making it emit a powerful ultrasonic sound that sends them scurrying for safety!  And it works from up to 30 feet away!"*









20.     A short clip of a raccoon rummaging through garbage plays, and afterwards a man appears on-screen and says, *"Raccoons kept getting in my garbage. They're aggressive and they could have rabies. But ever since I got this Solar Powered Animal Repeller, not one can is tipped over. They just stay away."*

21.     The commercial ends by stating, *"now there's no need for cruel traps and dangerous toxic poisons to keep pests away!"*[3]

22.     The above representations regarding the Repellers are false. The Repellers are ineffective and worthless.

**B. Scientific Studies Show The Repellers Do Not Work**

23.     Utah State University published a study evaluating various methods for removing household rodents. The purpose of the publication was to educate consumers as to the best ways to remove mice and rats from the household. In doing so, the study looked at the effectiveness of seven different rodent removal techniques. The analysis pertaining to ultrasonic devices warned "advertising claims made by companies that produce ultrasonic devices have not withstood

---

[3] The commercial can be viewed at https://www.youtube.com/watch?v=xsjB1RHrTko.

scientific scrutiny." For this reason, researchers concluded that ultrasonic devices are "not recommended as a solution to rodent problems."[4]

24.     Similarly, the University of Nebraska published a meta-analysis of dozens of studies that examined the effectiveness of pest-control techniques, or "frightening methods." The stated purpose of the publication was to determine the best way to scare away unwanted animals. Of the studies reviewed, eight considered ultrasonic sound as a potential frightening method. Ultrasonics, the review says, "will not drive established rodents out of buildings or areas." The researchers conclude "there have been so many failures reported with high-frequency sound that little can be said in favor of such devices."[5]

**C. History of FTC Warning Ultrasonic Pest Repeller Manufacturers**

25.     In May of 2001, the FTC sent warning letters to over 60 manufacturers and retailers of ultrasonic pest-control devices. After investigation, the FTC found that many of the advertisements make explicit false claims about the products' ability to eliminate rodents or repel insects. According to FTC staff, these types of claims may not be in compliance with the FTC Act, which prohibits false and deceptive advertising.

26.     From 1985 to 1997, the FTC brought actions against six companies that made false claims about the effectiveness of ultrasonic devices in controlling rodent and insect infestations.

27.     The types of claims challenged by the FTC included representations that ultrasonic devices can eliminate rodent infestations, repel insects, and serve as an effective alternative to conventional pest-control products, among others.

**D. The Animal Repellers Fail A Live Test-Trial**

28.     Defendants' Solar Animal Repeller was a featured product on "Deal or Dud." "Deal or Dud" is a news television segment in which selected products are tested to determine

---

[4] West and Terry A. Messmer, *Commensal Rodents*, Utah State University. Available at https://extension.usu.edu/files/publications/publication/NR_WD_010.pdf.

[5] Ann E. Koehler, Rex E. Marsh, Terrell P. Salmon, *Frightening Methods and Devices/ Stimuli to Prevent Mammal Damage—A Review*, University of Nebraska – Lincoln, at 171. Available at http://digitalcommons.unl.edu/cgi/viewcontent.cgi?article=1049&context=vpc14.

whether the product functions as advertised or not.  The news anchor begins, *"This as-seen-on-TV animal repeller is guaranteed to work day or night . . . and it promises to keep pesky pests out of your yard.  We put it to the test."*

29.     The segment then shows a clip of the above-referenced commercial, and Susan Clement, a biologist from the Environmental Studies Center, uses Defendants' Solar Animal Repeller as directed.  Despite Defendants' representation that their Solar Animal Repeller "Covers Up to 30 Feet," the device failed to repel a raccoon less than a foot away.  The news anchor then asked Ms. Clement *"in your opinion, is this a deal or a dud?"*  Ms. Clement replied, *"I would say it's a dud."*



## CLASS REPRESENTATION ALLEGATIONS

30.     Plaintiffs Joanne Hart and Amanda Parke seek to represent a class defined as all persons in the United States who purchased the Repellers (the "Class").  Excluded from the Class are persons who made such purchase for purpose of resale.

