IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOANNE HART and AMANDA PARKE, on behalf of themselves and all others similarly situated,<br><br>    Plaintiffs,<br><br>v.<br><br>BHH, LLC d/b/a BELL + HOWELL, and VAN HAUSER, LLC,<br><br>    Defendants. | CASE NO. 1:15-cv-04804-WHP<br><br>JUDGE WILLIAM H. PAULEY<br><br>**<u>DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFFS' CLASS ACTION COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCDURE 12(b)(6)</u>** |

NOW COME Defendants, BHH, LLC d/b/a BELL + HOWELL and VAN HAUSER, LLC, by and through their counsel, LEAHY, EISENBERG, AND FRAENKEL, LTD., and for their Memorandum of Law in Support of their Motion to Dismiss Plaintiffs' Class-Action Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(6), state as follows:

### INTRODUCTION

On June 16, 2015, Plaintiffs, Joanne Hart and Amanda Parke, brought this class-action lawsuit on behalf of themselves, a putative national class, a putative California subclass, and a putative Texas subclass, in connection with their purchase of electronic pest control devices allegedly sold, manufactured, and/or marketed by Defendants. (Doc. #1, ¶¶ 1, 7, 10-11, 30-32). As alleged, the gravamen of the Complaint is that contrary to Defendants' representations about their products, "the devices do not repel pests," they "do not repel animals," and therefore are "ineffective and worthless." (*Id*., ¶¶ 2, 3). With regard to the two named Plaintiffs, the Complaint alleges that Ms. Hart and Ms. Parke each purchased a pack of "Ultrasonic Pest Repellers" for $42.95 and $19.99 respectively, and that "[u]pon receiving the devices in the mail, Ms. Harte [and Ms. Parke] used the devices as directed, but they were

1

ineffective to rid [their] house[s] of pests." (*Id.*, ¶¶ 8, 9).  The relief sought in the Complaint includes "compensatory and punitive damages in amounts to be determined by the Court and/or jury," "restitution and all other forms of equitable monetary relief," "reasonable attorneys' fees and expenses and costs of suit," and "prejudgment interest on all amounts awarded." (*Id.*, ¶¶ 98 (d)-(f), (h)).  The Complaint additionally seeks "injunctive relief ordering Defendants to cease the unfair and deceptive practices." (*Id.*, ¶ 98 (g)).

Plaintiffs have alleged the following seven counts against Defendants: **Count I**—Breach of Warranty under the Magnuson-Moss Warranty Act ("MMWA"), **Count II**—Violation of the California Legal Remedies Act ("CLRA"), **Count III**—Violation of the California Unfair Competition Law ("UCL"), **Count IV**—Violation of the California False Advertising Law ("FAL"), **Count V**—Breach of Express Warranty, **Count VI**—Breach of the Implied Warranty of Merchantability; and **Count VII**—Unjust Enrichment.  (*Id.*, ¶¶ 38-97).

## LEGAL STANDARD

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Landesbank Baden-Wurttemberg v. Goldman, Sachs & Co.*, 821 F.Supp.2d 616, 620 (S.D.N.Y. 2011) (internal quotations omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *In re Smith Barney Transfer Agent Litig.*, 765 F.Supp.2d 391, 396 (S.D.N.Y. 2011) (citations omitted).

## CHOICE OF LAW

As a federal court sitting in diversity, pursuant to the Class Action Fairness Act of 2005 (28 U.S.C. § 1332(d)(2)(A)), this Court "applies the choice-of-law rules of the state in which" it sits; namely New York. *Rodriguez v. It's Just Lunch, Int'l*, 300 F.R.D. 125, 135 (S.D.N.Y. 2014), *quoting Walton v. Morgan Stanley & Co.*, 623 F.2d 796, 798 n.4 (2d Cir. 1980). In a multi-state consumer class action, based on choice-of-law considerations, courts have applied the law of the buyer's domicile. *See In re Rezulin Prods. Liab. Litig.*, 210 F.R.D. 61, 71 (S.D.N.Y. 2002). Pursuant to New York law, the law to be applied to a proposed national class's claims is the law of the state in which the alleged material misrepresentations were made to each class member. *Rodriguez*, 300 F.R.D. at 135.

