```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 5-5-16
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

JOANNE HART, *on behalf of herself and all others similarly situated*,

        Plaintiff,

-against-

BHH, LLC d/b/a BELL + HOWELL, *et al.*

        Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

15cv4804

MEMORANDUM & ORDER

WILLIAM H. PAULEY III, District Judge:

        Joanne Hart brings this putative consumer class action against Defendants BHH LLC and Van Hauser LLC alleging claims under the Magnuson-Moss Warranty Act ("MMWA"), Californian Consumers Legal Remedies Act ("CLRA"), California Unfair Competition Law ("UCL"), and California False Advertising Law ("FAL"), as well as claims for breach of express warranty and unjust enrichment. Defendants' motion to dismiss the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is granted in part and denied in part.[1]

## BACKGROUND

        Defendants manufacture, distribute, and sell Bell & Howell Ultrasonic Pest Repellers ("Pest Repellers") and Bell & Howell Solar Animal Repellers ("Animal Repellers" and, together, the "Repellers"). Defendants represent that these devices repel vermin with ultrasonic sound waves. (Compl. ¶¶ 1–2, 10–11.) Specifically, the Pest Repellers' packaging represents that a consumer needs to "just plug it in" and it will repel "mice, rats, roaches, spiders

---

[1] Claims brought by Plaintiff Amanda Parke have been voluntarily dismissed.

and ants" in a "fast and effective" fashion.  (Compl. ¶ 16.)  Similarly, the Animal Repellers' packaging represents that "ultrasonic sound" will "protect your yard from unwanted animals" such as "squirrels, raccoons, skunks, deer, rabbits, mice, stray cats [and] stray dogs."  (Compl. ¶ 17.)  Defendants also aired a television commercial stating, among other things, that the Animal Repellers "use[] a high-pitched sound to rid your yard of unwanted pests . . . .  And keep[] them away . . . for good."  (Compl. ¶ 18.)

In July 2014, Hart, a California resident, purchased a pack of Pest Repellers from the Home Shopping Network for $42.95.  (Compl. ¶ 8.)  Hart alleges that, contrary to Defendants' representations, the Repellers are "ineffective and worthless."  (Compl. ¶ 22.)  Her Complaint cites three independent bases supporting her conclusion that the Repellers are useless, and that the representations are deceptive.  First, studies from Utah State University and the University of Nebraska have found that ultrasonic pest repellers are ineffective.[2]  (Compl. ¶¶ 23–24.)  Second, the Federal Trade Commission allegedly warned manufacturers of ultrasonic post-control devices in May 2001 that they may be violating prohibitions on false and deceptive advertising.  (Compl. ¶¶ 25–27.)  Third, a local news station tested the Animal Repellers during a segment called "Deal or Dud," during which a biologist declared the product to be "a dud."  (Compl. ¶¶ 28–29.)  Although Hart only purchased Pest Repellers, she seeks to represent a class of all purchasers of both Pest Repellers and Animal Repellers in the United States, and a subclass of all California purchasers of such Repellers.  (Compl. ¶¶ 30–31.)

---

[2] See West & Messmer, Commensal Rodents, Utah State University at 3 ("Scientific evidence clearly shows that these devices are not useful in repelling rats or mice. For these reasons, ultrasonic and electromagnetic devices are not recommended as a solution to rodent problems."), available at https://extension.usu.edu/files/publications/publication/NR_WD_010.pdf;  Koehler, et al., Frightening Methods and Devices/ Stimuli to Prevent Mammal Damage—A Review, University of Nebraska – Lincoln, at 171 ("There have been so many failures reported with high-frequency sound that little can be said in favor of such devices."), available at http://digitalcommons.unl.edu/cgi/viewcontent.cgi?article=1049&context=vpc14.

LEGAL STANDARD

On a motion to dismiss, the factual allegations in a complaint are accepted as true and all reasonable inferences are drawn in the plaintiff's favor. Rescuecom Corp. v. Google Inc., 562 F.3d 123, 127 (2d Cir. 2009). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 663, 678 (2009) (citation omitted); Ruston v. Town Bd. for Town of Skaneateles, 610 F.3d 55, 59 (2d Cir. 2010). However, a claim must rest on "factual allegations sufficient to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). A pleading offering "labels and conclusions" or a "formulaic recitation of the elements of a cause of action" fails to state a claim. Iqbal, 556 U.S. at 678 (citation omitted).

