# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOANNE HART and SANDRA BUENO, on behalf of themselves and all others similarly situated,<br><br>      Plaintiffs,<br>  v.<br><br>BHH, LLC d/b/a Bell + Howell and VAN HAUSER LLC<br><br>      Defendants. | **CASE NO.  1:15-CV-04804-WHP**<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs Joanne Hart and Sandra Bueno ("Plaintiffs"), by and through their attorneys, make the following allegations pursuant to the investigation of their counsel and based upon information and belief, except as to allegations specifically pertaining to themselves and their counsel, which are based on personal knowledge, against Defendants BHH, LLC, d/b/a Bell + Howell and Van Hauser LLC ("Defendants").

## NATURE OF THE ACTION

1.      This is a class action lawsuit on behalf of purchasers of Bell + Howell Ultrasonic Pest Repellers (the "Repellers").

2.      Defendants represent that their Ultrasonic Pest Repellers use "ultrasonic sound waves" to repel "mice, rats, roaches, spiders, and ants" and will "Drive Pests Out!"  But that is false and misleading.  Scientific evidence shows these devices do not repel pests.  Defendants' Ultrasonic Pest Repellers are ineffective and worthless.

3.      Dozens of studies have shown that the ultrasonic technology does not work.  In one study published by Utah State University, the researchers concluded that ultrasonic devices are ineffective and "not recommended as a solution to rodent problems."[1]  In another study from the University of Nebraska, the researchers concluded that "there have been so many failures reported with high-frequency sound that little can be said in favor of such devices."[2]

4.      Recognizing the weight of the scientific evidence against the efficacy of electronic pest and animal control devices, the Federal Trade Commission ("FTC") has issued multiple letters to, and even instituted several actions against, manufacturers and retailers of these devices.  But unscrupulous manufacturers such as Defendants continue to dupe consumers.

---

[1] West and Terry A. Messmer, *Commensal Rodents*, Utah State University.  Available at https://extension.usu.edu/files/publications/publication/NR_WD_010.pdf.

[2] Ann E. Koehler, Rex E. Marsh, Terrell P. Salmon, *Frightening Methods and Devices/ Stimuli to Prevent Mammal Damage—A Review*, University of Nebraska – Lincoln, at 171.  Available at http://digitalcommons.unl.edu/cgi/viewcontent.cgi?article=1049&context=vpc14.

5.      Plaintiffs are purchasers of the Repellers who assert claims on behalf of themselves and similarly situated purchasers of the Repellers for violations of California consumer protection laws, fraud, and breach of express warranty.

## PARTIES

6.      Plaintiff Joanne Hart is a citizen of California who resides in Palm Desert, California.  Ms. Hart purchased a pack of Bell & Howell Ultrasonic Pest Repellers on July 4, 2014 from the Home Shopping Network for $42.95.  Prior to purchasing the devices, Ms. Hart saw and heard Defendants' representations that the devices were "ultrasonic pest repellers" that would repel and drive out "mice," "rats," "roaches," "ants," and "spiders."  Ms. Hart believed these representations to be true, and relied on them in that she would not have purchased the Ultrasonic Pest Repellers had she known that these representations were false and misleading. Upon receiving the devices in the mail, Ms. Hart used the devices as directed, but they were ineffective to rid her house of pests.

7.      Plaintiff Sandra Bueno is a citizen of California who resides in Pacoima, California.  Ms. Bueno purchased a Bell & Howell Ultrasonic Pest Repeller on May 21, 2016 from the Harriet Carter Gifts catalogue.  Prior to purchasing the device, Ms. Bueno saw Defendants' representations that the devices were "ultrasonic pest repellers" that would repel and drive out "mice," "rats," "roaches," "ants," and "spiders."  Ms. Bueno believed these representations to be true, and relied on them in that she would not have purchased the Ultrasonic Pest Repeller had she known that these representations were false and misleading. Upon receiving the device in the mail, Ms. Bueno used the device as directed, but it was ineffective to rid her house of pests.

