UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------

JOANNE HART and SANDRA BUENO, on behalf of themselves and all others similarly situated,

            Plaintiffs,

            -against-

BHH, LLC d/b/a BELL + HOWELL, *et ano*.,

            Defendants.

------------------------------------------------

15cv4804

OPINION & ORDER

WILLIAM H. PAULEY III, United States District Judge:

        Defendants Bell + Howell and Van Hauser ("BHH") move to dismiss Joanne Hart ("Hart") and Sandra Bueno's ("Bueno") (together, "Plaintiffs") amended complaint. Separately, Plaintiffs seek class certification. For the reasons that follow, BHH's motion to dismiss is granted in part and denied in part, and Plaintiffs' motion for class certification is granted.

## BACKGROUND

        This consumer fraud class action arises from BHH's sale of ultrasonic pest repellers, which Plaintiffs claim are ineffective and worthless. Plaintiffs purchased the pest repellers from third-party retailers. Hart bought her device from the Home Shopping Network which advertised that it was an "ultrasonic pest repeller" designed to drive out mice, rats, roaches, ants, and spiders. Bueno purchased the repeller from the Harriet Carter Gifts catalogue, relying on the same representations as Hart. After receiving these devices, both plaintiffs discovered that they did not work as advertised.

        In May 2016, this Court granted in part and denied in part BHH's motion to dismiss the original complaint. See Hart v. BHH, LLC, 2016 WL 2642228, at *5 (S.D.N.Y. May

5, 2016). The Magnuson-Moss Warranty Act and unjust enrichment claims were dismissed. Hart's claims regarding Animal Repellers were also dismissed for lack of standing. However, this Court allowed the breach of warranty claims and California consumer protection claims under the Consumer Legal Remedies Act (CLRA), the Unfair Competition Law ("UCL"), and the False Advertising Law ("FAL") to proceed.

After fact discovery closed, Hart amended her complaint to add a common law fraud claim, and a new plaintiff—Bueno—who purports to represent two new putative classes: the fraud class and the breach of express warranty class. (See First Amended Complaint ("Compl."), ECF No. 62.) It is unclear from the parties' submissions why Hart could not represent these new putative classes, nor why Bueno could not also represent the California class. Adding to the confusion, BHH elected to file a motion to dismiss the amended complaint rather than interpose an answer.

Concurrently, Plaintiffs moved to certify three classes: (1) a nationwide class asserting a claim for fraud (the "Nationwide Fraud Class"); (2) a multi-state class asserting a claim for breach of warranty (the "Multistate Breach of Warranty Class"); and (3) a California-only class asserting claims under California's consumer protection laws, fraud, and breach of express warranty (the "California Class").

## DISCUSSION

I. Motion to Dismiss

   A. Standard

On a motion to dismiss, all allegations in the complaint are accepted as true, and all reasonable inferences are drawn in the Plaintiffs' favor. See Rescuecom Corp. v. Google Inc., 562 F.3d 123, 127 (2d Cir. 2009). The complaint must "contain sufficient factual matter" to

"state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 663, 678 (2009) (citation omitted). For a viable claim, "[f]actual allegations must be enough to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). A pleading that recites conclusory allegations or a "formulaic recitation of the elements of a cause of action" fails to state a claim. Iqbal, 556 U.S. at 678 (citation omitted).

B. Analysis

i. Fraud Claim

BHH contends that the common law fraud claim should be dismissed because it is barred by the economic loss rule. That doctrine provides that "a plaintiff who has suffered economic loss, but not personal or property injury, may not recover in tort if the damages are the type remedial in contract." Weisblum v. Prophase Labs, Inc., 88 F Supp. 3d 283, 297 (S.D.N.Y. 2015) (internal quotation marks and citations omitted). The rule is rooted in the principle that "contract and warranty law should govern the economic relationship between a buyer and a seller and between a manufacturer and a consumer." Robinson Helicopter Co. v. Dana Corp., 105 Cal. App. 4th 749, 759–60 (Cal. Ct. App. 2003).

