## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

JOANNE HART and SANDRA BUENO,　　)
on behalf of themselves and all others　)　　CASE NO. 1:15-cv-04804-WHP
similarly situated,　　　　　　　　　)
　　　　　　　　　　　　　　　　　)　　JUDGE WILLIAM H. PAULEY
　　　　　　　Plaintiffs,　　　　　　)
　　　　　　　　　　　　　　　　　)　　**DEFENDANTS' RESPONSE IN**
　　　v.　　　　　　　　　　　　　)　　**OPPOSITION TO PLAINTIFFS'**
　　　　　　　　　　　　　　　　　)　　**MOTION TO PRECLUDE THE**
BHH, LLC d/b/a BELL + HOWELL,　　)　　**EXPERT TESTIMONIES OF DR.**
and VAN HAUSER, LLC,　　　　　　)　　**PAUL BORTH AND DR. PHILIP**
　　　　　　　　　　　　　　　　　)　　**WHITFORD**
　　　　　　　Defendants.　　　　　　)

LEAHY, EISENBERG & FRAENKEL, LTD.
33 West Monroe Street, Suite 1100
Chicago, Illinois 60603
Tel. (312) 368-4554
***Counsel for BHH, LLC, and VAN HAUSER, LLC***

**TABLE OF CONTENTS**
**DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION TO**
**PRECLUDE THE EXPERT TESTIMONIES OF DR. PAUL BORTH AND DR. PHILIP**
**WHITFORD**

Introduction...................................................................................................1

Argument.......................................................................................................2

I.      Plaintiffs Confuse the Purpose of Defendants' Expert Testimony and
        Seek to Shift the Burden of Proof Regarding the Device's Efficacy onto
        Defendants.................................................................................................2

II.     Dr. Borth and Dr. Whitford's Opinions on the Efficacy of the Repellers
        are Admissible............................................................................................8

        A.  Dr. Borth and Dr. Whitford's Reliance on Pre-Market Testing is
            Not Flawed and is Not Unreliable........................................................9

        B.  Dr. Borth's Reliance on Ballard (1984) is Proper Given the Purpose
            of His Testimony..................................................................................12

        C.  Dr. Whitford's Reliance on His Testing of the Bird-X Transonic Pro is
            Proper.................................................................................................13

III.    Other Opinions Expressed by Dr. Borth are
        Admissible.................................................................................................15

        A.  Dr. Borth's Opinions on Consumer Understanding Are Admissible ...................15

        B.  Dr. Borth's Additional Opinions Are Based On Specialized Knowledge
            and Are Helpful to the Trier of Facts .................................................18

Conclusion.....................................................................................................20

## TABLE OF AUTHORITIES

### FEDERAL CASES

*Arista Records LLC v. Lime Grp. LLC,* 2011 WL 1674796 (S.D.N.Y. 2011).......................18

*Charter Practices Int'l, LLC v. Robb,* 2015 U.S. Dist. LEXIS 191476, \*10 (D. Conn. 2015)............................................................................................................... 9, 14

*Deutsch v. Novartis Pharms. Corp.,* 768 F. Supp. 2d 420 (E.D.N.Y. 2011).....................7, 14

*Daubert v. Merill Dow Pharmaceuticals, Inc.,* 293 U.S. 579 (1993)............................. 9, 11

*Galoski v. Stanley Black & Decker, Inc.,* 2017 U.S. Dist. LEXIS 80486 (N.D. Ohio 2017)............................................................................................................................3

*Happel v. Walmart Stores, Inc.,* 602 F.3d 820 (7th Cir. 2010)..........................................4

*Hewitt v. Metro-North Commuter R.R.,* 244 F. Supp. 3d 379, 393-394 (S.D.N.Y. 2017)........19

*Huss v. Gayden,* 571 F.3d 442 (5th Cir. 2009)........................................................................................................4

*Innis Arden Golf Club v. Pitney Bowes, Inc.,* 629 F. Supp. 2d 175 (D. Conn. 2009)...............4

*In re: Accutane Prods. Liab. Litig.,* 2009 WL 2496444 (M.D. Fla. Aug. 11, 2009)...............4

*In re Zyprexa Prods. Liab. Litig.,* 489 F. Supp. 2d 230, 285 (E.D.N.Y. 2007).....................4

*Kumho Tire Co. v. Carmichael,* 526 U.S. 137 (1999)...............................................11

*Leblanc v. Chevron USA, Inc.,* 396 F. App'x 94 (5th Cir. 2010).....................................4

McClain v. Metabolife Int'l, Inc., 401 F.3d 1233 (11th Cir. 2005)...................................4

*Peerless Ins. Co. v. Broan-NuTone LLC,* 2012 U.S. Dist. LEXIS 52977 (D. Conn. 2012).....11

*Playtex Prods. V. Proctor & Gamble Co.,* 2003 U.S. Dist. LEXIS 8913 (S.D.N.Y 2003)......16

*Steigerwald v. BHH, LLC,* 2016 U.S. Dist. LEXIS 164308 (N.D. Ohio 2016)....................3

