**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JOANNE HART and SANDRA BUENO, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>BHH, LLC d/b/a Bell + Howell and VAN HAUSER LLC<br><br>Defendants. | Civil Action No. 1:15-CV-04804-WHP |

# REPLY IN SUPPORT OF PLAINTIFFS' MOTION TO PRECLUDE THE EXPERT TESTIMONIES OF DR. PAUL BORTH AND DR. PHILIP WHITFORD

Dated: April 23, 2018

**BURSOR & FISHER, P.A.**

Scott A. Bursor
Joshua D. Arisohn
Yitzchak Kopel
888 Seventh Avenue
New York, NY 10019
Telephone: (212) 989-9113
Facsimile: (212) 989-9163
Email: scott@bursor.com
   jarisohn@bursor.com
   ykopel@bursor.com

*Class Counsel*

**TABLE OF CONTENTS**

**Page(s)**

I. THE CHINESE STUDIES ARE UNRELIABLE ................................................................ 1
II. DEFENDANTS BEAR THE BURDEN OF PROOF IN ESTABLISHING THE ADMISSIBILITY OF THEIR EXPERTS' TESTIMONIES ..................................... 3
III. DEFENDANTS DO NOT DISPUTE THAT BALLARD (1984) DOES NOT SUPPORT BORTH'S OPINION ................................................................. 5
IV. DR. WHITFORD'S TRANSONIC PRO STUDY IS UNRELIABLE .............................. 7
V. DR. BORTH'S OPINIONS ON CONSUMER UNDERSTANDING ARE INADMISSIBLE ................................................................................................. 9
VI. DR. BORTH'S OPINIONS ON OTHER MATTERS ARE INADMISSIBLE ................................................................................................. 10

## TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Charter Practices Nternational, LLC v. Robb*,
   2015 WL 13000251 (D. Conn. Mar. 31, 2015) ............................................................. 4

*Daubert v. Merrel Dow Pharms.*,
   509 U.S. 579 (1993) .................................................................................... 1, 4, 5, 6

*Deutsch v. Novartis Pharms. Corp.*,
   768 F. Supp. 2d 420 (S.D.N.Y. 2011) .................................................................. 7, 8, 9

*Gen. Elec. Co. v. Joiner*,
   522 U.S. 136 (1997) ...................................................................................... 10

*Huss v. Gayden*,
   571 F.3d 442 (5th Cir. 2009) .................................................................................. 7

*In re Zyprexa Prods. Liab. Litig.*,
   489 F. Supp. 2d 230 (E.D.N.Y. 2007) .................................................................. 4

*Koppell v. N.Y.S. Bd. of Elections.*,
   97 F. Supp. 2d 477 (S.D.N.Y. 2000) .................................................................. 4

*Playtex Prods. Inc. v. Procter & Gamble Co.*,
   2003 WL 21242769 (S.D.N.Y. May 28, 2003) .................................................... 4

*Steigerwald v. BHH, LLC*,
   2016 WL 6962593 (N.D. Ohio Nov. 29, 2016) .................................................. 7

**RULES**

Fed. R. Civ. P. 30(e)(1) .............................................................................................. 10

Fed. R. Evid. 403 .......................................................................................................... 6

Fed. R. Evid. 702 .......................................................................................................... 1

Fed. R. Evid. 703 .......................................................................................................... 1

**I.      THE CHINESE STUDIES ARE UNRELIABLE**

Defendants do not dispute that Dr. Borth testified he would not have relied on the Chinese Studies in his work at Dow. Or that the Chinese Studies failed to use experimental controls. Or that they were not replicated, failed to specify the species being tested, and failed simulate real-world conditions. They do not dispute that several of the studies replaced dead critters with live ones mid-experiment, and several improperly counted critters in neither chamber as "repelled." Each of these deficiencies were set forth in detail in Plaintiffs' *Daubert* Motion (ECF No. 131), which explained why they invalidated the Chinese Studies as a matter of science and law. *See Daubert* Motion § III.A. Defendants have not even attempted to defend these practices or otherwise claim that they were proper. And Defendants address *none* of the authority cited by Plaintiffs on this point.

