UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOANNE HART and SANDRA BUENO, on behalf of themselves and all others similarly situated,<br><br>               Plaintiffs,<br>   v.<br><br>BHH, LLC d/b/a Bell + Howell and VAN HAUSER LLC<br><br>               Defendants. | Civ. No. 1:15-CV-04804-WHP |

**REPLY IN SUPPORT OF PLAINTIFFS'
MOTION TO PRECLUDE THE REBUTTAL EXPERT
<u>TESTIMONY OF STEFAN BOEDEKER</u>**

Dated: April 23, 2018

                                                       **BURSOR & FISHER, P.A.**

                                                        Scott A. Bursor
                                                        Joshua D. Arisohn
                                                        Yitzchak Kopel
                                                        888 Seventh Avenue
                                                        New York, NY 10019
                                                        Telephone: (212) 989-9113
                                                        Facsimile: (212) 989-9163
                                                        Email:  scott@bursor.com
                                                                     jarisohn@bursor.com
                                                                     ykopel@bursor.com

                                                        *Class Counsel*

**TABLE OF CONTENTS**

**PAGE(S)**

INTRODUCTION .................................................................................................................. 1

I. BOEDEKER'S OPINIONS ON THE EFFECTIVENESS OF THE
   REPELLERS ARE IMPROPER.................................................................................. 2

II. BOEDEKER'S OPINIONS ARE UNRELIABLE ........................................................ 5

   A. Boedeker's Regression Analysis Is Fundamentally Flawed ................................ 5

   B. Boedeker's Testimony About Weir's Average Price Calculation Is
      Fundamentally Flawed ........................................................................................ 6

III. WEIR'S SUPPLEMENTAL DECLARATION WAS PROPER ...................................... 7

i

# TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Carter v. Greenbrier Rail Servs.*,
  2012 WL 1666434 (D. Kan. May 11, 2012) .............................................................................. 7

*Equant Integrations Servs., Inc. v. United Rentals (N. Am.), Inc.*,
  217 F.R.D. 113 (D. Conn. 2003) ............................................................................................... 9

*In re Digital Music Antitrust Litig.*,
  321 F.R.D. 64 (S.D.N.Y. 2017) ................................................................................................. 8

*In re Lehman Bros. Holdings Inc.*,
  445 B.R. 143 (Bankr. S.D.N.Y. 2011) ...................................................................................... 5

*In re Rezulin Prods. Liab. Litig.*,
  369 F. Supp. 2d 398 (S.D.N.Y. 2005) ...................................................................................... 5

*Jasso v. Citizens Telecommunications Co. of CA*,
  2007 WL 2221031 (E.D. Cal. July 30, 2007) ........................................................................... 9

*Pharmanetics, Inc. v. Aventis Pharm., Inc.*,
  2005 WL 6000369 (E.D.N.C. May 4, 2005) ........................................................................ 4, 5

*Sandata Techs., Inc. v. Infocrossing, Inc.*,
  2007 WL 4157163 (S.D.N.Y. Nov. 16, 2007) .......................................................................... 8

*Sbarra v. Port Auth. of New York & New Jersey*,
  2011 WL 4344078 (S.D.N.Y. Sept. 9, 2011) ............................................................................ 9

*Soldo v. Sandoz Pharm. Corp.*,
  244 F. Supp. 2d 434 (W.D. Pa. 2003) ....................................................................................... 7

**RULES**

Fed. R. Civ. P. 26(a)(2)(B) ............................................................................................................ 7

Fed R. Civ. P.  26(a)(3) ................................................................................................................. 7

Fed. R. Civ. P. 26(a)(2)(E) ........................................................................................................ 2, 7

Fed. R. Civ. P. 26(e) .................................................................................................................. 2, 7

Fed. R. Civ. P. 26(e)(2) ............................................................................................................. 7, 8

Fed. R. Evid. 702 ................................................................................................................. 5

**OTHER AUTHORITIES**

*Reference Guide on Estimation of Economic Damages*,
   2011 WL 7724259 ........................................................................................................... 3

*Reference Manual on Scientific Evidence* (3d ed.) ........................................................... 3

**INTRODUCTION**

Defendants are unable to defend the proposed testimony of their rebuttal expert, Stefan Boedeker. Despite the fact that he is supposedly rebutting the testimony of Plaintiffs' damages expert, Colin B. Weir, Mr. Boedeker seeks to testify on the effectiveness of the Repellers at issue, something that Mr. Weir does not opine on at all. Defendants attempt to justify the exceedingly broad scope of Mr. Boedeker's rebuttal by arguing that Mr. Weir should have considered the possibility that Plaintiffs will not succeed in demonstrating that the Repellers are ineffective and worthless as they allege. But this is nonsensical. Mr. Weir was correct to assume, as damages experts always do, that Plaintiffs will succeed in proving their case. There is no reason that he should have considered a scenario in which Plaintiffs lose on the merits and his failure to do so does not permit Mr. Boedeker to present rebuttal testimony that has nothing to do with damages.

