IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOANNE HART and SANDRA BUENO, on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> BHH, LLC d/b/a BELL + HOWELL, and VAN HAUSER, LLC, <br><br> Defendants. | CASE NO. 1:15-cv-04804-WHP <br><br> JUDGE WILLIAM H. PAULEY <br><br> **DEFENDANTS' REPLY MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO PRECLUDE THE EXPERT TESTIMONY OF PLAINTIFFS' PROFFERED EXPERT WITNESS, MICHAEL F. POTTER** |

# TABLE OF CONTENTS
## DEFENDANTS' REPLY MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO PRECLUDE THE EXPERT TESTIMONY OF PLAINTIFFS' PROFFERED EXPERT MICHAEL F. POTTER

Introduction..........................................................................................................................1

Argument..............................................................................................................................1

I.   Dr. Potter Improperly Invokes Studies of Other Devices............................................1

II.  Dr. Potter Improperly Relies on Plaintiff-Commissioned Testing...............................6

III. Dr. Potter's Opinions Merely Recite Opinions of Non-Testifying
     Experts as His Own......................................................................................................8

Conclusion..........................................................................................................................10

## TABLE OF AUTHORITIES

### FEDERAL CASES

*Amorgianos v. Amtrak,* 303 F.3d 256 (2d Cir. 2002)..........................................................4

*Apple, Inc. v. Motorola, Inc.,* 757 F.3d 1286 (Fed Cir. 2014).............................................9

*Dura Auto. Sys. of Ind., Inc. v. CTS Corp.,* 285 F. 3d 609 (7th Cir. 2002).....................9, 10

*Galoski v. Stanley Black & Decker, Inc.,* 2017 U.S. Dist. LEXIS 80486 (N.D. Ohio 2017)..................................................................................................................................1, 6

*In re Mirena IUD Prods. Liab. Litig* .........................................................................1, 2, 10

*Lee Valley Tools, Ltd. v. Indus. Blade Co.,* 288 F.R.D. 254 (W.D.N.Y. 2013)..................9

*Member Servs. V. Sec. Mut. Life Ins. Co.,* 2010 U.S. Dist. LEXIS 103776 (N.D.N.Y. 2010).....10

*Quiles v. Bradford-White Corp.,* 2012 U.S. Dist. LEXIS 54662 (N.D.N.Y. 2012)...................9

*Steigerwald v. BHH, LLC,* 2016 U.S. Dist. LEXIS 164308 (N.D. Ohio 2016).........................4

*Weitz Co., LLC v. Lloyd's of London,* 2007 U.S. Dist. LEXIS 99478 (S.D. Iowa 2007).............9

### STATUTES

*Federal Rule of Evidence 702*.................................................................................................1

NOW COME Defendants, BHH, LLC d/b/a BELL + HOWELL, and VAN HAUSER, LLC, by and through their counsel, LEAHY, EISENBERG, AND FRAENKEL, LTD., and for their Reply in Support of their Motion to Preclude the Expert Testimony of Plaintiffs' Proffered Expert Witness, Michael F. Potter, pursuant to Federal Rule of Evidence 702, state as follows:

## INTRODUCTION

Defendants' Motion to Preclude the Expert Testimony of Plaintiffs' Proffered Expert Witness should be granted for three reasons. First, Dr. Potter improperly invokes studies that are unreliable and irrelevant. Second, Dr. Potter's improper reliance on tests of the Bell+Howell devices is also unscientific, unreliable and irrelevant. Third, Dr. Potter impermissibly recites conclusions and opinions of other, non-testifying experts as his own. Moreover, Plaintiffs' failure to disclose the entirety of the bases for Dr. Potter's opinions and shielding of non-testifying experts is improper. *See, In re Mirena IUD Prods. Liab. Litig.*, 169 F. Supp. 3d 396, 472 (S.D.N.Y. 2016). Accordingly, Dr. Potter's expert testimony is unreliable, unscientific and irrelevant, and should be precluded.

## ARGUMENT

### I.     Dr. Potter Improperly Invokes Studies of Other Devices.

The essence of Plaintiffs' claim asks whether the Bell+Howell device performed as warranted. Plaintiffs wrongly seek to unduly prejudice the jury by having Dr. Potter introduce the testimony of various "experts" from eighteen cited articles. Plaintiffs, however, have failed to satisfy their burden under Rule 702 by not showing that the opinions expressed in the articles are qualified, reliable and relevant to the issues in this litigation. The proponent of expert testimony has the burden of establishing its admissibility. Fed. R. Evid. 702. It is woefully insufficient to simply argue that the other devices tested had "similar" characteristics to the Bell+Howell

1

device. There is absolutely no evidence concerning the specific warranties made by the manufacturers of those other devices, the goals of the tests conducted, the testing conditions, and the specific limitations imposed. Rather than litigate the claims asserted in Plaintiffs' Complaint (whether the Bell+Howell devices are effective), Plaintiffs seek to confuse the jury by invoking irrelevant studies of other devices.

