UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------

JOANNE HART and SANDRA BUENO, *on behalf of themselves and all others similarly situated*,

      Plaintiffs,

    -against-

BHH, LLC d/b/a BELL + HOWELL and VAN HAUSER LLC,

      Defendants.

------------------------------------------------

15cv4804

OPINION & ORDER

WILLIAM H. PAULEY III, Senior United States District Judge:

  BHH, LLC d/b/a Bell + Howell and Van Hauser LLC (collectively, "BHH") move for summary judgment in this class-action lawsuit for fraud, breach of warranty, and violations of the California Legal Remedies Act ("CLRA"). For the following reasons, BHH's motion is denied, except that the parties are directed to propose subclasses to address the varying statutes of limitations.

## BACKGROUND

  This class-action lawsuit involves ultrasonic pest repellers manufactured and sold by BHH and purchased by Plaintiffs (the "Repellers"). Despite nearly 200 pages of Rule 56.1 statements, this case is simple and the disputed issues of material fact are stark. Plaintiffs claim the Repellers are completely ineffective and that BHH committed fraud. BHH counters that its Repellers are effective under certain circumstances and that nothing in its marketing is fraudulent.

But it is often said that a picture is worth a thousand words. And, in this case, three photographs from a study conducted by Plaintiffs' expert are worth even more.[1]

  

As the photographs show, mice can apparently relax comfortably under a Repeller and even appear to be so drawn in by its siren song that one would scale a wall just to snooze on it. That leaves this Court wondering how BHH can argue that there is no disputed issue of material fact as to efficacy. Further details regarding the Repellers' efficacy can be found in this Court's Opinion & Order dated July 19, 2018. But some background is still warranted.

The crux of this dispute is how effective BHH represented the Repellers to be. Plaintiffs contend that BHH made "3 Common Representations": that the Repellers (1) are ultrasonic pest repellers, (2) repel ants, roaches, spiders, mice, and rats, and (3) will drive pests out of one's home. (See Mem. of Law in Opp. to Defs.' Mot. for Summ. J., ECF No. 149 ("Opp.") at 3; Order dated July 7, 2017, ECF No. 93 ("July 2017 Order") at 15; First Am. Class

---

[1] The word count of these submissions weighs in at over 42,491 words—1,051 in Defendants' initial statement, 17,655 in Plaintiffs' opposition statement, and 23,785 in Defendants' reply statement.

Action Compl., ECF No. 62, ¶ 67.) BHH counters that their disclaimers represented that the Repellers are not completely effective in the presence of furniture, carpeting, and other household objects.

This Court has reviewed numerous examples of the Repellers' packaging. (See Decl. of Yitzchak Kopel, ECF No. 151 ("Kopel Decl.") Ex. 21.) While not all packages are alike, they generally make the same representations. For instance, the packages say "Pest Repeller," "Ultrasonic," and "Plug It In . . . Drive Pests Out!"[2] (See, e.g., Kopel Decl. Ex. 21 at BHH, LLC 006642–44.) They also contain images of various insects and rodents encircled in a "no" symbol. (See, e.g., Kopel Decl. Ex. 21 at BHH, LLC 006642–44.) BHH's catalogue listings contain even more specific language. For instance, one catalogue says the Repellers "help[] rid your home of all kinds of creepy crawlies!" (Kopel Decl. Ex. 22.) Another two claim that you can "[g]et rid of ants, spiders, mice, roaches, rats and other pests." (Kopel Decl. Exs. 23 & 24.)

Some packaging contains a disclaimer, which states:

> Ultrasonic signals will lose intensity as it travels. It is also absorbed by soft objects such as carpeting and is reflected by hard surfaces, such as furniture. Ultrasonic signals cannot reach nesting or feeding places behind walls, under floors, or within cracks. Multiple devices may be necessary for larger rooms.

(See, e.g., Kopel Decl. Ex. 21 at BHH, LLC 006653.)

But whether this disclaimer puts consumers on notice is a jury question. As discussed in this Court's July 2017 Order, Plaintiffs maintain that the Repellers do not work, and BHH does not disclaim all effectiveness. (July 2017 Order at 7.) BHH's motion papers buttress this view: "A reasonable consumer, in the context of [the disclaimer], would understand that ultrasonic technology <u>has limitations</u>, and would expect that the [R]epeller's effectiveness <u>would</u>

---

[2] The ellipsis is included in the packaging. It does not indicate that any words are missing.

3

be reduced" when faced with hard objects or carpeting. (Mot. at 10 (emphases added).) Notably, BHH does not say that all effectiveness would be lost.

