**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JOANNE HART and SANDRA BUENO, on behalf of themselves and all others similarly situated, | Civil Action No. 1:15-CV-04804-WHP |
| Plaintiffs, | |
| v. | |
| BHH, LLC d/b/a Bell + Howell and VAN HAUSER LLC | |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION**
**FOR PRELIMINARY APPROVAL OF A CLASS ACTION SETTLEMENT**

Dated:  September 3, 2019

**BURSOR & FISHER, P.A.**

Scott A. Bursor
Joshua D. Arisohn
Yitzchak Kopel
888 Seventh Avenue
New York, NY 10019
Telephone:  (212) 989-9113
Facsimile:  (212) 989-9163
Email:  scott@bursor.com
          jarisohn@bursor.com
          ykopel@bursor.com

*Class Counsel*

## TABLE OF CONTENTS

PAGE(S)

I.   INTRODUCTION .................................................................................................. 1

II.  FACTUAL AND PROCEDURAL BACKGROUND ........................................... 3

III. THE TERMS OF THE PROPOSED SETTLEMENT ......................................... 7

  A.  The Class Definition ................................................................................. 7

  B.  Monetary Relief ........................................................................................ 8

  C.  Release Of Claims .................................................................................... 8

  D.  Notice, Claims Process, And Settlement Administration ......................... 9

  E.  Costs, Fees, And Representative Awards .................................................. 9

IV.  THE LEGAL CRITERIA FOR PRELIMINARY APPROVAL OF A
     CLASS ACTION SETTLEMENT ...................................................................... 9

V.   THE COURT SHOULD GRANT PRELIMINARY APPROVAL OF THE
     SETTLEMENT ................................................................................................. 11

  A.  The Proposed Settlement Is Fair, Reasonable, And Adequate ............... 11

     1.  The Settlement Is Procedurally Fair And Not A Product Of
         Collusion ....................................................................................... 12

     2.  The *Grinnell* Factors For Settlement Approval Are Satisfied ..... 12

        i.    Litigation Through Trial Would Be Complex, Expensive, And
              Lengthy ............................................................................... 13

        ii.   The Class' Reaction Will Likely Be Positive ..................... 14

        iii.  Discovery Has Advanced To A Stage At Which The Parties
              Can Responsibly Resolve The Case .................................. 14

        iv.   The Continued Litigation Risks Related To Establishing
              Liability, Damages, And Maintaining A Class Action Through
              Trial Support Settlement .................................................... 15

        v.    Whether Defendants Can Withstand A Substantially Greater
              Judgment ............................................................................ 16

        vi.   The Settlement Amount Is Reasonable In Light Of The
              Possible Recovery And Attendant Risks Of Litigation ...... 16

  B.  The Fee Arbitration Is Fair, Reasonable, And Adequate ....................... 18

  C.  The Proposed Class Notice And Notice Plan Are Reasonable .............. 21

VI.  CONCLUSION ................................................................................................. 23

# <u>TABLE OF AUTHORITIES</u>

**PAGE(S)**

**CASES**

*Asare v. Change Grp. Of N.Y., Inc.*,
  2013 WL 6144764 (S.D.N.Y. Nov. 18, 2013)........................................................................ 20

*Cellphone Termination Fee Cases*,
  180 Cal.App.4th 1110 (2009) ............................................................................... passim

*Charron v. Pinnacle Grp. N.Y.*,
  874 F. Supp. 2d 179 (S.D.N.Y. 2012) ................................................................................ 11

*City of Detroit v. Grinnell Corp.*,
  495 F.2d 448 (2d Cir. 1974) ................................................................................. 11, 16, 17

*City of Providence v. Aeropostale, Inc.*,
  2014 WL 1883494 (S.D.N.Y. May 9, 2014) ....................................................................... 13

*D'Amato v. Deutsche Bank*,
  236 F.3d 78 (2d Cir. 2001) .................................................................................................. 12

*Denney v. Jenkens & Gilchrist*,
  230 F.R.D. 317 (S.D.N.Y. 2005) ........................................................................................ 16

*Frank v. Eastman Kodak Co.*,
  228 F.R.D. 174 (W.D.N.Y. 2005) ................................................................................. 10, 17

*Goldberger v. Integrated Res., Inc.*,
  209 F.3d 43, 47 (2d Cir. 2000) ........................................................................................... 18

*In re "Agent Orange" Prod. Liab. Litig.*,
  611 F. Supp. 1396 (E.D.N.Y. 1985) ................................................................................... 18

*In re Adelphia Commc'ns Corp. Sec. & Derivatives Litig.*,
  271 F. App'x 41 (2d Cir. 2008) .......................................................................................... 21

*In re Am. Bank Note Holographics, Inc. Sec. Litig.*,
  127 F. Supp. 2d 418 (S.D.N.Y. 2001) ................................................................................ 16

*In re AOL Time Warner, Inc.*,
  2006 WL 903236 (S.D.N.Y. Apr. 6, 2006) ........................................................................ 15

*In re Austrian & German Bank Holocaust Litig.*,
  80 F. Supp. 2d 164 (S.D.N.Y. 2000) ............................................................................ 12, 13

*In re EVCI Career Colls. Holding Corp. Sec. Litig.*,
    2007 WL 2230177 (S.D.N.Y. July 27, 2007) ........................................................ 10

*In re Ferrero Litigation*,
    583 F. App'x 665 (9th Cir. 2014) ...................................................................... 11

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
    2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010) ........................................................ 17

*In re Global Crossing Sec. & ERISA Litig.*,
    225 F.R.D. 436 (S.D.N.Y. Nov. 24, 2004) .......................................................... 15

*In re Lloyd's Am. Trust Fund Litig.*,
    2002 WL 31663577 (S.D.N.Y. Nov. 26, 2002) .................................................... 20

*In re Prudential Sec. Inc. Ltd. P'ships Litig.*,
    163 F.R.D. 200 (S.D.N.Y. 1995) ........................................................................ 14

*In re Traffic Executive Association-Eastern Railroads*,
    627 F.2d 631 (2d Cir. 1980) .............................................................................. 10

*In re Vitamin C Antitrust Litig.*,
    2012 WL 5289514 (E.D.N.Y. Oct. 23, 2012) ...................................................... 15

*In re Warner Commc'ns Sec. Litig.*,
    618 F. Supp. 735 (S.D.N.Y. 1985) ..................................................................... 16

