UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

JOANNE HART and SANDRA BUENO,
*on behalf of themselves and all others similarly situated,*

              Plaintiffs,

              -against-

BHH, LLC d/b/a BELL + HOWELL, *et ano.*,

              Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

15cv4804

OPINION & ORDER

WILLIAM H. PAULEY III, Senior United States District Judge:

        Joanne Hart and Sandra Bueno ("Plaintiffs") bring this class-action lawsuit for fraud, breach of warranty, and violations of the California Legal Remedies Act against Defendants BHH, LLC d/b/a Bell + Howell and Van Hauser, LLC (together, "BHH"). Plaintiffs move for preliminary approval of a proposed class-action settlement with BHH. (ECF No. 285.) For the reasons set forth below, Plaintiffs' motion for preliminary approval is denied.

BACKGROUND

        This consumer class-action lawsuit involves ultrasonic pest repellers manufactured and sold by BHH and purchased by Plaintiffs. Plaintiffs claim the repellers are ineffective and that BHH committed fraud and breached warranties. BHH counters that its repellers are effective under certain circumstances and that nothing in its marketing is fraudulent. BHH sold approximately 2.48 million repellers during the April 20, 2011 to June 15, 2016 class period. Hart v. BHH, LLC, 2017 WL 2912519, at *5 (S.D.N.Y. July 7, 2017).

        After years of protracted litigation, the parties informed this Court that they reached a settlement. (ECF No. 281.) The proposed class-action settlement bifurcates payments

1

to class members who have proof of payment and those who do not. (ECF No 287-1 ¶ 64.) Class members with proof of purchase will receive a full refund of the purchase price for up to six units if the proof of purchase contains the actual price paid or $15 for up to six units if the proof of purchase omits the actual price paid. (ECF No. 287-1 ¶ 64(a).) Class members without proof of purchase will receive $15 per unit but are capped at two units. (ECF No. 287-1 ¶ 64(a).) For attorneys' fees, Plaintiffs' proposal contains two unique features. First, attorneys' fees will be paid prior to any payment to class members. (ECF No. 287-1 ¶ 90.) Second, rather than propose the amount of reasonable attorneys' fees to be awarded, the parties plan to arbitrate the issue of attorneys' fees. (ECF No. 287-1 ¶ 86.)

## DISCUSSION

I. Standard

Preliminary approval of a proposed class-action settlement is the first step in a two-step process required by Fed. R. Civ. P. 23(e) before a class action may be settled. See Fed. R. Civ. P. 23(e)(1), (2). If preliminary approval is granted, plaintiffs are permitted to disseminate notice of a hearing to the class members, where class members and settling parties are provided the opportunity to be heard on the question of final court approval. See Fed. R. Civ. P. 23(e)(1). For preliminary approval, courts examine whether the proposed settlement is "likely" able to be approved under Rule 23(e)(2). Fed. R. Civ. P. 23(e)(1)(B)(i); see also In re Traffic Exec. Ass'n–E. R.R.s, 627 F.2d 631, 634 (2d Cir. 1980) ("[Preliminary approval] is at most a determination that there is what might be termed 'probable cause' to submit the proposal to class members and hold a full-scale hearing as to its fairness."). A court should preliminarily approve a proposed settlement which "appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential

treatment to class representatives or segments of the class and falls within the range of possible approval." In re Nasdaq Market-Makers Antitrust Litig., 176 F.R.D. 99, 102 (S.D.N.Y. 1997); see also 4 William Rubenstein, Newberg on Class Actions § 13.13 (5th ed. 2015) (same).

II.     "Quick-Pay" Provision

The proposed stipulation of settlement provides for the payment of attorneys' fees within 10 days of final approval. (ECF No. 287-1 ¶ 90.) However, payments to class members are only dispersed 15 days after the defined "Effective Date." (ECF No. 287-1 ¶ 36.) The Effective Date is either the date of final approval if there are no objectors or the date when any objectors' appellate rights expire or have been exhausted. (ECF No. 287-1 ¶ 36.) The proposed agreement allows for two scenarios: (i) where there are no objectors and class members are paid five days after counsel, or (ii) where there are objectors—and potentially subsequent appeals— and class members are paid an indeterminate period after counsel. Under either scenario, counsel is paid before any class member. Plaintiffs' counsel dubs this a "quick-pay" provision and contends it is necessary to discourage "the filing of baseless objections (and appeals), which can delay payment of class relief." (ECF No. 292, at 2.) This Court disagrees.

Attorneys' fees—"including timing of payment"—are at the discretion of the court. Fed. R. Civ. P. 23(e)(2)(C)(iii). Rewarding counsel prior to compensating the class conflicts with Rule 23(e)'s mandate for fairness, reasonableness, and adequacy. See Fed. R. Civ. P. 23(e)(2)(C)(iii). Of course, it is obvious why counsel would like to be paid sooner rather than later. This litigation has spanned years. Plaintiffs survived a motion to dismiss, adequately pleading that the ultrasonic pest repellers are not the Pied Piper that BHH touted them to be. See Hart, 2017 WL 2912519, at *3. Plaintiffs then defeated a motion for summary judgment, relying in part on a remarkable photograph of a mouse lounging on one of BHH's repellers. See Hart v.

