**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JOANNE HART and SANDRA BUENO, on behalf of themselves and all others similarly situated, | Civil Action No. 1:15-CV-04804-WHP |
| Plaintiffs, | |
| v. | |
| BHH, LLC d/b/a Bell + Howell and VAN HAUSER LLC | |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR**
**ATTORNEYS' FEES, COSTS, EXPENSES, AND INCENTIVE AWARDS**

Dated: May 22, 2020

**BURSOR & FISHER, P.A.**

Scott A. Bursor
Joshua D. Arisohn
Yitzchak Kopel
888 Seventh Avenue
New York, NY 10019
Telephone:  (212) 989-9113
Facsimile:  (212) 989-9163
Email:  scott@bursor.com
         jarisohn@bursor.com
         ykopel@bursor.com

*Class Counsel*

# TABLE OF CONTENTS

**PAGE(S)**

I.      INTRODUCTION ............................................................................................ 1

II.     FACTUAL AND PROCEDURAL BACKGROUND............................................. 3

        A.      Class Counsel's Pre-Suit Investigation And The Pleading Stage............. 3

        B.      Fact Discovery .................................................................................... 4

        C.      The Steigerwald Action And Its Impact On This Litigation:
                Defendants Seek To Stay This Action And Ms. Hart Moves To
                Intervene In Ohio ............................................................................... 5

        D.      Plaintiffs File An Amended Complaint And Move For Class
                Certification ....................................................................................... 6

        E.      Expert Disclosures And Discovery ........................................................ 7

        F.      Summary Judgment And Pretrial Proceedings ....................................... 8

        G.      Settlement Negotiations ....................................................................... 9

III.    SUMMARY OF THE SETTLEMENT ............................................................... 9

IV.     ARGUMENT ................................................................................................ 10

        A.      The CLRA Provides For A Mandatory Award Of Attorneys' Fees
                To The Prevailing Party ...................................................................... 10

        B.      The Requested Attorneys' Fees, Costs, And Expenses Are Fair
                And Reasonable ................................................................................. 11

                1.      The Requested Attorneys' Fees, Costs, And Expenses
                        Represent Approximately 10.05% Of The Class' Recovery ........... 12

                2.      The Reasonableness Of The Requested Attorneys' Fees,
                        Costs, And Expenses Is Supported By This Circuit's Six-
                        Factor *Goldberger* Test ........................................................... 14

                        a.      Time And Labor Expended By Counsel........................... 14

                        b.      Magnitude And Complexity Of The Litigation ................. 16

                        c.      The Risk Of Litigation ................................................. 17

                        d.      The Quality Of Representation ...................................... 18

                        e.      The Requested Fee In Relation To The Settlement .......... 20

                        f.      Public Policy Considerations ....................................... 20

                3.      The Requested Attorneys' Fees, Costs, And Expenses Are
                        Also Reasonable Under A Lodestar Cross-Check ......................... 21

        C.      Class Counsel's Litigation Costs And Expenses Are Reasonable
                And Were Necessarily Incurred To Achieve The Benefit Obtained
                On Behalf Of The Class ....................................................................... 23

        D.      The Agreed-Upon Incentive Awards Reflect The Class
                Representatives' Active Involvement In This Action And Should
                Be Approved ..................................................................................... 24

V.      CONCLUSION.............................................................................................. 25

# TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Asare v. Change Grp. Of N.Y., Inc.,*
2013 WL 6144764 (S.D.N.Y. Nov. 18, 2013) .......................................................... 23

*Blum v. Stenson,*
465 U.S. 886 (1984) ................................................................................................ 21

*Boeing Co. v. Van Gemert,*
444 U.S. 472 (1980) ................................................................................................ 13

*Broughton v. Cigna Healthplans,*
21 Cal. 4th 1066 (1999) ........................................................................................... 11

*Cassese v. Williams,*
503 F. App'x 55 (2d Cir. 2012) ............................................................................... 21

*Dial Corp. v. News Corp.,*
317 F.R.D. 426 (S.D.N.Y. 2016) ............................................................................ 14

*Dornberger v. Metro. Life Ins. Co.,*
203 F.R.D. 118 (S.D.N.Y. 2001) ............................................................................ 25

*Dupler v. Costco Wholesale Corp.,*
705 F. Supp. 2d 231 (E.D.N.Y. 2010) .................................................................... 12

*Ebin v. Kangadis Food Inc.,*
297 F.R.D. 561 (S.D.N.Y. Feb. 25, 2014) .............................................................. 19

*Eisen v. Carlisle & Jacquelin,*
417 U.S. 156 (1974) ................................................................................................ 20

*Galoski v. Stanley Black & Decker, Inc.,*
Case No 1:14-cv-553 (N.D. Ohio) ............................................................................ 1

*Galoski v. Stanley Black & Decker, Inc.,*
2017 WL 2291431 (N.D. Ohio May 25, 2017) ....................................................... 18

*Goldberger v. Integrated Resources, Inc.,*
209 F.3d 43 (2d Cir. 2000) ..................................................................... 12, 14, 20, 21

*Hart v. BHH, LLC,*
2017 WL 2912519 (S.D.N.Y. July 7, 2017) ........................................................... 19

*In re Bayer AG Sec. Litig.*,
   2008 WL 5336691 (S.D.N.Y. Dec. 15, 2008)........................................................ 14

*In re Beacon Assocs. Litig.*,
   2013 WL 2450960 (S.D.N.Y. May 9, 2013)............................................................ 12

*In re Citigroup Inc. Sec. Litig.*,
   965 F. Supp. 2d 369 (S.D.N.Y. 2013)................................................................... 13

*In re Lloyd's Am. Trust Fund Litig.*,
   2002 WL 31663577 (S.D.N.Y. Nov. 26, 2002) ..................................................... 23

*In re Marsh ERISA Litig.*,
   265 F.R.D. 128 (S.D.N.Y. 2010) ................................................................... 17, 19

*In re MetLife Demutualization Litig.*,
   689 F. Supp. 2d 297 (E.D.N.Y. 2010)................................................................... 19

*In re Nasdaq Market-Makers Antitrust Litig.*,
   187 F.R.D. 465, 477 (S.D.N.Y. 1998) .................................................................. 16

*In re Nigeria Charter Flights Litig.*,
   2011 WL 7945548 (E.D.N.Y. Aug. 25, 2011) ....................................................... 13

*In re Platinum & Palladium Commodities Litig.*,
   2015 WL 4560206 (S.D.N.Y. July 7, 2015) .......................................................... 14

*In re Polaroid*,
   2007 WL 2116398 (S.D.N.Y. July 19, 2007) ........................................................ 14

*In re Sony Corp. SXRD Rear Projection TV Class Action Litig.*,
   2008 U.S. Dist. LEXIS 36093 (S.D.N.Y. May 1, 2008)......................................... 12

*In re Telik, Inc. Sec. Litig.*,
   576 F. Supp. 2d 570 (S.D.N.Y. 2008).................................................................. 17

*In re Visa Check/Mastermoney Antitrust Litig.*,
   297 F. Supp. 2d 503 (E.D.N.Y. 2003).................................................................. 23

*Jermyn v. Best Buy Stores, L.P.*,
   2012 WL 2505644 (S.D.N.Y. June 27, 2012)........................................................ 12

*Kim v. Euromotors West/The Auto Gallery*,
   149 Cal. App. 4th 170 (2007)............................................................................. 11