31.     Ms. Hart also seeks to represent a subclass of all Class members who purchased the Repellers in California (the "California Subclass").

32.     Ms. Parke also seeks to represent a subclass of all Class members who purchased the Repellers in Texas (the "Texas Subclass").

33.     Members of the Class and Subclasses are so numerous that their individual joinder herein is impracticable.  On information and belief, members of the Class and Subclasses number in the millions.  The precise number of Class members and their identities are unknown to Plaintiffs at this time but may be determined through discovery.  Class members may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendants and third party retailers and vendors.

34.     Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members.  Common legal and factual questions include, but are not limited to, whether Defendants' advertising and marketing of the Repellers is false and misleading and whether the Repellers are effective in repelling pests and animals.

35.     The claims of the named Plaintiffs are typical of the claims of the Class in that the named Plaintiffs were exposed to Defendants' false and misleading marketing and representations, purchased the Repellers, and suffered a loss as a result of that purchase.

36.     Plaintiffs are adequate representatives of the Class and Subclasses because their interests do not conflict with the interests of the Class members they seek to represent, they have retained competent counsel experienced in prosecuting class actions, and they intend to prosecute this action vigorously.  The interests of Class members will be fairly and adequately protected by Plaintiffs and their counsel.

37.     The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of Class members.  Each individual Class member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendants' liability.  Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case.  Individualized litigation also presents a potential for inconsistent or contradictory judgments.  In contrast, the class action device presents far fewer management difficulties and provides the benefits of single

adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendants' liability. Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

## COUNT I

### Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*

38.     Plaintiffs incorporate by reference and re-allege each and every allegation set forth above as though fully set forth herein.

39.     Plaintiffs bring this claim individually and on behalf of members of the Class and Subclasses against Defendants.

40.     The Repellers are consumer products as defined in 15 U.S.C. § 2301(1).

41.     Plaintiffs and Class members are consumers as defined in 15 U.S.C. § 2301(3).

42.     Defendants are suppliers and warrantors as defined in 15 U.S.C. § 2301(4) and (5).

43.     In connection with the sale of the Repellers, Defendants issued written warranties as defined in 15 U.S.C. § 2301(6) by representing that the Pest Repellers are "fast and effective" to repel "mice, rats, roaches, spiders, and ants," effective to "[d]rive Pests Out," and that the Animal Repellers "PROTECT[] YOUR YARD FROM UNWANTED ANIMALS," "KEEP ANIMALS AWAY FROM TRASH," "Work[] Both Day & Night," and "Cover[] Up To 30 Feet."

44.     In fact, the Repellers do not conform to the above-referenced representations because they are ineffective in repelling pests and animals.

45.     By reason of Defendants' breach of warranties, Defendants violated the statutory rights due to Plaintiffs and Class members pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*, thereby damaging Plaintiffs and Class members.

46.     Plaintiffs and Class members were injured as a direct and proximate result of Defendants' breach because they would not have purchased the Repellers if they had known the Repellers are ineffective in repelling pests and animals.

## COUNT II

### Violation Of California's Consumers Legal Remedies Act ("CLRA"), California Civil Code §§ 1750, *et seq.*

47.     Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

48.     Plaintiff Hart brings this claim individually and on behalf of the California Subclass against Defendants.

49.     Plaintiff Hart and the California Subclass members are consumers who purchased the Repellers for personal, family, or household purposes.  Plaintiff Hart and the California Subclass members are not sophisticated experts with independent knowledge of ultrasonic pest and animal control devices.

50.     The Repellers that Plaintiff Hart and other California Subclass members purchased from Defendants were "goods" within the meaning of Cal. Civ. Code § 1761(a).

51.     Defendants' actions, representations, omissions and conduct have violated and continue to violate the CLRA because they extend to transactions that intended to result, or which have resulted in, the sale of goods to consumers.