## ARGUMENT

**I.    The Court Should Dismiss Those Claims And Disregard Those Allegations Related To The "Solar Animal Repellers," Due To The Named Plaintiffs' Lack Of Article III Standing To Bring Claims Related To A Product That They Did Not Purchase.**

The Class-Action Complaint in this case purports to concern two different products manufactured by Defendants—"Ultrasonic Pest Repellers" for "mice, rats, roaches, spiders, and ants," and "Solar Animal Repellers" for "squirrels, raccoons, skunks, deer, rabbits, mice, stray cats, and "stray dogs." (Doc. #1, ¶¶ 1-3). Some allegations in the Complaint specifically refer to the "Solar Animal Repeller" by name, and thus pertain solely to that product. (*Id.*, ¶¶ 17-21, 28-29). Yet, numerous other allegations—including those contained in each of the seven counts—refer to both products collectively as "Repellers." (*See e.g.*, *Id.*, ¶¶ 40, 49, 64, 72, 80, 85, 94). While the Complaint alleges that Ms. Hart and Ms. Parke each purchased "Ultrasonic Pest Repellers," the Complaint does *not* allege that either of them purchased the "Solar Animal Repellers." (*Id.*, ¶¶ 8, 9). Therefore, Ms. Hart and Ms. Parke,

3

the named Plaintiffs, have no standing to bring claims arising from the alleged representations concerning the "Solar Animal Repellers." For this reason, all such claims must be dismissed.

A remarkably similar situation was presented recently in *Elkind v. Revlon Consumer Products Corp.*, No. 14-CV-2484 JS AKT, 2015 WL 2344134 (E.D.N.Y. May 14, 2015). There, two named plaintiffs brought a class-action lawsuit against the defendant, Revlon, asserting various claims related to Revlon's alleged false and misleading advertising of three types of cosmetics sold under the brand name "Revlon Age Defying with DNA Advantage," including a "Foundation," a "Powder," and a "Concealer." *Id*. at *1. The complaint alleged that the named plaintiffs purchased *only* the Foundation and the Concealer, but it also contained claims arising from the advertising of the Powder, which they had not purchased. *Id*. at *3. Revlon contended that the named plaintiffs lacked Article III standing to bring claims related to a product that they did not purchase, and the district court agreed. *Id*.

The district court explained that "[t]he requirement of Article III is no less true with respect to class actions than with respect to other suits. Thus, a plaintiff may not save claims for which he lacks standing by purporting to assert them on behalf of others who might have standing..." *Id*. at *4 (internal quotations and citations omitted). Thus, the district court ruled that "[i]nsofar as Plaintiffs' claims arise from the marketing and labeling of the Powder, those claims fail at the first element. Because they have not purchased the Powder, Plaintiffs have not been injured in the 'personal and individual way' required by Article III." *Id*. (citations omitted). The court explained further that "[b]ecause Plaintiffs do not have Article III standing to assert claims arising from the marketing of the Powder, the Court need not determine whether Plaintiffs have *class* standing to do so." *Id*. (emphasis added). The court clarified that "[w]hether Plaintiffs can satisfy the Second Circuit's test for class standing under Federal

Rule 23....is of no consequence. Plaintiffs fail the Article III inquiry, and it is black letter law that a rule of procedure (such as Rule 23) cannot create standing." *Id.* (internal quotations omitted). Accordingly, the district court held that "Plaintiffs' claims are DISMISSED insofar as they arise from the labeling and marketing of the Powder." *Id*. at *5.[1]