DISCUSSION

Defendants argue that Hart's claims should be dismissed because: (1) she lacks standing to bring claims on behalf of purchasers of Animal Repellers;[3] (2) the warranty claims are not actionable under the MMWA; (3) her fraud claims are not pled with sufficient particularity; (4) she lacks privity with Defendants; and (5) unjust enrichment is not an independent cause of action under California law.

I. Standing for Unpurchased Products

Under Article III of the United States Constitution, "[T]he federal judicial power extends only to actual cases and controversies." E.I. Dupont de Nemours & Co. v. Invista B.V.,

---

[3] Although Defendants invoke only Fed. R. Civ. P. 12(b)(6), courts have analyzed similar motions to dismiss for lack of standing pursuant to Fed. R. Civ. P. 12(b)(1). "The standards of review for a motion to dismiss under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction and under Fed. R. Civ. P. 12(b)(6) for failure to state a claim are substantively identical except that on a motion to dismiss under Fed. R. Civ. P. 12(b)(1), the party invoking the Court's jurisdiction bears the burden of demonstrating that subject matter jurisdiction exists, whereas the movant bears the burden on a motion to dismiss under Fed. R. Civ. P. 12(b)(6)." Four K. Grp., Inc. v. NYCTL 2008-A Trust, No. 12-cv-2135 (JG), 2013 WL 1562227, at *4 (E.D.N.Y. Apr. 15, 2013) (internal quotation marks omitted).

3

473 F.3d 44, 46 (2d Cir. 2006).  The "irreducible constitutional minimum" of Article III standing requires three elements: (1) injury-in-fact, (2) causation, and (3) redressibility.  <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 560 (1992).  "The party invoking federal jurisdiction bears the burden of establishing these elements" and each element must be "supported . . . with the manner and degree of evidence required at the successive stages of the litigation."  <u>Lujan</u>, 504 U.S. at 561.  Further, in a class action, the named plaintiffs must themselves have standing to sue; it is not sufficient to show that "an injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent."  <u>Lewis v. Casey</u>, 518 U.S. 343, 357 (1996) (citations and internal quotation marks omitted); <u>see also</u> <u>Mahon v. Ticor Title Ins. Co.</u>, 683 F.3d 59, 64 (2d Cir. 2012).

> Hart insists that she has Article III standing to assert claims regarding Animal Repellers even though she never purchased them.  Specifically, Hart argues that the question of whether she can pursue claims related to Animal Repellers is not a question of Article III standing, but a question of class standing more appropriately decided on a motion for class certification.  In support of her argument, Hart invokes the Second Circuit's decision in <u>NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.</u>, 693 F.3d 145 (2d Cir. 2012).  In <u>NECA</u>, the Second Circuit held that purchasers of two mortgage-backed securities certificates had "class standing" to assert class claims on behalf of purchasers of fifteen other certificates issued pursuant to the same shelf registration statement, and backed by loans originated by the same lenders.  <u>NECA</u>, 693 F.3d at 162–64.  Conversely, the Second Circuit found that there would be no class standing for securities backed with loans originated by different lenders because "each of those alleged injuries has the potential to be very different—and could turn on very different proof."  <u>NECA</u>, 693 F.3d 163.  In so holding, the Court of Appeals noted that the

4

plaintiff had "Article III standing to sue defendants in its own right," and that plaintiff had class standing with respect to securities backed by similar loans because "(1) [plaintiff] personally has suffered some actual . . . injury as a result of the putatively illegal conduct of the defendant, and (2) that such conduct implicates the same set of concerns as the conduct alleged to have caused injury to other members of the putative class by the same defendants." NECA, 693 F.3d at 158, 162.