8.      Defendant BHH, LLC is a New York corporation with a principal place of business at 230 Fifth Ave, New York, NY  10001.  BHH, LLC does business as "Bell + Howell" and is responsible for the sales and marketing of the Repellers in the United States.

9.      Defendant Van Hauser LLC is a New York corporation with a principal place of business at 230 Fifth Ave, New York, NY  10001.  Van Hauser LLC is responsible for the manufacture and distribution of the Repellers in the United States.

2

10.     At all times relevant to the allegations in this matter, each Defendant acted in concert with, with the knowledge and approval of, and/or as the agent of the other Defendant within the course and scope of the agency, regarding the acts and omissions alleged.

## JURISDICTION AND VENUE

11.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because there are more than 100 class members and the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest, fees, and costs, and at least one Class member is a citizen of a state different from Defendants.

12.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because Defendants' principal place of business is in this district.

13.     All conditions precedent necessary for filing this Complaint have been satisfied and/or such conditions have been waived by the conduct of Defendants.

## FACTS COMMON TO ALL CAUSES OF ACTION

### A. Defendants' False Claims of Efficacy

14.     Defendants represent their Ultrasonic Pest Repellers are "Fast and Effective" and use "Ultrasonic sound waves to help repel… mice, rats, roaches, spiders, and ants."  Defendants represent their devices are "Easy To Use. Just Plug It In!"  Defendants further represent that all the consumer has to do is "Plug It In … Drive Pests Out!"



**B. Scientific Studies Show The Repellers Do Not Work**

     15.     Utah State University published a study evaluating various methods for removing household rodents.  The purpose of the publication was to educate consumers as to the best ways to remove mice and rats from the household.  In doing so, the study looked at the effectiveness of seven different rodent removal techniques.  The analysis pertaining to ultrasonic devices warned "advertising claims made by companies that produce ultrasonic devices have not withstood

scientific scrutiny." For this reason, researchers concluded that ultrasonic devices are "not recommended as a solution to rodent problems."[3]

16.    Similarly, the University of Nebraska published a meta-analysis of dozens of studies that examined the effectiveness of pest-control techniques, or "frightening methods." The stated purpose of the publication was to determine the best way to scare away unwanted animals. Of the studies reviewed, eight considered ultrasonic sound as a potential frightening method. Ultrasonics, the review says, "will not drive established rodents out of buildings or areas." The researchers conclude "there have been so many failures reported with high-frequency sound that little can be said in favor of such devices."[4]

**C. History of FTC Warning Ultrasonic Pest Repeller Manufacturers**

17.    In May of 2001, the FTC sent warning letters to over 60 manufacturers and retailers of ultrasonic pest-control devices. After investigation, the FTC found that many of the advertisements make explicit false claims about the products' ability to eliminate rodents or repel insects. According to FTC staff, these types of claims may not be in compliance with the FTC Act, which prohibits false and deceptive advertising.

18.    From 1985 to 1997, the FTC brought actions against six companies that made false claims about the effectiveness of ultrasonic devices in controlling rodent and insect infestations.

19.    The types of claims challenged by the FTC included representations that ultrasonic devices can eliminate rodent infestations, repel insects, and serve as an effective alternative to conventional pest-control products, among others.

20.    Prior FTC complaints alleged that any reaction by rodents to ultrasonic sound would be temporary at best because rodents become accustomed to ultrasonic sound, and will return to their nesting or feeding areas even in the presence of an ultrasonic device.

---

[3] West and Terry A. Messmer, *Commensal Rodents*, Utah State University. Available at https://extension.usu.edu/files/publications/publication/NR_WD_010.pdf.

[4] Ann E. Koehler, Rex E. Marsh, Terrell P. Salmon, *Frightening Methods and Devices/ Stimuli to Prevent Mammal Damage—A Review*, University of Nebraska – Lincoln, at 171. Available at http://digitalcommons.unl.edu/cgi/viewcontent.cgi?article=1049&context=vpc14.