BHH claims that because Plaintiffs allege damages amounting only to the economic cost of the pest repellers, their fraud claim doubles as a breach of warranty claim. But there are exceptions to the economic loss rule. Relevant here is the fraudulent inducement exception, which applies when "a contract is secured by fraudulent representations" and provides an option for the injured party to "elect to affirm the contract and sue for fraud." United Guar. Mortg. Indem. Co. v. Countrywide Fin. Corp., 660 F. Supp. 2d 1163, 1183 (C.D. Cal. 2009). Thus, the "economic loss rule does not bar a properly pled fraudulent inducement claim."

Missud v. Oakland Coliseum Joint Venture, 2013 WL 3286193, at *18 (N.D. Cal. June 27, 2013).

"Courts applying both New York and California law have allowed intentional misrepresentation claims to proceed, notwithstanding the economic loss rule." Weisblum, 88 F. Supp. 3d 283, 297 (S.D.N.Y. 2015); see also EED Holdings v. Palmer Johnson Acquisition Corp., 387 F. Supp. 2d 265, 278–79 (S.D.N.Y. 2004) (allowing fraud claim to proceed in tandem with contract claims to recover economic loss). In such cases, misrepresentations that induce a party into contract stand separate and apart from the misrepresentations inherent to the contract. Put another way, the "plaintiff's claim does not depend upon whether the defendant's promise is ultimately enforceable as a contract." Lazar v. Sup. Ct., 12 Cal. 4th 631, 638 (Cal. 1996). Thus, an independent fraud claim may exist if a false promise was made to consummate the contract. EED Holdings, 387 F. Supp. 2d at 279 ("[I]t is well established that a misrepresentation of present fact which is the inducement for a contract … can support a separate fraud claim."); StreamCast Networks, Inc. v. IBIS LLC, 2006 WL 5720345, at *10 (C.D. Cal. May 2, 2006) ("[C]ourts have routinely recognized the availability of both a fraud and a contract action . . . in which a party contends that it was fraudulently induced to enter into a contract."). In essence, the question this Court must ask has less to do with "whether the damages for contract and tort claims necessarily overlap, and more [with] whether the conduct giving rise to the separate claims is distinct. The economic loss rule does [not] bar tort claims for fraud or intentional misrepresentation if the allegedly tortious conduct is independent of the conduct constituting a breach." Sherwin-Williams Co. v. JJT, Inc., 2014 WL 2587483, at * 6 (S.D. Cal. June 10, 2014) (emphasis added).

Under the fraudulent inducement exception to the economic loss rule, Plaintiffs' common law fraud claim may proceed. While not technically pled as "fraudulent inducement," the amended complaint sufficiently alleges the elements of such claim: (1) misrepresentation; (2) knowledge of the falsity of the representation; (3) intent to induce reliance; (4) justifiable reliance; and (5) resulting damages. Swingless Golf Club Corp. v. Taylor, 732 F. Supp. 2d 899, 908 (N.D. Cal. 2010). And a "claim of fraudulent inducement . . . has the same elements as fraud under California law." Romero v. San Pedro Forklift, Inc., 266 Fed. App'x. 552, 556 n.2 (9th Cir. 2008). Here, Plaintiffs allege (1) three principal misrepresentations regarding the pest repellers (Compl. at ¶¶ 14, 67); (2) that BHH knew about the falsity of these misrepresentations (Compl. at ¶¶ 15–20, 68); (3) that such misrepresentations were made to induce reliance (Compl. at ¶ 69); (4) that Plaintiffs justifiably relied on them (Compl. at ¶¶ 6, 7, 69); and (5) that Plaintiffs suffered damages (Compl. at ¶ 70).

The alleged misrepresentations at issue—namely that the pest repellers can drive out certain pests from the home—also form the basis of the breach of warranty claim. But if Plaintiffs, as they allege, can prove that BHH knowingly made and endorsed these false statements, then their claim becomes less about the product's value and quality—elements that are usually at the heart of express and implied warranties—and more about blatant lies and deception characteristic of fraud claims. Thus, the fraudulent inducement exception here acknowledges the "extra measure of blameworthiness inherent in fraud," allowing plaintiffs to "recover 'out-of-pocket' damages in addition to benefit-of-the-bargain damages." Robinson Helicopter, 34 Cal. 4th at 992.

Plaintiffs primarily seek relief in the form of restitution—i.e., the return of monies paid for the devices. (Compl. at ¶ 71(f); Hearing Transcript dated May 19, 2017 at 7:15–23.)