*United States v. Starzecpyzel,* 880 F. Supp. 1027 (S.D.N.Y. 1995)...............................11

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| JOANNE HART and SANDRA BUENO, on behalf of themselves and all others similarly situated, | ) ) ) | CASE NO. 1:15-cv-04804-WHP |
| | ) | JUDGE WILLIAM H. PAULEY |
| Plaintiffs, | ) ) | |
| v. | ) ) | **DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION TO PRECLUDE THE EXPERT TESTIMONIES OF DR. PAUL BORTH AND DR. PHILIP WHITFORD** |
| BHH, LLC d/b/a BELL + HOWELL, and VAN HAUSER, LLC, | ) ) ) | |
| Defendants. | ) ) | |

NOW COME Defendants, BHH, LLC d/b/a BELL + HOWELL and VAN HAUSER, LLC, by and through their counsel, LEAHY, EISENBERG, AND FRAENKEL, LTD., and for their Response in Opposition to Plaintiffs' Motion to Preclude the Expert Testimonies of Dr. Paul Borth and Dr. Philip Whitford, state as follows:

### INTRODUCTION

Plaintiffs' Motion to Preclude the Expert Testimonies of Dr. Paul Borth and Dr. Philip Whitford should be denied on two primary bases. First, Plaintiffs confuse the purpose of Dr. Borth and Dr. Whitford's testimony which is offered to refute Plaintiffs' claim that the Bell+Howell Ultrasonic Pest Repellers are "ineffective and worthless." Instead, Plaintiffs attempt to hold Dr. Borth and Dr. Whitford's testimony to an affirmative burden of proving that the Bell+Howell devices are effective, thereby shifting the burden of proof Plaintiffs have in this case to demonstrate that the devices are "ineffective and worthless." Furthermore, Plaintiffs seek to hold Dr. Borth and Dr. Whitford's testimony to a standard of effectiveness not claimed by the Bell+Howell product packaging and not at issue in this case. Lastly, to the extent Dr. Borth and

1

Dr. Whitford's opinions go to the reasonableness of Defendants' reliance on pre-market studies conducted by independent laboratories to sell and market the Bell+Howell devices and to make the claims on the product packaging that they do, Dr. Borth and Dr. Whitford's testimony is admissible.

Second, even if Plaintiffs could inappropriately shift their burden of proof, Dr. Borth and Dr. Whitford's testimony on the efficacy of the Bell+Howell Ultrasonic Pest Repellers, including their reliance on pre-market independent laboratory testing of the devices, Dr. Borth's reliance on Ballard (1984), and Dr. Whitford's reliance on his testing of the Bird-X Transonic Pro are proper and admissible. The pre-market testing of the devices by independent laboratories was not flawed and was reliable, and Defendants were reasonable in relying on the pre-market testing in deciding to commercialize the devices. Any alleged flaws of the pre-market testing levied by Plaintiffs go to the weight, not the admissibility, of the tests. Further, Dr. Borth's reliance on Ballard (1984) and Dr. Whitford's reliance on his testing of the Bird-X Transonic Pro is proper given that their testimony in this regard is intended to refute Plaintiffs' claim that the Bell+Howell Ultrasonic Pest Repellers are "ineffective and worthless."

Finally, Plaintiffs' criticisms of certain of Dr. Borth's other opinions mischaracterize the evidence and testimony developed in this case, and misinterpret and/or misapply the *Daubert* standard. Accordingly, Dr. Borth's other opinions are admissible. For the foregoing reasons, Plaintiffs' Motion to Preclude the Expert Testimonies of Dr. Paul Borth and Dr. Philip Whitford should be denied.

## ARGUMENT

**I.  Plaintiffs Confuse the Purpose of Defendants' Expert Testimony and Seek to Shift the Burden of Proof onto Defendants.**

Throughout their Motion to Preclude the Expert Testimony of Dr. Borth and Dr.

Whitford, Plaintiffs repeatedly suggest that Dr. Borth and Dr. Whitford's testimony must demonstrate that the devices work. *See, e.g.,* Document 131, at p. 5 ("Defendants' experts are apparently under the misconception that there is no need for them to opine on whether the devices actually work in real life"); *Id.,* at p. 11 (regarding Defendants' pre-market testing, "no attempts at replication were made by Defendants' experts").

However, Plaintiffs inappropriately misstate the purpose of Dr. Borth and Dr. Whitford's testimony which is offered to refute Plaintiffs' claim that the Bell+Howell Ultrasonic Pest Repellers are "ineffective and worthless." Defendants' experts need not affirmatively demonstrate that the devices are effective. The burden of proving the devices' efficacy is Plaintiffs' to bear. *See, Steigerwald v. BHH, LLC,* 2015 U.S. Dist. LEXIS 164308, *27 (N.D. Ohio 2016); *See also, Galoski v. Stanley Black & Decker, Inc.,* 2017 U.S. Dist. LEXIS 80486, *11-12 (N.D. Ohio 2017) ("In a civil case, however, the burden of proof of effectiveness is not on the Defendant. The Plaintiff must prove by a preponderance of the evidence that the product is not effective as warranted. It is not enough to say that there are defects testing and analysis Defendant relied on to support a finding of efficacy; Plaintiff must affirmatively show that the product does not conform to the warranty").