Instead, Defendants acknowledge the Chinese Studies' "failure to use a control, lack of replication, [and] lack of identification of pests, etc.," but argue that "these perceived deficiencies w[ere] unnecessary where internal product evaluation, not peer-reviewed publication, was the ultimate goal." Opp. at 11. That is completely irrelevant. Where, as here, expert witnesses seek to rely on studies to render opinions in a federal lawsuit, the Court has a duty to ensure that they are "reliable" under Fed. R. Evid. 702 and 703.

In *Daubert v. Merrel Dow Pharms.*, 509 U.S. 579, 589 (1993), the Supreme Court set forth four considerations regarding reliability:  (1) whether the theory or technique can be tested; (2) whether it has been subjected to peer-review and publication; (3) the known or potential rate of error; and (4) general acceptance in the scientific community. Here, the Chinese Studies fail on all four considerations.

First, the techniques used in the Chinese Studies cannot be tested because it is not clear what techniques were used in the in the first place.  Failure to explain (1) what species were

1

being tested, (2) where new pests were placed when they were added mid-experiment, and in many cases, (3) whether critters in the tunnel were counted as repelled, precludes testing of the techniques used in the studies because they are unknown. Kopel Decl. Ex. 1, Borth Dep. at 126:2-13 ("Q: Given that you don't know the species of the pests used, would you be able to replicate this test if you wanted to? A: It would be ... coincidence I guess. … I can certainly test roaches, I can test ants, and I can test spiders. Whether they're exactly the same species, we don't know since they – since they didn't say."); *see also Daubert* Motion § III.A.

Second, Dr. Borth testified that they would not have been accepted if submitted for publication in a peer-reviewed publication. *See id.* at 309:19-310:4 ("Q: Do you believe that if submitted for publication in a peer-reviewed journal, the Chinese studies conducted on the Bell + Howell repellers would be potentially selected for publication?  A:  No…").  The techniques used were therefore not only unpublished but also not accepted in the scientific community.

Third, the rate of error in the Chinese Studies is unknown given each of the deficiencies noted above. Without controls or replications, there is no way of knowing whether the results observed were real or attributable to causes other than the ultrasonic repellers. *See Daubert* Motion §§ II.A.1 and 3.  And without knowing where new pests were placed mid-experiment and whether pests inside the tunnels were counted as repelled, we do not even know what the true results of the tests *were* if done properly. *See id*. §§ II.A.5 and 6. Defendants' experts also conceded they could not discern the effect of testing multiple critters in the same enclosures at the same time. *See, e.g.*, Kopel Decl. Ex. 1, Borth Dep. at 176:1-8 ("Q: And it's possible [when] they're in the chamber together at the same time … the spiders, roaches, and ants were affecting each other's movements within the chambers; correct? A:  It's possible, yes.  We have no way of knowing.").

Finally, Defendants argue that the fact that "Dr. Borth would not have relied on [the Chinese Studies] in his work at Dow Chemical Company" is irrelevant because "Dow's core competency was in pesticides, not ultrasonics." Opp. at 11-12. That is wrong. First, this is at odds with Defendants' argument that Dr. Borth's work in evaluating pesticides at Dow makes him uniquely qualified to render his opinions in this case. *See* Opp. at 7-8. More importantly, the issues that Dr. Borth identified when he testified that he would not have relied on the Chinese Studies at Dow apply equally in the context of ultrasonic repellers as they would to pesticides. Dr. Borth stated that he would not have relied on them because there were "too many unanswered questions," and specifically, noted the failure to replicate, use a control, and specify the species being tested. *See* Kopel Decl. Ex. 1, Borth Dep. at 179:17-182:18, 146:23-147:10. These are all accepted requirements in the scientific community when conducting tests on critters, and none of them are unique to pesticides. Defendants provide no explanation as to why they should be entitled to a pass for their use of unreliable studies merely because they are in the so-called "ultrasonics" industry, where no legitimate study has ever shown any efficacy at all.