Defendants are also unable to defend Mr. Boedeker's fundamentally flawed hedonic regression analysis. Mr. Boedeker used *wholesale* data to calculate *retail* price differences supposedly attributable to different product features. Defendants attempt to justify this slapdash analysis by referring to it merely "high level." But, even at a "high level," it is fundamentally unreliable given the disconnect between retail and wholesale pricing for the Repellers. Defendants also argue that Mr. Boedeker used the best data available. But this is also untrue. In fact, Mr. Boedeker notes in his own report that he relied upon (and thus presumably possessed) retail sales data. He has no excuse for ignoring that data when carrying out his analysis.

Defendants also try to defend Mr. Boedeker's fundamental misunderstanding of Mr. Weir's average price calculation by arguing that he did not have all of Mr. Weir's data. But if Mr. Boedeker did not know how Mr. Weir calculated the average prices for the Repellers, it is difficult to understand how he can present reliable expert testimony rebutting Mr. Weir's

1

calculations at all.  In any event, Mr. Boedeker had all of the information that he needed to review Mr. Weir's work.  All of Mr. Weir's calculations were in his working papers which were produced to Defendants.

Finally, Defendants attempt to distract the Court from the issues raised in this motion by arguing that Mr. Weir has submitted untimely declarations that prejudiced them or that excuse the flaws in Mr. Boedeker's report.  Not only is it procedurally improper to raise this argument in an opposition to a *Daubert* motion, but the argument is also meritless.  Mr. Weir had a duty under Federal Rule of Civil Procedure 26(a)(2)(E) and 26(e) to supplemental his expert report with new information.  Here, Plaintiffs obtained additional retail sale information after Mr. Weir's initial report and, accordingly, Mr. Weir supplemented his report by recalculating the damages figures with this new data.  His supplemental report contained no new analysis and did not address Mr. Boedeker report at all.  His declaration in support of this motion is also entirely proper.

For all of these reasons, and those set out in Plaintiffs' moving papers, Mr. Boedeker's proposed expert testimony and report should be stricken in whole or in part.

## ARGUMENT

### I.  BOEDEKER'S OPINIONS ON THE EFFECTIVENESS OF THE REPELLERS ARE IMPROPER

Defendants attempt to defend Mr. Boedeker's opinions on the effectiveness of the repellers by arguing that such testimony is directed at "Mr. Weir's assumptions and theory of damages."  Opp'n at 5.  But this response does not justify permitting Mr. Boedeker to present rebuttal testimony on a topic that Mr. Weir never addressed in the first place.  Otherwise, any expert opinion providing a damages model would be subject to collateral attack by arguing the merits of liability.  The scope of such rebuttal testimony would be limitless.

2

Notably, Defendants concede that Mr. Boedeker provides "testimony regarding evidence of the products' effectiveness" even though that is not a topic that Mr. Weir addresses in this case. Opp'n at 7. Instead, they argue that Mr. Boedeker's opinions on the effectiveness of the Repellers is appropriate rebuttal testimony because he uses it to "challenge Mr. Weir's failure to consider the possibility that Plaintiffs may not succeed on a theory of full compensatory damages." Opp'n at 6. But, as set out in Plaintiffs' moving brief, any calculation of damages necessarily starts with the assumption that Plaintiffs will be able to demonstrate liability. Reference Manual on Scientific Evidence (3d ed.), Reference Guide on Estimation of Economic Damages, 2011 WL 7724259, at 429 ("Damages quantification operates on the premise that the defendant is liable for damages from the defendant's harmful act."); *id.* at 432 ("The first step in a damages study is the translation of the legal theory of the harmful event into an analysis of the economic impact of that event."); *id.* ("In almost all cases, the damages expert proceeds on the hypothesis that the defendant committed the harmful act and that the act was unlawful. Accordingly, throughout this discussion, we assume that the plaintiff is entitled to compensation for losses sustained from a harmful act of the defendant."). Mr. Weir thus followed standard practice in assuming that Plaintiffs will demonstrate that the Repellers and ineffective and worthless.[1]

But even if Mr. Boedeker were correct that Mr. Weir should have considered other measures of damages, it would do nothing to excuse his opinions on the effectiveness of the Repellers, something that Mr. Weir does not opine on at all. Mr. Boedeker's rebuttal testimony could have focused on different types of damages models that could apply. Instead, Mr.