It is undisputed that none of the articles tested, referenced or pertained to the Bell+Howell Ultrasonic Pest Repellers. *See,* Doc. #142, Ex. 2, ("Potter Deposition"), at 143:19-22. The articles pertain to different devices examined under different conditions and tested against different usages and claims of efficacy which are irrelevant to the Bell+Howell devices. Plaintiffs' attempts to draw comparisons between the devices tested in these articles and the Bell+Howell devices by arguing that the devices have similar, although not identical, frequency and amplitude ranges (Doc. #150, pp. 4-5) is scientifically flawed and not a recognized methodology for reliably determining the efficacy of the specific device at issue in this litigation.

Plaintiffs apparently do not want to litigate the claims Plaintiffs brought against the Bell+Howell devices. Instead, Plaintiffs want to litigate at least 18 other, unknown devices and seek to introduce "opinions" without filling in the huge analytical gaps presented by these articles. "When an expert's testimony is based on 'guesswork, speculation or conjecture,' it should be excluded." *See, In re Mirena,* at 455 (citing *Kakeh v. United Planning Org., Inc.,* 587 F. Supp. 2d 125 (D.D.C. Cir. 2008)). Neither Dr. Potter nor the articles themselves have reliably explained whether the devices tested in the articles consistently operated at the exact same frequency and amplitude levels as the Bell+Howell devices operate, whether the devices were tested against the same usages and claims of efficacy made by the Bell+Howell devices, and whether the testing conditions applied in the articles are consistent with the Bell+Howell product

language and instructions. Contrary to Plaintiffs' characterization, Dr. Paul Borth believes that testing the exact device at issue is more reliable than testing similar devices. *See,* Doc. #140, Ex. 4 ("Borth Deposition"), at 219:24-220:2 ("If you don't have the exact device, that is at issue, then you're going back to inferences and correlations, and it's not as good as having the actual device that's at issue"). Dr. Whitford also testified, as Plaintiffs pointed out, that as long as the frequencies are the <u>same</u> and the decibel levels are the <u>same</u>, he sees no difference. *See,* Doc. #140, Ex. 9 ("Whitford Deposition"), at 201:16-18. Dr. Whitford did not testify that as long as the frequencies are close and the decibel levels are close, there is no difference.

Plaintiffs also criticize Defendants' use of *Koehler, et al. (1986)* as an example of the unreliability of such extrapolation, but Plaintiffs miss the point. The disparate range of frequency and decibel output of the devices tested in the *Koehler* study demonstrates the potential for uncertain and irrelevant results. The *Koehler* study tested devices with a frequency range of 17-71 kHz. *See,* Doc. #150, p. 2 (Chart from Potter Report, table p. 29). Comparing that to the Bell+Howell device's frequency output of 36-40 kHz, common sense tells us that the Bell+Howell device operates in a narrow 5 kHz band, whereas the *Koehler* devices operate in a wider band, eleven times larger than the range of the Bell+Howell device. Plaintiffs are unable to reliably demonstrate that during the duration of the tests, the devices were consistently operating between 36-40 kHz. Similarly, the *Koehler* devices operated in an amplitude range from 51-103 dB compared to the Bell+Howell device's amplitude range of 88-99 dB, a band over four times as narrow. These significant differences in frequency and amplitude ranges are present throughout the articles Dr. Potter relies on and demonstrate the uncertain, speculative nature of this comparison.