Plaintiffs also offer evidence that BHH may have known the Repellers were ineffective before marketing them. For instance, BHH concedes that the Federal Trade Commission ("FTC") issued multiple letters to, and instituted several actions against, manufacturers and retailers of ultrasonic pest repellers, though BHH disputes whether it received these notices. (Defs.' Resp. to Pls.' Statement of Additional Material Facts that Present a Genuine Issue for Trial, ECF No. 157 ("Defs.' Rule 56.1 Resp.") ¶ 33; Kopel Decl. Ex. 30 ("Staff of the Federal Trade Commission's Division of Enforcement today announced that they have sent warning letters to more than 60 manufacturers and retailers of ultrasonic pest-control devices, stating that efficacy claims about those products must be supported by scientific evidence.").) Moreover, Plaintiffs append a cavalcade of studies published before 2011, which they contend demonstrate that ultrasonic repellers are generally ineffective. (See, e.g., Kopel Decl. Exs. 46–51.)

## DISCUSSION

I. Standard

Summary judgment is proper only where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Baez v. JetBlue Airways Corp., 793 F.3d 269, 274 (2d Cir. 2015) (quotation marks omitted). This Court is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."

Cioffi v. Averill Park Cent. Sch. Dist. Bd. of Educ., 444 F.3d 158, 162 (2d Cir. 2006) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986)).

"The party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists . . . ." Rodriguez v. City of New York, 72 F.3d 1051, 1060–61 (2d Cir. 1995). If the moving party meets its burden, "the adverse party must set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 249 (citation and quotation marks omitted). "A party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment," as "[m]ere conclusory allegations or denials cannot by themselves create a genuine issue of material fact where none would otherwise exist." Hicks v. Baines, 593 F.3d 159, 166 (2d Cir. 2010) (citation and alterations omitted). "In determining whether a genuine issue of material fact exists, a court must resolve all ambiguities and draw all reasonable inferences against the moving party." Flanigan v. Gen. Elec. Co., 242 F.3d 78, 83 (2d Cir. 2001).

Moreover, "only admissible evidence need be considered by the trial court in ruling on a motion for summary judgment." Presbyterian Church of Sudan v. Talisman Energy, Inc., 582 F.3d 244, 264 (2d Cir. 2009) (quotation marks omitted). "[N]othing in the rules or the case law requires a court to strike any portion of . . . [a Rule 56] affidavit that is not properly supported. A court may decline to conduct a line-by-line analysis and instead simply disregard the allegations that are not properly supported." Sauerhaft v. Bd. of Educ. of Hastings-on-Hudson Union Free Sch. Dist., 2009 WL 1576467, at *8 (S.D.N.Y. June 2, 2009). As such, where the Court "has not relied upon any evidence submitted that is not supported or admissible," it need not "strike any portions of [either parties'] evidence." Mergers & Acquisition Servs., Inc. v. Eli Glob., LLC, 2017 WL 1157132, at *16 (S.D.N.Y. Mar. 27, 2017).

5

II.     Substantive Claims

Plaintiffs' claims share similar elements. For fraud, Plaintiffs must prove (1) a misrepresentation; (2) knowledge of falsity; (3) intent to induce reliance; (4) justifiable reliance; and (5) resulting damages. Swingless Golf Club Corp. v. Taylor, 732 F. Supp. 2d 899, 908 (N.D. Cal. 2010); Johnson v. Nextel Commc'ns, Inc., 660 F.3d 131, 143 (2d Cir. 2011) ("To state a claim for fraud in the inducement, the party must allege: (i) a material misrepresentation of a presently existing or past fact; (ii) an intent to deceive; (iii) reasonable reliance on the misrepresentation by appellants; and (iv) resulting damages."). "To prevail on a breach of express warranty claim, a plaintiff must prove that the seller: (1) made an affirmation of fact or promise or provided a description of its goods; (2) the promise or description formed part of the basis of the bargain; (3) the express warranty was breached; and (4) the breach caused injury to the plaintiff." Keegan v. Am. Honda Motor Co. Inc., 838 F. Supp. 2d 929, 949 (C.D. Cal. 2012); Segovia v. Vitamin Shoppe, Inc., 2017 WL 6398747, at *5 (S.D.N.Y. Dec. 12, 2017) (similar elements). To prevail on a claim under the CLRA, Plaintiffs must prove that BHH "represent[ed] that goods . . . have . . . characteristics . . . uses, [or] benefits . . . that they do not have," or "advertis[ed] goods . . . with intent not to sell them as advertised." Cal. Civ. Code §§ 1770(a)(5), (9). While § 1770(a)(5) does not contain a state-of-mind requirement, § 1770(a)(9) does.

Simply put, these three claims essentially require a showing that BHH made a representation and that the representation turned out to be false. In addition, one of the CLRA claims and the fraud claim require BHH to have known that its representations were false when made or to have had an intent to sell a product not as advertised.