*Maley v. Del Global Techs. Corp.*,
    186 F. Supp. 2d 358 (S.D.N.Y. 2002) ................................................................ 15

*McReynolds v. Richards-Cantave*,
    588 F.3d 790 (2d Cir. 2009) .............................................................................. 10

*Newman v. Stein*,
    464 F.2d 689 (2d Cir. 1972) .............................................................................. 17

*Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*,
    237 F.R.D. 26 (E.D.N.Y. 2006) ......................................................................... 21

*Spicer v. Pier Sixty LLC*,
    2012 WL 4364503 (S.D.N.Y. Sept. 14, 2012) .................................................... 20

*Steigerwald v. BHH, LLC*,
    2016 WL 695424 (N.D. Ohio February 22, 2016) ...................................... 4, 5, 6, 7

*TBK Partners, Ltd. v. Western Union Corp.*,
    517 F. Supp. 380 (S.D.N.Y. 1981) ..................................................................... 13

*Teachers' Ret. Sys. of La. v. A.C.L.N., Ltd.*,
    2004 WL 2997957 (S.D.N.Y. Dec. 27, 2004) ..................................................... 17

*Torres v. Gristede's Operating Corp.*,
   2010 WL 5507892 (S.D.N.Y. Dec. 21, 2010) ........................................................... 14

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
   396 F.3d 96 (2d Cir. 2005) ................................................................................. 9, 10

*Weigner v. New York*,
   852 F.2d 646 (2d Cir. 1988) ....................................................................................... 21

*Weinberger v. Kendrick*,
   698 F.2d 61 (2d Cir. 1982) ......................................................................................... 10

*Yang v. Focus Media Holding Ltd.*,
   2014 WL 4401280 (S.D.N.Y. 2014) ........................................................................... 12

## STATUTES

9 U.S.C. § 9 ....................................................................................................................... 19

28 U.S.C. § 1715(b) ............................................................................................................ 9

## RULES

Fed. R. Civ. P. 23 ............................................................................................................... 23

Fed. R. Civ. P. 23(c)(2)(B) ........................................................................................... 21, 22

Fed. R. Civ. P. 23(e)(2) ...................................................................................................... 12

Fed. R. Civ. P. 41(a)(1)(A)(i) .............................................................................................. 4

## OTHER AUTHORITIES

Manual for Complex Litigation (Third) (1995) ................................................................. 10

Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* (4th ed. 2002) ............... 10

Plaintiffs Joanne Hart and Sandra Bueno (collectively, "Plaintiffs") submit this memorandum of law in support of Plaintiffs' Motion for Preliminary Approval of Class Action Settlement (the "Motion").

## I.   INTRODUCTION

Plaintiffs commenced this class action lawsuit against Defendants BHH, LLC d/b/a Bell + Howell and Van Hauser, LLC (collectively, "Defendants" or "Bell + Howell") arising out the advertising and sale of Defendants' Ultrasonic Pest Repellers ("Products").  Defendants represented that the Product was an "ultrasonic pest repeller," the "drives pests out," and repels "ants, roaches, spiders, mice, and rats."  *See* First Amended Complaint ("FAC") ¶ 2.  Plaintiffs allege that Defendants' claims are false and misleading, that Defendants misrepresented the ability of the Products to repel pests, and that Defendants' false and misleading representations were made with knowledge of their falsehood.  *See id.* ¶¶ 2, 6, 7, 25, 26, 57, 68 (ECF No. 14). Defendants deny these allegations.

After four years of vigorous litigation, the Parties have recently agreed to a settlement that will essentially provide a refund of the purchase price to every class member that submits a claim.  The Settlement Class[1] consists of the classes and subclasses previously certified by this Court.  The proposed settlement thus does not seek to broaden or otherwise modify that scope of the class that has already been certified.  No proof of purchase, other than a signed attestation on the claim form, is required for a Settlement Class member to make a claim.  However, the amount of the payment available to Settlement Class members whose purchases are documented is greater.  Settlement Class Members with Proof of Purchase showing the actual price paid for

---

[1] All capitalized terms used and not otherwise defined herein have the definitions set forth in the Settlement Agreement.

1

the Repellers will be paid a full refund of the purchase price for each such Unit up to six (6) Units.[2]  Settlement Class Members with Proof of Purchase that does not show the actual price paid for the Repellers will receive a refund of up to $90, *i.e.*, $15.00 for each such Unit up to six (6) Units.  Settlement Class Members who submit a valid Claim Form without proof of purchase will be paid up to $30, *i.e.*, $15.00 each for up to two (2) Unit purchases of the Repellers during the Settlement Class Period.  In addition, the costs of notice and administration, and any incentive awards or attorneys' fees, costs, and expenses will be paid by Defendants separately from the monetary refunds paid to Class Members.  Thus, those payments will not derogate from the amount of refunds that will be paid to Class Members under the Settlement.

The Parties are in agreement that Class Counsel are entitled to an award of attorneys' fees, and Defendants have agreed to pay reasonable attorneys' fees, costs, and expenses.  However, the Parties could not reach agreement on what would constitute a reasonable attorneys' fee in this case. The Parties have therefore agreed to submit the matter to arbitration, as described in *In re Cellphone Termination Fee Cases* (2009) 180 Cal.App.4th 1110, 1125.  *See* Part V. B, below, discussing the proposed fee arbitration.

The proposed Settlement, which was reached following mediation before the Hon. John S. Martin Jr. (Ret.), is fair, reasonable, and falls within the range of permissible approval.  The Settlement is the product of extensive arm's-length negotiations between experienced attorneys familiar with the legal and factual issues of this case.  Moreover, the Parties have litigated this action vigorously for four years, and have ample knowledge of the legal claims and defenses, the risks presented by the case, and the value achieved by the proposed Settlement.  The Settlement is an exceptional result for the Class because, despite the significant risks of further litigation,

---

[2] The average retail price of the Repellers was approximately $24.10.  Kopel Decl. ¶ 40.

2

Plaintiffs secured substantial monetary relief for Settlement Class Members (including the opportunity to be refunded their full purchase price).