3

BHH, LLC, 323 F. Supp. 3d 560, 562 (S.D.N.Y. 2018).  Now that Plaintiffs have secured a proposed settlement, counsel understandably wants the reward they have earned.  But so does the class.  If there are objectors and appeals, counsel would be paid in full while the class waits.  Notably, Plaintiffs' proposal provides that counsel be paid before class members even if there are no objectors.  How this would serve Plaintiffs' purported goal to deter baseless objections strains credulity.  Indeed, the entire purpose of the lawsuit is to compensate the class—not the lawyers.

There are sound reasons for courts to ensure that the class has been compensated prior to attorneys in class-action settlements.  When settlement occurs, "the adversarial process melts away."  SEC v. Bear, Stearns & Co., 626 F. Supp. 2d 402, 403 (S.D.N.Y. 2009).  BHH, having inked a proposed settlement agreement and likely accounted for the loss, has no incentive to pour further resources into this litigation.  The same holds true for Plaintiffs' counsel.  Valid objectors may come forward, and Plaintiffs would need to stave them off.  Cynically, money is the best way to keep lawyers engaged.  The interests of the class being paid before the attorneys clearly outweighs any theoretical risk of frivolous objectors.

Nor is this Court without another mechanism to disincentivize baseless objection: sanctions.  Rule 11 is an effective tool.  Courts have previously warned that if "an objector to a class action settlement pursues an unmeritorious appeal in order to pursue a 'strategy of tactical disruption and delay,' he 'should be aware of Rule 11.'"  In re NASDAQ Market-Makers Antitrust Litig., 187 F.R.D. 124, 131 (S.D.N.Y. 1999) (quoting In re Ivan F. Boesky Sec. Litig., 948 F.2d 1358, 1368 (2d Cir. 1991)).  Frivolous objectors here are similarly forewarned.  Indeed, sanctions are a more effective deterrent to professional objectors than "quick-pay."  If an objector files a frivolous appeal, it "may be costly for defendants as well, and objectors can still put pressure on them."  4 William Rubenstein, Newberg on Class Actions § 13.8 (5th ed. 2015).

Moreover, Plaintiffs' counsel would be required to expend resources in defending a meritless appeal. Thus, even with "quick-pay," professional objectors have a bargaining chip to coerce a payoff.

Plaintiffs cite several out-of-district and out-of-circuit decisions reasoning that quick-pay provisions do not harm the class. See, e.g., Pelzer v. Vassalle, 655 F. App'x 352, 365 (6th Cir. 2016) ("The quick-pay provision does not harm the class members in any discernible way, as the size of the settlement fund available to the class will be the same regardless of when the attorneys get paid."); In re Whirpool Corp. Front-loading Washer Prod. Liab. Litig., 2016 WL 5338012, at *21 (N.D. Ohio Sept. 23, 2016) ("Far from serving as proof that Class Counsel in this case somehow pursued their own interests at the expense of the class, the quick-pay clause serves the socially-useful purpose of deterring serial objectors."). This Court disagrees that there is no harm to the class by paying attorneys first.

Plaintiffs cite a litany of orders in this district where Plaintiffs' counsel secured preliminary approval of settlement agreements containing "quick-pay" provisions. See Edwards v. Hearst Commc'ns, Inc., No. 1:15-cv-9279, ECF No. 299 (S.D.N.Y. Jan. 24, 2019); Moeller v. Advance Magazine Publishers, Inc., No. 1:15-cv-05671, ECF No. 130 (S.D.N.Y. Oct. 24, 2018); Gregorio v. Premier Nutrition Corp., No. 1:17-cv-5987, ECF No. 77 (S.D.N.Y. Sept. 14, 2018); Ruppel v. Consumers Union of Am., No. 7:16-cv-2444, ECF No. 99 (S.D.N.Y. Jul. 27, 2018); In re Scotts EZ Seed Litig., No. 7:12-cv-4727, ECF No. 347 (S.D.N.Y. June 21, 2018); Taylor v. Trusted Media Brands, No. 7:16-cv-01812, ECF No. 75 (S.D.N.Y. Oct. 17, 2017); Rodriguez v. CitiMortgage, Inc., No. 1:11-cv-04718, ECF No. 40 (S.D.N.Y. Jan. 16, 2013). However, none of these preliminary settlement approvals contain an iota of analysis on "quick-pay" provisions. Even more troubling, all of them were drafted by Plaintiffs' counsel themselves. And the

dockets indicate the judges merely affixed their signatures.  Accordingly, these "orders" are of little aid.

The adoption of proposed orders is commonplace and can aid judicial economy in areas where little analysis is required—like extensions of discovery schedules.  But in the context of class-action settlement, a searching judicial inquiry is required.  This is critical since the settlement will bind those who have not had their day in court.  Thus, the Federal Rules mandate courts to ensure settlements are fair and reasonable.  See Fed. R. Civ. P. 23(e)(2).