*LeBlanc-Sternberg v. Fletcher*,
  143 F. 3d 748 (2d Cir. 1998) .................................................................. 22

*Luciano v. Olsten Corp.*,
  109 F.3d 111 (2d Cir. 1997) ................................................................... 21

*Massiah v. MetroPlus Health Plan, Inc.*,
  2012 WL 5874655 (E.D.N.Y. Nov. 20, 2012). .................................. 20, 24

*Masters v. Wilhelmia Model Agency, Inc.*,
  473 F.3d 423 (2d Cir. 2007) ................................................................... 13

*McBean v. City of N.Y.*,
  233 F.R.D. 377 (S.D.N.Y. 2006) ............................................................ 12

*McDaniel v. County of Schenectady*,
  595 F.3d 411 (2d Cir. 2010) ................................................................... 12

*McMahon v. Olivier Cheng Catering and Events, LLC*,
  2010 WL 2399328 (S.D.N.Y. Mar. 3, 2010) ........................................... 23

*Missouri v. Jenkins*,
  491 U.S. 274 (1989) ............................................................................... 22

*Parker v. Jekyll & Hyde Entm't Holdings, LLC*,
  2010 WL 532960 (S.D.N.Y. Feb. 9, 2010) ............................................. 23

*Parkinson v. Hyundai Motor America*,
  796 F. Supp. 2d 1160 (C.D. Cal. 2010) .................................................. 11

*Pennsylvania v. Del. Valley Citizens' Council for Clean Air*,
  478 U.S. 546 (1986) ............................................................................... 21

*Raniere v. Citigroup Inc.*,
  310 F.R.D. 211 (S.D.N.Y. 2015) ............................................................ 25

*Ryan v. California Interscholastic Federation*,
  94 Cal.App.4th 1033 (2001) ................................................................... 11

*Shapiro v. JPMorgan Chase & Co.*,
  2014 WL 1224666 (S.D.N.Y. Mar. 24, 2014) .............................. 17, 20, 21

*Simerlein v. Toyota Motor Corp.*,
  2019 WL 2417404 (D. Conn. June 10, 2019) .......................................... 13

*Steigerwald v. BHH, LLC*,
  Case No. 1:15-cv-00741 (N.D. Ohio) .................................................................... 1, 5

*Steigerwald v. BHH, LLC*,
  2016 WL 695424 (N.D. Ohio Feb. 22, 2016) ........................................................ 5, 6

*Steigerwald v. BHH, LLC*,
  317 F.R.D. 615 (N.D. Ohio Nov. 8, 2016) ................................................................. 6

*Steigerwald v. BHH, LLC*,
  2016 WL 6962593 (N.D. Ohio Nov. 29, 2016) ....................................... 6, 17, 18, 19

*Steinberg v. Nationwide Mut. Ins. Co.*,
  612 F. Supp. 2d 219 (E.D.N.Y. 2009) ....................................................................... 12

*Torres v. Gristede's Operating Corp.*,
  519 F. App'x 1 (2d Cir. 2013) .................................................................................... 13

*Wal–Mart Stores, Inc. v. Visa U.S.A., Inc.*,
  396 F.3d 96 (2d Cir. 2005) ................................................................................... 21, 24

*West Shield Investigations and Sec. Consultants v. Superior Court*,
  82 Cal. App. 4th 935 (2000) ...................................................................................... 11

*Zink v. First Niagara Bank, N.A.*,
  2016 WL 7473278 (W.D.N.Y. Dec. 29, 2016) ......................................................... 13

## STATUTES

15 U.S.C. § 2301 ................................................................................................................. 3

Cal. Bus. & Prof. Code § 17200 ........................................................................................ 3

Cal. Bus. & Prof. Code § 17500 ........................................................................................ 3

C.L.R.A., Civil Code §1750 ....................................................................................... 10, 11

C.L.R.A., Civil Code §1780 ............................................................................................. 10

## RULES

Fed. R. Civ. P. 23(h) .......................................................................................................... 2

Fed. R. Civ. P. 37(c) .......................................................................................................... 8

## I.    INTRODUCTION

The class action settlement between Plaintiffs Joanne Hart and Sandra Bueno ("Plaintiffs" or the "Class Representatives") and Defendants BHH, LLC and Van Hauser LLC ("Defendants") resolves this case after five years of litigation and provides exceptional relief for Settlement Class Members.  Under the terms of the settlement, Settlement Class Members who purchased the Repellers at issue, and have proof of purchase, can recover the full purchase price for up to six units purchased.  Settlement Class Members with proof of purchase that does not show the actual price paid for the Repellers will receive a refund of up to $90, *i.e.*, $15.00 for per unit for up to six units.  Finally, Settlement Class Members who submit a valid Claim Form without any proof of purchase will be paid up to $30, *i.e.*, $15.00 per unit for up to two units.

Obtaining this exceptional relief did not come easily.  Plaintiffs shouldered significant risk and battled through five years of hard-fought litigation, involving a complex factual investigation into entomology and acoustical engineering.  The settlement was reached on the cusp of trial, after many years of litigation, during which time the Parties completed extensive merits and expert discovery, thirteen depositions, class certification, summary judgment, and motions *in limine*, and a Joint Pretrial Order.

The risks posed to Class Counsel and the results they achieved were extraordinary. Notably, two other certified class actions regarding ultrasonic pest repellers were litigated in another district at the same time as this action.  *See Steigerwald v. BHH, LLC*, No. 1:15-cv-00741 (N.D. Ohio) and *Galoski v. Stanley Black & Decker, Inc.*, No 1:14-cv-553 (N.D. Ohio). In fact, as discussed herein, the *Steigerwald* action involved the same defendants, same defense counsel, same classes, same Repellers, and same claims as this case.  But both *Steigerwald* and *Galoski* were ultimately dismissed on summary judgment, and the counsel representing those classes received no compensation for their work and no reimbursement of their expenses.  Based

on this track record of failed pest repeller class actions, some might have expected that the same result would befall this case.  But Class Counsel accepted this risk and bucked the trend by defeating Defendants' summary judgment motion, litigating the case to the cusp of trial, and brokering this Settlement.

In light of this exceptional result, Plaintiffs respectfully request, pursuant to Federal Rule of Civil Procedure 23(h), that the Court approve the agreed-upon attorneys' fees, costs, and expenses totaling $6,500,000, as well as incentive awards of $5,000 each to Plaintiffs for their services as Class Representatives.  The attorneys' fees, costs, and expenses, as well as the incentive awards, will be paid by Defendants in addition to (and not from) the relief made available to the Settlement Class.  Thus, approving these awards will not derogate from the payments to Settlement Class Members.

The agreed-upon attorneys' fees, costs, and expenses represent approximately 10.05% of the Class' available recovery, which is well within the approved norms of class ligation in this Circuit.  *See infra* § IV.B.  And the requested attorneys' fees, costs, and expenses represent a 2.19 multiplier on Class Counsel's lodestar, which is also well within the accepted range in this Circuit.  *See id*.

Class Counsel are mindful of the Court's admonition in its January 17, 2020 Order denying Plaintiffs' first motion for preliminary approval, which stated that "[t]his Court is not swayed by" court decisions based on proposed "Orders drafted by counsel."  ECF No. 295.  Therefore, to the best of Class Counsel's knowledge, no such decisions are cited herein.  Rather, Class Counsel's requests for attorneys' fees, costs, and expenses, and incentive awards are supported by the substantive decisions of the Second Circuit and other district courts within this Circuit.