52.     Cal. Civ. Code § 1770(a)(5), prohibits "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have …." Cal. Civ. Code § 1770(a)(9) further prohibits "[a]dvertising goods or services with intent not to sell them as advertised."

53.     Defendants violated Cal. Civ. Code § 1770(a)(5) and (a)(9) by misrepresenting that the Repellers were capable of repelling pests and animals as described above.  Defendants knew or should have known, based on pre-market testing, and FTC warnings that the Repellers were not capable of repelling pests and animals.

54.     A reasonable consumer would not have purchased the Repellers had Defendants disclosed their defective condition or refrained from the affirmative misstatements identified above because that information is material to a reasonable consumer.

55.     Plaintiff Hart and the California Subclass suffered injuries caused by Defendants because: (a) they would not have purchased the Repellers had they known the Repellers were ineffective at repelling pests and animals; and (b) the Repellers did not have the characteristics, uses, or benefits as promised.

56.     On or about May 14, 2015, prior to filing this action, a CLRA notice letter was served on BHH, LLC which complies in all respects with California Civil Code § 1782(a).  Plaintiff Joanne Hart sent BHH, LLC a letter via certified mail, return receipt requested, advising it that it is in violation of the CLRA and demanding that it cease and desist from such violations and make full restitution by refunding the monies received therefrom.  A true and correct copy of the notice letter is attached hereto as Exhibit A.

57.     Wherefore, Plaintiffs seek damages, restitution, and injunctive relief for this violation of the CLRA against BHH, LLC, and injunctive relief for this violation of the CLRA against Van Hauser LLC.

## COUNT III

### Violation Of California's Unfair Competition Law ("UCL"), California Business & Professionals Code §§ 17200, *et seq.*

58.     Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

59.     Plaintiff Hart brings this claim individually and on behalf of the members of the California Subclass against Defendants.

60.     Defendants are subject to California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.*  The UCL provides, in pertinent part: "Unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising …."

61.     Defendants violated the "unlawful" prong of the UCL by violating the CLRA, California's False Advertising Law ("FAL"), and by breaching their express and implied warranties as described herein.

62.     Defendants' misrepresentations and other conduct, described herein, violated the "unfair" prong of the UCL in that their conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous, as the gravity of the conduct outweighs any alleged benefits.  Defendants' conduct of selling the Repellers and representing them as effective when they are not offends public policy.

63.     Defendants violated the "fraudulent" prong of the UCL by making misrepresentations about the Repellers, as described herein.  Defendants' misrepresentations and omissions regarding the Repellers are likely to deceive a reasonable consumer, and thereby would be material to a reasonable consumer.

64.     Plaintiff Hart and the California Subclass members acted reasonably when they relied on Defendants' misrepresentations and omissions and purchased Defendants' products. Moreover, Plaintiff Hart and the California Subclass members are presumed to have relied on such misrepresentations and omissions because they appeared in the marketing and advertising described above and related to material facts – the Repellers' ability to repel pests and animals.

65.     Plaintiff Hart and the California Subclass members are not sophisticated experts with independent knowledge of ultrasonic sound wave technology and if ultrasonic sound waves can be used to repel pests and animals.  Thus, Plaintiff Hart and the California Subclass members acted reasonably when they purchased Defendants' products based on their belief that Defendants' representations were true.

66.     Plaintiff Hart and the California Subclass lost money or property as a result of Defendants' UCL violations because: (a) they would not have purchased the Repellers on the same terms if the true facts were known concerning the ineffectiveness of the Repellers; and (b) the Repellers did not have the characteristics, uses, or benefits as promised.

67.     All the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of Defendants' business.  Defendants' wrongful conduct is part of a pattern or generalized conduct that originates from Defendants' headquarters in New York, and is still perpetuated and repeated, both in California and nationwide.

68.     Plaintiff Hart requests that this Court enter such orders or judgments to enjoin Defendants from continuing their unfair, unlawful, and deceptive practices and to restore to Plaintiff Hart and the members of the California Subclass any money Defendants acquired by unfair competition, as provided in Cal. Bus. & Prof. Code § 17203, and for such other relief as set forth below.