Here, just as the named plaintiffs in *Elkind* lacked standing to bring claims arising from Revlon's advertising of the Powder, so too are Ms. Hart and Ms. Parke without standing to bring claims arising from the alleged representations concerning the "Solar Animal Repellers," which neither of them purchased. Since Ms. Hart and Ms. Parke purchased only the "Ultrasonic Pest Repellers," they have Article III standing only as to claims arising from the alleged representations concerning *that* product. For this reason, to the extent that the Complaint purports to assert causes of action related to the "Solar Animal Repellers," those claims should be dismissed. *See Elkind*, 2015 WL 2344134, at *4-5 (dismissing claims for which plaintiffs lacked Article III standing); *see also*, *Carrea v. Dreyer's Grand Ice Cream, Inc.*, 2011 WL 159380, at *3 (N.D. Cal. 2011), *aff'd,* 475 F.App'x 113 (9th Cir. 2012) (although plaintiff has "standing to pursue claims related to Defendant's Drumstick products...[p]laintiff has not, however, alleged that he purchased Defendant's Dibs products or otherwise suffered any injury or lost money or property with respect to those products. Any claims as to the Dibs products are therefore dismissed without prejudice for lack of standing"), *citing Johns v. Bayer Corp.,* 2010 WL 476688 (S.D. Cal. 2010) (plaintiff "cannot expand the scope of his claims to include a product he did not purchase or advertisements relating to a product that he did not rely upon")). Additionally, for the same reason, the common and

---

[1] While the district court in *In re Frito-Lay N. Am., Inc. All Natural Litig.*, No. 12-MD-2413 RRM RLM, 2013 WL 4647512, at *12 (E.D.N.Y. 2013) held instead that the named plaintiffs' "ability to represent putative class members who purchased products plaintiffs have not themselves purchased is a question for a class certification motion," *Elkind* was decided more recently.

count-specific allegations that relate to, and encompass, the "Solar Animal Repellers" should be excluded from the Court's consideration of the claims concerning the "Ultrasonic Pest Repellers," for which Plaintiffs do have the requisite Article III standing.

## II. The Magnuson-Moss Warranty Claim Should Be Dismissed Because Plaintiffs Have Not Alleged A "Written Warranty" Under The Act, And Because There Are Not One Hundred Named Plaintiffs As Required By The Act.

The Court should dismiss the MMWA claim (**Count I**) because Plaintiffs have not alleged a "written warranty" as defined by the Act. Plaintiffs MMWA claim is based on the existence of a written warranty issued by Defendants. Specifically, Plaintiffs allege that "Defendants issued written warranties as defined in 15 U.S.C. § 2301(6)..." (Doc. #1, ¶ 43). The MMWA, however, defines a "written warranty" narrowly as a "written affirmation" that a consumer product will be "*defect free* or will meet a specified level of performance *over a specified period of time.*" *Bowling v. Johnson & Johnson*, 65 F.Supp.3d 371, 377-78 (S.D.N.Y. 2014), *quoting* 15 U.S.C. § 2301(6)(A) (emphasis added). Thus, where there is no written affirmation that the product will be "defect free" or "will meet a specified level of performance over a specified period of time," no written warranty is created to support a claim under the MMWA. *Bowling*, 65 F.Supp.3d at 378; *see also*, *Beautiful Home Textiles (USA), Inc. v. Burlington Coat Factory Warehouse Corp.*, 2014 WL 4054240, at *12 (S.D.N.Y. 2014) ("[t]he words "100% cotton" and a stated thread count...cannot constitute a written warranty under the MMWA because neither of these labels promises that the sheets are defect-free nor that they will meet a specified level of performance over a specified period of time"); *In re Frito-Lay N. Am., Inc. All Natural Litig.*, 2013 WL 4647512, at *17 (E.D.N.Y. 2013) ("[a]n 'All Natural' label does not warrant a product free from defect. Nor does it constitute a

6

promise that the product 'will meet a specified level of performance over a specified period of time'") (citations omitted).