After NECA, "[c]ourts are split as to whether plaintiffs have standing to assert claims relating to products they themselves did not purchase, but which are substantially similar to products they did purchase." See Quinn v. Walgreen Co., 958 F. Supp. 2d 533, 541 (S.D.N.Y. 2013).[4]  Some courts dismiss claims relating to unpurchased products at the motion to dismiss stage:

> The requirement of Article III is "no less true with respect to class actions than with respect to other suits." . . . Thus, a plaintiff may not save claims for which he lacks standing by purporting to assert them on behalf of others who might have standing; "named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent."

Elkind v. Revlon Consumer Products Corp., No. 14-cv-2484 (JS), 2015 WL 2344134, at *4 (E.D.N.Y. May 14, 2015) (quoting Lewis v. Casey, 518 U.S. 343, 357 (1996)).  Others deny motions to dismiss so long as the products purchased by plaintiffs were sufficiently similar, finding that "any concerns regarding the differences can be addressed at the class certification stage." Jovel v. i-Health, Inc., No. 12-cv-5614 (JG), 2013 WL 5437065, at *10 (E.D.N.Y. Sept.

---

[4] For a thorough analysis of courts' differing approaches see also Michael G. Lewis, Note, Protecting the Consumer: Ensuring Uniformity in the Federal Courts When Named Plaintiffs Assert Claims Against Unpurchased Products, 89 ST. JOHN'S L. REV. 325, 327 (2015) ("This scenario—named plaintiffs of a putative consumer protection class action seeking to assert claims relating to products that they did not purchase themselves—has, in recent years, become more frequent within the federal court system.  However, in deciding the defendants' motions to dismiss for lack of standing, district courts across the country have been anything but uniform.").

27, 2013).  For example, in Jovel, although the plaintiff only purchased brain-health supplements marketed toward children, the court sustained class-action claims regarding an adult line of supplements, noting that the products used similar packaging, that defendant made similar claims regarding their efficacy, and that the products used similar underlying ingredients.  2013 WL 5437065, at *10.

The Second Circuit's unpublished decision in DiMuro v. Clinique Labs., LLC, 572 F. App'x 27, 29 (2d Cir. 2014) is instructive in this case.  In DiMuro, plaintiffs asserted class action claims "arising from Defendants' marketing of seven different cosmetic products sold under the 'Repairwear' product line" despite having only purchased three of them.  572 F. App'x 29–30.  The Second Circuit affirmed the district court's holding that plaintiffs lacked standing to assert claims regarding the four products they had not purchased.   Those products had different ingredients, and defendants made different advertising claims for each.  Thus, unique evidence would be required to prove that the different advertising statements made for those products were false and misleading.  DiMuro, 572 F. App'x at 29.  Accordingly, the Second Circuit affirmed dismissal on the ground that it could not "say that claims brought by a purchaser of" one product "would raise a 'set of concerns' nearly identical to that of a purchaser" of the other Repairwear products.  DiMuro, 572 F. App'x at 29 (quoting NECA-IBEW, 693 F.3d at 163).

The implicit lesson in DiMuro is that NECA did not give plaintiffs—and their counsel—free reign to bring lawsuits regarding products they never purchased.  Here, as in Dimuro, claims brought by a purchaser of Pest Repellers would not raise "nearly identical" concerns to the claims of a purchaser of Animal Repellers.  The products are distinct and serve different purposes: Pest Repellers are plugged into electric sockets and are advertised only to repel insects and mice from a home, whereas Animal Repellers are solar-powered devices

mounted in gardens to repel animals such as raccoons, deer, squirrels, cats and dogs from a yard. Thus, like the cosmetics products in DiMuro or the securities backed by loans from different originators in NECA-IBEW, unique evidence would be required to prove that Defendants' statements regarding both products were actually false or misleading. Accordingly, Plaintiff's claims concerning Animal Repellers are dismissed for lack of standing.

II. Magnuson-Moss Warranty Act

Defendants argue that Hart's MMWA claim must be dismissed because (1) Hart fails to identify a "written warranty" as defined by the MMWA, and (2) there are an inadequate number of named plaintiffs.