## CLASS REPRESENTATION ALLEGATIONS

21.     Plaintiff Joanne Hart seeks to represent a class defined as "all persons who purchased one or more Bell + Howell ultrasonic pest repellers in the state of California from April 16, 2011 to June 15, 2016, excluding persons who purchased for purpose of resale" (the "California Class").

22.     Plaintiff Sandra Bueno also seeks to represent another class defined as "all persons who purchased one or more Bell + Howell ultrasonic pest repellers in the United States from April 16, 2011 to June 15, 2016, excluding persons who purchased for purpose of resale" (the "Fraud Class").

23.     Ms. Bueno also seeks to represent another class defined as "all persons who purchased one or more Bell + Howell ultrasonic pest repellers in the states of Alaska, California, Colorado, Delaware, Iowa, Kansas, Maine, Minnesota, Missouri, Nebraska, New Hampshire, New Jersey, New York, North Carolina, Ohio, Oklahoma, Oregon, Pennsylvania, Texas, Utah, Vermont, Virginia, Washington, West Virginia, and Wyoming from April 16, 2011 to June 15, 2016, excluding persons who purchased for purpose of resale" (the "Breach of Express Warranty Class").

24.     Members of the Classes are so numerous that their individual joinder herein is impracticable.  On information and belief, members of the Classes number in the millions.  The precise number of Class members and their identities are unknown to Plaintiffs at this time but may be determined through discovery.  Class members may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendants and third party retailers and vendors.

25.     Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members.  Common legal and factual questions include, but are not limited to, whether Defendants' advertising and marketing of the Repellers is false and misleading and whether the Repellers are effective in repelling pests.

26.     The claims of the named Plaintiffs are typical of the claims of the Classes in that the named Plaintiffs were exposed to Defendants' false and misleading marketing and representations, purchased the Repellers, and suffered a loss as a result of that purchase.

27.     Plaintiffs are adequate representatives of the Classes because their interests do not conflict with the interests of the Class members they seek to represent, they have retained competent counsel experienced in prosecuting class actions, and they intend to prosecute this action vigorously.  The interests of Class members will be fairly and adequately protected by Plaintiffs and their counsel.

28.     The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of Class members.  Each individual Class member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendants' liability.  Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case.  Individualized litigation also presents a potential for inconsistent or contradictory judgments.  In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendants' liability.  Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

## COUNT I

### Violation Of California's Consumers Legal Remedies Act ("CLRA"), California Civil Code §§ 1750, *et seq.*

29.     Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

30.     Plaintiff Hart brings this claim individually and on behalf of the California Class against Defendants.

31.     Plaintiff Hart and the California Class members are consumers who purchased the Repellers for personal, family, or household purposes.  Plaintiff Hart and the California Class

7

members are not sophisticated experts with independent knowledge of ultrasonic pest control devices.

32.    The Repellers that Plaintiff Hart and other California Class members purchased from Defendants were "goods" within the meaning of Cal. Civ. Code § 1761(a).

33.    Defendants' actions, representations, omissions and conduct have violated and continue to violate the CLRA because they extend to transactions that intended to result, or which have resulted in, the sale of goods to consumers.

34.    Cal. Civ. Code § 1770(a)(5), prohibits "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have …." Cal. Civ. Code § 1770(a)(9) further prohibits "[a]dvertising goods or services with intent not to sell them as advertised."

35.    Defendants violated Cal. Civ. Code § 1770(a)(5) and (a)(9) by misrepresenting that the Repellers were capable of repelling pests and animals as described above.  Defendants knew or should have known, based on pre-market testing, and FTC warnings that the Repellers were not capable of repelling pests.

36.    A reasonable consumer would not have purchased the Repellers had Defendants disclosed their defective condition or refrained from the affirmative misstatements identified above because that information is material to a reasonable consumer.

37.    Plaintiff Hart and the California Class suffered injuries caused by Defendants because: (a) they would not have purchased the Repellers had they known the Repellers were ineffective at repelling pests and animals; and (b) the Repellers did not have the characteristics, uses, or benefits as promised.