But the amended complaint also seeks "compensatory and punitive damages" arising from the fraud claim. (Compl. at ¶ 71(d).) While relief "may be limited by the rule against double recovery of tort and contract compensatory damages," Plaintiffs nevertheless have "a cause of action in tort as an alternative at least, and perhaps in some instances in addition to [their] cause of action on the contract." Lazar, 12 Cal. 4th at 638.

Finally, BHH challenges the sufficiency of the allegations underlying the fraud claim. However, as this Court discussed in its prior order—albeit with respect to the fraud elements of the California consumer protection claims—Plaintiffs' allegations at this stage satisfy Rule 9(b)'s heightened pleading standard for claims sounding in fraud. BHH, 2016 WL 2642228, at *5 (allegations regarding the falsity of representations in conjunction with two scientific studies undermining the efficacy of the ultrasonic technology suffice at the pleadings stage).

In the amended complaint, Plaintiffs allege that the products did not work as advertised. (Compl. at ¶¶ 6–7.) Moreover, they cite a number of scientific studies discrediting the ultrasonic technology embedded into the products (Compl. at ¶¶ 15–16) and regulatory investigations into ultrasonic pest repeller manufacturers who sell products like BHH (Compl. at ¶¶ 17–20). Such allegations are sufficient, at the pleadings stage, to support an inference of knowledge and an intent to deceive. Finally, the amended complaint alleges that Hart and Bueno believed the product representations to be true and relied on them in purchasing the pest repellers—facts sufficient to satisfy the element of reliance. (Compl. ¶¶ 6–7, 69.) In sum, enough has been alleged for Plaintiffs' fraud claim to survive dismissal at the pleadings stage.

ii. Breach of Warranty Claim

BHH seeks dismissal of the breach of warranty claim on the basis that the pest repeller's representations are not actionable warranties. Phrases like "help repel," says BHH, are imprecise, vague, and unquantifiable descriptions that are not objectively verifiable facts. (Memo. of Law in Support of Defendants' Motion to Dismiss ("MTD Mot."), ECF No. 73, at 13.) Moreover, according to BHH, the representation that the "devices were ultrasonic pest repellers" is merely a description of the product, not a testament to its quality or performance. (MTD Mot. at 13.)

These arguments are unavailing. "To prevail on a breach of express warranty claim, a plaintiff must prove that the seller: (1) made an affirmation of fact or promise or provided a description of its goods; (2) the promise or description formed part of the basis of the bargain (3) the express warranty was breached; and (4) the breach caused injury to the plaintiff." Keegan v. Am. Honda Motor Co. Inc., 838 F. Supp. 2d 929, 949 (C.D. Cal. 2012). General, vague, and non-specific statements usually "constitute mere puffery on which a reasonable consumer cannot rely." Glen Holly Entm't, Inc. v. Tektronix Inc., 343 F.3d 1000, 1015 (9th Cir. 2003). "However, misdescriptions of specific or absolute characteristics of a product are actionable." Paduano v. Am. Honda Motor Co., Inc., 169 Cal. App. 4th 1453, 1500 (2009).

The amended complaint references a specific promise: that the ultrasonic pest repellers would repel and drive out mice, rats, roaches, ants, and spiders. (Compl. ¶¶ 6, 7, 62.) BHH maintains that its use of the term "help" neither specifies the precise degree of efficacy, nor the time it would take to drive pests out. But Plaintiffs allege that the repeller failed to work at all. In other words, it did not "help" even in the slightest. Qualifying such promise with the word "help" does not make the statement any less of an actionable warranty. See Bailey v.

7

KIND LLC, 2016 WL 3456981, at **1, 6 (C.D. Cal. June 16, 2016) ("eating two KIND bars a day helps prevent weight gain" is a "specific and unequivocal warranty") (emphasis added); Aguilar v. Boulder Brands, Inc., 2013 WL 2481549, at *6 (S.D. Cal. June 10, 2013) ("affirmation that the plant sterols help block the cholesterol in the butter" is sufficient to state a claim for breach of express warranty) (emphasis added).