Accordingly, Dr. Borth and Dr. Whitford's opinions regarding the effectiveness of the Bell+Howell Ultrasonic Pest Repellers, including opinions on pre-market testing, do not have to provide affirmative evidence of the repeller's effectiveness, but are offered to challenge Plaintiffs' contention that the repellers are wholly ineffective and worthless. In this role, Dr. Borth and Dr. Whitford's reliance on the pre-market testing is viewed differently than were they offering their testimony to affirmatively prove the devices work as claimed. "[D]efendants' experts have a less demanding task, since they have no burden to produce models or methods of

3

their own; they need only attack those of plaintiffs' experts." *In re Zyprexa Prods. Liab. Litig.*, 489 F. Supp. 2d 230, 285 (E.D.N.Y. 2007) (regarding reliability of expert testimony under *Daubert*) (reversed on separate grounds). Instead, Plaintiffs attempt to hold Dr. Borth and Dr. Whitford's testimony to an affirmative burden of proving that the Bell+Howell devices are effective, thereby shifting the burden of proof Plaintiffs have in this case.

This inappropriate legal maneuver is evidenced by the fact that the majority of cases Plaintiffs cite in their Motion to Preclude involve exclusion of testimony offered by plaintiffs' experts whose testimony was presented to meet plaintiffs' burden to prove causation. *See, e.g.,* *Happel v. Walmart Stores, Inc.,* 602 F.3d 820, 825-826 (7th Cir. 2010) (rejecting plaintiff expert's "attempt to demonstrate the causal relationship between stress and MS"); *Huss v. Gayden,* 571 F.3d 442, 459 (5th Cir. 2009) ("It is axiomatic that *causation testimony* is inadmissible...") (emphasis added); *Innis Arden Golf Club v. Pitney Bowes, Inc.,* 629 F. Supp. 2d 175, 177 (D. Conn. 2009) (ruling on defendants' contention that testimony of plaintiff's two experts offered to establish causation was unreliable); *In re: Accutane Prods. Liab. Litig.,* 2009 WL 2496444, *16 (M.D. Fla. Aug. 11, 2009) (ruling on defendant's Motion to Exclude the Re-Asserted General Causation Testimony); *Leblanc v. Chevron USA, Inc.,* 396 F. App'x 94, 95 (5th Cir. 2010) (appeal of district court's exclusion of plaintiffs' proffered expert witness testimony on causation); *McClain v. Metabolife Int'l, Inc.,* 401 F.3d 1233, 1237 (11th Cir. 2005) (reversing district court's ruling "admitting Plaintiffs' experts' testimony on medical causation").

Furthermore, Plaintiffs seek to hold Dr. Borth and Dr. Whitford's testimony to a standard of effectiveness not claimed by the Bell+Howell product packaging and not at issue in this case.[1] The packaging for the Bell+Howell Ultrasonic Pest Repeller clearly states, "[u]ltrasonic signals

---

[1] Defendants discuss Plaintiffs' inappropriate attempt to change the standard of effectiveness at length in their Memorandum in Support of Defendants' Motion for Summary Judgment, Doc. # 140.

lose intensity as it travels. It is also absorbed by soft objects such as carpeting and is reflected by hard surfaces, such as furniture. Ultrasonic signals cannot reach nesting or feeding places behind walls, under floors, or within cracks." *See,* Bell+Howell Packaging and Owner's Manual, Doc. #142, Ex. 11. Even Plaintiffs' expert concedes the product does not claim that it can work through walls or under floors.

> **Q.** **Is there anywhere in the Bell & Howell instructions that you recall seeing where it says it will repel pests that are located behind walls or under floors?**
>
> **A.** **May I look at a copy of the Bell & Howell label?...**
>
> **A.** **No.**

Potter Deposition, Doc. #142, Ex. 2, at 158:12-159:2

> **Q.** **There's nothing that you found in the Bell & Howell user manual that states that pests located behind walls or under floors will be driven out; is that fair?**
>
> **A.** **It's fair that they don't specifically say that pests behind walls and in these hidden locations would be driven out.**

Potter Deposition, Doc. #142, Ex. 2, at 178:17-24.

To discount Dr. Borth and Dr. Whitford's testimony because it does not apply a standard not claimed by the product and not at issue in this litigation is illogical and contrary to the relevance requirement established in *Daubert*. Further, as Dr. Whitford explained, just because the pre-market tests were conducted under laboratory and not real world conditions does not invalidate their results:

> **Q.** **Would you say that it is difficult to make real world conclusions based in unnatural lab-based environments?**
>
> **A.** **I would say that's the most common environment in which tests are done, and they can lead to valid results...**

Whitford Deposition, Doc. # 140, Ex. 8 (hereinafter "Whitford Deposition 1"), at 79:19-

80:2.