## II. DEFENDANTS BEAR THE BURDEN OF PROOF IN ESTABLISHING THE ADMISSIBILITY OF THEIR EXPERTS' TESTIMONIES

Defendants argue that "Dr. Borth and Dr. Whitford's opinions regarding the effectiveness of the Bell+Howell Ultrasonic Pest Repellers … do not have to provide affirmative evidence of the repeller's effectiveness" and therefore their testimony "is viewed differently than were they offering their testimony to affirmatively prove the devices work as claimed." Opp. at 3. But Defendants are conflating the affirmative testimony of their experts with their rebuttal testimony. Dr. Borth and Dr. Whitford submitted both affirmative and rebuttal expert reports in this case. *See* ECF Nos. 151-3, 151-4, 151-17, and 135-17. As to their affirmative testimony, both Borth and Whitford made clear at their depositions that they were seeking to render affirmative

opinions on the effectiveness of the repellers. *See* Kopel Decl. Ex. 1, Borth Dep. at 13:18-21 ("Q: Okay. Are you providing an opinion as to the efficacy of the Bell + Howell Ultrasonic pest repellers in driving out and repelling insects? A: Yes."); *id.* Ex. 2, Whitford Dep. at 11:20-23 ("Q: Are you rendering opinions as to the efficacy of the Bell + Howell pest repellers in repelling and driving out rodents? A: Yes."). Defendants cite *In re Zyprexa Prods. Liab. Litig.*, 489 F. Supp. 2d 230, 285 (E.D.N.Y. 2007) which held that "defendants' experts … have no burden to produce models or methods of their own; they need only attack those of plaintiffs' experts." But here, Borth and Whitford *are* producing models and methods of their own by using the Chinese Studies to opine that the repellers are effective.

Defendants are also confusing Plaintiffs' burden of proving the merits of this case with their own burden of showing the admissibility if their experts' testimony. "The proponent of the testimony … must establish admissibility by a preponderance of the evidence." *Playtex Prods. Inc. v. Procter & Gamble Co.*, 2003 WL 21242769, at *4 (S.D.N.Y. May 28, 2003) (citations omitted). Defendants' suggestion that *Daubert* applies only to plaintiffs and not to defendants because the plaintiffs bear the burden of proving the merits has no basis in law. *See, e.g., Koppell v. N.Y.S. Bd. of Elections*., 97 F. Supp. 2d 477, 481 (S.D.N.Y. 2000) (precluding defendant's expert for use of techniques "not methodologically sound enough to provide reliable evidence"); *Charter Practices Nternational, LLC v. Robb*, 2015 WL 13000251, at *5 (D. Conn. Mar. 31, 2015) (precluding anecdotal testimony of defendant's expert). No matter the context, the Court must assume "a gatekeeper function to determine whether 'the expert's testimony … rests on a reliable foundation.'" *Playtex*, 2003 WL 21242769, at *4 (quoting *Daubert*, 509 U.S. at 597). Here, Defendants' experts should not be permitted to provide testimony based on sources that they themselves have deemed unreliable. *See Daubert* Motion § I.