---

[1] Defendants also argue that Mr. Boedeker should be permitted to testify about the effectiveness of the Repellers because it is somehow relevant to "Mr. Weir's failure to modify his starting hypothesis for full compensatory damages. . . ." Opp'n at 8. This argument is rehash of the previous one and fares no better.

3

Boedeker launched into a detailed analysis of the Whitford or Borth reports and the statistical significance of various tests, topics all far afield from Mr. Weir's damages calculations. And the reason for this is apparent: Defendants are engaging in a back-end attempt to bolster their already questionable testimony on the effectiveness on the Repellers. But a rebuttal report is not the appropriate way to present such opinions. The fact remains that Mr. Weir is not presenting any opinions on the effectiveness of the Repellers and Mr. Boedeker's opinions on that point—opinions he is not even qualified to provide—go far beyond any of the testimony of Mr. Weir. Accordingly, it cannot be considered proper rebuttal testimony and should be stricken.

Citing *Pharmanetics, Inc. v. Aventis Pharms., Inc.*, 2015 U.S. Dist. LEXIS 45768, *27 (E.D.N.C. 2015),[2] Defendants argue that "where a plaintiff succeeds on some, but not all of its theories of liability, failure to adjust for the alterative theories may render a damages model unreliable." Opp'n at 7. But in *Pharmanetics*, the damages expert was excluded because his model "assume[d] that defendant is liable for the actions alleged in all of plaintiff's causes of action," including claims that had already been dismissed. *Id.* at *9. The court in *Pharmanetics* also relied on the fact that "the damages model incorrectly assume[d] that defendant's actions [were] the cause of all of plaintiff's lost sales." *Id.* Here, however, Mr. Weir provides three different damages model based on the three remaining causes of actions and classes. In addition, there is no question that any loss to class members was caused solely by Defendants. As such, *Pharmanetics* is not applicable and it does not to excuse Mr. Boedeker's testimony on the effectiveness of the Repellers.

---

[2] Presumably, this citation refers to *Pharmanetics, Inc. v. Aventis Pharm., Inc.*, 2005 WL 6000369, at *9 (E.D.N.C. May 4, 2005).

4

## II. BOEDEKER'S OPINIONS ARE UNRELIABLE

### A. Boedeker's Regression Analysis Is Fundamentally Flawed

Defendants acknowledge that "[t]he purpose of Mr. Boedeker's hedonic regression analysis . . . was not to present a perfect model for hedonic regression in this case." Opp'n at 2. Defendants also concede that "Mr. Boedeker used wholesale data" to conduct his regression analysis, and they do not even attempt to challenge Plaintiffs' argument that wholesale sales data is essentially irrelevant for determining market pricing for various product features. Opp'n at 13. Instead, they attempt to justify Mr. Boedeker's shoddy hedonic regression analysis by arguing that it is simply meant to be a "high level" inquiry using the best data available. *Id.* But Mr. Boedeker's desire to present a "high level" regression does not change the fact that his analysis is fundamentally unreliable and therefore inadmissible.

Defendants argue that Mr. Boedeker properly used wholesale data to determine the difference in *retail* prices because he "used the best available data." Opp'n at 13. But that is not true. Exhibit B to Mr. Boedeker's report lists "Documents Reviewed and Relied Upon" and lists retail sales data that the Parties obtained from Dr. Leonard's, Family Dollar, Harriet Carter, HSN and Walmart. Kopel Decl. Ex. 26, Boedeker Rpt. Ex. B. Accordingly, the best data available for Mr. Boedeker's hedonic regression analysis would have been this retail sales data, not the wholesale figures that he relied upon. Mr. Boedeker's testimony regarding his regression analysis should be stricken on this ground alone. Fed. R. Evid. 702 (expert testimony must be "based on sufficient facts or data"); *In re Rezulin Prods. Liab. Litig.*, 369 F. Supp. 2d 398, 425 (S.D.N.Y. 2005) (rejecting expert testimony where the plaintiff's experts "ignored a large amount of information that call[ed] many aspects of" their theory into question, and explaining that "any theory that fails to explain information that otherwise would tend to cast doubt on that theory is inherently suspect"); *In re Lehman Bros. Holdings Inc.*, 445 B.R. 143, 185-86 (Bankr. S.D.N.Y.