Plaintiffs' attempts to distinguish Dr. Potter's testimony from expert testimony in *Steigerwald* and *Galoski* are unconvincing because the courts rejected the same flawed reasoning as Plaintiffs are trying to pass off as reliable science here. Plaintiffs' argument that Dr. Potter's opinion that the devices tested in the articles are similar to the Bell+Howell devices ignores that the *Steigerwald* court did not bar the expert's testimony because the expert could not draw a similar comparison to frequency and decibel, but rather, because the studies did not test the actual Bell+Howell device, no matter how similar the devices tested were. *See, Steigerwald v. BHH, LLC,* 2016 U.S. Dist. LEXIS 164308, at *10-11 (N.D. Ohio 2016) ("None of the articles mentioned the Bell+Howell device"). Similarly, Plaintiffs ignore that the *Galoski* court struck the expert's reliance on studies not just because he could not recall the attributes of the devices tested, but because the attributes were not "identically the same." *Galoski v. Stanley Black & Decker, Inc.,* 2017 U.S. Dist. LEXIS 80486, at *7 (N.D. Ohio 2017) (rejecting the studies even where expert testified Defendant's decibels and frequency were "not unlike" the devices examined in the studies). Like the *Steigerwald* and *Galoski* courts, Dr. Bhadriraju Subramanyam, on whose study Dr. Potter purportedly relied, concluded that "the effectiveness of devices against arthropod pests cannot be ascertained without testing specific ultrasonic units." *See,* Doc. #151, Ex. 50, Subramanyam (2003), at slide 101. To assume otherwise would be to base an opinion on unreliable data and methodology and create too large an analytical gap. "When an expert opinion is based on data, a methodology, or articles that are simply inadequate to support the conclusions reached, *Daubert* and Rule 702 mandate the exclusion of that unreliable opinion testimony." *Amorgianos v. Amtrak,* 303 F.3d 256, 266 (2nd Cir. 2002).

Even accepting that comparisons can reliably be drawn where known frequency and amplitude ranges overlap (which they cannot), in eight of the eighteen articles relied on by Dr.

4

Potter, either the frequency, amplitude, or both are unknown. By Plaintiffs' own admission, *Ballard & Gold (1983), Ballard, et al. (1984), Gold (1995), Decker, et al. (1989), Warner and Scheffrahn (2005), Meehan (1976), Howard and Marsh (1985)* and *Lund (1984)* all tested devices that cannot be reliably compared to the Bell+Howell device because the frequency and amplitude output was unknown to Dr. Potter. *See,* Doc. #150, p. 2 (Chart from Potter Report, table p. 29). At the very least, Dr. Potter should be precluded from relying on these eight articles.

Plaintiffs also argue, as they must in order to meet their burden, that studies have "unanimously" demonstrated no repellent effects of ultrasound. Doc. #150 at p. 9. However, Plaintiffs base this assertion solely on the characterizations by their retained expert, Dr. Potter, and provide a chart which includes Dr. Potter's "Failed" label attributed to each study. However, not all reasonable scientists agree on Dr. Potter's characterization of the study results. Assuming Plaintiffs would not consider Defendants' experts reasonable (which they are),[1] Dr. Subramanyam also disagrees with Dr. Potter's characterizations. In his seminar presentation, Dr. Subramanyam included a chart similar to Dr. Potter's chart. *See,* Subramanyam (2003), at Slide 21. In evaluating some of the same cockroach studies Dr. Potter evaluated, Dr. Subramanyam characterizes the results of *Ballard (1984)* as effective, and *Ballard & Gold (1983)* and *Gold (1984)* as inconclusive. *Id.* Certainly Plaintiffs would agree that Dr. Subramanyam is considered a respected scientist in his field since they cite to several journal articles he co-authored. *See also,* Borth Deposition, at 235:20-21 ("And Suby - - it's short for Subramanyam - - is respected within the field [of entomology]"). The *Galoski* court also took issue with characterizations of

---

[1] Defendants' expert, Dr. Paul Borth, includes in his rebuttal report a section titled "Rebuttal of unanimous 'Failed' labeling of previous peer-reviewed Test Results." *See,* Borth Rebuttal, at p.15. In this section of his report, Dr. Borth challenges Dr. Potter's characterization of the studies as having unanimously failed by citing to several examples. Similarly, Defendants' rodent expert, Dr. Philip Whitford, criticizes Dr. Potter's characterizations and provides several examples of results of effectiveness on rodents. *See,* Whitford Rebuttal, at p. 3.

5

certain studies that showed that cockroaches moved away from the device, because such a study "certainly does not prove that [the device] had no deterrent effect." *See, Galoski v. Stanley Black & Decker, Inc.,* 2017 U.S. Dist. LEXIS 80486, at *8 (N.D. Ohio 2017).