6

Here, "there is a genuine issue for trial." Anderson, 477 U.S. at 249 (citation and quotation marks omitted). First, the FTC letters and numerous studies cited by Plaintiffs demonstrate that BHH may have been on notice that ultrasonic repellers were generally ineffective. (See Defs.' Rule 56.1 Resp. ¶ 33; Kopel Decl. Ex. 30; Kopel Decl. Exs. 46–51.) Second, as discussed in this Court's July 2018 Order, Plaintiffs vigorously dispute the credibility of BHH's pre-market testing. While this Court declined to preclude testimony from experts who rely on those tests, a rational trier of fact could find that those tests—which BHH knew about before selling its Repellers—demonstrate that BHH's representations and warranties were knowingly false. In other words, while the tests themselves may not have been junk science, their applicability may have been so limited that BHH knew that its representations could not be met. Third, questions of intent are "notoriously inappropriate" for summary judgment. Leberman v. John Blair & Co., 880 F.2d 1555, 1559–60 (2d Cir. 1989) ("[It] is notoriously inappropriate for determination of claims in which issues of intent, good faith and other subjective feelings play dominant roles." (quotation marks and citations omitted)); SEC v. First Jersey Sec., Inc., 101 F.3d 1450, 1467 (2d Cir. 1996); In re Celestica Inc. Sec. Litig., 2014 WL 4160216, at *10 (S.D.N.Y. Aug. 20, 2014).

Finally, BHH's argument that Plaintiffs seek to employ a non-existent "real world effectiveness" standard for breach of warranty is of no moment. Plaintiffs contend that the Repellers do not work at all, even when not blocked by furniture or carpeting. Plaintiffs' arguments regarding the Repellers' "real-world" effectiveness are not at odds with this theory. At bottom, Plaintiffs contend not that there is a "real world" standard of effectiveness, but that BHH sells a product that cannot work in any place it would be used, rendering it completely ineffective.

7

III. <u>Statute of Limitations</u>

BHH sets forth various statute-of-limitations arguments. However, none of those arguments seek to bar claims completely—they merely limit the date from which certain Plaintiffs may recover. Plaintiffs make no counterargument as to whether some of their claims are time-barred. Rather, Plaintiffs argue that subclasses should be created so that this Court can address any time-barred claims separately. BHH agrees.

District courts have discretion to create subclasses in view of statute-of-limitations issues. See <u>Jermyn v. Best Buy Stores, L.P.</u>, 256 F.R.D. 418, 431 (S.D.N.Y. 2009); Fed. R. Civ. P. 23(c)(5). Accordingly, and in view of the parties' agreement regarding the applicability of various statute-of-limitations issues, the parties are directed to submit proposed subclasses to this Court.

Finally, the parties disagree about the date this action commenced for statute of limitations purposes. BHH maintains that it should be June 19, 2015, the date the complaint was filed. Plaintiffs counters that "cross-jurisdictional class-action tolling" applies, and the action should thus be deemed commenced on April 16, 2015, when a similar action was filed in Ohio. Because "a federal court evaluating the timeliness of state law claims must look to the law of the relevant state to determine whether, and to what extent, the statute of limitations should be tolled by the filing of a putative class action in another jurisdiction," this Court looks to the law of New York. <u>Casey v. Merck & Co.</u>, 653 F.3d 95, 100 (2d Cir. 2011).

New York state courts have yet to decide the issue. But the most recent and persuasive case law in this District predicts that New York would permit cross-jurisdictional class-action tolling. See <u>Chavez v. Occidental Chem. Corp.</u>, 300 F. Supp. 3d 517, 530 (S.D.N.Y. 2018) ("On careful consideration of the parties' arguments and the thoughtful assessments of this

Court's colleagues, the Court's conclusion is that, although the matter is not free of doubt, New York most likely would recognize cross-jurisdictional class-action tolling."); Famular v. Whirlpool Corp., 2017 WL 2470844, at *9 (S.D.N.Y. June 7, 2017) (same); In re LIBOR-Based Fin. Instruments Antitrust Litig., 2015 WL 6243526, at *145–46 (S.D.N.Y. Oct. 20, 2015) (same). As such, this action shall be deemed commenced on April 16, 2015. See Chavez, 300 F. Supp. 3d 517, 529 ("Under this theory, a limitations period is tolled at all times while a complaint based on the same underlying facts is pending in another state on behalf of a putative class that includes plaintiffs as absent members.").

## CONCLUSION

For the foregoing reasons, BHH's motion for summary judgment is denied. The parties are directed to submit proposed subclasses to address the varying statutes of limitations by September 26, 2018. The Clerk of Court is directed to terminate the motions pending at ECF Nos. 139 and 159. The parties are further directed to appear for a status teleconference on September 27, 2018 at 11:00 a.m. Counsel for Defendants are directed to circulate dial-in information for the teleconference.

Dated: September 5, 2018
      New York, New York

SO ORDERED:

_____
WILLIAM H. PAULEY III
U.S.D.J.