Accordingly, Plaintiffs respectfully submit that preliminary approval of the Settlement is appropriate.  For the Court's review, Class Counsel has filed a true and correct copy of the Stipulation of Settlement, attached as Exhibit A to the Declaration of Yitzchak Kopel In Support of Plaintiffs' Motion for Preliminary Approval of Class Action Settlement ("Kopel Decl."), along with a proposed Order Granting Preliminary Approval of Class Settlement (the "proposed Preliminary Approval Order").  Entry of the proposed Preliminary Approval Order will:  (1) grant preliminary approval of the Settlement; (2) approve the Claims Administrator; (3) approve and authorize the contents and distribution of the Settlement Notice; (4) approve and authorize the procedures for submitting Objections and Requests for Exclusion and the binding nature thereof; (5) set deadlines for submitting papers in support of the Motion for Final Approval, the Motion for Attorneys' Fees, Costs, and Expenses and Class Representative Incentive Awards, and any responses to timely and valid Objections; (6) schedule the Fairness Hearing to determine the Final Approval of the Settlement Agreement; and (7) stay all activity in the Action except to the extent necessary to effectuate this Agreement unless and until this Agreement is terminated pursuant to its terms and conditions.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

On June 19, 2015, Plaintiffs Joanne Hart and Amanda Parke commenced a proposed class action in the Southern District of New York against Defendants in *Hart v. BHH, LLC*, No. 15-4804-WHP (S.D.N.Y.) in connection with Defendants' sale of Bell + Howell Ultrasonic Pest Repellers (ECF No. 1).  Kopel Decl. ¶ 2.

On October 19, 2015, Defendants filed a Motion to Dismiss (ECF No. 25).  Plaintiff Joanne Hart opposed the Motion on November 16, 2019 (ECF No. 30).  *Id.* ¶ 3.  On November

20, 2015, Plaintiffs filed a notice of voluntary dismissal pursuant to Fed. R. Civ. P. 41(a)(1)(A)(i) solely as to Ms. Parke and not as to Ms. Hart (ECF No. 31). *Id.* ¶ 4. In a Memorandum Decision dated May 5, 2016, the Court granted, in part, and denied, in part, Defendants' Motion to Dismiss (ECF No. 36). Defendants filed an answer to the complaint on May 25, 2016 (ECF No. 39). *Id.* ¶ 5.

On February 26, 2016, a District Court in the Northern District of Ohio certified a nationwide class of purchasers of Bell + Howell Ultrasonic Pest Repellers, the same products at issue in this case. *Steigerwald v. BHH, LLC*, 2016 WL 695424, at *6 (N.D. Ohio February 22, 2016); Kopel Decl. ¶ 6. However, in *Steigerwald* class members never received notice or an opportunity to opt out of the class. *Id.* On November 29, 2016, the court granted summary judgment in favor of the defendants in the *Steigerwald* action. *Steigerwald*, 2016 WL 695424, at *9. Because class notice was never disseminated in the *Steigerwald* case, and class members were not given the opportunity to opt out of the class, the summary judgment decision was binding solely upon Ms. Steigerwald, and not on other class members. Kopel Decl. ¶ 7.

On January 23, 2017, Plaintiff Joanne Hart, along with a new Plaintiff, Sandra Bueno, filed a First Amended Complaint (ECF No. 62). *Id*. ¶ 8.

On March 16, 2017, Plaintiffs filed a Motion to Certify Class (ECF No. 66), moving to certify three classes as follows:

> **Nationwide Fraud Class**: "All persons who purchased one or more Bell + Howell Ultrasonic Pest Repellers in the United States from April 20, 2011 to June 15, 2016 (the "Class Period"), excluding persons who purchased for purpose of resale."

> **Multistate Breach of Express Warranty Class**: "[A]ll persons who purchased one or more Bell + Howell Ultrasonic Pest Repellers in the states of Alaska, California, Colorado, Delaware, Iowa, Kansas, Maine, Minnesota, Missouri, Nebraska, New Hampshire, New Jersey, New York, North Carolina, Ohio, Oklahoma, Oregon, Pennsylvania, Texas, Utah, Vermont, Virginia,

4

Washington, West Virginia, and Wyoming during the Class
Period, excluding persons who purchased for purpose of resale."

**California Class**:  "[A]ll persons who purchased one or more Bell
+ Howell Ultrasonic Pest Repellers in the state of California during
the Class Period, excluding persons who purchased for purpose of
resale."  Lowe's and Defendants opposed this motion on May 30,
2014.

Defendants filed a motion to dismiss the first amended complaint and opposition to

Plaintiffs' motion for class certification on April 27, 2017 (ECF No. 78).  *Id*. ¶ 9.  In an Opinion

and Order dated July 7, 2017, the Court granted, in part, and denied, in part, Defendants' motion

to dismiss the first amended complaint and granted Plaintiffs' Motion to Certify Class (ECF No.

93).  *Id*. ¶ 10.  The motion to dismiss was granted with respect to Plaintiffs' UCL and FAL

claims, but denied in all other respects.  *Id*.  The certification motion was granted in full.  *Id*.

The law firm of Bursor & Fisher, P.A. was appointed as Class Counsel, and Plaintiffs were

appointed as Class Representatives.  *Id*.  On October 24, 2017, the Court approved the Notice of

Pendency of Class Action, encompassing a Long Form Notice and Postcard Notice (ECF No.

110).  Direct notice was disseminated to over one million identified class members in January

2018.  *Id*. ¶ 11.

On March 9, 2018, Defendants filed a motion for summary judgment and a *Daubert*

motion (ECF Nos. 137-40). On the same date, Plaintiffs filed two additional *Daubert* motions

(ECF Nos. 130-33).  *Id*. ¶ 12.  In an Opinion and Order dated July 19, 2018, the Court granted, in

part, and denied, in part, both of the *Daubert* motions filed by Plaintiffs (ECF No. 161).  The

Court also denied in full the Daubert motion filed by Defendants.  *Id*. ¶ 13.  In an Opinion and

Order dated September 5, 2018, the Court denied Defendants' motion for summary judgment,

but limited the time periods of the certified classes (ECF No. 165).  The Parties submitted letters

proposing new subclasses on September 26, 2018 (ECF Nos. 178, 179).  *Id*. ¶ 14.