The reliance on proposed orders leads to a cookie-cutter jurisprudence.  That is not how the law should develop.  Unsurprisingly, the law in this district has skewed towards preliminary settlement approval since these ready-made orders—which are drafted by the plaintiffs' bar—masquerade as judicial opinions.  Unlike the prisoners in Plato's Allegory of the Cave, this Court choses to look at the puppets rather than the shadows they cast.  This Court is not swayed by Plaintiffs' string cite of stock decisions.  "Orders drafted by counsel, especially those making findings of fact and conclusions of law that award counsel their own fees, should be given little precedential value."  Sakiko Fujiwara v. Sushi Yasuda Ltd., 58 F. Supp. 3d 424, 436 (S.D.N.Y. 2014).  Accordingly, this Court declines to follow these form decisions.

III.    Determining Attorneys' Fees by Arbitration

The proposed settlement does not include a specific figure for attorneys' fees.  Instead, since "[t]he parties were unable to agree on the amount that would constitute reasonable attorneys' fees, costs and expenses," the parties plan to arbitrate this figure.  (ECF No. 287-1, at ¶ 86.)  The parties have determined that the aggregate fees, costs, and expenses range between $3,000,000 and $7,500,000.  (ECF No. 287-1, at ¶ 87.)  In support of their proposal to arbitrate attorneys' fees, Plaintiffs cite a lone California Court of Appeals decision allowing such a

provision. See Cellphone Termination Fee Cases, 104 Cal. Rptr. 3d 275, 281 (Cal. Ct. App. 2009).

In a class-action settlement, courts must carefully scrutinize lead counsel's application for attorneys' fees to "ensure that the interests of class members are not subordinated to the interests of . . . class counsel." Maywalt v. Parker & Parsley Petroleum Co., 67 F.3d 1072, 1078 (2d Cir. 1995). A court's role in this context is "to act as a fiduciary who must serve as a guardian of the rights of absent class members." McDaniel v. Cty. of Schenectady, 595 F.3d 411, 419 (2d Cir. 2010) (quotation marks omitted).

Typical class-action settlements involve a single fund from which Plaintiffs' counsel is compensated by either a lodestar method or a percentage of the total recovery. Here, the proposed settlement consists of delineated tranches that claimants can receive depending on how many devices they purchased and whether they have proof of purchase. (See ECF 287-1 ¶ 64.) There is no cap on the amount of money that can be paid to the class as a whole.[1] The proposed attorneys' fees are wholly separate from the settlement to class members. This is not the usual zero-sum game. Indeed, Plaintiffs' proposal to separate attorneys' fees from damages to the class is preferable. Separating attorneys' fees avoids potential conflicts with the class.

However, Plaintiffs' assertion that an arbitrator can decide what fees are reasonable is contrary to law. Attorneys' fees are awarded at the discretion of the court. Fed. R. Civ. P. 23(e)(2)(C)(iii); see also Goldberger v. Integrated Res., Inc., 209 F.3d 43, 47 (2d Cir. 2000) ("[T]he attorneys whose efforts created the fund are entitled to a reasonable fee—set by the court—to be taken from the fund."). When analyzing the proposed settlement agreement for final approval, this Court will review Plaintiffs' application for attorneys' fees, taking into

---

[1] However, as previously discussed with the parties, this Court is skeptical about Plaintiffs' predictions of class participation given the relatively low cost of the repeller devices and receipt requirement for certain tranches.

7

account the interests of the class. Maywalt, 67 F.3d at 1078. That leads this Court to wonder why the parties would go through the rigmarole of an arbitration to determine appropriate attorneys' fees when that responsibility rests with the court.[2] Moreover, the parties contemplate that the arbitrator will award attorneys' fees—within 65 days of preliminary approval—before the claims process is completed. (See ECF No. 287-2.) How could an arbitrator decide the reasonableness of attorneys' fees without knowing the total recovery for the class? Since "[t]he trend in this Circuit is toward the percentage method," Wal-Mart Stores, Inc. v. Visa U.S.A., Inc., 396 F.3d 96, 121 (2d Cir. 2005), and the arbitration would conclude before any claims are submitted, the total recovery of the class—the necessary denominator—will be unknown. Thus, it makes little sense to engage an arbitrator to render a decision that will carry no weight.

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion seeking preliminary approval of class-action settlement is denied. The Clerk of Court is directed to terminate the motion pending at ECF No. 285.

Dated: January 17, 2020
      New York, New York

SO ORDERED:

_William H. Pauley_
WILLIAM H. PAULEY III
U.S.D.J.

---

[2] Tellingly, Plaintiffs' only cited authority to arbitrate attorneys' fees comes from a state court, which is not obligated to follow Rule 23. See Cellphone Termination Fee Cases, 104 Cal. Rptr. 3d at 281.

8