II.      **FACTUAL AND PROCEDURAL BACKGROUND**

A.      **Class Counsel's Pre-Suit Investigation And The Pleading Stage**

Prior to filing this action, Class Counsel conducted a substantial investigation concerning the facts and law relating to the matters alleged in Plaintiffs' complaints.  The investigation included: (a) investigating the Bell + Howell Ultrasonic Pest Repellers' (the "Repellers") packaging and labels, product specifications, advertisements, and retail pricing; (b) conferences with Joanne Hart and Amanda Parke, the two original plaintiffs in this case (the "Original Plaintiffs"), regarding their purchases and use of the Repellers; (c) review of documents provided by the Original Plaintiffs regarding their purchase and use of the Repellers; (d) interviews of putative Class Members; (e) review of customer complaints; (f) extensive review of technical, scientific, and legal materials regarding the efficacy of ultrasonic repellers, including scholarly articles, tests, previous FTC actions and other legal actions against manufacturers of ultrasonic products ; (g) legal research regarding the elements and standards of the Original Plaintiffs' claims; and (h) satisfaction of pre-suit notice requirements.  Declaration of Yitzchak Kopel ("Kopel Decl.") ¶ 5.

On June 19 2015, Original Plaintiffs Joanne Hart and Amanda Parke filed the initial class action complaint in this action, alleging causes of action for violation of the federal Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. §§ 2301, *et seq.*; California's Consumers Legal Remedies Act ("CLRA"), Cal. Civil Code §§ 1750, *et seq.*; California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq.*; California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500, *et seq.*; Breach of Express Warranty; Breach of Implied Warranty of Merchantability; and unjust enrichment.  The complaint asserted claims against BHH, LLC and Van Hauser LLC ("Defendants") on behalf of a putative nationwide class and California and Texas Subclasses.  *Id.* ¶ 7.

3

On October 19, 2015, Defendants filed a Motion to Dismiss, which the Original Plaintiffs opposed. On May 25, 2016, the Court granted, in part, and denied, in part, Defendants' Motions to Dismiss.  The Order dismissed the claims under the MMWA and for unjust enrichment but allowed the other claims to proceed.  *Id.* ¶ 8.

On November 20, 2015 Original Plaintiff Parke filed a notice of voluntary dismissal of her claims due to personal time constraints.  *Id.* ¶ 9.

### B.     Fact Discovery

The battle to obtain a complete document production for Defendants was extremely hard fought and required Class Counsel to file multiple motions to compel.  After the Court issued an order granting Ms. Hart's first motion to compel on November 6, 2015, Defendants made a document production totaling fewer than 400 pages.  Class Counsel expressed concern about the insufficiency of this production to defense counsel but were advised that Defendants had searched and could not locate any other responsive documents.  *Id.* ¶¶ 12-13.

On February 3, 2016, Class Counsel took the Rule 30(b)(6) deposition of Jeffrey Mishan, one of Defendants' principals.  At the deposition, it became apparent that Defendants limited their production to documents pertaining to just one variety of the Repellers.  Defendants' discovery objections never noted this; the documents previously produced showed total sales of the product in the U.S. were less than $1.5 million for the class period.  Ultimately, however, further discovery revealed that actual sales exceeded $52 million.  *Id.* ¶ 14.

On February 26, 2016, Class Counsel submitted a second motion to compel, which the Court granted.  Defendants produced several thousands of pages of documents as a result of this Order.  *Id.* ¶¶ 16.

The parties conducted a combined thirteen depositions in this action.  *Id.* ¶¶ 14, 17, 31, 43, 49, 52.

C.      **The Steigerwald Action And Its Impact On This Litigation:
        Defendants Seek To Stay This Action And Ms. Hart Moves To
        Intervene In Ohio**

Two months before initiation of this action, a separate class action regarding the efficacy

of the Bell + Howell Repellers was filed in the Northern District of Ohio.  *See Steigerwald v.*

*BHH, LLC*, No. 1:15-cv-00741 (N.D. Ohio).  On February 26, 2016, the court in *Steigerwald*

certified a nationwide fraud class of purchasers of the Repellers, and a 25-state breach of express

warranty class of Repeller purchasers.  *Steigerwald v. BHH, LLC*, 2016 WL 695424, at *6 (N.D.

Ohio Feb. 22, 2016).  Kopel Decl. ¶¶ 19-20.

On March 2, 2016, Defendants submitted a pre-motion letter to this Court requesting to

stay this action until resolution of the *Steigerwald* action.  On March 9, 2016, Class Counsel

submitted a response letter on behalf of Ms. Hart stating that she would not pursue certification

for her express warranty claim in light of the overlap with the *Steigerwald* certification, but

should be permitted to press ahead with her California consumer protection claims on behalf of a

California-only class.  On June 2, 2016, the Court held a pre-motion conference and offered its

thoughts regarding the merits of Defendants' motion.  In light of the Court's comments,

Defendants elected to forgo the formal motion to stay.  *Id.* ¶ 21.

In August 2016, Class Counsel discovered that Defendants had made the same *de*

*minimis* document production in the *Steigerwald* action as they initially made in this action.  Just

as in this case, the *Steigerwald* production focused solely on a single model of Repellers, and the

plaintiff in that action was therefore aware of only approximately $897,745 in sales for what

ultimately became a case worth more than $52 million.  However, in contrast to Class Counsel's

efforts in discovery in this case to compel a complete document production from Defendants, no

such efforts were ever made in the *Steigerwald* action.  Moreover, although the classes had been

certified six months earlier in March 2016, no efforts to begin the process of disseminating class

notice had taken place by August 2016. These issues gave Ms. Hart and Class Counsel grave

concern that the interests of class members were not being adequately represented in the

*Steigerwald* action. In particular, Class Counsel were concerned that the *Steigerwald* case could

proceed through summary judgment and/or trial with Ms. Steigerwald's counsel only seeking a

small fraction of the relief actually due to the Classes. *Id.* ¶¶ 23-25.

After unsuccessfully reaching out to Ms. Steigerwald's counsel with an offer to help them

right their ship, Ms. Hart retained the law firm of Climaco, Wilcox, Peca & Garofoli Co., LPA to

serve as local counsel in the Northern District of Ohio, and filed a motion to intervene in the

*Steigerwald* action on August 16, 2016. On November 8, 2016, the court denied Ms. Hart's

motion to intervene on the grounds that the litigation was too advanced to permit intervention

and that Ms. Hart's interests were not sufficiently impaired because she was permitted to opt out

of the certified class. *See Steigerwald,* 317 F.R.D. 615 (N.D. Ohio Nov. 8, 2016). Although this

motion was denied, this was a significant effort on the parts of Ms. Hart, Class Counsel, and her

local Ohio counsel, to protect the interests of the Classes. Kopel Decl. ¶¶ 26-27.

Shortly thereafter, the court granted Defendants' *Daubert* motion in the *Steigerwald*

action and entered summary judgment in favor of Defendants. *See Steigerwald,* 2016 WL

6962593 (N.D. Ohio Nov. 29, 2016). At this point, Ms. Hart and Class Counsel took note that

the *Steigerwald* decision was not binding on class members because notice had not been

disseminated and they therefore had no opportunity to opt-out of the classes. Ms. Hart and Class

Counsel therefore resolved to move for re-certification of the fraud and breach of express

warranty classes in this action. Kopel Decl. ¶¶ 28-29.