**COUNT IV**

**Violation Of California's False Advertising Law ("FAL"), California Business & Professions Code §§ 17500, *et seq.***

69.     Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

70.     Plaintiff Hart brings this claim individually and on behalf of the members of the California Subclass against Defendants.

71.     California's False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, et seq., makes it "unlawful for any person to make or disseminate or cause to be made or disseminated before the public in this state, ... in any advertising device ... or in any other manner or means whatever, including over the Internet, any statement, concerning ... personal property or services, professional or otherwise, or performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

72.     Defendants committed acts of false advertising, as defined by §§17500, et seq., by making misrepresentations about the Repellers' ability to repel pests and animals.

73.     Defendants disseminated from their headquarters in New York, through California and the United States, affirmative misstatements and omissions that were untrue or misleading.

74.     Defendants knew or should have known through the exercise of reasonable care (i.e. pre-market testing) that their representations about the Repellers were untrue and misleading.

75.     Defendants' misrepresentations and omissions concerned material facts, namely the Repellers' ability to repel pests and animals.  As such, Defendants' actions in violation of §§ 17500, et seq. were false and misleading such that the general public is and was likely to be deceived.

76.     Plaintiff Hart and California Subclass members lost money or property as a result of Defendants' FAL violations because:  (a) they would not have purchased the Repellers on the same terms if the true facts were known concerning the ineffectiveness of the devices; and (b) the Repellers did not have the characteristics, uses, or benefits as promised.

77.     All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of Defendants' business.  Plaintiff Hart requests that this Court enter such orders or judgments as may be necessary to enjoin Defendants from continuing their false advertising and to restore to Plaintiff Hart and members of the California Subclass any money Defendants acquired by unfair competition, and for such other relief set forth below.

## COUNT V

### Breach Of Express Warranty

78.     Plaintiffs incorporate by reference and re-allege each and every allegation set forth above as though fully set forth herein.

79.     Plaintiffs bring this claim individually and on behalf of members of the Class and both Subclasses against Defendants.

80.     In connection with the sale of the Repellers, Defendants, as the designers, manufacturers, marketers, distributors, and/or sellers issued written warranties by representing that the Pest Repellers are "fast and effective" to repel "mice, rats, roaches, spiders, and ants," effective to "[d]rive Pests Out," and that the Animal Repellers "PROTECT[] YOUR YARD FROM UNWANTED ANIMALS," "KEEP ANIMALS AWAY FROM TRASH," "Work[] Both Day & Night," and "Cover[] Up To 30 Feet."

81.     In fact, the Repellers do not conform to the above-referenced representations because they are ineffective and worthless.

82.     Plaintiffs and Class members were injured as a direct and proximate result of Defendants' breaches because they would not have purchased the Repellers if they had known that the Repellers did not work as warranted.

## COUNT VI

### Breach Of The Implied Warranty Of Merchantability

83.     Plaintiffs incorporate by reference and re-allege each and every allegation set forth above as though fully set forth herein.

84.     Plaintiffs bring this claim individually and on behalf of the members of the Class and both Subclasses against Defendants.

85.     Defendants are and were at all relevant times "merchants" within the meaning of the Uniform Commercial Code ("UCC").  Defendants manufactured, distributed, and marketed the Repellers, which are "goods" within the meaning of the UCC.  Consequently, Defendants impliedly warranted that the Repellers were merchantable, including that they could pass without objection in the trade under the contract description, that they were fit for the ordinary purposes for which such goods are used, that they were of fair average quality within the description, that they were adequately labeled, and that they would conform to the promises or affirmations of fact made on their container or labels.  However, each of these implied warranties was false with respect to the goods of the kind sold to Plaintiffs and members of the Class.  Indeed, Defendants' Repellers are not fit for the purpose for which they are to be used – repelling pests and animals.