In this case, the product packaging for the "Ultrasonic Pest Repellers" does not constitute a "written warranty" under the MMWA, since it does not warrant that the product is "defect free," or promise that it will meet "a specified level of performance over a specified period of time." At most, the product packaging provides a product *description*, which does not constitute a warranty. *See Bowling*, 65 F.Supp.3d at 378 (representation on product label "is a product description, not a promise of performance over time"); *In re Frito-Lay*, , 2013 WL 4647512, at *17 ("[s]uch labels are, 'at most, product descriptions'"); *see also Brazil v. Dole Food Co.*, 935 F.Supp.2d 947, 966 (N.D. Cal. 2013) ("product descriptions do not constitute warranties against a product defect for the purposes of MMWA claims"); *Anderson v. Jamba Juice Co.*, 888 F.Supp.2d 1000, 1004 (N.D. Cal. 2012) (dismissing MMWA claim on the basis that representations on product labels are merely product descriptions).

The MMWA claim also requires dismissal due to an inadequate number of named Plaintiffs. "[T]o maintain a class action [under the MMWA], at least one hundred plaintiffs must be named." *Lieb v. Am. Motors Corp.*, 538 F.Supp. 127, 131 (S.D.N.Y. 1982), *citing* 15 U.S.C. § 2310(d)(3); *see also Brazil*, 935 F.Supp.2d at 965 ("[i]n order to bring a cognizable claim under the MMWA...the number of *named* plaintiffs must be more than one hundred") (emphasis added), *citing* 15 U.S.C. § 2310(d)(3)(C). Moreover, "[f]ewer than 100 named plaintiffs may not initiate a class action simply by promising to add more named plaintiffs at a later date." *Abraham v. Volkswagen of Am., Inc.*, 795 F.2d 238, 246, n.6 (2d Cir. 1986); *Lieb*, 538 F.Supp. at 131 (sole named plaintiff could not bring action under MMWA, because 100-named plaintiff requirement must be met *before* class certification).

In this case, while the Complaint alleges that "there are more than 100 *class members*," there are only two *named Plaintiffs—*Ms. Hart and Ms. Parke. (Doc. #1, ¶¶ 8, 9, 13). For this additional reason, the Court must dismiss the MMWA claim.

### III. The Claims For Violations Of The CLRA, UCL, And FAL Have Not Been Pled With Sufficient Particularity And Should Be Dismissed Accordingly.

Plaintiff's claims for violations of the CLRA, UCL, and FAL (**Counts II**, **III**, and **IV** respectively), should be dismissed because they fail to comport with Rule 9(b)'s heightened pleading standard of "particularity" which is applicable to such claims. *See Brazil,* 935 F.Supp.2d at 962 (dismissing plaintiff's CLRA, UCL, and FAL claims for lack of sufficient particularity required by Rule 9(b)); *Kearns v. Ford Motor Co.,* 567 F.3d 1120, 1125 (9th Cir.2009) ("we have specifically ruled that Rule 9(b)'s heightened pleading standards apply to claims for violations of the CLRA and UCL"); *see also*, *In re Frito-Lay*, WL 4647512, at *24 (Rule 9(b) applies where "claims are predicated on advertising and marketing materials beyond the products' labeling"). Rule 9(b)'s heightened pleading standard requires that the circumstances of the defendant's alleged misconduct be stated with particularity. *See DiMuro v. Clinique Labs., LLC*, 572 F.App'x 27, 30 (2d Cir. 2014), *citing* Fed.R.Civ.P. 9(b) ("a party must state with particularity the circumstances constituting fraud or mistake"); *see also Novak v. Kasaks,* 216 F.3d 300, 306 (2d Cir.2000) (same); *Davis v. Chase Bank U.S.A., N.A.*, 650 F.Supp.2d 1073, 1090 (C.D. Cal. 2009) ("Rule 9(b) requires that a plaintiff set forth the who, what, when, where, and how of the misconduct charged").