"The MMWA grants relief to a consumer 'damaged by the failure of a . . . warrantor . . . to comply with any obligation . . . under a written warranty.'" Wilbur v. Toyota Motor Sales, U.S.A., Inc., 86 F.3d 23, 26 (2d Cir. 1996) (quoting 15 U.S.C. § 2310(d)(1)). "Written warranty" is defined as "any written affirmation of fact or written promise made in connection with the sale of a consumer product by a supplier to a buyer which relates to the nature of the material or workmanship and affirms or promises that such material or workmanship is defect free or will meet a specified level of performance over a specified period of time." 15 U.S.C. § 2301(6)(A).

Defendants argue that Hart's MMWA claim should be dismissed because the representations on the Pest Repellers' packaging are not "written warranties" under the MMWA. Specifically, Defendants argue that those representations do not warrant that the product is "defect free" or "will meet a specified level of performance over a specified period of time." Hart counters that her MMWA claim should "stand or fall with the express and implied warranty claims under state law." Cali v. Chrysler Grp. LLC, No. 10-cv-7606 (JSR), 2011 WL 383952, at

7

*4 (S.D.N.Y. Jan. 18, 2011) (quotation and citation omitted) (dismissing MMWA claims where underlying state-law claims were dismissed).  But courts regularly dismiss MMWA claims—even while sustaining state-law breach of warranty claims—where defendants' representations do not satisfy the MMWA's statutory definition.  See, e.g., In re Frito-Lay N. Am., Inc. All Nat. Litig., No. 12-MD-2413, 2013 WL 4647512, at *17, *27 (E.D.N.Y. Aug. 29, 2013) (dismissing an MMWA claim and finding that a label representing a product as "All Natural" "does not constitute a written warranty as defined by the MMWA.").  Hart fails to identify any representation made by Defendants that the Repellers were "defect free."  Likewise, the only temporal reference identified by Hart is the representation that the Repellers work "fast."  This is hardly a representation that the Repellers will meet a specified level of performance over a specified period of time.  Cf. Bowling v. Johnson & Johnson, 65 F. Supp. 3d 371, 378 (S.D.N.Y. 2014) (finding representations that mouthwash would "restore enamel" were product descriptions, not a promise of performance over time, despite the presence of a "best buy" date on the bottle).  Accordingly, Plaintiff's MMWA claim is dismissed.[5]

III.    CLRA, UCL and FAL Claims

Defendants next argue that Hart's claims for violations of the CLRA, UCL and FAL should be dismissed because they fail to satisfy Fed. R. Civ. P. 9(b)'s particularity requirement.  Hart's CLRA, UCL and FAL claims sound in fraud.  See In re Frito-Lay N. Am., Inc. All Nat. Litig., 2013 WL 4647512, at *23.   "Under Rule 9(b), claims of fraud must be pled with particularity and '(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.'"  Landesbank Baden-Württemberg v. Goldman, Sachs & Co., 821

---

[5] Because the MMWA claim is dismissed on this ground, there is no need to reach Defendants' argument that the Complaint fails to satisfy the MMWA's jurisdictional requirements set forth in 15 U.S.C. § 2310(d)(3).

F. Supp. 2d 616, 621 (S.D.N.Y. 2011) (quoting Rombach v. Chang, 355 F.3d 164, 170 (2d Cir. 2004)).  "In a deceptive advertising case, Rule 9(b) requires that the plaintiff(s) identify specific advertisements and promotional materials; allege when the plaintiff(s) were exposed to the materials; and explain how such materials were false or misleading." In re Frito-Lay N. Am., Inc. All Nat. Litig., 2013 WL 4647512, at *24 (quotation marks and citation omitted).

Defendants argue that Hart fails to plead exactly how their representations about the Repellers were false or misleading.  But Hart asserts that she used the Pest Repellers as directed and they did not repel pests.  (Compl. ¶ 8.)  And she lends further support to those allegations by citing two scientific studies calling into question the efficacy of such technology.  Such allegations suffice at the pleadings stage.