38.    On or about June 17, 2015, prior to filing this action, a CLRA notice letter was served on Defendants which complies in all respects with California Civil Code § 1782(a).  Plaintiff Joanne Hart sent Defendants a letter via certified mail, return receipt requested, advising it that it is in violation of the CLRA and demanding that it cease and desist from such violations and make full restitution by refunding the monies received therefrom.  A true and correct copy of the notice letter is attached hereto as Exhibit A.

39.     Wherefore, Plaintiff Hart seeks damages, restitution, and injunctive relief for this violation of the CLRA against Defendants.

## COUNT II

**Violation Of California's Unfair Competition Law ("UCL"), California Business & Professionals Code §§ 17200, *et seq.***

40.     Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

41.     Plaintiff Hart brings this claim individually and on behalf of the members of the California Class against Defendants.

42.     Defendants are subject to California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.*  The UCL provides, in pertinent part: "Unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising …."

43.     Defendants violated the "unlawful" prong of the UCL by violating the CLRA, California's False Advertising Law ("FAL"), and by breaching their express and implied warranties as described herein.

44.     Defendants' misrepresentations and other conduct, described herein, violated the "unfair" prong of the UCL in that their conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous, as the gravity of the conduct outweighs any alleged benefits.  Defendants' conduct of selling the Repellers and representing them as effective when they are not offends public policy.

45.     Defendants violated the "fraudulent" prong of the UCL by making misrepresentations about the Repellers, as described herein.  Defendants' misrepresentations and omissions regarding the Repellers are likely to deceive a reasonable consumer, and thereby would be material to a reasonable consumer.

46.     Plaintiff Hart and the California Class members acted reasonably when they relied on Defendants' misrepresentations and omissions and purchased Defendants' products. Moreover, Plaintiff Hart and the California Class members are presumed to have relied on such

misrepresentations and omissions because they appeared in the marketing and advertising described above and related to material facts – the Repellers' ability to repel pests.

47.    Plaintiff Hart and the California Class members are not sophisticated experts with independent knowledge of ultrasonic sound wave technology and if ultrasonic sound waves can be used to repel pests. Thus, Plaintiff Hart and the California Class members acted reasonably when they purchased Defendants' products based on their belief that Defendants' representations were true.

48.    Plaintiff Hart and the California Class lost money or property as a result of Defendants' UCL violations because: (a) they would not have purchased the Repellers on the same terms if the true facts were known concerning the ineffectiveness of the Repellers; and (b) the Repellers did not have the characteristics, uses, or benefits as promised.

49.    All the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of Defendants' business. Defendants' wrongful conduct is part of a pattern or generalized conduct that originates from Defendants' headquarters in New York, and is still perpetuated and repeated, both in California and nationwide.

50.    Plaintiff Hart requests that this Court enter such orders or judgments to enjoin Defendants from continuing their unfair, unlawful, and deceptive practices and to restore to Plaintiff Hart and the members of the California Class any money Defendants acquired by unfair competition, as provided in Cal. Bus. & Prof. Code § 17203, and for such other relief as set forth below.

## COUNT III

### Violation Of California's False Advertising Law ("FAL"), California Business & Professions Code §§ 17500, *et seq.*

51.    Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

52.    Plaintiff Hart brings this claim individually and on behalf of the members of the California Class against Defendants.

53.     California's False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, et seq., makes it "unlawful for any person to make or disseminate or cause to be made or disseminated before the public in this state, ... in any advertising device ... or in any other manner or means whatever, including over the Internet, any statement, concerning ... personal property or services, professional or otherwise, or performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

54.     Defendants committed acts of false advertising, as defined by §§17500, et seq., by making misrepresentations about the Repellers' ability to repel pests.

55.     Defendants disseminated from their headquarters in New York, through California and the United States, affirmative misstatements and omissions that were untrue or misleading.

56.     Defendants knew or should have known through the exercise of reasonable care (i.e. pre-market testing) that their representations about the Repellers were untrue and misleading.