Finally, BHH's argument that the representations at issue "merely describe[ ] the type of product" and do not "purport to represent the quality or performance of the product" (MTD Mot. at 13) is belied by well-settled law that a "description of goods at issue can create an express warranty so long as it was part of the basis of the parties' bargain." Asghari v. Volkswagen Grp. of Am., Inc., 42 F. Supp. 3d 1306, 1333–34 (C.D. Cal. 2013). The description at issue in this action—that the devices are "ultrasonic pest repellers"—was the sole basis of the parties' bargain. Such phrase constitutes a verifiable affirmation of fact that Plaintiffs exclusively relied on in making their purchases, and qualifies as a "written warranty sufficient to survive a motion to dismiss." Ebin v. Kangadis Food Inc., 2013 WL 6504547, at *4 (S.D.N.Y. Dec. 11, 2013).

### iii. California UCL and FAL Claims

Generally, restitution and injunctive relief are the only remedies available under the UCL and FAL. Optima Tax Relief LLC v. Channel Clarity, Inc., 2015 WL 12765016, at *8 (C.D. Cal. Aug. 26, 2016). "[R]estitution means the return of money to those persons from whom it was taken or who had an ownership interest in it." Madrid v. Perot Sys. Corp., 130 Cal. App. 4th 440, 455 (Cal. App. 2005). Thus, the remedial objective of these California statutes is to "return to the plaintiff funds in which he or she has an ownership interest." Madrid, 130 Cal. App. 4th at 455. The funds must, however, be traceable to the plaintiff. Allegations that a

8

defendant received ill-gotten gains are insufficient to state a claim under these statutes unless plaintiff also alleges a vested interest in the money. See Madrid, 130 Cal. App. 4th at 455; Rosen v. Uber Tech., Inc., 164 F. Supp. 3d 1165, 1178 (N.D. Cal. 2016) ("In regards to the FAL claims (as well as the [ ] UCL claims) . . . such claims were limited to situations in which defendants directly took property from plaintiffs, or in which plaintiffs had a vested interest in the property."). The UCL and FAL only permit "restitution from a defendant whose unfair business practices caused plaintiff to pay money to a third party, as long as it is reasonable to infer that the defendant indirectly received that money from the third party." Ferrington v. McAfee, Inc., 2010 WL 3910169, at *8 (N.D. Cal. Oct. 5, 2010) (emphasis added).

Although Plaintiffs urge this Court to infer that BHH received their payments, the amended complaint does not allege any fact on which this Court may infer that BHH "indirectly received [their] mon[ies] from the third party" retailers. Ferrington, 2010 WL 3910169, at *8. Without some allegation—even one—to suggest that BHH received monies from the third parties retailers, Plaintiffs overlook the purpose of restitution, namely the return of "profits unfairly obtained to the extent that these profits represent monies given to the defendant or benefits in which the plaintiff has an ownership interest." Korea Supply Co. v. Lockheed Martin Corp., 29 Cal. 4th 1134, 1148 (Cal. 2003); Acedo v. DMAX, Ltd., 2015 WL 12912365, at *16 (C.D. Cal. July 31, 2015) (must allege "money or property with which [Plaintiffs] departed."). The amended complaint is bereft of any allegation tying Plaintiffs' payments with BHH's receipt of those payments.

Plaintiffs' reliance on Diaz First Am. Home Buyers Prot. Corp., 541 Fed. App'x. 773, 776 (9th Cir. 2013), Shersher v. Sup. Ct., 154 Cal. App. 4th 1491, 1494 (Cal. Ct. App. 2007), and Troyk v. Farmers Grp., Inc., 171 Cal. App. 4th 1305, 1338 (Cal. Ct. App. 2009) is

9

misplaced. Those decisions merely stand for the unremarkable proposition that recovery of restitution is not categorically barred for payments made to third parties. That principle is not inconsistent with the UCL and FAL requirement that plaintiffs "who paid a third party money (i.e., money in which the plaintiff had a vested interest)" allege that such payments were received by a defendant "whose unlawful business practice caused the plaintiff to pay that money." Troyk, 171 Cal. App. 4th at 1338.