Finally, it is important to draw a distinction between Dr. Borth's and Dr. Whitford's testimony offered to refute Plaintiffs' claim that the repellers are "ineffective and worthless" and testimony offered to opine on the reasonableness of Defendants' reliance on pre-market studies conducted by independent laboratories to sell and market the Bell+Howell devices and to make the claims on the product packaging that they do. To be clear, the latter opinion testimony is unrelated to the actual efficacy of the Bell+Howell Ultrasonic Pest Repellers. Rather, this testimony goes to whether Defendants' were reasonable and diligent in seeking independent testing of the devices, and in relying on the results of the independent testing. *See,* Borth Expert Report, at p. 22, Doc. #142, Ex. ; Borth Deposition, Doc. # 140, Ex. 4 (hereinafter "Borth Deposition 2"), at 291:9-22; Whitford Deposition, Doc. # 140, Ex. 9 (hereinafter "Whitford Deposition 2"), at 277:3-8.

> **Q.** **Based on your expertise, and in particular the work you have done in your prior employment in drafting, supervising, and approving product literature and labeling, is the product literature that you find with respect to the Bell + Howell ultrasonic pest repeller accurate based on all the analysis you have done in this case?**
>
> **A.** **Yes, it is.**
>
> **Q.** **Is the labeling and product literature shown in Exhibit 14 true based on all of your analysis in this case?**
>
> **A.** **Yes, it is.**

Borth Deposition 2, 293:23-294:9.

> **Q.** **Sir, is it your opinion that it was reasonable for Bell & Howell to rely upon the 2011, 2014 tests which were conducted on the devices that you reviewed to claim that the Bell & Howell devices will repel and drive rodents out of the areas covered by those devices?**

     **A.**    **Yes.**

Whitford Deposition 2, 277:9-15.

Opinion testimony by qualified experts is permitted as to the reasonableness of product literature. *See, Deutsch v. Novartis Pharms. Corp.,* 768 F. Supp. 2d 420, 440 (E.D.N.Y. 2011) (comparing facts in evidence with the content on drug labels and in the warnings is a commonly accepted methodology used by experts admitted to testify as to the accuracy of warnings and the truth or falsity of information on labels) (citing *In re Diet Drugs (Phentermine, Fenfluramine, Dexfenfluramine) Prods. Liab. Litig.,* 2000 U.S. Dist. LEXIS 9037 (E.D. Pa. 2000)).

Plaintiffs' expert, Dr. Michael F. Potter, confirmed his understanding that, prior to the testing of the Bell+Howell devices by Plaintiffs for this litigation, the only tests conducted on the Bell+Howell Ultrasonic Pest Repellers were those relied on by Defendants in deciding to commercialize the product and in making the claims on the product packaging that they did. *See, Potter Deposition, Doc. #142, Ex. 1, 52:11-15.* Though Plaintiffs may take issue with certain aspects of the pre-market testing, the results of those tests, as reported to Defendants by the independent laboratories, were that the devices were effective at repelling ants, spiders, cockroaches, mice and rats.

     **Q.**    **All three of those entities after completing their tests concluded that the Bell & Howell devices were effective to repel the enumerated pests, correct?**

     **A.**    **That was their conclusion, correct.**

Potter Deposition, Doc. #142, Ex. 1, 51:23-52:4.

Notably, Plaintiffs have not objected to Dr. Borth or Dr. Whitford's testimonies in this regard, likely because Dr. Borth, with 27 years of professional research and development experience, and Dr. Whitford, with 20 years of product testing and consulting experience, are

qualified to give these opinions. *See generally,* Borth Curriculum Vitae, attached hereto as Exhibit A; Whitford Curriculum Vitae, attached hereto as Exhibit B. *See also, e.g.,* Borth Deposition 2, at 291:9-16; Whitford Deposition 1, at 22:21-24, 23:17-24:20.

> **Q.**   **Have -- now, when you were evaluating insecticides at Dow, was Dow conducting its own tests on the insecticides in-house?**
>
> **A.**   **They were, in combination with other entities globally.**
>
> **Q.**   **So you -- was your job to review data from tests conducted by Dow in addition to data from tests conducted by other laboratories?**
>
> **A.**   **In certain of those roles that are in the CV, yes.**

Borth Deposition , Doc. # 140, Ex. 3 (hereinafter "Borth Deposition 1"), 30:9-18.

> **Q.**   **Have you ever peformed any consulting in the area of pest management?**
>
> **A.**   **That's the principal thing I work on. Consulting at the level of services to Bird-X, I have tested almost all of their various sonic and ultrasonic devices against whatever species they've requested me to test it on to find out whether they showed efficacy or not...so whatever they wanted tested, I would test for them and tell them honestly whether I thought they had efficacy or not.**

Whitford Deposition 1, 19:18-20:9.

To the extent Dr. Borth and Dr. Whitford opine on Defendants' reasonable reliance on the pre-market tests, and not to the efficacy of the device's themselves, Dr. Borth and Dr. Whitford's testimony is also admissible.