Plaintiffs did note in their *Daubert* Motion that Defendants' experts testified that they have not seen reliable evidence that the repellers are capable of pest control in a residential environment, for a period of more than nine days, or for that matter, anywhere outside of an empty, unnatural space. *See Daubert* Motion § I. But that was not to suggest that Defendants' experts were *required* to have seen such evidence, but rather to show that even their opinions that the devices are "effective" are based on a warped understanding of the term "effective" that has no basis in real-life use of the repellers, and are therefore unhelpful to the jury. *See id.*

Finally, Defendants argue that even if their studies are unreliable to provide a basis for their experts' opinions that the devices are effective, the experts should still be permitted to testify that "Defendants[] were reasonable and diligent in seeking independent testing of the devices, and in relying on the results of the independent testing." Opp. at 6. That makes no sense. Expert testimony is not helpful to establish whether lay persons reasonably relied on scientifically unreliable sources. Defendants' expert witnesses have no personal knowledge of, or insight into, Defendants' thoughts and intentions at the time they marketed the repellers. Rather, Defendants can testify regarding this issue themselves, and the jury can make a determination as to this factual dispute. Finally, Plaintiffs request that if Defendants are permitted to present expert (or fact) testimony on this point, an instruction be given to the jury that their testimony is limited to the issue of scienter and should not be relied on for purposes determining efficacy due to the deficiencies Plaintiffs detailed in their *Daubert* Motion.

### III. DEFENDANTS DO NOT DISPUTE THAT BALLARD (1984) DOES NOT SUPPORT BORTH'S OPINION

Defendants do not dispute that Ballard (1984) does not support Dr. Borth's opinion that the repellers are effective, but rather argue that "Dr. Borth is not relying on Ballard (1984) for the proposition that the Bell + Howell Ultrasonic Pest Repellers affirmatively works to repel

5

cockroaches." Opp. at 12.  Instead, Defendants claim that "Dr. Borth's reference to Ballard (1984) in his report was in conjunction with a general opinion regarding the relationship between decibel and frequency and ultrasound's effect on insects." This argument is incoherent and Defendants do not elaborate or explain what "general opinion" they are talking about.

In fact, Dr. Borth testified that he based his opinion that the repellers are effective in part upon this study. *See* Kopel Decl. Ex. 1, Borth Dep. at 73:23-74:1 ("Q: And these seven sources are what you are basing your opinion on that these devices do repel pests; correct? A: In part, yes."). He said the same in his expert report. *Id.* Ex. 3, Borth Report at 20 (stating that Ballard (1984) "show[s] that ultrasonic pest repellers repel insect pests under the conditions in which the devices were tested. The fact that they have been shown to repel insect pests, by definition, means that they are not 'ineffective.'").

Defendants cannot have it both ways. They should not be permitted to tell the Court that Dr. Borth is not making certain opinions when Borth's testimony is the exact opposite. And if Defendants are correct that Dr. Borth is not using this study to show that the repellers are effective, they have not coherently explained any admissible purpose for testimony regarding this study. At minimum, this testimony is inadmissible under Fed. R. Evid. 403 as members of the jury are likely to believe it is being offered to show the efficacy of the Bell + Howell devices.

Finally, Defendants argue that "Plaintiffs … have inappropriately attributed the conclusion that there was 'no evidence of repulsion' to the Ballard (1984) study" because this conclusion was "ascribed to Ballard (1984) by a separate study." Opp. at 13.  That is wrong. The same authors, R.E. Gold and T.N. Decker, wrote both of the referenced studies in the same year, and both studies referred to the same experiment they conducted. *See* Kopel Decl. Ex. 8 (Gold 1984) ("[T]here was no evidence that either control or repulsion of German cockroach

populations occurred as a result of ultrasound (Ballard et al. 1984)"). Thus Dr. Borth's opinions regarding this study are completely at odds with the studies' own authors. *See Huss v. Gayden*, 571 F.3d 442, 459 (5th Cir. 2009) ("It is axiomatic that causation testimony is inadmissible if an expert relies upon studies or publications, the authors of which were themselves unwilling to conclude that causation had been proven."). This testimony must therefore be precluded.