2011) (expert opinion is unreliable and not based on sufficient facts and data when the expert makes "no attempts to reconcile his view . . . with a number of real world events" and "fail[s] to acknowledge and account for these events.").

Defendants also argue that Mr. Boedeker's faulty hedonic regression is somehow justified because it is meant to challenge Mr. Weir's assertion "that prices for the repellers with and without additional features did not vary enough to warrant hedonic analysis." Opp'n at 12. But this does nothing to change the fact that Mr. Boedeker's analysis is unreliable because he used irrelevant data for his analysis. In addition, while the stated purpose of Mr. Boedeker's analysis was to show that there were differences in prices, his data show precisely the opposite. According to Mr. Boedeker's own analysis, almost none of the products with extra features cost more than those without, and some even cost less. Defendants do not even bother to address this central point. Instead, they seek to excuse Mr. Boedeker based on the fact that he did "not conduct a complete analysis, but instead a high level" one. Opp'n at 13. This does nothing to change the fact that his hedonic regression analysis is wholly unreliable because it is based on insufficient data and not supported by the data that Mr. Boedeker did use.

### B. Boedeker's Testimony About Weir's Average Price Calculation Is Fundamentally Flawed

Mr. Boedeker's proposed testimony on Mr. Weir's average price calculations suffer from the same fundamental flaws. Defendants essentially concede that Mr. Boedeker misunderstood how Mr. Weir carried out his average price calculations. Their excuse for this is that "Mr. Weir's exact methods and reliance data was unknown to Mr. Boedeker. . . ." Opp'n at 15-16. But this is wrong. All of Mr. Weir's calculations were included in his working papers which were made available to Mr. Boedeker and which he even considered in his analysis. More concerning, though, is the fact that Mr. Boedeker undertook to criticize Mr. Weir's average price

6

calculations without even understanding them.  Indeed, Mr. Boedeker admitted at his deposition that he did not know what data Mr. Weir used to make such calculations.  Kopel Decl. Ex. 21, Boedeker Dep. 131:5-25.  Yet, this did not stop Mr. Boedeker from leveling criticisms against Mr. Weir for what he assumed (incorrectly) Mr. Weir did.  Criticism like this, based entirely on supposition and guess work, rather than the evidence at hand, is improper for an expert testimony.  *Soldo v. Sandoz Pharm. Corp.*, 244 F. Supp. 2d 434, 557 (W.D. Pa. 2003) (rejecting experts' opinions as merely "educated guesses dressed in evening clothes"); *Carter v. Greenbrier Rail Servs.*, 2012 WL 1666434, at *2 (D. Kan. May 11, 2012) ("the Court should not accept guesses or speculation of an expert as reliable").  Such testimony will serve only to confuse the jury, not to help them understand the issue.

### III.   WEIR'S SUPPLEMENTAL DECLARATION WAS PROPER

Defendants argue that Plaintiffs are attempting "to discredit Mr. Boedeker's expert opinion and testimony by offering . . . untimely supplemental and rebuttal reports" by Mr. Weir.  Opp'n at 3.  This is incorrect.  Mr. Weir's supplemental report is entirely proper and, even if it were untimely (which it is not), that would do nothing to cure the substantial problems with Mr. Boedeker's report and proposed testimony.

Fed. R. Civ. P. 26(a)(2)(E) provides that "[t]he parties must supplement [expert] disclosures when required under Rule 26(e)."  Rule 26(e), in turn, provides the following:

> For an expert whose report must be disclosed under Rule 26(a)(2)(B), the party's duty to supplement extends both to information included in the report and to information given during the expert's deposition.  Any additions or changes to this information must be disclosed by the time the party's pretrial disclosures under Rule 26(a)(3) are due.

Fed. R. Civ. P. 26(e)(2).  Here, Mr. Weir stated clearly in his Supplemental Declaration that he was providing an update on his damages calculation based on newly received sales information:

7

> Since my previous Declaration, Counsel for Plaintiffs has obtained additional data from third-party retailers that can be used to apportion nationwide sales of Bell + Howell Pest Repellers across proposed single and multistate Classes. . . . [G]iven that the additional customer purchase records only serve to improve the accuracy of my sales analysis, I have updated the analysis to reflect this new data.