Conveniently, Dr. Potter included the results of Subramanyam (2003) with regard to Dr. Subramanyam's spider study in his expert report, but did not include Dr. Subramanyam's findings with regard to his cockroach study which concluded "[t]he number of cockroaches in the enclosures with active ultrasonic units were consistently lower than those found in the enclosures with inactive units" and "ultrasound produced from the devices had a marginal effect in repelling cockroaches." *See,* Subramanyam (2003), at Slide 47. The fact that Dr. Potter purportedly relied on Subramanyam (2003) in forming his opinions, yet ignored, perhaps intentionally, the obvious findings in favor of effectiveness, renders Dr. Potter's testimony regarding other studies further unreliable. For all of the foregoing reasons, Dr. Potter's testimony regarding the various articles cited in his report should be excluded.

## II.     Dr. Potter Improperly Relies on Plaintiff-Commissioned Testing

Dr. Potter's opinions are also based on Plaintiff-commissioned tests of the Bell+Howell devices that are also nonscientific, unreliable and irrelevant as they were performed in direct violation of the devices' instructions, intended use, and stated claims of efficacy. Plaintiffs' testing was flawed in its design, methodology and execution, which had an impact on the efficacy of the Bell+Howell repellers. As Dr. Subramanyam concluded, "effectiveness varies with the protocol used". *See,* Subramanyam (2003), at slide 101. Knowing this, Plaintiffs devised a test from the outset that would prove that the Bell+Howell devices do not work:

> Q.     Then you write to them, I'm looking at that last sentence, you write the thing we need to ultimately (hopefully) disprove is the claim that the devices repel and drive pests out of the home. Did I read that

6

>      sentence correctly?
>
> A.   Correct.

Potter Deposition, at 74:16-22.

> Q.   **Is it correct to state though if Robert Corrigan and Sierra Research took your August 17, 2017 e-mail to mean that the goal in this case was to disprove the claim…that would be inappropriate?**
>
> A.   **That would be inappropriate…**

Potter Deposition, at 76:13-19.

Plaintiffs mischaracterize Defendants' criticism of Plaintiffs' testing of the Bell+Howell devices by trying to confine those criticisms to the fact that the tests concerned the devices' effectiveness behind walls and underneath floors. Doc. #150, p. 12. Plaintiffs are correct that their tests prevented pests from getting behind walls and underneath floors (although some pests escaped anyway). Still, Plaintiffs' use of harborage simulated the protection pests would experience behind walls and underneath floors. It makes no difference if Plaintiffs prevented pests from escaping behind walls or underneath floors if they were going to provide comparable alternative protection from the ultrasonic sound waves in the form of provided harborage but count them as unrepelled nevertheless. *See,* Whitford Deposition, 268:21-269:3 ("Let me put it this way: Those apartments…had barriers built up of masonry board all around the outside to limit their movement, to force them to stay within those areas. There was nothing for them to hide under other than the harborages, and part of the test count was to…count the mice inside the [harborage]"). In this sense, Plaintiffs still tested the devices under conditions where the pests were protected from the ultrasonic effects of the devices. This was improper.

Also improper was the use of food in Plaintiffs' testing, both in providing pests with food at all in contravention of stated product instructions, and when they did, in providing it in the

7

room with the repeller only. Dr. Potter agreed that tests should be conducted in accordance with user instructions. *See,* Potter Deposition, at 73:15-21 ("If there are label instructions specifying the manner in which it should be used, you should attempt to evaluate the product in that fashion"). Dr. Potter cannot then reliably opine on the effectiveness of the Bell+Howell device when the product's user instructions for improving efficacy were ignored in the test design. What would have been the results of Plaintiffs' tests if Plaintiffs had followed the Bell+Howell user instructions? We simply do not know because Plaintiffs did not conduct that test. *See,* Potter Deposition at 101:7-8 ("would the results have come out exactly the same, you would have to test it…").

Plaintiffs' primary defense of this improper testing is that they wanted to demonstrate how the Bell+Howell repellers would function in the "real world" and testing in an open space does not accomplish that. Doc. #150, p. 13. But Plaintiffs tests, which prevented pests from escaping, provided artificial harborage, and provided access to food in only one possible location, among other failures, does not simulate a real world environment either. Even if you could define a "real world" environment with a single test protocol or a single test arena, Plaintiffs did not and could not with their testing. In fact, real world testing is rarely done because it is so difficult to achieve. *See,* Doc. # 140, Ex. 8, at 80:9-15. *See also,* Sumbramanyam (2003), at slide 101 ("Most tests are not done under 'real world' conditions"). Claiming a test is designed for the "real world," but providing no scientific or factual basis to support that contention, aside from simply saying expertise is not required to explain what "real world" means is not good science. Doc. #150, p. 14. For the foregoing reasons, the Plaintiff-commissioned tests are flawed and unreliable. Dr. Potter's reliance on them should be excluded.