On September 19, 2018, Defendants filed a Motion for Reconsideration of the Court's summary judgment decision (ECF No. 176).  Plaintiffs opposed the motion on October 10, 2018 (ECF No. 182).  *Id.* ¶ 15.  In a Memorandum & Order dated November 2, 2018 (ECF No. 185), the Court denied Defendants' motion for reconsideration, and adopted the following new class definitions:

> **Nationwide Fraud Class**: "all persons who purchased one or more Bell + Howell ultrasonic pest repellers in the United States from April 20, 2011 to June 15, 2016, excluding persons who purchased for purpose of resale."
>
> - **Nationwide Subclass 1 (3 year statute)**: "all persons who purchased one or more Bell + Howell ultrasonic pest repellers in the states of Arizona, Arkansas, California, Colorado, Connecticut, Delaware, District of Columbia, Idaho, Maryland, Massachusetts, Mississippi, Nevada, New Hampshire, North Carolina, South Carolina, Tennessee, Utah and Washington from April 20, 2012 to June 15, 2016, excluding persons who purchased for purpose of resale."
>
> - **Nationwide Subclass 2 (2 year statute)**: "all persons who purchased one or more Bell + Howell ultrasonic pest repellers in the states of Alabama, Alaska, Kansas, Montana, Oklahoma, Oregon, Pennsylvania, Virginia, and West Virginia from April 20, 2013 to June 15, 2016, excluding persons who purchased for purpose of resale."
>
> **Multistate Breach of Express Warranty Class**: "all persons who purchased one or more Bell + Howell ultrasonic pest repellers in the states of Alaska, California, Colorado, Delaware, Iowa, Kansas, Maine, Minnesota, Missouri, Nebraska, New Hampshire, New Jersey, New York, North Carolina, Ohio, Oklahoma, Oregon, Pennsylvania, Texas, Utah, Vermont, Virginia, Washington, West Virginia, and Wyoming from April 20, 2011 to June 15, 2016, excluding persons who purchased for purpose of resale."
>
> - **Multistate Subclass (3 year statute)**: "all persons who purchased one or more Bell + Howell ultrasonic pest repellers in the state of Colorado from April 20, 2012 to June 15, 2016, excluding persons who purchased for purpose of resale."
>
> - **California Class (3 year statute)**: "all persons who purchased one or more Bell + Howell ultrasonic pest repellers in the state of California from April 20, 2012 to June 15, 2016, excluding persons who purchased for purpose of resale."

*Id.*

In December 2018 and January 2019, the Parties exchanged pre-trial disclosures and submitted a joint pretrial order on January 18, 2019 (ECF No. 196).  *Id.* ¶ 16.  On March 1, 2019,

the Parties filed several motions *in limine* (ECF Nos. 205-25), which the Court adjudicated on April 1 and April 4, orally and in a Memorandum & Order (ECF No. 259).  The Court set trial in this matter for September 9, 2019 (ECF No. 272).  *Id*. ¶¶ 17-18.

Negotiations regarding potential settlement were thorough, protracted and exhaustive, and involved multiple settlement conferences and/or mediation sessions.  On April 8, 2019, the Parties participated in a full-day in-person settlement conference with mediator Hon. John S. Martin, Jr.  *Id*. ¶ 19.  Although no settlement was reached that day, the Parties agreed to continue the discussions while simultaneously preparing for trial.  Thereafter, the Parties engaged in substantial discussions in June, July, and August 2019 in an effort to resolve the Action.  *Id*. ¶ 20.  Ultimately the Settlement Agreement was executed on August 19, 2019.  *Id*. ¶ 21.

Weighing the risks and uncertainties of continued litigation and all factors bearing on the merits of settlement, Plaintiffs and Class Counsel are satisfied that the terms and conditions of this settlement are fair, reasonable, adequate, and in the best interests of the Plaintiffs and the Settlement Class Members.  *Id*. ¶ 22.

## III.   THE TERMS OF THE PROPOSED SETTLEMENT

The Parties reached agreement on the proposed Settlement after spirited debate of legal and factual theories by counsel, the assistance of the Hon. John S. Martin, Jr. (Ret.), and extensive arm's-length negotiations over a four-month period beginning in April 2019.  The key terms of the Settlement are as follows:

### A.   The Class Definition

The proposed Settlement Class (the "Settlement Class") consists of all persons previously certified by the Court in the nationwide fraud, multistate breach of express warranty, and California Classes in this action.  *See* Kopel Decl. Ex. A ("Stipulation of Settlement") ¶ 59.

7

### B.   Monetary Relief

If the Settlement is approved, Settlement Class Members will be paid cash refunds.  No proof of purchase, other than a signed attestation on the Claim Form, will be required.  However, the amount of the payment available to Settlement Class members whose purchases are documented is greater.  Settlement Class Members with Proof of Purchase showing the actual price paid for the Repellers will be paid a full refund of the purchase price for each such Unit up to six (6) Units.  Settlement Class Members with Proof of Purchase that does not show the actual price paid for the Repellers will receive a refund of up to $90, *i.e.*, $15.00 for each such Unit up to six (6) Units.  Settlement Class Members who submit a valid Claim Form without proof of purchase will be paid up to $30, *i.e.*, $15.00 each for up to two (2) Unit purchases of the Repellers during the Settlement Class Period.  Notably, there is no limit to the total number of refunds that Defendants will pay to the Class as a whole, and Class Members' full refunds will not be prorated for any reason.

In addition, the costs of notice and administration, and any incentive awards or attorneys' fees, costs, and expenses will be paid by Defendants separately from the monetary refunds paid to Class Members.  Thus, those payments will not derogate from the amount of refunds that will be paid to Class Members under the Settlement.

### C.   Release Of Claims

In exchange for the foregoing relief, the Settlement Class Members who do not opt out of the Settlement will release Defendants and all Released Parties from all Released Claims asserted in this Action and any related claims which could be asserted arising out of or relating to the marketing, advertising, promoting, sale or distributing of Ultrasonic Pest Repellers.  *Id.* ¶¶ 99-101.

### D.      Notice, Claims Process, And Settlement Administration

Defendants have agreed to bear the costs of providing notice and administration of the

Settlement, including processing Claim Forms and requests for exclusion.  *Id.* ¶ 79.[3]

### E.      Costs, Fees, And Representative Awards

Though Defendants have agreed to pay Plaintiffs' reasonable attorneys' fees, costs, and

expenses, the Parties were unable to agree on the amount that would constitute reasonable

attorneys' fees, costs, and expenses.  Accordingly, the Parties have agreed to submit the fee

dispute to arbitration, as described in *In re Cellphone Termination Fee Cases* (2009) 180

Cal.App.4th 1110, 1125.  *Id.* ¶ 29.  The Stipulation of Settlement provides attorneys' fees, costs,

and expenses to be determined through arbitration, with a Minimum Possible Award of $3

million and a Maximum Possible Award of $7.5 million.  *Id.* ¶ 32.  Similarly, Class Counsel will

petition the Court for incentive award payments to each Class Representative in the amount of

five thousand dollars ($5,000), for their service on behalf of the Settlement Class.  *Id.* ¶ 34.  The

Stipulation of Settlement and Plaintiffs' support of the Settlement are not conditioned upon the

Court's approval of the amounts listed in this paragraph.  *Id.* ¶ 35.