### D.   Plaintiffs File An Amended Complaint And Move For Class Certification

On January 23, 2017, Ms. Hart filed a First Amended Complaint ("FAC") adding a new

plaintiff, Sandra Bueno (collectively, "Plaintiffs"), and a single new claim for fraud. *Id.* ¶ 30.

On March 16, 2017, Plaintiffs moved to certify a nationwide fraud class, 25-state breach of express warranty class, and a class consisting of California residents asserting claims under the CLRA.  On April 27, 2017, Defendants filed a motion to dismiss the FAC and an opposition to Plaintiffs' motion for class certification.  *Id*. ¶ 32.

On July 7, 2017, the Court granted, in part, and denied, in part, Defendants' motion to dismiss and granted Plaintiffs' Motion to Certify Class.  The motion to dismiss was granted with respect to Plaintiffs' UCL and FAL claims, but denied in all other respects.  The certification motion was granted in full.  The law firm of Bursor & Fisher, P.A. was appointed as Class Counsel, and Plaintiffs were appointed as Class Representatives.  *Id*. ¶ 33.

On September 8, 2017, Defendants filed a letter motion requesting to continue dissemination of class notice until after the Court ruled on summary judgment motions.  On September 13, 2017, Plaintiffs filed a letter opposing the request.  The Court denied the request on October 2, 2017.  *Id*. ¶ 34.

Following class certification, Plaintiffs subpoenaed documents identifying class members from the top retailers and distributors of the Repellers.  This series of subpoenas allowed Plaintiffs to identify contact information for over one million class members, who each received direct notice of the pendency of this action.  *Id*. ¶¶ 35-37.

E.     **Expert Disclosures And Discovery**

Due to the technical nature of this case, Plaintiffs worked with their expert entomologist, Dr. Michael F. Potter, to design and commission an extensive series of testing on the Repellers.

First, Plaintiffs commissioned testing of the Repellers' ultrasonic and electromagnetic properties with Dr. Richard Mankin at the U.S. Department of Agriculture's laboratory in Gainesville Florida.

Next, Plaintiffs commissioned testing of ants, roaches, and spiders at i2L Research, USA's laboratories in Baltimore, MD.  Each of these tests needed to be designed separately to accommodate the needs of each critter.  i2L conducted six tests per critter, or eighteen total tests.

Finally, Plaintiffs commissioned testing of mice in six vacant apartments in Modesto, California.  The video footage of the mice sitting on top of the Repellers during this testing was ultimately featured in the Court's summary judgment order.  Plaintiffs also retained an economist, Colin Weir, to analyze the sales data and provide damages estimates.  *See id.* ¶¶ 38-42.

### F.      Summary Judgment And Pretrial Proceedings

On March 9, 2018, Defendants filed a motion for summary judgment and a *Daubert* motion.  On the same date, Plaintiffs filed two additional *Daubert* motions.  On July 19, 2018, the Court granted, in part, and denied, in part, both of the *Daubert* motions filed by Plaintiffs. The Court also denied in full the *Daubert* motion filed by Defendants.  Then, on September 5, 2018, the Court issued an Opinion and Order denying Defendants' motion for summary judgment, except with regard to limiting the time periods of the certified classes.  The Parties submitted letters proposing new subclasses on September 26, 2018.  *Id.* ¶¶ 44, 45, 47.

On August 13, 2018, Defendants filed a letter motion seeking again to preclude Dr. Potter's testimony pursuant to Fed. R. Civ. P. 37(c).  On August 16, 2018, Plaintiffs submitted an opposition letter.  On September 5, 2018, the Court denied this motion.  *Id.* ¶ 46.

On September 19, 2018, Defendants filed a Motion for Reconsideration of the Court's summary judgment decision.  Plaintiffs opposed the motion on October 10, 2018.  On November 2, 2018, the Court denied Defendants' motion for reconsideration.  *Id.* ¶¶ 48.

In December 2018 and January 2019, the Parties exchanged pre-trial disclosures and submitted a joint pretrial order on January 18, 2019.  And in March 2019, the Parties briefed

several motions *in limine*, including two new *Daubert* motions against Plaintiffs' expert witnesses.  *Id.* ¶¶ 50-52.  The Court set trial in this matter for September 9, 2019.  *Id.* ¶ 53.

### G.    Settlement Negotiations

Negotiations regarding potential settlement were thorough, protracted, and exhaustive and involved multiple settlement conferences and a mediation session.  As early as April 8, 2019, the Parties participated in a full-day in-person settlement conference with a mediator, Hon. John S. Martin, Jr.  Although the Parties were unsuccessful, the Parties left open the door for future resolution talks.  Following the mediation, the Parties engaged in substantial discussions in June and July 2019 in an effort to resolve the Action.  *Id.* ¶¶ 54-55.

On August 19, 2019, the Parties executed a Stipulation of Settlement.  On September 3, 2019, Plaintiffs filed a motion for preliminary approval.  On January 17, 2020, the Court issued an order denying the motion for preliminary approval.  *Id.* ¶¶ 56-57.

Thereafter, the parties reconvened discussions once again to revise the Stipulation of Settlement according to the guidance provided by the Court in its Order denying preliminary approval.  On February 3, 2020, the Parties executed a new Stipulation of Settlement.  On February 5, 2020, Plaintiffs submitted a letter motion seeking preliminary approval of the new Settlement.  On February 12, 2020, the Court issued an order granting preliminary approval.  *Id.* ¶¶ 58-59.

A more detailed history of the litigation, a description of Class Counsel's work, and the arms'-length settlement negotiations between the Parties, are set forth in the Kopel Declaration, submitted herewith.  *See* Kopel Decl. ¶¶ 5-59.

## III.    SUMMARY OF THE SETTLEMENT

Settlement Class Members who purchased the Repellers at issue, and have proof of purchase, can recover the full purchase price for up to six units purchased.  Settlement Class

Members with Proof of Purchase that does not show the actual price paid for the Repellers will receive a refund of up to $90, *i.e.*, $15.00 per unit up to six units.  Finally, Settlement Class Members who submit a valid Claim Form without proof of purchase will be paid up to $30, *i.e.*, $15.00 per unit up to two units.  There is no limit to the total number of refunds that Defendants will pay to the Settlement Class as a whole, and Settlement Class Members' full refunds will not be prorated for any reason.

This is an excellent result for Settlement Class Members.  Sales data indicate that the average retail price of the Repellers during the Class Period was between $21.61 and $24.10 and that many Settlement Class Members paid less than $15 for their Repellers.  Kopel Decl. ¶¶ 78-80.  Thus, the refund of $15 per unit for those without proof of purchase (and a full refund with proof of purchase) constitutes a very favorable result for Settlement Class Members.  Moreover, approximately 89.97% of Settlement Class Members purchased two or fewer units, and 99.33% purchased six or fewer units during the Class Period.  *Id.* ¶ 71-72.  Thus, the terms of the Settlement, which provide for a refund of six units with proof of purchase and two units without proof of purchase, allow for a refund of every unit purchased for nearly every Settlement Class Member.