86.     Plaintiffs and Class members purchased the Repellers for the purpose of repelling pests and animals.

87.     The Repellers were not altered by Plaintiffs or Class members.

88.     The Repellers were defective when they left the exclusive control of Defendants.

89.     Defendants knew the Repellers would be purchased and used by Plaintiffs and Class members without additional testing.  The Repellers were unfit for their ordinary purpose, and Plaintiffs and Class members did not receive the goods as warranted.

90.    More specifically, Defendants breached their implied warranty of merchantability to Plaintiffs and the Class because the Repellers would not pass without objection in the trade because they were incapable of performing the function that pest and animal control devices are intended to perform.  They are not capable of repelling pests and animals.

91.    As a direct and proximate cause of Defendants' breach of the implied warranty, Plaintiffs and Class members were injured because (a) they would not have purchased the Repellers if they had known that the products were not capable of repelling pests and animals; and (b) the Repellers did not have the characteristics, uses, or benefits as promised.

## COUNT VII

### Unjust Enrichment

92.    Plaintiffs incorporate by reference and re-allege each and every allegation set forth above as though fully set forth herein.

93.    Plaintiffs bring this claim individually and on behalf of members of the Class and both Subclasses against Defendants.

94.    Plaintiffs and Class members conferred benefits on Defendants by purchasing the Repellers.

95.    Defendants have knowledge of such benefits.

96.    Defendants have been unjustly enriched in retaining the revenues derived from Plaintiffs' and Class members' purchases of the Repellers.  Retention of those moneys under these circumstances is unjust and inequitable because Defendants misrepresented that the Repellers were capable of repelling pests and animals.

97.    Because Defendants' retention of the non-gratuitous benefits conferred on them by Plaintiffs and Class members is unjust and inequitable, Defendants must pay restitution to Plaintiffs and the Class members for their unjust enrichment, as ordered by the Court.

### RELIEF DEMANDED

98.    WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, seek judgment against Defendants, as follows:

a. For an order certifying the nationwide Classes and the Subclasses under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiffs as representatives of the Classes and Subclasses and Plaintiffs' attorneys as Class Counsel to represent the Class and Subclass members;

b. For an order declaring that Defendants' conduct violates the statutes referenced herein;

c. For an order finding in favor of Plaintiffs, the nationwide Classes, and the Subclasses on all counts asserted herein;

d. For compensatory and punitive damages in amounts to be determined by the Court and/or jury;

e. For prejudgment interest on all amounts awarded;

f. For an order of restitution and all other forms of equitable monetary relief;

g. For injunctive relief ordering Defendants to cease the unfair and deceptive practices detailed herein; and

h. For an order awarding Plaintiffs and the Classes and Subclasses their reasonable attorneys' fees and expenses and costs of suit.

## <u>JURY TRIAL DEMANDED</u>

Plaintiffs demand a trial by jury on all claims so triable.

Dated:  June 19, 2015

Respectfully submitted,

By: */s/ Joseph I. Marchese*
  Joseph I. Marchese

**BURSOR & FISHER, P.A.**
Scott A. Bursor
Joseph I. Marchese
Neal J. Deckant
Yitzchak Kopel
888 Seventh Avenue
New York, NY 10019
Telephone:  (212) 989-9113
Facsimile:  (212) 989-9163
Email:  scott@bursor.com
  jmarchese@bursor.com
  ndeckant@bursor.com
  ykopel@bursor.com

*Attorneys for Plaintiffs*

## **CLRA Venue Declaration Pursuant to California Civil Code Section 1780(d)**

I, Joanne Hart, declare as follows:

1.       I am a plaintiff in this action.  I have personal knowledge of the facts stated herein and, if called as a witness, I could and would testify competently thereto.

2.       The Complaint filed in this action is filed in the proper place for trial because Defendants are headquartered and have their principal place of business in this District at 230 Fifth Avenue, New York, NY  10001.  Defendants also conduct substantial business in this District.