In this case, the Complaint provides no factual allegations explaining *how* or *why* any of the specific representations were "false or misleading." The Complaint alleges that "Ms. Hart purchased a pack of Bell & Howell Ultrasonic Pest Repellers on July 4, 2014 from the Home

8

Shopping Network for $42.95.  Prior to purchasing the devices, Ms. Hart saw Defendants' representations on the television, including that the devices were 'fast and effective' to repel 'mice, rats, roaches, spiders, and ants' and were effective to 'Drive Pests Out.'" (Doc. #1, ¶ 8).  The Complaint further alleges that these representations were "false and misleading," ostensibly because "[u]pon receiving the devices in the mail, Ms. Hart used the devices as directed, but they were ineffective to rid her house of pests." (*Id.*)

While these allegations may very well contain the content of the alleged representations, there are no facts alleged as to *how* or *why* the representations were "false and misleading.  This is because there are no facts alleged explaining *how* or *why* the devices were "ineffective to rid [Ms. Hart's] house of pests."  Indeed, the Complaint does not allege, for example, that Ms. Hart observed the number of pests before using the devices and then again after the devices had been operating, but she observed no reduction in the number of pests.  For all the reader knows, Ms. Hart interpreted the representations to mean that she would never again see a pest in her house, but then saw a pest in her house while using the devices and concluded they were "ineffective to rid her house of pests."  The allegations are so factually deficient that they leave open the possibility, for instance, that Ms. Hart understood the representations to mean that the devices would rid her house of pests immediately, but when she saw a pest in her house hours later, she determined the devices were "ineffective."

In sum, as the above examples illustrate, there are not nearly enough facts alleged to support Plaintiff's conclusory assertions that "the devices do not repel pests," that "they were ineffective to rid her house of pests," and are "worthless." *See, e.g., DiMuro v. Clinique Labs., LLC*, 572 F. App'x 27, 31 (2d Cir. 2014) (dismissing claims under Rule 9(b), because the "complaint fails to allege facts explaining how each product did not work as advertised and

9

why any specific advertising claim for each product is false," and noting that "[t]he complaint is riddled with repeated conclusory labels that [defendant's] claims are 'false, misleading, and/or deceptive,'" but such labels "are not facts, and certainly not facts sufficient for Rule 9(b)"); *see also*, *Luce v. Edelstein,* 802 F.2d 49, 54 (2d Cir.1986) (dismissing claims under Rule 9(b) because, although plaintiffs alleged that "defendants made oral and written misrepresentations of their net worth and their ability to make the partnership business successful," they "do not state facts on which these allegations are based…or why those representations were false"). For this reason, the allegations are wholly insufficient to satisfy Rule 9(b)'s heightened pleading standard, and these claims should be dismissed accordingly.

In addition, Plaintiff has failed to sufficiently plead the circumstances of Defendants' allegedly deceptive representations concerning the "Ultrasonic Pest Repellers" with the requisite degree of particularity required by Rule 9(b). For instance, the allegation that "*[p]rior to purchasing the devices*, Ms. Hart saw Defendants' representation on the television" does not state *when* Ms. Hart was exposed to the representation, other than at some point in time before July 4, 2014, when she purchased the devices. *See Kearns*, 567 F.3d at 1126 (plaintiff failed to "specify when he was exposed to [the television advertisements]"). Further, the allegations provide inadequate information as to *who* made the representation. It is unclear, for example, whether the allegation refers to a spokesperson for one Defendant, both Defendants, or whether the representation was made by a Home Shopping Network sales representative or some other third party on Defendants' behalf. For these reasons, the CLRA, UCL, and FAL claims have not been pled with sufficient particularity and must be dismissed

10

## IV.   The Claim For Breach Of Express Warranty Requires Dismissal Based On Plaintiffs' Lack Of Privity With Defendants.