IV.     Breach of Express Warranty

Defendants argue that Hart's breach of express warranty claim fails because California law requires privity.  Under California law, "[b]reach of express warranty requires the exact terms of the warranty, plaintiff's reasonable reliance and a breach which proximately cause[s] plaintiff['s] injury.  In general, privity is a required element of a breach of express warranty cause of action.  However, privity is not an absolute requirement in express warranty claims." Tapia v. Davol, Inc., No. 15-cv-179 (GPC), 2015 WL 4544507, at *9 (S.D. Cal. July 28, 2015) (citations omitted).   Specifically, privity is not required "when the plaintiff relies on written labels or advertisements of a manufacturer." Clemens v. DaimlerChrysler Corp., 534 F.3d 1017, 1023 (9th Cir. 2008).

Hart alleges that she "purchased a pack of [Pest Repellers] from the Home Shopping Network for $42.95.  Prior to purchasing the devices, []Hart saw Defendants' representations on the television, including that the devices were 'fast and effective' to repel

'mice, rats, roaches, spiders, and ants', and . . . 'drive pests out.' []Hart believed these representations to be true, and relied on them." (Compl. ¶ 8.) Defendants argue that such allegations are insufficient to establish that Hart relied on <u>written</u> representations. But the clear implication of Hart's allegations is that she saw the representations on the Pest Repellers' packaging while they were being sold on the Home Shopping Network. Because Defendants cite no authority establishing that viewing packaging through the medium of television would defeat a consumer's claims, their motion to dismiss Hart's breach of express warranty claim is denied.

V.  <u>Unjust Enrichment</u>

Defendants argue that Hart's unjust enrichment claim should be dismissed because "there is no cause of action in California for unjust enrichment." <u>In re Apple & AT & T iPad Unlimited Data Plan Litig.</u>, 802 F. Supp. 2d 1070, 1077 (N.D. Cal. 2011) (quotations omitted). Hart counters with case law indicating that a claim of unjust enrichment can be viable "as part of a claim of restitution based on quasi-contract." <u>Astiana v. Ben & Jerry's Homemade, Inc.</u>, No. 10-cv-4387 (PJH), 2011 WL 2111796, at *11 (N.D. Cal. May 26, 2011).

"California courts are divided as to the viability of unjust enrichment claims under California law." <u>Stoltz v. Fage Dairy Processing Indus., S.A.</u>, No. 14-cv-3826, 2015 WL 5579872, at *29 (E.D.N.Y. Sept. 22, 2015). However, it seems that a majority of courts— including federal courts sitting in California—have found that such claims are not cognizable under California law. See, e.g., <u>In re Sony Gaming Networks & Customer Data Sec. Breach Litig.</u>, 903 F. Supp. 2d 942, 974 (S.D. Cal. 2012) ("Simply put, 'there is no cause of action in California for unjust enrichment.'") (quoting <u>Melchior v. New Line Prod., Inc.</u>, 106 Cal. App. 4th 779, 793 (2003)); <u>Ham v. Hain Celestial Grp., Inc.</u>, 70 F. Supp. 3d 1188, 1196 (N.D. Cal. 2014) ("Unjust enrichment and quasi-contract are not independent causes of action."); <u>Aguiar v.</u>

10

Merisant Co., No. 14-cv-00670, 2014 WL 6492220, at *9 (C.D. Cal. Mar. 24, 2014) ("Defendants contend that California law does not recognize a cause of action for unjust enrichment. The Court agrees."); In re Ford Tailgate Litig., No. 11-cv-2953, 2014 WL 1007066, at *5 (N.D. Cal. Mar. 12, 2014) ("California, among other jurisdictions, has rejected independent unjust enrichment claims.") This Court finds the reasoning of these decisions persuasive. Accordingly, Hart's unjust enrichment claim is dismissed.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is granted with respect to Plaintiff's Magnuson-Moss Warranty Act claim and unjust enrichment claim. Plaintiff's claims concerning Animal Repellers are also dismissed for lack of standing.

A status conference is scheduled for June 2, 2016 at 10:30 a.m. to address the disputes raised at ECF Nos. 33–35. If any of those issues are now moot in view of this Memorandum & Order the parties should inform this Court via letter within 14 days.

The Clerk of Court is directed to terminate all pending motions.

Dated: May 5, 2016
New York, New York

SO ORDERED:

_____
WILLIAM H. PAULEY III
U.S.D.J.