57.     Defendants' misrepresentations and omissions concerned material facts, namely the Repellers' ability to repel pests.  As such, Defendants' actions in violation of §§ 17500, et seq. were false and misleading such that the general public is and was likely to be deceived.

58.     Plaintiff Hart and California Class members lost money or property as a result of Defendants' FAL violations because:  (a) they would not have purchased the Repellers on the same terms if the true facts were known concerning the ineffectiveness of the devices; and (b) the Repellers did not have the characteristics, uses, or benefits as promised.

59.     All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of Defendants' business.  Plaintiff Hart requests that this Court enter such orders or judgments as may be necessary to enjoin Defendants from continuing their false advertising and to restore to Plaintiff Hart and members of the California Class any money Defendants acquired by unfair competition, and for such other relief set forth below.

## COUNT IV

### Breach Of Express Warranty

60.     Plaintiffs incorporate by reference and re-allege each and every allegation set forth above as though fully set forth herein.

61.     Plaintiff Bueno brings this claim individually and on behalf of members of the Breach of Express Warranty Class against Defendants.

62.     In connection with the sale of the Repellers, Defendants, as the designers, manufacturers, marketers, distributors, and/or sellers issued written warranties by representing that the products were "ultrasonic pest repellers" that would repel and drive out "mice," "rats," "roaches," "ants," and "spiders."

63.     In fact, the Repellers do not conform to the above-referenced representations because they are ineffective and worthless.

64.     Plaintiff Bueno and Breach of Express Warranty Class members were injured as a direct and proximate result of Defendants' breaches because they would not have purchased the Repellers if they had known that the Repellers did not work as warranted.

## COUNT V

### (Fraud)

65.     Plaintiffs incorporate by reference and re-allege each and every allegation set forth above as though fully set forth herein

66.     Plaintiff Bueno brings this claim individually and on behalf of the members of the Fraud Class against Defendants.

67.     As discussed above, Defendants misrepresented that the Pest Repellers were "ultrasonic pest repellers" that would repel and drive out "mice," "rats," "roaches," "ants," and "spiders."

68.     The false and misleading representations and omissions were made with knowledge of their falsehood.

69.     The false and misleading representations and omissions were made by

12

Defendants, upon which Ms. Bueno and members of the Fraud Class reasonably and justifiably relied, and were intended to induce and actually induced Plaintiffs and Fraud Class members to purchase the Repellers.

70.     The fraudulent actions of defendant caused damage to Plaintiffs and members of the Fraud Class, who are entitled to damages and other legal and equitable relief as a result.

## RELIEF DEMANDED

71.     WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, seek judgment against Defendants, as follows:

a.     For an order certifying the Classes under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiffs as representatives of the Classes and Plaintiffs' attorneys as Class Counsel to represent the Class members;

b.     For an order declaring that Defendants' conduct violates the statutes referenced herein;

c.     For an order finding in favor of Plaintiffs and the Classes on all counts asserted herein;

d.     For compensatory and punitive damages in amounts to be determined by the Court and/or jury;

e.     For prejudgment interest on all amounts awarded;

f.     For an order of restitution and all other forms of equitable monetary relief;

g.     For injunctive relief ordering Defendants to cease the unfair and deceptive practices detailed herein; and

h.     For an order awarding Plaintiffs and the Classes their reasonable attorneys' fees and expenses and costs of suit.

## JURY TRIAL DEMANDED

Plaintiffs demand a trial by jury on all claims so triable.