Because Plaintiffs have not "alleged facts indicating that <u>defendants</u>, as opposed to independent [third party retailers], obtained [their] money or property, or that defendants are in possession of funds that rightly belong to [them]," they have failed to state a plausible claim for restitution under the UCL and FAL. Acedo, 2015 WL 12912365, at *16 (emphasis original); Cheverez v. Plains All Am. Pipeline, LP, 2016 WL 4771883, at *2 (C.D. Cal. Mar. 4, 2016) ("Plaintiffs are correct that they need not prove that the money or property was ever in their possession so long as they can demonstrate a vested interest, but they still must prove that the money or property in which they had a vested interest is now in Defendants' possession.").

Accordingly, the UCL and FAL claims are dismissed. In view of the mature stage of this litigation, and the pending class certification motion, leave to re-plead is denied.

II. Class Certification

A. Standard

Rule 23 governs the framework for class actions. Plaintiffs must demonstrate by a preponderance of the evidence that the putative class action satisfies four requirements: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. Fed. R. Civ. P. 23(a). An implicit fifth requirement—ascertainability of the class—must also be satisfied. Flores v. Anjost Corp., 284 F.R.D. 112, 122 (S.D.N.Y. 2012). In addition, Plaintiffs must meet

at least one of two requirements set forth in Rule 23(b): (1) predominance, i.e., that law or fact questions common to the class predominate over questions affecting individual members; or (2) superiority, i.e., that the class action is superior to other methods.

Before certifying a class, this Court is obliged to conduct a "rigorous analysis" to determine whether all requirements have been satisfied. In re Initial Pub. Offerings Sec. Litig., 471 F.3d 24, 41 (2d Cir. 2006). Certification is appropriate only after resolving factual disputes relevant to each Rule 23 requirement. Berks Cnty. Empl. Ret. Fund v. First Am. Corp., 734 F. Supp. 2d 533, 536 (S.D.N.Y. 2010). "The Court must receive enough evidence, by affidavits, documents, or testimony, to be satisfied that each Rule 23 requirement has been met. The burden of demonstrating its satisfaction by a preponderance of the evidence, moreover, rests with the moving party." Berks Cnty. Empl. Ret. Fund, 734 F Supp. 2d at 536.

B. Analysis

i. Numerosity

"[N]umerosity is presumed at a level of 40 members." Consol. Rail Corp. v. Town of Hyde Park, 47 F.3d 473, 483 (2d Cir. 1995). Plaintiffs assert that BHH sold approximately 2.48 million devices during the class period. (Decl. of Yitzchak Kopel in Support of Motion for Class Certification, ECF No. 70 ("Kopel Decl."), Ex. 4.) Common sense compels the conclusion that numerosity is satisfied here. Deflumer v. Overton, 176 F.R.D. 55, 58 (N.D.N.Y. 1997) (citing German v. Fed. Home Loan Mortg., 885 F. Supp. 537, 551 (S.D.N.Y. 1995)) (A "precise quantification of the plaintiffs' class is unnecessary, as the court may make common sense assumptions to support a finding of numerosity.").

ii. Commonality

The commonality factor requires a finding that there are questions of law or fact common to the class. "Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury," though that does not necessarily mean they suffered a violation of the same provision of law. Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 349–50 (2011). Plaintiffs' "claims must depend upon a common contention," which must "be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." Dukes, 564 U.S. at 350. Here, the putative class members relied on the same alleged misrepresentations of fact regarding the efficacy of the pest repeller, and suffered the same economic harm.

iii. Typicality

Typicality "is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." In re Drexel Burnham Lambert Grp., Inc., 960 F.2d 285, 291 (2d Cir. 1992). "When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims." Robidoux v. Celani, 987 F.2d 931, 936–37 (2d Cir. 1993). The putative class members' claims arise from generally the same course of events—they watched or read an advertisement, relied on the product representations, and purchased the product. In seeking relief, they will make essentially the same argument to prove liability—that BHH knew its products were ineffective yet marketed and sold them anyway.

####  iv. Adequacy of Representation

"Under Rule 23(a)(4), adequacy of representation is measured by two standards. First, class counsel must be qualified, experienced and generally able to conduct the litigation. Second, the class members must not have interests that are antagonistic to one another." Drexel Burnham, 960 F.2d at 291. The first prong is easily dispensed with in view of the undersigned counsel's work in similar consumer product class actions in this district. See Ebin v. Kangadis Food Inc., 297 F.R.D. 561, 566 (S.D.N.Y. 2014); In re Scotts EZ Seed Litig., 304 F.R.D. 397, 407 (S.D.N.Y. 2015). This Court therefore finds that Bursor & Fisher, P.A., is qualified, experienced, and able to conduct this litigation.