**II.    Dr. Borth and Dr. Whitford's Opinions on the Efficacy of the Repellers are Admissible.**

Even if Defendants had the burden of proof to demonstrate the Bell+Howell Ultrasonic Pest Repellers work, Dr. Borth and Dr. Whitford's testimony on the efficacy of the Bell+Howell

Ultrasonic Pest Repellers is still proper and admissible. Dr. Borth and Dr. Whitford's reliance on pre-market independent laboratory testing of the devices is proper because the pre-market tests are reliable for the purpose on which they were commissioned. Further, any criticisms of the pre-market testing properly go to the weight, not the admissibility, of Dr. Borth and Dr. Whitford's reliance on the tests. Further, as mentioned above, Dr. Borth and Dr. Whitford also opine that Defendants were reasonable in relying on the pre-market testing in deciding to commercialize the devices, a separate and distinct issue from the products' efficacy. Finally, Dr. Borth's reliance on Ballard (1984) and Dr. Whitford's reliance on his testing of the Bird-X Transonic Pro is proper given that their testimony in this regard is intended to refute Plaintiffs' claim that the Bell+Howell Ultrasonic Pest Repellers are "ineffective and worthless" by demonstrating that ultrasonic technology, generally, has a repellent effect on pests.

### A. Dr. Borth and Dr. Whitford's Reliance on Pre-Market Testing is Not Flawed and is Not Unreliable

Plaintiffs argue that Dr. Borth and Dr. Whitford's expert testimony on the efficacy of the repellers should be precluded because the pre-market testing that Bell+Howell relied on in deciding to commercialize the Bell+Howell Ultrasonic Pest Repellers were flawed and unreliable. Document 131, at p. 1. Plaintiffs allege several perceived flaws with the pre-market testing, but each criticism more appropriately addresses the weight of the evidence, not its admissibility. *Charter Practices Int'l, LLC v. Robb,* 2015 U.S. Dist. LEXIS 191476, *10 (D. Conn. 2015) (finding expert's reliance on her allegedly flawed, unpublished study was not inadmissible because plaintiff's criticisms went to the weight of expert's testimony, rather than to its admissibility). The proper forum for challenging the pre-market tests would be on cross-examination, before the ultimate trier of fact. *See, Daubert v. Merill Dow Pharmaceuticals, Inc.,* 293 U.S. 579, at 596 (1993) ("Vigorous cross-examination, presentation of contrary evidence,

and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence"). As Dr. Borth and Dr. Whitford testified, certain criticisms, like replacing dead pests or identification of the species of pest tested, would not wholly invalidate the tests. *See,* Borth Deposition 1, at 138:18-22; *See also,* Whitford Deposition 2, at 202:5-16.

Nevertheless, Plaintiffs' criticism of the pre-market testing is unfounded. In criticizing the pre-market tests, Plaintiffs again confuse the purpose of the tests, both at the time they were conducted, and in Dr. Borth and Dr. Whitford's reliance on them now. In commissioning the pre-market testing of the Bell+Howell Ultrasonic Pest Repellers, Defendants sought independent, third-party tests of their own product prior to, and after, commercialization. *See,* Feuerstein Deposition, Doc. # 140, Ex. 10, at 125:16-21; Mishan Deposition, Doc. # 140, Ex. 2, at 60:5-11. Defendants, like most companies testing new products, would not have intended to seek peer-reviewed publication of the testing given the proprietary nature of pre-market testing. *See,* Borth Deposition 2, at 301:2-10. Tests commissioned for these internal purposes do not need to be published, nor does the fact that they were not published invalidate the results.

> **Q.** **Do companies typically, when they're developing and testing a new product, for instance, will they then publish in a publication the testing of the product before putting the product out to market?**
>
> **A.** **No...**

Borth Deposition 2, at 301:11-16.

> **Q.** **Now, does the fact that a testing of a product is not published in a peer-reviewed article, does that change the results of that testing or the analysis?**
>
> **A.** **No.**

Borth Deposition 2, at 301:24-302:3.

10

Plaintiffs suggest that the fact that the pre-market tests were not peer-reviewed and published makes them unreliable. Plaintiffs also criticize perceived flaws of the testing, such as failure to use a control, lack of replication, lack of identification of pests, etc. However, these perceived deficiencies would have been unnecessary where internal product evaluation, not peer-reviewed publication, was the ultimate goal. *See,* Borth Deposition 1, at 134:19-20.

In fact, while peer review of scientific studies *can be* a factor in determining their reliability, it need not be the sole determining factor. *See, Daubert*, at 595 ("The inquiry envisioned by Rule 702 is, we emphasize, a flexible one"); *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999) (*Daubert* factors "do not constitute a definitive checklist or test" and "may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony"); *United States v. Starzecpyzel*, 880 F. Supp. 1027, 1040  (S.D.N.Y. 1995) ("Certainly the *Daubert* factors themselves, such as peer review and publication, are irrelevant for many categories of expert testimony"); *Peerless Ins. Co. v. Broan-NuTone LLC,* 2012 U.S. Dist. LEXIS 52977, *2 (D. Conn. 2012) ("Though the lack of peer review of these opinions may be explored on cross examination, the absence of peer review alone does not warrant excluding the testimony…[T]he mere fact that an expert's findings have not been peer reviewed or published is not a sufficient reason to exclude it") (citations and internal quotations omitted). Here, the reliability of Dr. Borth and Dr. Whitford's testimony, and the pre-market testing on which it is based, should be reviewed in the context for which it is offered: to refute Plaintiffs' claim that the devices are "ineffective and worthless" and to demonstrate that Defendants' reliance on the independent, third-party tests was reasonable.