## IV. DR. WHITFORD'S TRANSONIC PRO STUDY IS UNRELIABLE

In Plaintiffs' *Daubert* motion, Plaintiffs argued that "Dr. Whitford's Transonic Pro study is an improper basis [for] his opinions concerning the Bell + Howell devices for two reasons:" (1) "there was no control performed" and (2) "the Transonic Pro emits sonic and ultrasonic sound waves, whereas the Bell + Howell devices only emit ultrasonic sound waves." Plaintiffs' *Daubert* Motion at 18.

In their opposition, Defendants do not argue that a proper control was used, but instead argue that this is an issue which goes to the weight, rather than admissibility of the evidence. Opp. at 14. Defendants did not address the authority cited by Plaintiffs stating that a lack of control is a proper grounds for exclusion, including one decision which excluded an expert's study of the efficacy of the Bell + Howell repellers because he "failed to use a 'control' to determine the ability of the devices to repel ants." *See Steigerwald v. BHH, LLC*, 2016 WL 6962593, at *7 (N.D. Ohio Nov. 29, 2016). Instead, Defendants cite *Deutsch v. Novartis Pharms. Corp.*, 768 F. Supp. 2d 420, 438 (S.D.N.Y. 2011), in which the court declined to preclude expert testimony based on a non-controlled study. Opp. at 14. But in *Deutsch*, the court permitted the use of the non-controlled study due to "the difficultly in performing a randomized controlled … study, and the dispute among the various experts with regard to the importance of controlling for certain factors." 768 F. Supp. 2d at 430. Here, however, there were no unique difficulties with performing a controlled study, and even Defendants' expert

7

witnesses agree on the importance of an untreated control when testing for the efficacy of ultrasonic devices. *See* Kopel Decl. Ex. 10, Borth B&D Dep. at 198:1-4 ("[W]ithout a control to compare to, you cannot say with certainty that any of the results are due to the treatment"); *Id.* Ex. 2, Whitford Dep. at 92:12-16 ("[Y]ou have to have a control" because "without a control, as a matter of science, the data from a study is meaningless.").

Defendants also argue that any sonic emissions from the Transonic Pro are "accidental," and that the Bell + Howell devices "would also be capable of producing sonic sound accidentally." Opp. at 14-15. Defendants are wrong for several reasons. First, Dr. Whitford's Transonic Pro Study indicates that the "unit was set to the 'medium' volume." Kopel Decl. Ex. 14, Study Design Section. For this setting, the Transonic Pro instructions indicate that it emits "a variety of sonic sounds." Kopel Decl. Ex. 16 (Transonic Pro Instructions). At his deposition, Dr. Whitford said that his Transonic Pro Study was incorrect, and that he personally remembered using the unit on the "quiet" setting nine years earlier. *See* Kopel Decl. Ex. 2, Whitford Dep. at 93:10-13. But even on "quiet," the Transonic Pro Instructions state that at that setting the unit emits "sounds that are *primarily* ultrasonic," indicating that they were not solely ultrasonic. *See* Kopel Decl. Ex. 16 (Transonic Pro Instructions); *see also id.* Ex. 2, Whitford Dep. at 65:4-9 ("Q: Okay. Would you agree with me that the word primarily would mean for the most part or mainly? A: That its meaning."). Dr. Whitford speculated that the word "primarily" might have been superfluous. *See id.* at 65:16-19 ("We often use words in our sentences … which don't really have a substantive place in what we're trying to say. Think of our president."). But Whitford never actually saw test results confirming his hunch. *Id.* at 67:1-8 ("Q: And you've not seen test results indicating whether or not sonic sound is present at the quiet setting, have you? … A: … I probably have not seen that."). Meantime, Defendants' speculation the Bell +

Howell devices could produce sonic sounds accidentally are contrary to testing done by Dr. Mankin and Defendants themselves which showed the sound emissions to be solely within the ultrasonic (and not sonic) frequency range. *See* Kopel Decl. Ex. 8, Potter Report ¶ 22; *id.* Ex. 27 (Bates No. 2959 – showing frequency levels for Bell + Howell devices).