Weir Supp. Decl. ¶ 2. In his Supplemental Declaration, Mr. Weir makes no mention of Mr. Boedeker or Mr. Boedeker's criticisms. Nor does the Supplemental Declaration contain any change in, or defense of, Mr. Weir's previous methodology or any new opinions. It is simply an update of the calculations that Mr. Weir previously performed, using the exact same methodology, but with the addition of the newly acquired sales information. Accordingly, Defendants' contention that Mr. Weir's Supplemental Declaration is an improper rebuttal report, or that they have somehow been prejudiced, is incorrect. Rather, Mr. Weir's supplemental report represents precisely the kind of "additions or changes" that parties have a *duty* to make under the Federal Rules. Rule 26(e)(2). In addition, because the parties' pretrial disclosures are not yet even scheduled, Mr. Weir's Supplemental Declaration was timely.[3]

*Sandata Techs., Inc. v. Infocrossing, Inc.*, 2007 WL 4157163 (S.D.N.Y. Nov. 16, 2007), is inapposite. There, the defendant argued that it was justified in serving supplemental reports, but the "new" information that the expert relied upon was the deposition testimony of plaintiff's experts, and the reports themselves were comprised almost entirely of "response to various

---

[3] Mr. Weir's declaration in support of this motion was also entirely proper. *In re Digital Music Antitrust Litig.*, 321 F.R.D. 64, 78 (S.D.N.Y. 2017) ("Plaintiffs cite no authority that would prevent Defendants from supporting a *Daubert* motion to exclude the opposing side's expert with a declaration from their own expert witness."). Defendants' argument that they are prejudiced by this declaration is incorrect. This declaration was submitted solely for purposes of this motion and does not change in any way the scope of the testimony that Mr. Weir intends to present at trial. In addition, Defendants' contention that Mr. Boedeker was not "able to respond to the untimely criticisms of his opinions" does not hold up. Defendants could have had Mr. Boedeker submit a declaration in support of their opposition to this motion, but they chose not to do so.

assertions made by [the plantiff's] expert." *Id.* at *5.  Here, on the other hand, Mr. Weir's Supplemental Declaration is based on new sales information from third-party retailers in response to subpoenas that were served months earlier and the supplement does not address the opposing party's rebuttal report at all.[4]

Of course, it is procedurally improper for Defendants to raise these issues in their opposition to a *Daubert* motion.  *Sbarra v. Port Auth. of New York & New Jersey*, 2011 WL 4344078, at *8 (S.D.N.Y. Sept. 9, 2011) ("Plaintiffs did not file a notice of cross motion; instead they seek that relief on the cover of their memorandum of law filed in opposition to defendants' motion. As already discussed, the cross motion is procedurally improper and is denied on that basis and without regard to its merits."); *Jasso v. Citizens Telecommunications Co. of CA*, 2007 WL 2221031, at *2 (E.D. Cal. July 30, 2007) ("It appears from plaintiffs' opposition papers that they again request the court to remand this action to state court. The request is procedurally improper. It is buried in plaintiffs' opposition to the motion to dismiss, and not made by separate motion.").  If Defendants wanted some sort of relief from the Court regarding Mr. Weir's declarations, they should have filed made a separate motion, but they have not.  And the reality is that none of this has any relevance to the present motion.  Even if Mr. Weir's Supplemental Declaration was somehow improper or untimely, it would not change the fact that Mr. Boedeker seeks to provide improper rebuttal testimony.  It would not change the fact that his opinions on the effectiveness of the Repellers do not rebut any of Mr. Weir's opinions.  It would not change the fact that Mr. Boedeker's regression analysis is wholly unreliable.  And it would not change the fact that that Mr. Boedeker's criticism of Mr. Weir is inherently unreliable because it is based

---

[4] In *Equant Integrations Servs., Inc. v. United Rentals (N. Am.), Inc.*, 217 F.R.D. 113 (D. Conn. 2003), also cited by Defendants, the party seeking to submit a supplemental report acknowledged that it was intended, at least in part, to rebut the opposing party's expert. *Id.* at 114.  That is not the case here.

on a fundamental misunderstanding of Mr. Weir's average price analysis.

## CONCLUSION

For the reasons set forth above, and in Plaintiffs' opening brief, Plaintiffs respectfully request that the Court grant their Motion To Preclude The Rebuttal Expert Testimony Of Stefan Boedeker and strike the testimony of Stefan Boedeker either in whole or in part.

Dated: April 23, 2018

Respectfully submitted,

**BURSOR & FISHER, P.A.**

By: _/s/ Yitzchak Kopel_
      Yitzchak Kopel

Scott A. Bursor
Joshua D. Arisohn
Yitzchak Kopel
888 Seventh Avenue
New York, NY 10019
Telephone: (212) 989-9113
Facsimile: (212) 989-9163
Email: scott@bursor.com
       jarisohn@bursor.com
       ykopel@bursor.com

*Class Counsel*