### III. Dr. Potter's Opinions Merely Recite the Opinions of Non-Testifying Experts as His Own.

8

Plaintiffs have engaged several so-called non-testifying, consulting experts to develop test protocols, conduct tests on the Bell+Howell Ultrasonic Pest Repellers, and to draw conclusions on the results of these tests. Despite these experts' significant involvement, Plaintiffs offer only Dr. Potter who recites the findings of these non-testifying experts rather than providing independent opinion. "An expert report that is merely a conduit for the opinion of a non testifying expert must be excluded." *Lee Valley Tools, Ltd. v. Indus. Blade Co.*, 288 F.R.D. 254, 266 (W.D.N.Y. 2013) (citing *Dura Auto. Sys. Of Ind., Inc. v. CTS Corp.*, 285 F.3d 609, 613 (7th Cir. 2002)). Without access to the authors of these articles to examine the validity of their findings, Dr. Potter's mere recitation of the findings is inadmissible. *See, Quiles v. Bradford-White Corp.*, 2012 U.S. Dist. LEXIS 54662, *26 (N.D.N.Y. 201) ("An expert cannot simply parrot the findings of another arrived at in another context").

In defense of what Dr. Potter has done, Plaintiff's Response cites several cases that are not persuasive because they are inapposite. The non-testifying expert consultants in this case were not assistants working under Dr. Potter's direction and simply carrying out his orders. *See, Weitz Co., LLC v. Lloyd's of London*, 2007 U.S. Dist. LEXIS 99478, *6 (S.D. Iowa 2007) ("it is common practice for an expert to rely on an assistant when researching and formulating opinions and preparing an expert report"); *Dura Auto. Sys. of Ind., Inc. v. CTS Corp.*, 285 F.3d 609, *613 (7th Cir. 2002) (same). Nor is Dr. Potter relying on non-testifying expert consultants to provide him with technical background he does not possess which supports his opinions in an unrelated field. *See, Apple, Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1321 (Fed. Cir. 2014) ("Consistent with Rule 703, patent damages experts often rely on technical expertise outside of their field…All of this information would be outside of [the expert's] expertise, but helpful, if not critical, to his task of valuing the patent"). And did so without himself opining on the reliability of the technical

background provided by the other expert. *See, Dura Auto.*, at *614 (7th Cir. 2002) ("A theoretical economist, however able, would not be allowed to testify to the findings of an econometric study conducted by another economist if he lacked expertise in econometrics and the study raised questions that only an econometrician could answer").

Plaintiffs cannot have their cake and eat it too. Either Dr. Potter is a qualified expert in pest management, including rodents, precluding him from relying on work from a non-testifying expert in the same field, or Dr. Potter is an expert in a separate field who needs assistance from an expert outside of his field to support opinions within his field. It cannot be both. In short, Dr. Potter relies on the work of the non-testifying experts without the independent verification and critical evaluation necessary to ensure he is not merely the mouthpiece for the non-testifying experts. *See, Member Servs. V. Sec. Mut. Life Ins. Co.*, 2010 U.S. Dist. LEXIS 103776, at P91 (N.D.N.Y. 2010) ("While an expert may rely upon another expert to form an opinion under Rule 703, an expert may not merely recite another expert's opinion as his own"). Just as failing to disclose all of the articles relied on by Dr. Potter was improper, Plaintiffs' failure to disclose all of the opinions of non-testifying experts Dr. Potter drew from is improper under *Daubert* and Rule 702. *See, In re Mirena,* at 472 (Allowing expert to testify without having fully disclosed the bases for her opinions is harmful because those opinions cannot be properly cross-examined).

## CONCLUSION

WHEREFORE, Defendants, BHH, LLC d/b/a BELL + HOWELL, and VAN HAUSER, LLC respectfully request that the Court enter an order granting Defendants' Motion to Preclude the Expert Testimony of Plaintiffs' Proffered Expert Witness, Michael F. Potter.

Respectfully submitted,

**E. MISHAN & SONS, INC.**

10

By:     <u>/s/ *Scott Wing*</u>
              One of Its Attorneys

Scott Wing
LEAHY, EISENBERG & FRAENKEL, LTD.
33 West Monroe Street, Suite 1100
Chicago, Illinois 60603
Tel. (312) 368-4554
***Counsel for BHH, LLC, and VAN HAUSER, LLC***

11