## IV.     THE LEGAL CRITERIA FOR PRELIMINARY APPROVAL OF A CLASS ACTION SETTLEMENT

Courts encourage, and public policy favors, compromise and settlement of class actions.

*See Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (emphasizing the

"strong judicial policy in favor of settlements, particularly in the class action context") (internal

quotation marks omitted); *see also* Herbert B. Newberg & Alba Conte, *Newberg on Class*

*Actions* ("Newberg") § 11.41 (4th ed. 2002) ("The compromise of complex litigation is

---

[3] Defendants will separately provide notification of the Attorney General of the United States, and the attorneys general of each state or territory in which a Settlement Class Member resides in accordance with the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1715(b).

encouraged by the courts and favored by public policy.").  It is within the Court's discretion to approve a proposed class action settlement upon determination that the proposed settlement is fair, reasonable, and adequate.  *McReynolds v. Richards-Cantave*, 588 F.3d 790, 800 (2d Cir. 2009).  "The central question raised by the proposed settlement of a class action is whether the compromise is fair, reasonable, and adequate.  There are weighty justifications, such as the reduction of litigation and related expenses, for the general policy favoring the settlement of litigation[.]"  *Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982).

Preliminary approval is the first step in a settlement process.  It may be granted if the court finds there is "'probable cause' to submit the [proposed settlement] to class members and hold a full-scale hearing as to its fairness."  *In re Traffic Exec. Ass'n E. R.Rs.*, 627 F.2d 631, 634 (2d Cir. 1980); Newberg § 11.25 ("If the preliminary evaluation of the proposed settlement does not disclose the grounds to doubt its fairness . . . and appears to fall within the range of possible approval," the court should permit notice of the settlement to be sent to class members).

"Fairness is determined upon review of both the terms of the settlement agreement and the negotiating process that led to such agreement."  *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 184 (W.D.N.Y. 2005).  "A 'presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery.'"  *Wal-Mart Stores*, 396 F.3d at 116 (quoting Manual for Complex Litigation (Third) § 30.42 (1995)).  Where a settlement is achieved through arm's-length negotiations by experienced counsel and there is no evidence of fraud or collusion, "[courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement."  *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, 2007 WL 2230177, at *4

(S.D.N.Y. July 27, 2007).[4]

When evaluating the terms of a proposed class settlement, courts in this Circuit are guided by the factors enumerated in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974). These factors are:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendant to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation[.]

*Id.* at 463 (citations omitted).

## V. THE COURT SHOULD GRANT PRELIMINARY APPROVAL OF THE SETTLEMENT

### A. The Proposed Settlement Is Fair, Reasonable, And Adequate

This Court should approve the Stipulation of Settlement. The Settlement is the result of three months of arm's-length negotiations among the Parties and their counsel and informed by the exchange of significant information through the settlement process and following the assistance of an experienced mediator. Kopel Decl. ¶¶ 19-21. The Settlement provides favorable monetary benefits to Class Members considering the record evidence, Plaintiffs' burden to prove their theory of liability, and all of the risks associated with continued litigation and collection of proceeds. Prior to reaching resolution, Class Counsel thoroughly investigated and litigated the case, and in doing so, gathered ample information to assess the strengths and

---

[4] Moreover, where, as here, the Settlement was reached after the Class was certified by the court, concerns over potential for collusion are ameliorated, and heightened scrutiny of the Settlement is not required. *See In re Ferrero Litigation,* 583 F. App'x 665, 668 (9th Cir. 2014); *see also Charron v. Pinnacle Grp. N.Y.*, 874 F. Supp. 2d 179, 198 (S.D.N.Y. 2012). This is particularly true here, given that the Settlement does not seek to change the definitions of the classes already certified whatsoever.

weaknesses of the Parties' positions.  Having weighed the likelihood of success and inherent

risks and expense of litigation, Plaintiffs and Class Counsel strongly believe that the proposed

settlement is "fair, reasonable, and adequate" as required by Fed. R. Civ. P. 23(e)(2).  *Id.* ¶¶ 22.

### 1.    The Settlement Is Procedurally Fair And Not A Product Of Collusion

The Settlement here is the product of intense arm's-length negotiations over a

three-month period and conducted by experienced counsel who are knowledgeable in complex

consumer class actions.  *See In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d

164, 173-74 (S.D.N.Y. 2000) (a settlement will enjoy a presumption of fairness if the court finds

that it is the product of "arm's length negotiations conducted by experienced counsel

knowledgeable in complex class litigation"), *aff'd sub nom*. *D'Amato v. Deutsche Bank*, 236

F.3d 78 (2d Cir. 2001).  The Settlement was reached four years into the case, on the cusp of trial,

and after the Parties completed extensive merits and expert discovery, thirteen depositions, class

certification, summary judgment, and motions *in limine*.  Kopel Decl. ¶ 21.

Additionally, Plaintiffs' Counsel involved in the negotiations have considerable

experience in handling consumer class actions and are clearly capable of assessing the strengths

and weaknesses of their respective positions.  *See* Kopel Decl. Ex. C.  Bursor & Fisher regularly

engages in major complex litigation and has extensive experience in consumer class actions that

are similar in size, scope, and complexity to this case.  Kopel Decl. ¶ 36.  The experience of the

firm and attorneys involved demonstrate that the Settlement Class Members were

well-represented at the bargaining table.  *See Focus Media Holding Ltd.*, 2014 WL 4401280, at

*5.

### 2.    The *Grinnell* Factors For Settlement Approval Are Satisfied

The *Grinnell* factors weigh in favor granting preliminary approval.

> ### i.        Litigation Through Trial Would Be Complex, Expensive, And Lengthy

The Stipulation of Settlement provides favorable monetary benefits to the Settlement Class while avoiding the significant expenses and delays associated with litigation.  Indeed, "[m]ost class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them."  *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d at 174.  Courts have consistently held that, unless the proposed settlement is clearly inadequate, its acceptance and approval are preferable to the continuation of lengthy and expensive litigation with uncertain results.  *TBK Partners, Ltd. v. Western Union Corp.*, 517 F. Supp. 380, 389 (S.D.N.Y. 1981), *aff'd*, 675 F.2d 456 (2d Cir. 1982).