## IV.   ARGUMENT

### A.    The CLRA Provides For A Mandatory Award Of Attorneys' Fees To The Prevailing Party

The Class Representatives brought claims against Defendants under California's Consumers Legal Remedies Act, Civil Code §§ 1750, *et seq.* (the "CLRA").  For CLRA claims, an award of fees to the prevailing party is mandatory under Civil Code § 1780(d), which provides:  "The court shall award court costs and attorney's fees to a prevailing plaintiff in litigation filed pursuant to this section."  As the California Court of Appeal has explained, in construing this provision:

> "The word 'shall' is usually deemed mandatory, unless a
> mandatory construction would not be consistent with the
> legislative purpose underlying the statute." (*West Shield
> Investigations and Sec. Consultants v. Superior Court* (2000) 82
> Cal. App. 4th 935, 949, 98 Cal.Rptr.2d 612.)  Our Supreme
> Court has observed that "the availability of costs and attorneys
> fees to prevailing plaintiffs is integral to making the CLRA an
> effective piece of consumer legislation, increasing the financial
> feasibility of bringing suits under the statute."  (*Broughton v.
> Cigna Healthplans* (1999) 21 Cal. 4th 1066, 1085, 90 Cal. Rptr.
> 2d 334, 988 P.2d 67.)  Thus, a mandatory construction of the
> word "shall" in section 1780(d) is consistent with the legislative
> purpose underlying the statute.

*Kim v. Euromotors West/The Auto Gallery*, 149 Cal. App. 4th 170, 178 (2007).

Under the CLRA, "[a] plaintiff is the prevailing if he or she obtained a 'net monetary

recovery' or 'realized its litigation objectives,' including pursuant to a settlement agreement."

*Parkinson v. Hyundai Motor Am.*, 796 F. Supp. 2d 1160, 1169 (C.D. Cal. 2010) (quoting *Ryan v.

California Interscholastic Federation*, 94 Cal.App.4th 1033, 1044 (2001)).  Here, because

Plaintiffs secured a full refund of the purchase price of the Repellers for themselves and class

members, they have obtained a net monetary recovery and realized their litigation objectives and

are entitled to recover attorneys' fees under the CLRA.  *See id.* at 171 ("Because plaintiffs

obtained a favorable settlement recovery for class members in the form of cash reimbursement,

up to and including full reimbursement (depending on vehicle mileage), plaintiffs are the

prevailing party under the CLRA fee-shifting statute.") (citing Cal. Civ. Code § 1780(e)).

### B.  The Requested Attorneys' Fees, Costs, And Expenses Are Fair And Reasonable

The requested fee, cost, and expense award of $6,500,000 is reasonable and merits

approval.  As noted above, the attorneys' fees, costs, and expenses, as well as the incentive

awards, will be paid by Defendants in addition to (and not from) the relief made available to the

Settlement Class.  Accordingly, "[i]n a case where the attorneys' fees are to be paid directly by

defendant and, thus, 'money paid to the attorneys is entirely independent of money awarded to

the class, the Court's fiduciary role in overseeing the award is greatly reduced, because there is no conflict of interest between attorneys and class members.'" *Dupler v. Costco Wholesale Corp.*, 705 F. Supp. 2d 231, 243 (E.D.N.Y. 2010) (quoting *McBean v. City of N.Y.*, 233 F.R.D. 377, 392 (S.D.N.Y. 2006)); *see also Jermyn v. Best Buy Stores, L.P.*, 2012 WL 2505644, at *9 (S.D.N.Y. June 27, 2012) ("'Thus regardless of the size of the fee award, class members . . . will receive the same benefit; the fee award does not reduce the recovery to the class.  Under these circumstances, the danger of conflicts of interest between attorneys and class members is diminished.'") (quoting *In re Sony Corp. SXRD Rear Projection TV Class Action Litig.*, 2008 U.S. Dist. LEXIS 36093, at *43 (S.D.N.Y. May 1, 2008)); *Steinberg v. Nationwide Mut. Ins. Co.*, 612 F. Supp. 2d 219, 224 (E.D.N.Y. 2009) ("[T]he fee award will not be drawn from the common fund but will be paid directly by [defendant].  In this regard, the fee award, however substantial, will have no effect on the monetary relief afforded to class members.").

**1.**      <u>The Requested Attorneys' Fees, Costs, And Expenses</u><br><u>Represent Approximately 10.05% Of The Class'</u><br><u>Recovery</u>

Courts in the Second Circuit apply one of two fee calculation methods – the "percentage of the fund" method or the "lodestar" method.  *See Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 50 (2d Cir. 2000).  The Court has discretion in choosing which method to employ.  *See McDaniel v. County of Schenectady*, 595 F.3d 411, 419 (2d Cir. 2010) (holding that "the decision as to the appropriate method [is left] to the 'district court, which is intimately familiar with the nuances of the case'") (quoting *Goldberger*, 209 F.3d at 48).  "[T]he trend in this Circuit has been toward the use of a percentage of recovery as the preferred method of calculating the award for class counsel in common fund cases."  *In re Beacon Assocs. Litig.*, 2013 WL 2450960, at *5 (S.D.N.Y. May 9, 2013).  In fact, the "trend" of using the percentage of the fund method to

compensate class counsel is now "firmly entrenched in the jurisprudence of this Circuit." *In re Citigroup Inc. Sec. Litig.*, 965 F. Supp. 2d 369, 388 (S.D.N.Y. 2013).

Although the Settlement does not, strictly speaking, create a common fund, it does provide for cash payments to class members of $50.7 million, plus an additional estimated $525,000 in notice and administration costs and the requested $6,500,000 in attorneys' fees and costs, for an estimated total of $57,733,308.93 million (the "Settlement Amount"). *See* Kopel Decl. § II. As the Second Circuit has held, "[a]n allocation of fees by percentage should therefore be awarded on the basis of the total funds made available, whether claimed or not." *Masters v. Wilhelmia Model Agency, Inc.*, 473 F.3d 423, 437 (2d Cir. 2007); *see also Torres v. Gristede's Operating Corp.*, 519 F. App'x 1, 5 (2d Cir. 2013) (calculating fee award "'on the basis of the total funds made available,' ... *i.e.*, as if it were a common settlement fund") (quoting *Masters*, 473 F.3d at 437). Other district courts in this Circuit have expressly analyzed and applied the Second Circuit's holding in *Masters* in the context of "claims-made" settlements. *See Zink v. First Niagara Bank, N.A.*, 2016 WL 7473278, at *7 (W.D.N.Y. Dec. 29, 2016) ("*Masters* is ... applicable to a claims-made settlement"); *Simerlein v. Toyota Motor Corp.* 2019 WL 2417404, at *24 (D. Conn. June 10, 2019) (applying "percentage of recovery method" in "claims-made" settlement using an "estimate of the value of the settlement"); *In re Nigeria Charter Flights Litig.*, 2011 WL 7945548, at *5 (E.D.N.Y. Aug. 25, 2011) ("Okeke argues that due to the reversionary aspect of the fund, the proper analysis is to compare the fees sought to the actual claims made by the class members rather than to the entire common fund. However, Okeke ignores controlling Second Circuit law on the issue. In *Masters*, the Second Circuit expressly held that attorneys' fees awarded as a percentage of a common fund must be measured against the entirety of the fund rather than the portion actually paid to the class members."); *see also Boeing Co. v. Van Gemert*, 444 U.S. 472, 480 (1980) ("The[ ] right [of absent class

13

members] to share the harvest of the lawsuit upon proof of their identity, whether or not they exercise it, is a benefit in the fund created by the efforts of the class representatives, and their counsel.")