3.       I purchased a pack of Bell & Howell Ultrasonic Pest Repellers on July 4, 2014 from the Home Shopping Network for $42.95.  Prior to purchasing the devices, I saw Defendants' representations on the television, including that the devices were "fast and effective" to repel "mice, rats, roaches, spiders, and ants" and were effective to "Drive Pests Out."  I believed these representations to be true, and relied on them in that I would not have purchased the Ultrasonic Pest Repellers had I known that these representations were false and misleading.  I also understood that in making the sales to me, Defendants impliedly warranted that the devices were fit for the purpose of pest control.  Upon receiving the devices in the mail, I used the devices as directed, but they were ineffective to rid my house of pests.

4.       I declare under the penalty of perjury under the laws of the States of California and New York that the foregoing is true and correct, executed on June 19, 2015.

/s/ Joanne Hart
_____
Joanne Hart

**EXHIBIT A**

# BURSOR & FISHER

P.A.

1990 N. CALIFORNIA BLVD.
SUITE 940
WALNUT CREEK, CA 94596
www.bursor.com

L. TIMOTHY FISHER
Tel: 925.300.4455
Fax: 925.407.2700
ltfisher@bursor.com

May 14, 2015

*__Via Certified Mail - Return Receipt Requested__*

BHH LLC (d/b/a Bell + Howell)
230 Fifth Ave.
New York, NY  10001

BHH LLC (d/b/a Bell + Howell)
c/o Notaro & Michalos & Zaccaria P.C.
1270 Broadway STE. 807
New York, NY  10001

*Re:      Violation of California Civil Code § 1782; Cal. Com. Code § 2607(3)(a);*
*Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301, et seq.; U.C.C. §§ 2-313, 2-314; and*
*all other applicable laws*

To Whom It May Concern:

This letter serves as a preliminary notice and demand for corrective action by BHH LLC ("Bell + Howell" or "You"), on behalf of my client, Joanne Hart, and all other persons similarly situated.

Our client purchased Bell + Howell Ultrasonic Pest Repellers in the state of California in reliance on Your representations that this product is "fast and effective" to repel ants, mice, spiders and roaches.  However, the product is ineffective to repel any of these pests, or any animals at all.  The weight of scientific evidence against the efficacy of ultrasonic pest-control devices has driven the FTC to send dozens of warning letters to manufacturers of these devices. The FTC has also brought more than a half dozen enforcement actions against manufacturers of these devices.  Each time, the cases have been resolved by court order.  Private actions with similar allegations against your competitors have also seen substantial success in recent years.  It unsurprising, therefore, that Your product was ineffective for Ms. Hart.

By misrepresenting that your ultrasonic pest repellers and solar animal repellers (the "Repellers") are fast and effective to repel pests and other animals, You have violated and continue to violate provisions of California law, including subsections (a)(5), (7), and (9) of the Consumers Legal Remedies Act, Civil Code § 1770, and Cal. Com. Code § 2607(3)(a).

We hereby demand that You immediately make full restitution to all purchasers of the Repellers of all purchase money obtained from sales thereof.  We also demand that You preserve all documents, data, and information, including without limitation, all "Writings," as defined in

California Evidence Code § 250 (collectively, "Documents"), and all "Electronically Stored Information," as defined in California Code of Civil Procedure § 2016.020(e), which refer or relate to any of the above-described practices, including, but not limited to, the following:

1.      All documents concerning the design, development, and/or testing of the Repellers;

2.      All documents concerning the advertisement, marketing, or sale of the Repellers;

3.      All documents concerning communications with any retailer involved in the marketing or sale of the Repellers;

4.      All documents concerning communications with purchasers of the Repellers; and

5.      All documents concerning the total revenue derived from sales of the Repellers in the United States.

Please comply with this demand within 30 days from your receipt of this letter.

We are willing to negotiate to attempt to resolve the demands asserted in this letter.  If you wish to enter into such discussions, please contact me immediately.  If I do not hear from you promptly, I will conclude that you are not interested in resolving this dispute short of litigation.  If you contend that any statement in this letter is inaccurate in any respect, please provide us with your contentions and supporting documents promptly.

Very truly yours,

L. Timothy Fisher