Plaintiffs' Breach of Express Warranty claim (**Count V**) requires dismissal as a result of Plaintiffs' lack of privity with Defendants, as privity is required for a breach of express warranty claim under both California and Texas law. In California, "[p]rivity remains a requirement in express warranty actions." *Cellars v. Pac. Coast Packaging,* 189 F.R.D. 575, 580 (N.D. Cal. 1999); *Anunziato v. eMachines, Inc.,* 402 F.Supp.2d 1133, 1141 (C.D. Cal. 2005) ("[a] plaintiff asserting breach of warranty claims must stand in vertical contractual privity with the defendant"). While recognized exceptions to the privity requirement exist, a plaintiff must allege an applicable exception. *See Tait v. BSH Home Appliances Corp.*, WL 3941387, at *3 (C.D. Cal. 2011) ("[p]laintiffs are not in privity of contract with Defendant and they have not sufficiently alleged an exception to the privity requirement"); *Cellars v. Pac. Coast Packaging, Inc.*, 189 F.R.D. 575, 580 (N.D. Cal. 1999) ("the parties agree that there was no privity of contract between plaintiff and [defendant]. Therefore, plaintiff can only state a claim…if it pleads one of the recognized exceptions…Plaintiff's Complaint fails to do so. The Court therefore dismisses plaintiff's third cause of action…").

Under Texas law, privity is also a requirement for a breach of express warranty claim. While it appears that the Texas Supreme Court has yet to address whether privity is required to recover for breach of express warranty (or whether privity is required where damages other than personal injuries are involved), the U.S. District Court for the Northern District of Texas stated—as recently as 2011—that "Texas courts still generally require privity between the buyer and seller for recovery on breach of express warranty." *Scott v. Dorel Juvenile Grp., Inc.*, 773 F.Supp.2d 664, 672 (N.D. Tex. 2011), *aff'd in part, rev'd in part other grounds,*

456 F.App'x 450 (5th Cir. 2012); *see also*, *Well Head Welders, Inc. v. Techalloy Co.*, 1999 WL 314795, at *6 (Tex. App. 1999) ("Texas courts still generally require privity between the buyer and seller for recovery on breach of express warranty"); *Lujan v. Tampo Mfg. Co.*, 825 S.W.2d 505, 511 (Tex. App. 1992) ("[w]ithout privity, [the plaintiff] could have no cause of action...based on breach of an express warranty").

Here, the Complaint alleges that Ms. Hart purchased the devices from the Home Shopping Network, not Defendants. (Doc. #1, ¶ 8). The Complaint also alleges that Ms. Parke purchased the devices from the Carol Wrights Gift Catalog, not Defendants. (*Id.*, ¶ 9). Therefore, neither Ms. Hart nor Ms. Parke are in privity with Defendants. Further, with respect to Ms. Hart, the Complaint does not allege that a recognized exception to the privity requirement applies, as required under California law. For these reasons, the claim for Breach of Express Warranty should be dismissed.

## V. The Claim For Breach Of The Implied Warranty Of Merchantability Should Be Dismissed Based On Plaintiffs' Lack Of Privity With Defendants.

The claim for Breach of the Implied Warranty of Merchantability (**Count VI**) must be dismissed also for Plaintiffs' lack of privity with Defendants. Privity is required for breach of implied warranties under California and Texas law. Under California law, "[t]o state a claim for breach of an implied warranty, plaintiffs must establish vertical privity with the warrantor." *In re Sony Grand Wega Television Litig.*, 758 F.Supp.2d 1077, 1100 (S.D. Cal. 2010); *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1024 (9th Cir. 2008) ("[a] lack of vertical privity requires the dismissal of [plaintiff's] implied warranty claims"); *Chandler v. Chiron Corp.*, 1997 WL 464827, at *7 (N.D. Cal. 1997) ("vertical privity is a prerequisite in California for recovery on a breach of implied warranty theory"). Additionally, any

recognized exception to the privity requirement available for express warranties, if alleged, does not apply in the context of implied warranties. *Blennis v. Hewlett–Packard Co.,* 2008 WL 818526, *4 (N.D. Cal. 2008), *Wolph v. Acer Am. Corp.*, 2009 WL 2969467, at *3 (N.D. Cal. 2009); *Burr v. Sherwin Williams Co.*, 42 Cal. 2d 682, 695-96, 268 P.2d 1041 (1954).