Dated:  January 23, 2017                            Respectfully submitted,


                                        By:     */s/ Yitzchak Kopel*
                                                Yitzchak Kopel

                                        **BURSOR & FISHER, P.A.**
                                        Scott A. Bursor
                                        Joseph I. Marchese

Neal J. Deckant
Yitzchak Kopel
Frederick J. Klorczyk III
888 Seventh Avenue
New York, NY 10019
Telephone:  (212) 989-9113
Facsimile:  (212) 989-9163
Email:  scott@bursor.com
          jmarchese@bursor.com
          ndeckant@bursor.com
          ykopel@bursor.com
          fklorczyk@bursor.com

*Attorneys for Plaintiffs*

**EXHIBIT A**

# BURSOR & FISHER
P.A.

1990 N. CALIFORNIA BLVD.
SUITE 940
WALNUT CREEK, CA 94596
www.bursor.com

L. TIMOTHY FISHER
Tel: 925.300.4455
Fax: 925.407.2700
ltfisher@bursor.com

June 17, 2015

## *Via Certified Mail - Return Receipt Requested*

BHH LLC (d/b/a Bell + Howell)
230 Fifth Ave.
New York, NY 10001

Van Hauser LLC
230 Fifth Ave.
New York, NY 10001

BHH LLC (d/b/a Bell + Howell)
Van Hauser LLC
c/o Notaro & Michalos & Zaccaria P.C.
1270 Broadway STE. 807
New York, NY 10001

Re:    *Violation of California Civil Code § 1782; Cal. Com. Code § 2607(3)(a); Texas Bus. &
       Commerce Code § 14.46; Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301, et seq.;
       U.C.C. §§ 2-313, 2-314; and all other applicable laws*

To Whom It May Concern:

       This letter serves as a preliminary notice and demand for corrective action by BHH LLC
and Van Hauser LLC ("Bell + Howell" or "You"), on behalf of my clients, Joanne Hart and
Amanda Parke, and all other persons similarly situated.

       Ms. Hart and Ms. Parke purchased Bell + Howell Ultrasonic Pest Repellers in the states
of California and Texas, respectively, in reliance on Your representations that this product is
"fast and effective" to repel ants, mice, spiders and roaches.  However, the product is ineffective
to repel any of these pests, or any animals at all.  The weight of scientific evidence against the
efficacy of ultrasonic pest-control devices has driven the FTC to send dozens of warning letters
to manufacturers of these devices.  The FTC has also brought more than a half dozen
enforcement actions against manufacturers of these devices.  Private actions with similar
allegations against your competitors have also seen substantial success in recent years.  It
unsurprising, therefore, that Your product was ineffective for my clients.

       By misrepresenting that your ultrasonic pest repellers and solar animal repellers (the
"Repellers") are fast and effective to repel pests and other animals, You have violated and
continue to violate provisions of California law, including subsections (a)(5), (7), and (9) of the

BURSOR&FISHER
P.A.

Consumers Legal Remedies Act, Civil Code § 1770, and Cal. Com. Code § 2607(3)(a), and provisions of Texas law, including subsections (b)(5), (7), (9), and (24) of the Texas Deceptive Trade Practices Act, Tex. Bus. & Commerce Code § 17.46.

We hereby demand that You immediately make full restitution to all purchasers of the Repellers of all purchase money obtained from sales thereof.  We also demand that You preserve all documents, data, and information, including without limitation, all "Writings," as defined in California Evidence Code § 250 (collectively, "Documents"), and all "Electronically Stored Information," as defined in California Code of Civil Procedure § 2016.020(e), which refer or relate to any of the above-described practices, including, but not limited to, the following:

1.   All documents concerning the design, development, and/or testing of the Repellers;

2.   All documents concerning the advertisement, marketing, or sale of the Repellers;

3.   All documents concerning communications with any retailer involved in the marketing or sale of the Repellers;

4.   All documents concerning communications with purchasers of the Repellers; and

5.   All documents concerning the total revenue derived from sales of the Repellers in the United States.

Please comply with this demand within 30 days from your receipt of this letter.

We are willing to negotiate to attempt to resolve the demands asserted in this letter.  If you wish to enter into such discussions, please contact me immediately.  If I do not hear from you promptly, I will conclude that you are not interested in resolving this dispute short of litigation.  If you contend that any statement in this letter is inaccurate in any respect, please provide us with your contentions and supporting documents promptly.

Very truly yours,

L. Timothy Fisher