With respect to the second prong, the "focus is on uncovering conflicts of interest between named parties and the class they seek to represent." In re Flag Telecom Holdings, Ltd. Sec. Litig., 574 F.3d 29, 35 (2d Cir. 2009). But that conflict "must be fundamental." In re Visa Check/MasterMoney Antitrust Litig., 280 F.3d 124, 145 (2d Cir. 2001). The risk of a fundamental, antagonistic conflict, at this juncture in the litigation, is minimal. The named plaintiffs and the absent class members both share a consistent, if not identical, interest in proving liability in this case. More importantly, they share a common goal: "to obtain the highest possible recovery" for every subclass of plaintiffs. Drexel Burnham, 960 F.2d at 291. The named plaintiffs have regularly communicated with undersigned counsel, participated in discovery, and appear to be invested in the strategy and outcome of this action. (See Decl. of Joanne Hart in Support of Motion to Certify Class, ECF No. 67; Decl. of Sandra Bueno in Support of Motion to Certify Class, ECF No. 68.) Thus, Plaintiffs have satisfied the adequacy of representation requirement.

v. <u>Ascertainability</u>

Ascertainability of the class is an implied requirement built into Rule 23(a) and considered the "fifth pre-condition to class certification." <u>Ebin</u>, 2014 WL 737960, at *4. This factor requires that "the identity of class members must be reasonably ascertainable by reference to objective criteria." <u>Ebin</u>, 2014 WL 737960, at *4. The standard for ascertainability is "not demanding" and is "designed only to prevent the certification of a class whose membership is truly indeterminable." <u>Gortat v. Capala Bros., Inc.</u>, 2010 WL 1423018, at *2 (E.D.N.Y. Apr. 9, 2010). In other words, Plaintiffs must have the ability to identify the individuals who purchased nearly 2.4 million units of BHH pest repellers, and employ a reasonable method to prove their purchase and ownership of those products.

BHH contends that "it is not administratively feasible for the Court to identify class members given that most consumers cannot produce any demonstrable proof of having purchased the devices during the Class Period—by way of receipt, packing slip, product packaging, or otherwise." (Memo. in Opposition to Motion for Class Certification ("Class Cert. Opp."), ECF No. 81 at 9.) Thus, according to BHH, in the "absence [of] any means of proving an eligible purchase, there is no administratively feasible way to identify the putative class members, or to confirm on a class-wide basis whether the putative class members actually purchased one of the devices during the Class Period." (Class Cert. Opp. at 10.)

BHH describes a problem that is common in everyday consumer good purchases. Once consumers purchase an item, they are likely to throw away the packaging and receipt in the absence of a decision to return the product. But the absence of a receipt is not fatal to Plaintiffs' task of demonstrating ascertainability. <u>See</u> <u>Goldemberg v. Johnson & Johnson Cons. Cos., Inc.</u>, 2016 WL 5817012, at *17 (S.D.N.Y. Oct. 4, 2016) ("[D]enial of class certification in consumer

14

protection cases like these on the basis of ascertainability would severely contract the class action mechanism.").

Plaintiffs' initial proposal to identify class members is to pose a simple question in the class action notice to all consumers: did you purchase the pest repellers in the United States during the class period? (Memo. of Law in Support of Motion to Certify Class ("Class Cert. Mot."), ECF No. 71, at 16.) The onus is on the consumer to answer this question, and to submit information through the appropriate channels.

Moreover, Plaintiffs may subpoena customer and purchase related information from the third party retailers to whom the devices may have been distributed. For example, with respect to the two named Plaintiffs here, the parties discovered that the Home Shopping Network maintains contact information for certain purchasers, and Harriet Carter Gifts possesses information for its customers. (Class Cert. Mot. at 17; see also Kopel Decl., Exs. 7 and 8.) Access to a database of purchasers and their specific transactions, including information about the devices and number of units in question, will narrow the universe of potential class members.