Plaintiffs also suggest that Defendants' pre-market testing was unreliable because Dr. Borth would not have relied on it in his work at Dow Chemical Company. Doc. # 131, at p.1-2.

However, Plaintiffs conveniently ignore the fact that Dow Chemical Company was a different company, in a different and highly-regulated industry, which had different standards for commercialization of a product. *See,* Borth Deposition 1, at 36:21-23 (explaining Dow's core competency was in pesticides, not ultrasonics); Borth Deposition 2, at 301:11-16 ("I don't know the rigor from Bell + Howell case -- or the Bell+Howell culture...They're different companies"). Dr. Borth also explained that he believed the pre-market testing was reliable, could withstand peer-review, and certain alleged flaws would have been acceptable at Dow. *See,* Borth Deposition 1, at 121:8-12; 136:5-10; 146:5-21.

### B. Dr. Borth's Reliance on Ballard (1984) is Proper Given the Purpose of His Testimony.

Plaintiffs also argue that Dr. Borth's reliance on Ballard (1984) was improper. Doc. # 131, at p. 16. Again, Plaintiffs fail to recognize the purpose for which Dr. Borth's testimony is offered. Dr. Borth is not relying on Ballard (1984) for the proposition that the Bell+Howell Ultrasonic Pest Repellers affirmatively works to repel cockroaches. As mentioned above, it is not Defendants' burden to prove this. Instead, Dr. Borth's reference to Ballard (1984) in his report was in conjunction with a general opinion regarding the relationship between decibel and frequency and ultrasound's effect on insects. *See,* Borth Expert Report, at p. 6-7. To the extent Dr. Borth's reference to Ballard (1984) opines on the efficacy of ultrasound at all, Dr. Borth is simply using Ballard (1984) as an example of ultrasound's effect on cockroaches such that Plaintiffs' claim that the Bell+Howell Ultrasonic Pest Repellers are "ineffective and worthless" is incorrect. Dr. Borth explained the purpose of his reliance on Ballard (1984):

> **A.** I used their experience, their research to try to make the point that in their case -- in their research one of their cockroach replications created increase -- significantly increased the activity of cockroaches in

12

> **that test; and, thereby, that ultrasonic waves are**
> **capable of affecting the behavior of a cockroach.**

Borth Deposition 2, at 286:20-287:1.

Further, Plaintiffs contend that the authors of the study concluded that there was "no evidence of repulsion" and cite various cases that stand for the proposition that an expert may not draw unauthorized conclusions about a study. Doc. # 131, at p. 16-17. However, nowhere in the Ballard (1984) study do the authors conclude that there was "no evidence of repulsion." To the contrary, the study reported that "[t]he use of ultrasound in these experiments resulted in a statistically significant increase (P≤0.10) in activity by the German cockroach population" and "[w]hether or not control is achieved remains to be evaluated." Ballard (1984), at 979.

Here, it is Plaintiffs who have inappropriately attributed the conclusion that there was "no evidence of repulsion" to the Ballard (1984) study. The conclusion Plaintiffs attribute to Ballard (1984) was one ascribed to Ballard (1984) by a separate study. *See,* Gold, et al., Acoustical Characterization and Efficacy Evaluation of Ultrasonic Pest Control Devices Marketed for Control of German Cockroaches (*Orthoptera: Blattellidate*), J. Econ. Entomol. 77:1507-1512, 1507 (1984). Plaintiffs hope that by conflating Ballard (1984) with Gold (1984), Dr. Borth's testimony, which only opined on Ballard (1984), will be deemed to have mischaracterized the conclusions of Ballard (1984). However, Dr. Borth's opinions do not expand the scope of the conclusions in Ballard (1984). Accordingly, Dr. Borth's opinions regarding Ballard (1984) are proper and admissible.

### C. Dr. Whitford's Reliance on His Testing of the Bird-X Transonic Pro is Proper.

Plaintiffs next argue that Dr. Whitford's reliance on testing of the Bird-X Transonic Pro is improper because it failed to use a control and because the device tested is not comparable to the technology used by the Bell+Howell devices. Doc. # 131, at p. 23. These arguments are not

persuasive. First, these criticisms go to the weight of Dr. Whitford's testing, not to the admissibility. *See, Charter Practices Int'l*, *10 (D. Conn. 2015) (finding expert's reliance on personal experience and her allegedly flawed, unpublished study was not inadmissible because plaintiff's criticisms went to the weight of expert's testimony, rather than to its admissibility); *Deutsch v. Novartis Pharms. Corp.*, 768 F. Supp. 2d 420, 438 (E.D.N.Y. 2011) ("arguments as to the reliability of non-controlled studies go to the weight, not the admissibility" of expert's opinions).