## V. DR. BORTH'S OPINIONS ON CONSUMER UNDERSTANDING ARE INADMISSIBLE

In their *Daubert* Motion, Plaintiffs argued that any testimony by Dr. Borth that consumers would not understand the term "Drive Pests Out" to mean "drives pests out of the house" would be inadmissible for three reasons. First, Dr. Borth is unqualified to provide any opinions on consumer understanding. Second, Dr. Borth never spoke to a single consumer about their understanding of the phrase. And third, Dr. Borth explicitly testified that he thought this *was* a reasonable interpretation. *See Daubert* Motion § IV.A. Defendants' responses to each of these points are unconvincing.

First, Defendants argue that Dr. Borth is qualified because he had a role in writing labels for pesticide products in a prior job. Opp. at 15-16. That is wrong.  Dr. Borth never wrote a single label on a product used by non-professional, lay consumers. *See* Kopel Decl. Ex. 1, Borth Dep, at 19:24-20:3 ("Okay. So do you know for certain whether or not any claims that appeared on a packaging marketed to nonprofessionals were ever written or reviewed by you personally. A: I could not give you an example."). And even if true, Defendants do not explain why that would qualify him as an expert on consumer understanding.

Second, Defendants argue that Dr. Borth should be permitted to provide opinions despite not speaking with any consumers because his opinion "does not go to the truth or falsity of the claim and what actual consumers experienced when using the product, but instead to what consumers can reasonably understand the product's claim to be." Opp. at 16 (citing no

9

authority). That is wrong. Dr. Borth has provided no data or basis whatsoever for any opinions other than pure say-so. "[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the ipse dixit of the expert." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

Finally, Defendants argue that Dr. Borth submitted an errata sheet changing his testimony. Kopel Decl. Ex. 1, Borth Dep. at 46:19-25("Q: Do you think it … is unreasonable for a consumer to understand drives pets out to mean drives pests out of the house? A: ~~I do not.~~ I do. Q: You think that is a reasonable interpretation? A: ~~I sure do.~~ I do not."). This was not a legitimate use of Fed. R. Civ. P. 30(e)(1). It was a transparent use of gamesmanship by Defense counsel to change Dr. Borth's unambiguous testimony to suit their purposes.

## VI.    DR. BORTH'S OPINIONS ON OTHER MATTERS ARE INADMISSIBLE

Plaintiffs' *Daubert* Motion also seeks to preclude Dr. Borth's purported opinions on various topics unrelated to entomology and which are irrelevant to the case. *Daubert* Motion § IV.B. Defendants do not explain the relevance of these opinions, nor do they explain why expert testimony is necessary for opinions which Dr. Borth has stated are based on his "common sense" rather than any specialized knowledge. *See id.* Instead Defendants conclusorily argue that Dr. Borth is qualified to render these opinions because he is an expert "in a field closely related to the subject matter." Opp. at 18. But Defendants do not explain what entomology has to do with Dr. Borth's opinions which are as varied as whether Plaintiffs' behavior indicates that they were "satisfied" with the product, and whether product instructions were easy for consumers to understand. Finally, Defendants argued that Dr. Borth's opinions were not legal conclusions. Opp. at 19. But Dr. Borth testified otherwise. *See* Kopel Decl. Ex. 1, Borth Dep. at 24:8-13 ("Q: … Would you agree that that's something that would be at least potentially governed by applicable law? A: I think – yes, I would think so.").

Dated: April 23, 2018                               Respectfully submitted,

**BURSOR & FISHER, P.A.**

By:     */s/ Yitzchak Kopel*
       Yitzchak Kopel

Scott A. Bursor
Joshua D. Arisohn
Yitzchak Kopel
888 Seventh Avenue
New York, NY 10019
Telephone: (212) 989-9113
Facsimile: (212) 989-9163
Email: scott@bursor.com
       jarisohn@bursor.com
       ykopel@bursor.com

*Class Counsel*

11