This case is no exception.  Plaintiffs understand that proceeding to trial is a risky and labor-intensive undertaking.  Plaintiffs anticipate that Defendants would continue to contest the matter at every opportunity and on all fronts.  While Plaintiffs believe that the Action has merit and that they would ultimately prevail at trial, continued litigation would last for an extended period before a final judgment might be entered in favor of the Class.  Any trial would likely last at least 1-2 weeks, and involve numerous fact witnesses, experts, and the introduction of voluminous documentary evidence.  Moreover, any judgment favorable to the Class would be the subject of post-trial motions and appeals, which could significantly prolong the lifespan of this Action.  *See, e.g.*, *City of Providence v. Aeropostale, Inc.*, 2014 WL 1883494, at *5 (S.D.N.Y. May 9, 2014) (finding that "[e]ven if the Class could recover a judgment at trial, the additional delay through trial, post-trial motions, and the appellate process could prevent the Class from obtaining any recovery for years.").   By settling, Plaintiffs avoid the expenditure of resources and risk associated with trial, and they guarantee a quicker recovery to the Class. Because the risks of proceeding to trial are substantial, this bird in hand is worth two in the

proverbial bush, and the settlement warrants preliminary approval. *See e.g.*, *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 163 F.R.D. 200, 210 (S.D.N.Y. 1995) ("[I]t may be preferable to take the bird in the hand instead of the prospective flock in the bush.") (internal quotation marks omitted).

### ii.      The Class' Reaction Will Likely Be Positive

At this stage, it is not possible to measure the reaction of the Settlement Class conclusively because Notice of Settlement has yet to be issued to the Class. However, the Stipulation of Settlement proposes to offer meaningful cash refunds of between $15.00 and approximately $35.70 per unit (depending on whether the Settlement Class Member has proof of purchase and whether the proof of purchase reveals the actual price paid) for up to six (6) unit purchases of the Ultrasonic Pest Repellers. Moreover, Plaintiffs' and their Counsel's support for the Stipulation of Settlement is a strong indication that the Settlement Class will likely view the terms of the Settlement positively.

### iii.     Discovery Has Advanced To A Stage At Which The Parties Can Responsibly Resolve The Case

Under this factor, "[t]he pertinent question is whether counsel had an adequate appreciation of the merits of the case before negotiating." *See Torres v. Gristede's Operating Corp.,* 2010 WL 5507892, at *5 (S.D.N.Y. Dec. 21, 2010) (internal quotation omitted). Here, the settlement was reached on the cusp of trial, after four years of litigation, during which time the Parties completed extensive merits and expert discovery, thirteen depositions, class certification, summary judgment, and motions *in limine*. Kopel Decl. ¶ 21. Class Counsel had sufficient information to make an informed decision about the merits of this case relative to the benefits provided by the proposed Settlement.

iv.     **The Continued Litigation Risks Related To Establishing Liability, Damages, And Maintaining A Class Action Through Trial Support Settlement**

"The fourth, fifth, and sixth *Grinnell* factors all relate to continued litigation risks," *i.e.*, the risks of establishing liability, damages and maintaining the class action through trial.  *In re Vitamin C Antitrust Litig.*, 2012 WL 5289514, at \*5 (E.D.N.Y. Oct. 23, 2012).  One purpose of a settlement is to avoid the uncertainty of a trial on the merits.  Analyzing these risks "does not require the Court to adjudicate the disputed issues or decide unsettled questions; rather, the Court need only assess the risks of litigation against the certainty of recovery under the proposed settlement."  *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 459 (S.D.N.Y. Nov. 24, 2004); *In re AOL Time Warner, Inc.*, 2006 WL 903236, at \*11 (S.D.N.Y. Apr. 6, 2006).  In other words, "the Court should balance the benefits afforded to members of the Class and the immediacy and certainty of a substantial recovery for them against the continuing risks of litigation."  *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 364 (S.D.N.Y. 2002).

Notwithstanding Plaintiffs' confidence in the strength of their position, they recognize that factual issues, evidence of competing, complex scientific concepts, and/or legal defenses could pose a substantial risk of non-recovery.  Plaintiffs must establish that Defendants' claims are false, misleading, and deceptive and/or that members of the public are likely to be deceived by Defendants' advertising and labeling.  In contrast, Defendants point to their own and other third-party trials that they claim substantiate the advertising and labelling claims regarding the efficacy of the Repellers.  In addition, in order to support their fraud cause of action, Plaintiffs must establish that Defendants made their claims with knowledge of their falsity.  While Plaintiffs are confident that their evidence will prove that the Ultrasonic Pest Repellers are ineffective for their intended purpose, there is a real risk that a jury may see it differently.

15

Apart from the uncertainties regarding proof of Defendants' liability, there are also uncertainties in establishing damages.  Unlike the anticipated claims process in the proposed Settlement, Plaintiffs must meet certain burdens to prove damages at trial.  Plaintiffs' reliance on expert testimony to establish damages, as well as a jury's acceptance of that expert testimony is far from certain, especially when Defendants will offer competing expert testimony to the contrary.  *See In re Am. Bank Note Holographics, Inc. Sec. Litig.*, 127 F. Supp. 2d 418, 426-27 (S.D.N.Y. 2001) ("Plaintiffs' Counsel recognize the possibility that a jury could be swayed by experts for Class Defendants, who could minimize or eliminate the amount of Plaintiffs' losses."); *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 744 (S.D.N.Y. 1985) ("In this 'battle of the experts' it is virtually impossible to predict with any certainty which testimony would be credited . . .").  By contrast, the Settlement avoids the risks inherent in protracted litigation, and provides a prompt and favorable resolution to the Class.

### v.        Whether Defendants Can Withstand A Substantially Greater Judgment

The seventh *Grinnell* factor considers whether a defendant could withstand a judgment substantially higher than the proposed settlement amount if the case were to proceed to trial. *Denney v. Jenkens & Gilchrist*, 230 F.R.D. 317, 338 (S.D.N.Y. 2005).   Class Counsel investigated the finances of the two corporate entities named as defendants in this action and concluded those entities would be unable to satisfy any substantial money judgment.  There is no insurance coverage.  Class Counsel anticipated that this action would proceed through bankruptcy if it had not been settled on these terms.  Kopel Decl. ¶ 38.