Class Counsel's fee request is approximately 10.05% of the total available Settlement Amount.  Kopel Decl. ¶ 77.   In other cases, "this Court [has] cabined awards to between 12% to 28%" for "class action settlements ranging from $15 million to $336 million."  *Dial Corp. v. News Corp.*, 317 F.R.D. 426, 436, 438 (S.D.N.Y. 2016) (awarding fees representing 20% of a $244 million settlement fund); *see also In re Platinum & Palladium Commodities Litig.*, 2015 WL 4560206, at *5 (S.D.N.Y. July 7, 2015) (awarding fees representing 22.5% of the $72.5 million fund); *In re Bayer AG Sec. Litig.*, 2008 WL 5336691, at *2, *6 (S.D.N.Y. Dec. 15, 2008) (approving 12% of an $18.5 million settlement fund); *In re Polaroid*, 2007 WL 2116398, at *3 (S.D.N.Y. July 19, 2007) (approving 28% of a $15 million settlement fund).  Thus, the requested amount is well within the range of awards approved by this Court.

### 2. The Reasonableness Of The Requested Attorneys' Fees, Costs, And Expenses Is Supported By This Circuit's Six-Factor *Goldberger* Test

The Second Circuit has articulated six factors that should be considered when determining the reasonableness of a requested fee:  "(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation…; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations."  *Goldberger*, 209 F.3d at 50.  A review of these factors supports Class Counsel's fee request.

#### a. *Time And Labor Expended By Counsel*

In the past five years, Class Counsel has devoted more than 4,449 hours to investigating, litigating, and resolving this complex case.  *See* Kopel Decl. ¶ 96.  Class Counsel's work began

in 2015 when they started investigating the advertising, labeling, and efficacy of the Bell + Howell Pet Repellers.  Class Counsel then drafted the complaint; served and responded to multiple sets of discovery requests; reviewed thousands of pages of documents; litigated multiple discovery disputes; engaged in extensive third-party discovery; participated in thirteen depositions; and fully litigated *Daubert* motions as well as two motions to dismiss, a motion for class certification, and for summary judgment.  Class counsel also moved to intervene in another class action regarding the Bell + Howell Repellers in the Northern District of Ohio in an attempt to salvage that action before it was dismissed.[1] *Id.* ¶¶ 5-47.

After summary judgment, Plaintiffs opposed a motion for reconsideration of the Court's summary judgment order, and briefed motions *in limine*.  Thereafter, Class counsel made exchanges of all pretrial disclosures and submitted a joint pretrial order.  Finally, Class Counsel participated in mediation before Judge Martin and negotiated the settlement in this case on the eve of trial.  *Id.* ¶¶ 48-59.

Moreover, Class Counsel has performed all this work in a very efficient manner and while billing very conservatively.  This is evident from the fact that Class Counsel's lodestar to date is $2,636,437.50, while Defendants have spent approximately $5 million in defense costs in this action.  Kopel Decl. ¶¶ 96, 103.  Other than retention of local counsel for the limited purpose of Mr. Hart's motion to intervene in Ohio, Class Counsel litigated this action by itself.  And a single attorney at Bursor & Fisher, P.A., Mr. Kopel, accounted for 47.4% of the work performed in this case.  *Id.* ¶ 98.  Though Mr. Kopel was promoted to Partner in November 2018, he was only a third-year associate at the commencement of this action.  *See* Kopel Decl. Ex. B. Moreover, Class Counsel utilized a good mix of work from legal support staff, law clerks,

---

[1] Class counsel's local counsel in Ohio billed an additional 25.75 hours in connection with the motion to intervene.  Simpkins Decl. Exh. A.

associates, and partners, particularly early-on in the action, to ensure maximum efficiency.  *See* Kopel Decl. ¶ 97 (11.1% of total hours billed by paralegals, 51.5% by associates, and 37.3% by partners).

Thus, the work performed by Class Counsel to date has been comprehensive, complex, and wide ranging.  This factor supports a substantial fee award.

*b.*   <u>Magnitude And Complexity Of The Litigation</u>

"[C]lass actions have a well deserved reputation as being most complex."  *In re Nasdaq Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 477 (S.D.N.Y. 1998) (internal citation and quotations omitted).  This litigation was no exception, as it has been pending for five years and has involved complex factual issues of fact and law.  *See* Kopel Decl. ¶ 88.

Factually, this was not a garden variety case.  Instead, Class Counsel had to develop expertise related to entomology and acoustical engineering.  Class Counsel worked with a variety of experts and three different laboratories to commission novel testing of the acoustical properties of the Repellers, and to test their efficacy against ants, spiders, roaches, and mice.  Kopel Decl. ¶¶ 38-41.  Each of these pests created their own unique challenges and required their own testing protocols.  *Id.*  Further Class counsel reviewed extensive amounts of scientific literature and took successful depositions of Defendants' two expert entomologists to expose flaws in their testing.  *Id.* ¶ 43.  A tremendous amount of scientific acumen was required for successful litigation of this case to the cusp of trial.

This case was legally complicated as well.  In achieving certification of a nationwide fraud class and 25-state breach of express warranty class, Class Counsel had to deal with the laws of all 50 states when it came to application of pre-suit notice requirements, elements of fraud claims, the doctrine of privity of contract, application of U.C.C. warranty laws, and the economic loss doctrine, among other issues.  Class counsel was successful in prosecuting the

claims of Plaintiffs and the Classes despite an endless barrage of legal arguments from formidable defense counsel in Defendants' two motions to dismiss, at class certification, *Daubert* motions, summary judgment, motion for reconsideration of the Court's summary judgment order, and in the motions in *limine*.  *Id.* ¶ 88.

Finally, the magnitude of the case was large as well.  As noted above, the Parties exchanged and reviewed thousands of pages of documents and took a combined thirteen depositions.  *See id* ¶¶ 5-59.  Class counsel successfully briefed multiple discovery motions, two motions to dismiss, a motion to stay, a motion for class certification, *Daubert* motions (including two rounds of *Daubert* motions against Plaintiffs' experts), cross motions for summary judgment, a motion for reconsideration of the Court's summary judgment order, motions *in limine*, and a joint pretrial order, among others.  *Id.*  The magnitude and complexity of this action supports a substantial fee award.

*c.* <u>The Risk Of Litigation</u>

This factor recognizes the risk of non-payment in cases prosecuted on a contingency basis where claims are not successful, which can justify higher fees.  *See, e.g., In re Marsh ERISA Litig.*, 265 F.R.D. 128, 148 (S.D.N.Y. 2010) ("There was significant risk of non-payment in this case, and Plaintiffs' Counsel should be rewarded for having borne and successfully overcome that risk."); *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 592 (S.D.N.Y. 2008) (noting risk of non-payment in cases brought on contingency basis).  "It is well settled that class actions are notoriously complex and difficult to litigate."  *Shapiro v. JPMorgan Chase & Co.*, 2014 WL 1224666, at *21 (S.D.N.Y. Mar. 24, 2014) (internal citation omitted).

Here, this case was especially risky, even for a class action.  In fact, a previous certified class action asserting the same claims, against the same Defendants, and regarding the same Repellers, resulted in an order granting Defendants' motion for summary judgment.  *Steigerwald*

17

*v. BHH, LLC,* 2016 WL 6962593 (N.D. Ohio Nov. 29, 2016) (granting *Daubert* motion to preclude plaintiff's expert witness and entering summary judgment on behalf of the defendants). And just half a year after summary judgment was granted in *Steigerwald*, the defendants in another certified class action challenging the efficacy of different ultrasonic repeller devices *also* defeated the plaintiffs and certified classes with their motion for summary judgment.  *See Galoski v. Stanley Black & Decker, Inc.*, 2017 WL 2291431, at *6 (N.D. Ohio May 25, 2017) (also granting *Daubert* motion to preclude plaintiff's expert witness and entering summary judgment on behalf of the defendants).  The plaintiffs' counsel in each of these two Repeller class actions received no reimbursement of their out-out-pocket costs and no compensation for their time working on the cases.  There was significant risk that the same could happen to Class Counsel in this case.