Likewise, privity of contract is required under Texas law to sue for breach of the implied warranty of merchantability. *Bossier Chrysler Dodge II, Inc. v. Rauschenberg,* 201 S.W.3d 787, 797 (Tex. App. 2006), *rev'd in part other grounds*, 238 S.W.3d 376 (Tex. 2007); *Woodhouse v. SanofiAventis U.S. LLC,* 2011 WL 3666595, at *6 (W.D. Tex. 2011); *see also*, *Cloer v. Gen. Motors Corp.*, 395 F.Supp.1070, 1072 (E.D. Tex. 1975) ("[t]here was no privity of contract between [the plaintiff] and [the defendant]…Therefore, the Plaintiff has no cause of action for breach of express or implied warranties against the [d]efendant").

In this case, as explained in Part IV *supra*, the Complaint alleges that Ms. Hart purchased the device from the Home Shopping Network, and that Ms. Parke purchased the device from the Carol Wrights Gift Catalog. (Doc. #1, ¶¶ 8, 9). Plaintiffs, therefore, are not in privity with Defendants. The absence of privity between Plaintiffs and Defendants is fatal to Plaintiffs' Breach of Implied Warranty claim, and it should be dismissed on this basis.

## VI. The Unjust Enrichment Claim Must Be Dismissed Where California And Texas Law Do Not Recognize Unjust Enrichment As An Independent Cause Of Action.

Finally, Plaintiffs' Unjust Enrichment claim (**Count VII**) should be dismissed, since California and Texas law do not recognize an independent cause of action for unjust enrichment. As far as Ms. Hart is concerned, "there is no cause of action in California for unjust enrichment." *In re Apple & AT & T iPad Unlimited Data Plan Litig.*, 802 F.Supp.2d 1070, 1077 (N.D. Cal. 2011); *Melchior v. New Line Prods., Inc.,* 106 Cal.App.4th 779, 794,

13

131 Cal.Rptr.2d 347 (2003) (same); *Newsom v. Countrywide Home Loans, Inc.*, 714 F.Supp.2d 1000, 1009–10 (N.D. Cal. 2010) ("[t]his Court has previously found that there is no independent claim for unjust enrichment"). *Brazil*, 935 F.Supp.2d at 966-67 ("[d]espite some inconsistency in the law, several recent decisions by the California Court of Appeals have held that '[u]njust enrichment is not a cause of action, just a restitution claim'") (citing cases). Thus, due to the lack of a recognized independent cause of action for unjust enrichment under California law, the Unjust Enrichment claim must be dismissed.

Ms. Parke's Unjust Enrichment claim fares no better under Texas law, which likewise does not recognize an independent cause of action for unjust enrichment. *Oxford v. Williams Cos., Inc.*, 137 F.Supp.2d 756, 762 (E.D. Tex. 2001) ("[u]njust enrichment is not an independent cause of action but is instead a measure of damages which places the aggrieved plaintiff in the position he occupied prior to dealing with the defendant"); *Cypress Bayou Indus. Painting, Inc. v. Sentry Supply, Inc.*, 2013 WL 6407688, at *5, fn. 1 (E.D. Tex. 2013) ("unjust enrichment is not an independent claim under Texas law"). Therefore, the Unjust Enrichment claim must be dismissed accordingly.

## CONCLUSION

WHEREFORE, Defendants, BHH, LLC d/b/a BELL + HOWELL, and VAN HAUSER, LLC respectfully request that the Court enter an order dismissing Plaintiffs' Class-Action Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

Respectfully submitted,

**E. MISHAN & SONS, INC.**

By:     */s/ Howard B. Randell*
          One of Its Attorneys

Howard B. Randell
Scott Wing
LEAHY, EISENBERG & FRAENKEL, LTD.
33 West Monroe Street, Suite 1100
Chicago, Illinois 60603
Tel. (312) 368-4554

*Counsel for BHH, LLC, VAN HAUSER, LLC, and VAN HAUSER, LLC*

\\lefpl\Prolaw Files\Documents\E. MISHAN AND SONS, INC\16823\PLEADINGS\256622.docx