Finally, the decision to allow use of a self-identification method turns on "whether the alleged misrepresentation was uniform across all products." Belfiore v. Proctor & Gamble Co., 311 F.R.D. 29, 66 (E.D.N.Y. 2015). Although different models of BHH pest repeller products were sold, there is, in essence "[o]nly one product [ ] at issue, and it was labeled in a uniform manner" making the same alleged misrepresentation. Belfiore, 311 F.R.D. at 66; In re Scotts EZ Seed Litig., 304 F.R.D. 397, 407 (S.D.N.Y. 2015) (finding ascertainability among New York and California purchasers who did not have receipts). Here, because the devices bore three common representations on their labels, class members who may not have proof of purchase may still claim class membership.

vi. Predominance and Superiority

1. Predominance

Fatal to certification, according to BHH, is the absence of the Rule 23(b) factors: predominance and superiority. With respect to the California consumer protection claims, BHH asserts that not all class members saw or relied on the same representations, and therefore any common issues do not predominate. BHH further contends that common questions of law or fact do not predominate the proposed nationwide fraud class and multi-state breach of warranty class because of the differences in the law of each state. (Class Cert. Opp. at 13.)

With respect to the sole remaining California claim—the CLRA—common questions predominate over any individual issues because all of the pest repellers bear the same three representations. That is sufficient to foreclose BHH's argument, especially since relief under the CLRA is available even "without individualized proof of deception, reliance and injury." Stearns v. Ticketmaster Corp., 655 F.3d 1013, 1020 (9th Cir. 2011). Moreover, even if every class member did not see the alleged misrepresentations when purchasing the device, the CLRA permits an inference of reliance if the representations are objectively material. As previously noted, the representations are material because they purport to do the only thing for which a reasonable consumer would ever purchase the pest repeller—to repel pests. Steigerwald v. BHH, LLC, 2016 WL 695424, at *8 (N.D. Ohio Feb. 22, 2016) (holding that representations are material because repellers were "used for only one reason, to repel pests.")

BHH's arguments regarding the fraud and breach of warranty claims have slightly more traction but nevertheless fail because any issues specific to an individual plaintiff's claim are eclipsed by common questions of law and fact. BHH argues that a class action will require this Court to apply the laws of every state represented in the common law fraud and breach of

16

warranty classes. Those variations in the law, according to BHH, will hamstring this Court from efficiently resolving those claims.

The primary problem here is not whether the elements of fraud are so materially different from state to state that they cannot be resolved on a classwide basis. For the most part, the elements of fraud are generally the same; it is the standard of proof required to prove each element that varies. (See Class Cert. Opp. at 15–17.) The same is true, says BHH, for the breach of warranty claims which are subject to variations in the laws of twenty-five states. (Class Cert. Opp. at 18.)

As an initial matter, the "predominance inquiry frequently hinges on whether elements of each class member's case can be proven through generalized proof, and whether the issues that can be so proven are more substantial than the issue subject only to individualized proof." Adkins v. Morgan Stanley, 307 F.R.D. 119, 142 (S.D.N.Y. 2015). "If, in order to prove causation or liability, a trial will need to address the facts of each individual claim, then the Plaintiffs have not carried their burden." Adkins, 307 F.R.D. at 142. That does not appear to be the case here.

The "Second Circuit has held that the predominance requirement is met for claims sounding in fraud that are based on uniform representations made to all members of the class." Ebin, 297 F.R.D. at 569 (citing Moore v. PaineWebber, Inc., 306 F.3d 1247, 1253 (2d Cir. 2002) ("Fraud actions must . . . be separated into two categories: fraud claims based on uniform misrepresentations made to all members of the class and fraud claims based on individualized misrepresentations. The former are appropriate subjects for class certification because the standardized misrepresentations may be established by generalized proof."). Many elements of a

fraud claim—misrepresentation, reliance, and causation—are easily addressed through generalized proof of the product's label and proof of plaintiffs' purchases.

"[P]roof of misrepresentation—even widespread and uniform misrepresentation—only satisfies half of the equation; the other half, reliance on the misrepresentation, cannot be the subject of general proof." Crab House of Douglaston Inc. v. Newsday, Inc., 2013 WL 1338894, at *13 (E.D.N.Y. Mar. 29, 2013) (internal quotation marks and citation omitted). For product labeling cases such as this, reliance and causation are generally established through the presumption that a customer would not have purchased the product for any other reason than the advertised one. In other words, all class members "necessarily had to rely on" the uniform misrepresentations when purchasing the product. Ebin, 297 F.R.D. at 569; Steigerwald, 2016 WL 695424, at *8 ("[H]owever reliance is defined, it is present where the only reason a customer buys the product is to use it as a pest repeller.").