Notwithstanding the above, Plaintiffs sole argument that the device tested in Dr. Whitford's Transonic-Pro study is not comparable to the Bell+Howell devices is based on their contention that the Transonic-Pro device produces sonic, in addition to ultrasonic, sound. Doc. # 131, at p. 18-19. However, Dr. Borth addressed this criticism at his deposition when he explained that the Transonic-Pro has two speakers, one for sonic and one for ultrasonic output, and that he tested the Transonic-Pro on the setting for ultrasonic output. *See,* Whitford Deposition 1, at 54:4-7; 63:6-10.

Importantly, there is a distinction between sonic sound intended to be produced by the Transonic-Pro, and sonic sound that may accidentally be produced by the Transonic-Pro. Plaintiffs attempt to inject uncertainty on the Transonic-Pro's sound output based on the manufacturer's use of the phrase "primarily ultrasonic" to explain potential accidental sonic sound. Dr. Whitford also addressed this criticism:

> **Q. Okay. What do you understand the word primarily to mean?**
>
> **A. I tend to see it as hedging your bet a little bit. It means that it might be possible that it produces something in the sonic range accidentally. There is always -- sound production is an uncertain thing with equipment. No matter how much you refine your stereo, you may still**

> get excess vibration and base and so forth coming
> through it.

Whitford Deposition 1, at 64:13-22.

> A.      I read it to mean that it should all be above -- every
> intentionally produced sound is to be above 20,000
> cycles per second, but there is always a possibility of
> some side product sound. Nothing is absolute in the
> realm of sound when you're talking a few thousand or a
> few hundred cycles per second.

Whitford Deposition 1, at 66:17-23.

Based on Plaintiffs' logic, and applying Dr. Whitford's explanation, the Bell+Howell Ultrasonic Pest Repellers would also be capable of producing sonic sound accidentally. The existence of accidental sonic sound, which is possible in any sound-producing device as explained by Dr. Whitford, should not render Dr. Whitford's Transonic-Pro testing unreliable and inadmissible.

## III.     Other Opinions Expressed by Dr. Borth are Admissible.

Finally, Plaintiffs argue that various other opinions expressed by Dr. Borth are inadmissible. However, these criticisms mischaracterize the evidence and testimony developed in this case, and misinterpret and/or misapply the *Daubert* standard. Accordingly, Dr. Borth's other opinions are admissible.

### A. Dr. Borth's Opinions on Consumer Understanding are Admissible.

While Dr. Borth is an entomologist by education, Dr. Borth has 27 years of practical experience working in the field of product design, supporting product marketing decisions, and most importantly, drafting, reviewing and approving product literature. *See generally,* Borth Curriculum Vitae. *See also, e.g.,* Borth Deposition 1, at 14:21-15:1, 16:21-17:8, 19:3-8. Notably, Dr. Borth explained the roles he has held that dealt with the interpretation of product language and product marketing:

15

> **A.** I have had many jobs with Dow AgroSciences that -- that required that I interact with marketers and marketing and the development of pesticides...I supplemented their work as a technical person.

Borth Deposition 1, 15:16-16:2.

> **Q.** So when it comes to claims written on the labeling of Bell + Howell ultrasonic pest repellers, would you consider yourself an expert in interpretation of those claims?
>
> **A.** I would...
>
> **Q.** What's your basis for that?
>
> **A.** The basis is that I spent many years writing, reviewing, approving pesticide labels to the consumer -- or the customer of Dow AgroSciences. I am very well aware of the technical language that appears on labels. I've written it, I've reviewed it, I've approved them...How I wrote those labels for Dow products would also apply for products that were distributed or sold by Bell + Howell or Van Hauser.

Borth Deposition 1, 20:4-23.

Plaintiffs rely primarily on a case that, as this Court is well aware, involved inadmissible expert testimony on the falsity of a product's performance that was *actually* experienced by consumers. *See, Playtex Prods. V. Proctor & Gamble Co.,* 2003 U.S. Dist. LEXIS 8913, *29 (S.D.N.Y 2003) (Pauley, J.). Dr. Borth's opinion regarding consumer understanding of the product's claim is distinguishable in that it does not go to the truth or falsity of the claim and what actual consumers experienced when using the product, but instead to what consumers can reasonably understand the product's claim to be. Plaintiffs also rely on erroneous deposition testimony. By Errata correction dated February 14, 2018 (attached hereto as Exhibit C), Dr. Borth corrected his response to a question he heard verbalized as the opposite of the question transcribed. Dr. Borth's corrected deposition testimony now reads:

16

> Q.  Do you...think it is unreasonable for a consumer to understand drives pests out to mean drives pests out of the house?
>
> A.  I do.
>
> Q.  You think that is a reasonable interpretation?
>
> A.  I do not.

Borth Deposition 1, 46:19-25 (as corrected by 2/14/18 Errata).