### vi.       The Settlement Amount Is Reasonable In Light Of The Possible Recovery And Attendant Risks Of Litigation

Courts typically analyze the last two Grinnell factors together.  *See Grinnell*, 495 F.2d at 463.  In so doing, courts "consider[] and weigh[] the nature of the claim, the possible defenses,

the situation of the parties, and the exercise of business judgment in determining whether the proposed settlement is reasonable." *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 2010 WL 4537550, at *20 (S.D.N.Y. Nov. 8, 2010) (quoting *Grinnell*, 495 F.2d at 462). The determination of whether a settlement amount is reasonable "does not involve the use of a mathematical equation yielding a particularized sum." *Frank*, 228 F.R.D. at 186 (internal quotation marks omitted). "Instead, 'there is a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.'" *Id.* (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972), *cert. denied*, 409 U.S. 1039 (1972)). Because a settlement provides certain and immediate recovery, courts often approve settlements even where the benefits obtained as a result of the settlement are less than those originally sought. As the Second Circuit stated in *Grinnell*, "there is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth of a single percent of the potential recovery." 495 F.2d at 455 n.2.

Here, each Class Member is able to recover cash refunds of between $15.00 and approximately $35.70 per unit for up to six (6) unit purchases of the Ultrasonic Pest Repellers at issue purchased during the Settlement Class Period. Given the complexity of the action and potential of a non-recovery, the Settlement provides a favorable resolution of this Action, including the potential for full refunds to consumers with Proof of Purchase and meaningful refunds to consumers without documentation of their purchases. Accordingly, this recovery falls well within the range that courts have traditionally found to be fair and adequate.

Moreover, the fact that the Stipulation of Settlement provides for a prompt payment to claimants favors approval of the Settlement. *See Teachers' Ret. Sys. of La. v. A.C.L.N., Ltd.*, 2004

WL 2997957, at *5 (S.D.N.Y. Dec. 27, 2004) ("[T]he proposed Settlement provides for payment to Class members now, not some speculative payment of a hypothetically larger amount years down the road . . . . Given the obstacles and uncertainties attendant to this complex litigation, the proposed Settlement is within the range of reasonableness, and is unquestionably better than the other likely possibility – little or no recovery.") (quoting *In re "Agent Orange" Prod. Liab. Litig.*, 611 F. Supp. 1396, 1405 (E.D.N.Y. 1985), *modified on other grounds*, 818 F.2d 179 (2d Cir. 1987) ("[M]uch of the value of a settlement lies in the ability to make funds available promptly.")). Therefore, these factors militate in favor of preliminarily approving the Settlement.

### B.      The Fee Arbitration Is Fair, Reasonable, And Adequate

When a class action case results in relief for the class, whether by settlement or by contested judgment, class counsel are entitled to a reasonable fee for services rendered. *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 47 (2d Cir. 2000).  The award of reasonable fees should also include reimbursement for litigation expenses reasonably incurred in prosecuting the case.  Here, Class Counsel obtained significant relief for the class after four years of protracted litigation and on the cusp of trial.

Though Defendants have agreed to pay Plaintiffs' reasonable attorneys' fees, costs, and expenses, the Parties were unable to agree on the amount that would constitute reasonable attorneys' fees, costs, and expenses.  Kopel Decl. ¶ 29.  Accordingly, the Parties agreed to submit the fee dispute to arbitration, as described in *In re Cellphone Termination Fee Cases* (2009) 180 Cal.App.4th 1110, 1125.  Thereafter, the Parties agreed to the selection of Judge Frank Maas (Ret.) of JAMS as the arbitrator.  *Id.*  The Parties also designed the arbitration schedule so that the fee arbitration will be concluded within 60 days after preliminary approval. *Id.*  That means that the fee arbitration will be concluded in advance of the final approval

hearing.  *Id.  See also* Stipulation of Settlement ¶ 88 ("Pursuant to § 9 of the Federal Arbitration Act, 9 U.S.C. § 9, this Court shall have exclusive jurisdiction to enter judgment on the award to be entered by the Arbitrator in the Fee and Expense Arbitration, in the context of Final Approval."); Kopel Decl. Ex. B (arbitration schedule ).  Judge Maas has agreed to serve as the Arbitrator and has agreed to complete the arbitration on this schedule.  Kopel Decl. ¶ 30.

The Parties have agreed that the arbitration will be subject to a floor of $3 million for attorneys' fees, costs and expenses, and a cap of $7.5 million.  Stipulation of Settlement ¶ 87; *see also* Kopel Decl. ¶ 32.  These fees are to be paid in addition to the other relief to the class, and will not derogate in any way from the payments made to class members.  *See In re Cellphone Termination Fee Cases* (2009) 180 Cal.App.4th at 1121 ("[A]lthough the amount of the fee arbitration award was of great concern to [Defendant] Sprint, the award would have had no direct impact on the class members, who would have received the same relief regardless of the results of the arbitration.").

Class Counsel intend to present a detailed accounting of their time and expenses for over four years of work on this matter.  Kopel Decl. ¶ 31.  These records will be presented to the arbitrator in the first instance.  *Id.*   To date, Class Counsel's unreimbursed out-of-pocket expenses amount to $679.801.42.[5]  Class Counsel has worked approximately 3942.6 hours on this matter which, at the firm's regular hourly rates, would produce a lodestar fee of approximately $2.07 million.  *Id.*[6]  The bottom end of the agreed range, $3 million, less expenses, corresponds to a lodestar-based fee with an approximate multiplier of 1.12.  *Id.* ¶ 32.

---

[5] This figure includes $290,208.23 in costs for dissemination of notice to the classes following class certification.

[6] These numbers are likely to go up as class counsel is required to perform more work for settlement administration.  Class Counsel intend to present updated expense and lodestar figures to the arbitrator, and then again to this Court in advance of the final approval hearing.

The top end, $7.5 million, would correspond to a lodestar-based fee with an approximate multiplier of 3.29.  *Id.*  These are modest multipliers, especially given the more than four years of work—including, extensive merits and expert discovery, thirteen depositions, class certification, summary judgment, and motions *in limine*—and the outstanding results achieved in this action.  *See Asare v. Change Grp. Of N.Y., Inc.*, 2013 WL 6144764, at *19 (S.D.N.Y. Nov. 18, 2013) ("Typically, courts use multipliers of 2 to 6 times the lodestar."); *Spicer v. Pier Sixty LLC*, 2012 WL 4364503, at *4 (S.D.N.Y. Sept. 14, 2012) ("The attorneys' fees awarded are a 3.36 multiplier of lodestar, which is well within the range of reasonableness."); *In re Lloyd's Am. Trust Fund Litig.*, 2002 WL 31663577, at *27 (S.D.N.Y. Nov. 26, 2002) (a "multiplier of 2.09 is at the lower end of the range of multipliers awarded by courts within the Second Circuit").  Thus, a fee award at the top end of this range would not be excessive.