Moreover, had the case not settled, the next step would have a jury trial, which would have been costly, time-consuming, and very risky for Class Members and Class Counsel.  *See* Kopel Decl. ¶ 85.  Class Counsel undertook this representation understanding that the risk of losing on class certification, summary judgment, or at trial were significant.  Defendants retained excellent counsel who vigorously litigated every stage of the case, and would have continued to do so through trial, and through appeals.  *See id.* ¶ 88.  The fact that Class Counsel undertook this representation, despite the significant risk of non-payment, supports a substantial fee award. *See id.* § IV.

### d.    *The Quality Of Representation*

The high quality of Class Counsel's representation of Plaintiffs and the Classes is evident from a comparison between the results of this case and the above-mentioned *Steigerwald* action. These two cases were nearly identical – they asserted the same claims, on behalf of the same classes, against the same defendants, represented by the same defense counsel, and regarding the

same Repellers. The only significant difference between this case and the *Steigerwald* is the appointment of different Class Counsel in each case. And this single difference produced a stark comparison in the results of each case. Whereas the *Steigerwald* case was dismissed on summary judgment, the Plaintiffs in this case defeated Defendants' motion for summary judgment (and reconsideration of the same), litigated the case until the eve of trial, and secured a settlement providing an outstanding result for Settlement Class Members.

In addition, Class Counsel are well-respected attorneys with significant experience litigation consumer class actions of similar size, scope, and complexity. Kopel Decl. ¶¶ 112-113, Ex. A (Bursor & Fisher, P.A. Firm Resume). Indeed, Class Counsel has been recognized by courts across the country – including this Court – for its expertise. *See* Firm Resume, Kopel Decl. Ex. A; *Hart v. BHH, LLC*, 2017 WL 2912519, at *6 (S.D.N.Y. July 7, 2017) ("This Court therefore finds that Bursor & Fisher, P.A. is qualified, experienced, and able to conduct this litigation"); *see also Ebin v. Kangadis Food Inc.*, 297 F.R.D. 561, 566 (S.D.N.Y. Feb. 25, 2014) (Rakoff, J.) ("Bursor & Fisher, P.A., are class action lawyers who have experience litigating consumer claims. … The firm has been appointed class counsel in dozens of cases in both federal and state courts, and has won multi-million dollar verdicts or recoveries in five class action jury trials since 2008.").

Furthermore, "[t]he quality of the opposition should be taken into consideration in assessing the quality of the plaintiffs' counsel's performance." *In re MetLife Demutalization Litig.*, 689 F. Supp. 2d 297, 362 (E.D.N.Y. 2010). Class Counsel achieved a positive result in this case while facing well-resourced and experienced defense counsel. *See Marsh ERISA Litig.*, 265 F.R.D. at 148 ("The high quality of defense counsel opposing Plaintiffs' efforts further proves the caliber of representation that was necessary to achieve the Settlement.").

Class Counsel litigated this case efficiently and effectively.  The result is a function of the high quality of that work, which supports a substantial fee award.  *See* Kopel Decl. ¶¶ 5-59.

     e.  *The Requested Fee In Relation To The Settlement*

Class Counsel seek attorneys' fees, costs, and expenses totaling $5,799,772.43, or approximately 10.05% of the total Settlement Amount.  Kopel Decl. ¶ 77.  As aforementioned, this Court has historically approved awards far in excess of this.  *See supra* cases cited in Argument § I.  This factor strongly supports the reasonableness of the fee.

     f.  *Public Policy Considerations*

The final *Goldberger* factor is public policy.  "Skilled counsel must be incentivized to pursue complex and risky claims [that protect the public on a contingency basis]."  *Shapiro*, 2014 WL 1224666, at *24.  As such, reasonable fee awards must be provided in order to ensure that attorneys are incentivized to litigate class actions, which serve as private enforcement tools to police defendants who allegedly engage in misconduct and/or unfair competition.  *See id.* "Attorneys who fill the private attorney general role must be adequately compensated for their efforts," otherwise the public risks an absence of a "remedy because attorneys would be unwilling to take on the risk."  *Massiah v. MetroPlus Health Plan, Inc.*, 2012 WL 5874655, at *7 (E.D.N.Y. Nov. 20, 2012) (citing *Goldberger*, 209 F.3d at 51).

Society undoubtedly has a strong interest in incentivizing lawyers to bring complex litigation that is necessary to protect consumers from false or misleading advertising.  In fact, class action litigation in this area is the most realistic means of protecting consumers from false or misleading advertising because, when individual class members seek a relatively small amount of damages, "economic reality dictates that [their] suit proceed as a class action or not at all."  *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 161 (1974).  Thus, the alternative to a class action in this case would have been no enforcement at all, and class members would have been

20

left without recourse for their claims.  This factor thus supports a substantial fee award.

3.     <strong><u>The Requested Attorneys' Fees, Costs, And Expenses<br>Are Also Reasonable Under A Lodestar Cross-Check</u></strong>

The lodestar cross-check tests the reasonableness of a percentage-based fee.  *See Goldberger*, 209 F.3d at 50 ("[T]he lodestar remains useful as a baseline even if the percentage method is eventually chosen.  Indeed, we encourage the practice of requiring documentation of hours as a 'cross check' on the reasonableness of the requested percentage.") (internal citations omitted).  Courts applying the lodestar method generally apply a multiplier to take into account the contingent nature of the fee, the risks of non-payment, the quality of representation, and the results achieved.  *See Wal–Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005).  Where the lodestar is "used as a mere cross-check, the hours documented by counsel need not be exhaustively scrutinized by the district court."  *Goldberger*, 209 F.3d at 50; *see also Cassese v. Williams*, 503 F. App'x 55, 59 (2d Cir. 2012) (noting the "need for exact [billing] records [is] not imperative" where the lodestar is used as a "mere cross-check").

To calculate lodestar, counsel's reasonable hours expended on the litigation are multiplied by counsel's reasonable rates.  *See Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986).  The resulting figure may be adjusted at the court's discretion by a multiplier, taking into account various equitable factors.  *See Shapiro*, 2014 WL 1224666, at *24 ("Additionally, under the lodestar method, a positive multiplier is typically applied to the lodestar in recognition of the risk of litigation, the complexity of the issues, the contingent nature of the engagement, the skill of the attorneys, and other factors.") (internal quotations and citations omitted).

The hourly billing rate to be applied is the hourly rate that is normally charged in the community where the counsel practices, *i.e.*, the "market rate."  *See Blum*, 465 U.S. at 895; *see also Luciano v. Olsten Corp.*, 109 F.3d 111, 115-116 (2d Cir. 1997) ("The 'lodestar' figure

should be 'in line with those [rates] prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation'") (alteration in original and citation omitted).  Here, the hourly rates used by Class Counsel are comparable to rates charged by attorneys with similar experience, skill, and reputation, for similar services in the New York legal market.  *See* Kopel Decl. ¶¶ 105-09. [2]  And they are the rates paid by hourly-paying clients of Class Counsel in non-contingent representations.  *See id.* ¶ 105.