Proving knowledge and intent to deceive, while subject to varying standards in certain states, can be addressed on a classwide basis. Maywalt v. Parker & Parsley Petroleum Co., 147 F.R.D. 51, 58 (S.D.N.Y. 1993) (analyzing laws of numerous states "does not preclude class action litigation"). That such elements require individualized proof does not preclude a predominance finding since this Court may utilize a number of management tools, including special verdict sheets and subclasses. See Rodriguez v. It's Just Lunch Intern., 300 F.R.D. 125, 140 (S.D.N.Y. 2014); In re Visa Check, 280 F.3d at 141; In re U.S. Foodservice Inc. Pricing Litig., 729 F.3d 108, 129 (2d Cir. 2013) ("[G]eneralized proof will resolve many issues, [the court] may choose to handle other less numerous and less substantial issues through the creation of a limited number of homogeneous subclasses."); In re LILCO Sec. Litig., 111 F.R.D. 663, 670 (E.D.N.Y. 1986) ("In the event that there are material variations in the law of the fifty states, the

18

Court may employ subclasses or decertify those state law subclasses whose adjudication becomes unmanageable.").

Common questions also predominate among the breach of warranty class. BHH's only arguments worthy of consideration are their reliance and pre-suit notice contentions. First, the element of reliance, like the fraud claim, may either be actual or presumed given the nature of the alleged misrepresentations at issue. There is no other way a reasonable consumer could have interpreted the phrase "repel pests" other than to believe that purchase and use of such product would in fact drive out pests. Second, any pre-suit specific issues that vary among jurisdictions can be addressed through subclasses.

2. Superiority

Having found the requirements of Rule 23(a) and predominance satisfied, this Court concludes that a class action is the superior method to resolve the underlying claims. "The superiority requirement reflects the goal of class actions to achieve economies of time, effort and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness." N.J. Carpenters Health Fund v. DLJ Mortg. Cap., Inc., 2014 WL 1013835, at *11 (S.D.N.Y. Mar. 17, 2014) (quotation marks and alterations omitted). "Four other factors—individual control of litigation, prior actions involving the parties, the desirability of the forum, and manageability—should be considered in making these determinations." Adkins v. Morgan Stanley, 307 F.R.D. 119, 141 (S.D.N.Y. 2015).

Managing this litigation through class representatives and their counsel will be easy and efficient. For many members, the cost of bringing a lawsuit substantially outweighs the cost incurred in purchasing a defective pest repeller. Sykes v. Mel Harris and Assocs., LLC, 285 F.R.D. 279, 294 (S.D.N.Y. 2012). Moreover, while a separate but similar litigation was pending

in the Southern District of Ohio, that case is now closed.  Therefore, this action is the only way for plaintiffs to obtain any meaningful redress.  Further, that this litigation is based in New York does not move the needle particularly in any direction.

Finally, the fourth factor—manageability—is "the most critical issue in determining" superiority and is something that is "peculiarly within a district court's discretion." Adkins, 307 F.R.D. at 147.  Fact discovery concluded in December 2016, yielding enough information for Plaintiffs to structure classwide notice and an objectively verifiable means to identify class members.  This Court has ample tools in its kit to address any "difficulties likely to arise in managing this class action." Sykes, 285 F.R.D. at 294 (internal quotation marks and citation omitted).

Accordingly, Plaintiffs' motion for certification of three classes—the Nationwide Fraud Class, the Multi-State Warranty Class, and the California CLRA Class—is granted.

## CONCLUSION

For the foregoing reasons, BHH's motion to dismiss the UCL and FAL claims is granted, and BHH's motion to dismiss the fraud and breach of warranty claims is denied. Plaintiffs' motion to certify the Nationwide Fraud Class, the Multi-State Warranty Class, and the California CLRA Class is granted.

The Clerk of Court is directed to terminate the motions pending at ECF Nos. 66 and 72.

Dated: July 7, 2017
      New York, New York

SO ORDERED:

_____
WILLIAM H. PAULEY III
U.S.D.J.