When asked a similar question later, one that he heard correctly, Dr. Borth gave an accurate response:

> Q.  Sir, is it your opinion that it would not be reasonable, given Bell & Howell's product literature, that consumers would believe in purchasing the devices that the devices would repel and drive pests out from behind walls and under floors?
>
> A.  All right. I got it. It would not be reasonable for consumers to believe that based on the product literature.

Borth Deposition 2, at 295:11-20.

Dr. Borth was asked to, and did, clarify his testimony later in his deposition:

> Q.  Sir, earlier, many, many hours ago you gave a statement I believe at one point where the question was asked maybe with a double negative about the reasonableness of consumers in reading the literature. Do you recall that?
>
> A.  Vaguely.
>
> Q.  Okay. Just so I'm clear, it's your opinion, based upon your expertise, that the Bell+Howell product literature, the user instructions are clear; correct?
>
> A.  Yes.
>
> Q.  And that consumers, based on your expertise and what you've seen in the product literature, should have understood that these ultrasonic repellers would repel

> and drive pests out when the pests are exposed to the sound waves; correct?
>
> A.   Yes.
>
> Q.   And that does not mean that it would drive pests out that are protected from the sound waves, for instance, pests behind walls or under floors; correct?
>
> A.   It does not mean that.

Borth Deposition 2, 296:16-297:16.

Dr. Borth's qualified opinion on the reasonableness of consumers' understanding of the Bell+Howell product packaging has been consistent. Based on the clear language used in the product literature, it is reasonable for consumers to understand that the Bell+Howell Ultrasonic Pest Repellers will repel and drive pests out from areas where the pests are exposed to the ultrasonic sound waves. It is unreasonable for consumers to understand that pests will be driven out from areas where they are protected from the ultrasonic sound waves. Dr. Borth's testimony in this regard is, therefore, admissible.

## B. Dr. Borth's Additional Opinions Are Based On Specialized Knowledge and Are Helpful to the Trier of Fact.

Plaintiffs contend that Dr. Borth's additional opinions (nos. 2, 6, 7, 9, and 12 of his report) are inadmissible because they are not based on specialized knowledge and they would not be helpful to the trier of fact. While Plaintiffs repeatedly cite *Arista Records LLC v. Lime Grp. LLC,* 2011 WL 1674796, at *2 (S.D.N.Y. 2011) for the proposition that an expert in one field may not testify about aspects of another field for which she is not qualified, Plaintiffs ignore that "[i]f the expert has educational and experiential qualifications in a general field closely related to the subject matter in question, the court will not exclude the testimony solely on the ground that the witness lacks expertise in the specialized areas that are directly pertinent." *Arista Records,* at *10. Based on his 27 years of professional research and development experience, including

18

leading research programs addressing priority market needs, Dr. Borth is in fact qualified to testify as to related areas of consistency and sufficiency of pest control product literature, the impact of non-compliance with user instructions on the efficacy of a pest control product, and comprehensive pest management practices. *See generally,* Borth Curriculum Vitae. *See also, e.g.,* Borth Deposition 1, at 14:21-15:10, 16:21-17:8, 19:3-8.

> **A.    ...the roles that I had in Dow AgroSciences required me over the years to write product labels, to review product labels, and to approve product labels.**

Borth Deposition 1, 16:24-17:2.

Plaintiffs also argue that certain of Dr. Borth's opinions should be excluded because they express legal conclusions. Dr. Borth's innocent use of legalese aside, the essence of the opinions does not draw legal conclusions. Rather, Dr. Borth is merely opining, as he does several times in his report, that, in his qualified opinion as someone who drafted and scrutinized product instructions, failure to follow user instructions can have negative consequences, such as a reduction in the effectiveness of the device. *See,* Borth Deposition 2, at 278:13-280:4. Additionally, while an expert may not testify as to legal conclusions, they may testify as to opinion regarding an ultimate issue in the case. *See, Hewitt v. Metro-North Commuter R.R.,* 244 F. Supp. 3d 379, 393-394 (S.D.N.Y. 2017) (Expert could not testify that defendant was negligent, but could testify as to what steps a reasonable employer could have taken to mitigate risk factors). Here, whether failure to follow user instructions will reduce the efficacy of the Bell+Howell repellers bears on the ultimate issue in the case, whether the devices are "ineffective and worthless." For the foregoing reasons, Dr. Borth's additional opinions are admissible.

## CONCLUSION

WHEREFORE, Defendants, BHH, LLC d/b/a BELL + HOWELL, and VAN HAUSER, LLC respectfully request that the Court enter an order denying Plaintiffs' Motion to Preclude the Expert Testimonies of Dr. Paul Borth and Dr. Philip Whitford.

Respectfully submitted,

**E. MISHAN & SONS, INC.**

By:        */s/ Scott Wing*
                          One of Its Attorneys

Scott Wing
LEAHY, EISENBERG & FRAENKEL, LTD.
33 West Monroe Street, Suite 1100
Chicago, Illinois 60603
Tel. (312) 368-4554
***Counsel for BHH, LLC, and VAN HAUSER, LLC***

20