Class Counsel made a similar agreement to arbitrate attorneys' fees in *Ayyad v. Sprint Spectrum, L.P.*, which was approved by the California Superior Court.  *See* Kopel Decl. Exs. D & E (preliminary approval and final approval orders from *Ayyad v. Sprint*).  Here, just as in *Ayyad*, the Parties have designed the fee arbitration schedule so that it will be concluded within 60 days after preliminary approval.  *See* Kopel Decl. Ex. B (arbitration schedule).  This will ensure that the fee arbitration is concluded well in advance of the final approval hearing, so this Court will be able to review the fee award before considering final approval.  The Stipulation of Settlement states that "this Court shall have exclusive jurisdiction to enter judgement on the award to be entered by the Arbitrator in the Fee and Expense Arbitration, in the context of Final Approval."  Stipulation of Settlement ¶ 88.  This is the same process that was used by the California Superior Court in *Ayyad v. Sprint*, and which had earlier been approved by the

California Court of Appeal in *In re Cellphone Termination Fee Cases*, 180 Cal. App. 4th 1110,

1116 (2009).[7]

### C.     The Proposed Class Notice And Notice Plan Are Reasonable

The Notice to be provided to the Settlement Class satisfies the requirements of Rule

23(c)(2)(B), which requires "the best notice that is practicable under the circumstances, including

individual notice to all members who can be identified through reasonable effort."  Fed. R. Civ.

P. 23(c)(2)(B).  However, the "best practicable" notice standard does not require that every class

member actually receive notice.  *In re Adelphia Commc'ns Corp. Sec. & Derivatives Litig.*, 271

F. App'x 41, 44 (2d Cir. 2008) (holding that the fact that some class members may not actually

receive timely notice does not render the notice inadequate so long as the notice was reasonably

calculated to reach all members) (quoting *Weigner v. New York*, 852 F.2d 646, 649 (2d Cir.

1988) ("It is clear that for due process to be satisfied, not every class member need receive actual

notice, as long as class counsel 'acted reasonably in selecting means likely to inform persons

affected.'").  Additionally, the proposed forms of notice should "fairly apprise the prospective

members of the class of the pendency of the class action, the terms of the proposed settlement,

and the options that are open to them in connection with the proceedings, including the option to

withdraw from the settlement."  *Reade-Alvarez*, 237 F.R.D. at 34.

The proposed forms of notice, attached as Exhibits C & D to the Stipulation of Settlement

---

[7] In *In re Cellphone*, the trial court refused to allow that fee arbitration "because it improperly excluded the members of the class from the fee application process."  *In re Cellphone Termination Fee Cases* (2009) 180 Cal.App.4th at 1116.  The Court of Appeal held that was error, and an abuse of discretion.  *Id.* at 1125 ("The trial court abused its discretion in refusing to approve the fee arbitration provision.").  The California Court of Appeal also commented: "Importantly, the trial court could have, and perhaps should have, delayed final approval of the settlement, including determination of the reasonableness of the fee award, until after the arbitration …."  *Id.*  The fee arbitration here, like the one that was approved in *Ayyad*, does exactly what the California Court of Appeal suggested in *In re Cellphone*.

and discussed at Section IV of the Stipulation of Settlement, satisfy the criteria in Rule 23(c)(2)(B).  The notice contains all the necessary information, including:  (1) a summary of the action and the claims asserted; (2) a plain definition of the Settlement Class; (3) a clear and concise description of the terms of the Settlement; (4) information regarding the claim criteria and instructions on how to make a claim; (5) disclosure of the release of claims by Class Members who do not opt out of the Settlement; (6) an explanation of opt-out rights and information on how to do so; (7) instructions on how and when to object to the Settlement; (8) the date, time and location of the final approval hearing; (9) the address for the Settlement Website; and (10) the names and contact information for Class Counsel representing the Settlement Class.

Under the Stipulation of Settlement, Settlement Notice will be sent in multiple formats consisting of:  Email notice to all class members for whom an email address has been identified; Post Card Notice via regular mail to all class members for whom an email address has not been identified but for whom the Parties have a valid mailing address; construction of a Settlement Website with the capability to receive online submission of claim forms; Internet banner ads directing consumers to the Settlement Website.  Stipulation of Settlement ¶ 74.  The aforementioned notice provides information to the Settlement Class Members concerning, among other things:  (1) terms of the Settlement; (2) instructions on submitting a claim; (3) objection and opt-out rights; and (4) the date, time, and location of the final approval hearing.

Due to the nature of the consumer product at issue, the proposed notice plan is particularly appropriate.  First, the proposed Notice Plan is substantially identical to (and in fact more extensive than) the Notice Plan in the Court's October 24, 2017 Order approving the Notice of Pendency of Class Action.  Second, Class Counsel has obtained records of contact

information for more than one million purchasers of the Repellers at issue for purposes of direct notice.  This amount, intended for direct notice, represents a significant percentage of the Class when considering the total sales of the Repellers are estimated to be approximately 2.2 million units.  *See* ECF No. 190 ¶ 10.

In sum, the proposed notices are clear and straightforward.  Further, the Notice Plan, which is broader than the plan already approved by the Court at the class certification stage, is calibrated to provide broad and effective dissemination of the Notice to the consumers of Bell + Howell Ultrasonic Pest Repellers.  Therefore, the content of the notices and the Notice Plan satisfies the requirement under Rule 23.

## VI.     CONCLUSION

For the foregoing reasons, the Court should grant preliminary approval to the Settlement and enter the proposed Preliminary Approval Order submitted herewith.

Dated:  September 3, 2019                      Respectfully submitted,

**BURSOR & FISHER, P.A.**

By:    */s/ Scott A. Bursor*
             Scott A. Bursor

Scott A. Bursor
Joshua D. Arisohn
Yitzchak Kopel
888 Seventh Avenue
New York, NY 10019
Telephone:  (212) 989-9113
Facsimile:  (212) 989-9163
Email:  scott@bursor.com
            jarisohn@bursor.com
            ykopel@bursor.com

*Class Counsel*

23