The hours worked, lodestar fee, and expenses for each of the three firms representing the Class are set forth in the declarations of Mr. Kopel and Mr. Simpkins,[3] submitted herewith. They can be summarized as follows:

| Summary Of Class And Additional Plaintiffs' Counsel's Time, Lodestar And Expenses | | | |
|---|---|---|---|
| **Firm** | **Hours** | **Lodestar** | **Expenses** |
| Bursor & Fisher, P.A. | 4,449.5 | $2,636,437.50 | $698,526.06 |
| Climaco, Wilcox, Peca & Garofoli Co., LPA | 25.75 | $14,737.50 | $1,701.51 |
| **Total** | **4,475.25** | **$2,651,175.00** | **$700,227.57** |

The total requested attorneys' fees, costs, and expenses is $6,500,000.  After reimbursement for the $700,227.57 of litigation costs and expenses, *see* Kopel Decl. ¶ 102, the remainder for the attorneys' fees is $5,799,772.43.  Therefore, the requested fee award reflects a 2.19 multiplier for Class Counsel's regular hourly rates.  This multiplier is well within the

---

[2]  The Supreme Court and other courts have held that the use of current rates is proper since such rates compensate for inflation and the loss of use of funds. *See Missouri v. Jenkins*, 491 U.S. 274, 283-84 (1989) (recognizing "an appropriate adjustment for delay in payment—whether by the application of current rather than historic hourly rates or otherwise"); *LeBlanc-Sternberg v. Fletcher,* 143 F. 3d 748, 764 (2d Cir. 1998) ("The lodestar should be based on 'prevailing market rates' … and current rates, rather than historical rates, should be applied in order to compensate for the delay in payment") (citation omitted).

[3] Scott Simpkins is a partner at the firm of Climaco, Wilcox, Peca & Garofoli Co., LPA, which served as local counsel for purposes of Ms. Hart's motion to intervene in the *Steigerwald* action.

accepted range in this Circuit.  *See Asare v. Change Grp. Of N.Y., Inc.*, 2013 WL 6144764, at

*19 (S.D.N.Y. Nov. 18, 2013) ("Typically, courts use multipliers of 2 to 6 times the lodestar.");

*Spicer v. Pier Sixty LLC*, 2012 WL 4364503, at *4 (S.D.N.Y. Sept. 14, 2012) ("The attorneys'

fees awarded are a 3.36 multiplier of lodestar, which is well within the range of

reasonableness."); *In re Lloyd's Am. Trust Fund Litig.*, 2002 WL 31663577, at *27 (S.D.N.Y.

Nov. 26, 2002) (a "multiplier of 2.09 is at the lower end of the range of multipliers awarded by

courts within the Second Circuit").

     The multiplier is also reasonable because it will diminish over time.  "[A]s class counsel

is likely to expend significant effort in the future implementing the complex procedure agreed

upon for collecting and distributing the settlement funds, the multiplier will diminish over time."

*Parker v. Jekyll & Hyde Entm't Holdings, LLC*, 2010 WL 532960, at * 2 (S.D.N.Y. Feb. 9,

2010).  Thus, the requested multiplier is sure to be decreased by the time Class Counsel receives

the requested award.  *See* Kopel Decl. ¶ 99.

     **C.**     **Class Counsel's Litigation Costs And Expenses Are**
              **Reasonable And Were Necessarily Incurred To Achieve The**
              **Benefit Obtained On Behalf Of The Class**

     To date, Counsel incurred out-of-pocket costs and expenses in the aggregate amount of

$700,227.57.  *See* Kopel Decl. ¶¶ 100-102; Simpkins Decl. Ex. A.  These expenses are

categorized in the declarations submitted to the Court herewith.  The incurred costs include court

fees, courier charges, legal research charges, travel costs, postage fees, court reporting fees,

expert fees, and other related costs.  *See id.*

     "Courts typically allow counsel to recover their reasonable out-of-pocket expenses."

*McMahon*, 2010 WL 2399328, at *8.  The expenses categorized in the attorney declarations

submitted herewith reflect commonly reimbursed expenses.  *See In re Visa Check/Mastermoney*

*Antitrust Litig.*, 297 F. Supp. 2d 503, 525 (E.D.N.Y. 2003) ("I award Lead Counsel

reimbursement from the Fund for … costs and expenses.  …  [T]hese expenses reflect[] the costs of … litigation and trial support services, document imaging and copying, deposition costs, online legal research, and travel expenses.  …  I see no reason to depart from the common practice in this circuit of granting expense requests."), *aff'd*, *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96 (2d Cir. 2005).

Each of these costs and expenses was necessarily and reasonably incurred to bring this case to a successful conclusion, and no separate payment is requested for such costs and expenses, which are included in the total requested amount for fees, costs, and expenses.

> **D.      The Agreed-Upon Incentive Awards Reflect The Class Representatives' Active Involvement In This Action And Should Be Approved**

Incentive awards fulfill the important purpose of compensating plaintiffs for the time they spend and the risks they take.  *Massiah*, 2012 WL 5874655, at *8.  Here, the participation of the Class Representatives was critical to the ultimate success of the case.  *See* Kopel Decl. § VI. Each of the Class Representatives spent approximately 45-50 hours protecting the interest of the Class through their involvement in this case.  *See* Declaration of Joanne Hart ¶ 11; Declaration of Sandra Bueno ¶ 11.  The Class Representatives assisted Class Counsel in investigating their claims, by detailing their purchase and use of Repellers and aiding in drafting the complaints in this action.  *Id.* ¶¶ 3-4.  During the course of this litigation, the Class Representatives kept in regular contact with their lawyers to receive updates on the progress of the case and to discuss strategy.  *Id.* ¶ 5.  Further, the Class Representatives preserved and produced documents in discovery.  *Id.* ¶ 6.  And the Class Representatives prepared for and sat for their depositions.  *Id.* ¶ 7.  Finally, the Class Representatives were actively consulted during the settlement process.  *Id.* ¶ 8.

On these facts, the agreed-upon $5,000 incentive payments are fair and reasonable.

Indeed, this amount is well within the range of incentive awards that have been approved by other courts in this Circuit. *See, e.g.*, *Raniere v. Citigroup Inc.*, 310 F.R.D. 211, 220 (S.D.N.Y. 2015) (approving incentive awards ranging from $7,500 to $20,000); *Dornberger v. Metro. Life Ins. Co.*, 203 F.R.D. 118, 125 (S.D.N.Y. 2001) (noting case law supports payments of between $2,500 and $85,000).  Most importantly, the agreed-upon incentive awards to the Class Representatives will be paid entirely by Defendants and will not derogate from the payments or relief to any other Class Member. *See* Kopel Decl. ¶ 114.

## V.    CONCLUSION

For the foregoing reasons, Plaintiffs' respectfully request that the Court (1) approve attorneys' fees, costs, and expenses in the amount of $6,500,000, (2) grant the Class Representatives incentive awards of $5,000 each in recognition of their efforts on behalf of the Class, and (3) award any such other and further relief as the Court deems reasonable and just.


Dated:  May 22, 2020                    Respectfully submitted,

                                        **BURSOR & FISHER, P.A.**

                                        By:    */s/ Scott A. Bursor*
                                              Scott A. Bursor

                                        Scott A. Bursor
                                        Joshua D. Arisohn
                                        Yitzchak Kopel
                                        888 Seventh Avenue
                                        New York, NY 10019
                                        Telephone:  (212) 989-9113
                                        Facsimile:  (212) 989-9163
                                        Email:  scott@bursor.com
                                                jarisohn@bursor.com
                                                ykopel@bursor.com

                                        *Class Counsel*