**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JOANNE HART and SANDRA BUENO, on behalf of themselves and all others similarly situated,<br><br>       Plaintiffs,<br>  v.<br><br>BHH, LLC d/b/a Bell + Howell and VAN HAUSER LLC<br><br><br>       Defendants. | Civil Action No. 1:15-CV-04804-WHP |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL**
**<u>APPROVAL OF CLASS ACTION SETTLEMENT</u>**

Dated: August 25, 2020

**BURSOR & FISHER, P.A.**

Scott A. Bursor
Joshua D. Arisohn
Yitzchak Kopel
888 Seventh Avenue
New York, NY 10019
Telephone:  (212) 989-9113
Facsimile:  (212) 989-9163
Email:  scott@bursor.com
   jarisohn@bursor.com
   ykopel@bursor.com

*Class Counsel*

## TABLE OF CONTENTS

**PAGE(S)**

INTRODUCTION ......................................................................................................... 1

FACTUAL AND PROCEDURAL BACKGROUND.................................................... 2

TERMS OF THE SETTLEMENT ............................................................................... 6

I.      The Class Definition ......................................................................................... 6

II.     Monetary Relief ................................................................................................ 6

III.    Release Of Claims ............................................................................................ 7

IV.     Notice, Claims Process, And Settlement Administration ................................. 7

        A.      Costs, Fees, And Representative Award ................................................ 8

ARGUMENT ................................................................................................................ 8

I.      THE NOTICE PLAN SATISFIES DUE PROCESS............................................ 8

II.     THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND
        ADEQUATE AND SHOULD BE APPROVED BY THE COURT.................... 10

        A.      The Proposed Settlement Is Procedurally Fair.................................... 11

        B.      The Proposed Settlement Is Substantively Fair .................................. 11

                1.      Litigation Through Trial Would Be Complex, Costly, And
                        Long (*Grinnell* Factor 1).......................................................... 12

                2.      The Reaction Of The Class Is Overwhelmingly Positive
                        (*Grinnell* Factor 2) ................................................................. 13

                3.      Discovery Has Advanced Far Enough To Allow The
                        Parties To Responsibly Resolve The Case (*Grinnell*
                        Factor 3) .................................................................................. 14

                4.      The Continued Litigation Risks Related To Establishing
                        Liability, Damages, And Maintaining A Class Action
                        Through Trial Support Settlement (*Grinnell* Factors 4, 5,
                        And 6) ....................................................................................... 15

                5.      The Ability Of Defendants To Withstand A Greater
                        Judgment (*Grinnell* Factor 7)..................................................... 16

                6.      The Settlement Amount Is Reasonable In Light Of The
                        Possible Recovery And The Attendant Risks Of Litigation
                        (*Grinnell* Factors 8 And 9)......................................................... 17

CONCLUSION............................................................................................................ 19

# TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*City of Detroit v. Grinnell Corp.*,
    495 F.2d 448 (2d Cir. 1974)...................................................................... 11, 12, 13, 17

*City of Providence v. Aeropostale, Inc.*,
    2014 WL 1883494 (S.D.N.Y. May 9, 2014) ........................................................ 13

*D'Amato v. Deutsche Bank*,
    236 F.3d 78 (2d Cir. 2001)................................................................................... 11

*Denney v. Jenkens & Gilchrist*,
    230 F.R.D. 317 (S.D.N.Y. 2005) ......................................................................... 16

*Eisen v. Carlisle & Jacquelin*,
    417 U.S. 156 (1974)............................................................................................... 8

*Frank v. Eastman Kodak Co.*,
    228 F.R.D. 174 (W.D.N.Y. 2005)............................................................. 10, 17, 19

*Hanlon v. Chrysler*,
    150 F.3d 1011 (9th Cir. 1998) ............................................................................. 14

*In re "Agent Orange" Prod. Li*ab. Litig.,
    611 F. Supp. 1396 (E.D.N.Y. 1985) .................................................................... 18

*In re Adelphia Commc'ns Corp. Sec. & Derivative Litigs.*,
    271 F. App'x 41 (2d Cir. 2008) ............................................................................. 9

*In re Am. Bank Note Holographics, Inc. Sec. Litig.*,
    127 F. Supp. 2d 418 (S.D.N.Y. 2001)................................................................... 16

*In re AOL Time Warner, Inc.*,
    2006 WL 903236 (S.D.N.Y. Apr. 6, 2006)........................................................... 15

*In re Austrian & German Bank Holocaust Litig.*,
    80 F. Supp. 2d 164 (S.D.N.Y. 2000)............................................................... 11, 12

*In re EVCI Career Colls. Holding Corp. Sec. Litig.*,
    2007 WL 2230177 (S.D.N.Y. July 27, 2007) ...................................................... 10

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
    2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010)........................................................ 17

*In re Global Crossing Sec. & ERISA Litig.*,
    225 F.R.D. 436 (S.D.N.Y. Nov. 24, 2004) .......................................................... 15

*In re Marsh & McLennan Cos., Inc. Sec. Litig.*,
    2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009) ....................................................... 8

*In re MetLife Demutualization Litig.*,
    689 F. Supp. 2d 297 (E.D.N.Y. 2010) ........................................................ 13

*In re Prudential Sec. Inc. Ltd. P'ships Litig.*,
    163 F.R.D. 200 (S.D.N.Y. 1995) ................................................................ 13

*In re Vitamin C Antitrust Litig.*,
    2012 WL 5289514 (E.D.N.Y. Oct. 23, 2012)........................................ 11, 12, 13, 15

*In re Warner Commc'ns Sec. Litig.*,
    618 F. Supp. 735 (S.D.N.Y. 1985) ............................................................ 16

*Joel A. v. Giuliani*,
    218 F.3d 132 (2d Cir. 2000)...................................................................... 19

*Maley v. Del Global Techs. Corp.*,
    186 F. Supp. 2d 358 (S.D.N.Y. 2002)........................................................ 15

*Massiah v. MetroPlus Health Plan, Inc.*,
    2012 WL 5874655 (E.D.N.Y. 2012)........................................................... 14

*Newman v. Stein*,
    464 F.2d 689 (2d Cir. 1972)...................................................................... 17

*Steigerwald v. BHH, LLC*,
    2016 WL 695424 (N.D. Ohio February 22, 2016) .................................. 3, 4, 5

*TBK Partners, Ltd. v. Western Union Corp.*,
    517 F. Supp. 380 (S.D.N.Y. 1981) ............................................................ 12

*Teachers' Ret. Sys. of La. v. A.C.L.N., Ltd.*,
    2004 WL 2997957 (S.D.N.Y. Dec. 27, 2004) ........................................... 18

*Tiro v. Public House Invs., LLC*,
    2013 WL 4830949 (S.D.N.Y. Sept. 10, 2013) ........................................... 10

*Torres v. Gristede's Operating Corp.*,
    2010 WL 5507892 (S.D.N.Y. Dec. 21, 2010) ........................................... 14

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
    396 F.3d 96 (2d Cir. 2005)...................................................................... 9, 10

*Weigner v. City of N.Y.*,
    852 F.2d 646 (2d Cir. 1988)...................................................................... 9

*Yang v. Focus Media Holding Ltd.*,
    2014 WL 4401280 (S.D.N.Y. Sep. 4, 2014) .............................................. 11

**STATUTES**

28 U.S.C. § 1715(b) ...................................................................................... 7

**RULES**

Fed. R. Civ. P. 23 ................................................................................................................ 9, 10

Fed. R. Civ. P. 23(c)(2)(B) ............................................................................................. 8, 9, 13

Fed. R. Civ. P. 23(e)(2) ...................................................................................................... 10

Fed. R. Civ. P. 41(a)(1)(A)(i) ................................................................................................ 2

## INTRODUCTION

On February 12, 2020, this Court preliminarily approved the Stipulation of Settlement (the "Settlement") between Plaintiffs Joanne Hart and Sandra Bueno (collectively, "Plaintiffs" or the "Class Representatives") and Defendants BHH, LLC and Van Hauser LLC (collectively, "Defendants") and directed that notice be sent to the Settlement Class.  (ECF No. 300).  The settlement administrator, Digital Settlement Group ("DSG") has implemented the Court-approved notice plan and notice has reached the majority of the certified Settlement Class.  The reaction from the Class has been overwhelmingly positive.  Specifically, zero Settlement Class members have objected, and only 47 requested to be excluded.  To date, 82,503 claims were submitted for 162,754 units, (representing a claim rate of approximately 7.3%).[1]

The Settlement provides significant economic relief in the form of cash payments to Settlement Class Members.  No proof of purchase, other than a signed attestation on the claim form, is required for a Settlement Class member to make a claim.  However, the amount of the payment available to Settlement Class members whose purchases are documented is greater. Settlement Class Members with Proof of Purchase showing the actual price paid for the Repellers will be paid a full refund of the purchase price for each such Unit up to six (6) Units.[2] Settlement Class Members with Proof of Purchase that does not show the actual price paid for the Repellers will receive a refund of up to $90, *i.e.*, $15.00 for each such Unit up to six (6) Units.  Settlement Class Members who submit a valid Claim Form without proof of purchase will be paid up to $30, *i.e.*, $15.00 each for up to two (2) Unit purchases of the Repellers during

---

[1] Of these claims, 72,578 claims for 143,074 units have been validated by the settlement administrator.  The remaining 9,925 claims for 19,707 units have been flagged as "requiring modification" and "DSG will be notifying these claimants of the need for modification of their claims."  *See* Schey Decl. ¶¶ 18-21.  Thus, the total units from approved claims will be between 143,074 and 162,754, resulting in a final approved claims rate of between 6.5% and 7.3% based on estimated total repeller sales of 2.2 million units.  *See* ECF No. 190 ¶ 10

[2] The average retail price of the Repellers was approximately $24.10.  Kopel Decl. ¶ 40.

the Settlement Class Period.  In addition, the costs of notice and administration, and any incentive awards or attorneys' fees, costs, and expenses will be paid by Defendants separately from the monetary refunds paid to Class Members.  Thus, those payments will not derogate from the amount of refunds that will be paid to Class Members.

The proposed Settlement, which was reached following mediation before the Hon. John S. Martin Jr. (Ret.), is fair, reasonable, and adequate.  The Settlement is the product of extensive arm's-length negotiations between experienced attorneys familiar with the legal and factual issues of this case.  Moreover, the Parties have litigated this action vigorously for five years, and have ample knowledge of the legal claims and defenses, the risks presented by the case, and the value achieved by the proposed Settlement.  The Settlement is an exceptional result for the Class because, despite the significant risks of further litigation, Plaintiffs secured substantial monetary relief for Settlement Class Members (including the opportunity to be refunded their full purchase price).

For these reasons, and as explained further below, the Settlement is fair, reasonable, and adequate, and warrants this Court's final approval.

## FACTUAL AND PROCEDURAL BACKGROUND

On June 19, 2015, Plaintiffs Joanne Hart and Amanda Parke commenced a proposed class action in the Southern District of New York against Defendants in *Hart v. BHH, LLC*, No. 15-4804-WHP (S.D.N.Y.) in connection with Defendants' sale of Bell + Howell Ultrasonic Pest Repellers (ECF No. 1).  9/3/19 Kopel Decl. (ECF No. 287) ¶ 2.

On October 19, 2015, Defendants filed a Motion to Dismiss (ECF No. 25).  Plaintiff Joanne Hart opposed the Motion on November 16, 2019 (ECF No. 30).  *Id.* ¶ 3.  On November 20, 2015, Plaintiffs filed a notice of voluntary dismissal pursuant to Fed. R. Civ. P. 41(a)(1)(A)(i) solely as to Ms. Parke and not as to Ms. Hart (ECF No. 31).  *Id.* ¶ 4.  In a

Memorandum Decision dated May 5, 2016, the Court granted, in part, and denied, in part, Defendants' Motion to Dismiss (ECF No. 36). Defendants filed an answer to the complaint on May 25, 2016 (ECF No. 39). *Id.* ¶ 5.

On February 26, 2016, a District Court in the Northern District of Ohio certified a nationwide class of purchasers of Bell + Howell Ultrasonic Pest Repellers, the same products at issue in this case. *Steigerwald v. BHH, LLC*, 2016 WL 695424, at *6 (N.D. Ohio February 22, 2016); 9/3/19 Kopel Decl. ¶ 6. However, in *Steigerwald* class members never received notice or an opportunity to opt out of the class. *Id.* On November 29, 2016, the court granted summary judgment in favor of the defendants in the *Steigerwald* action. *Steigerwald*, 2016 WL 695424, at *9. Because class notice was never disseminated in the *Steigerwald* case, and class members were not given the opportunity to opt out of the class, the summary judgment decision was binding solely upon Ms. Steigerwald, and not on other class members. 9/3/19 Kopel Decl. ¶ 7.

On January 23, 2017, Plaintiff Joanne Hart, along with a new Plaintiff, Sandra Bueno, filed a First Amended Complaint (ECF No. 62). *Id.* ¶ 8.

On March 16, 2017, Plaintiffs filed a Motion to Certify Class (ECF No. 66), moving to certify three classes as follows:

> **Nationwide Fraud Class**: "All persons who purchased one or more Bell + Howell Ultrasonic Pest Repellers in the United States from April 20, 2011 to June 15, 2016 (the "Class Period"), excluding persons who purchased for purpose of resale."
>
> **Multistate Breach of Express Warranty Class**: "[A]ll persons who purchased one or more Bell + Howell Ultrasonic Pest Repellers in the states of Alaska, California, Colorado, Delaware, Iowa, Kansas, Maine, Minnesota, Missouri, Nebraska, New Hampshire, New Jersey, New York, North Carolina, Ohio, Oklahoma, Oregon, Pennsylvania, Texas, Utah, Vermont, Virginia, Washington, West Virginia, and Wyoming during the Class Period, excluding persons who purchased for purpose of resale."
>
> **California Class**: "[A]ll persons who purchased one or more Bell + Howell Ultrasonic Pest Repellers in the state of California during

the Class Period, excluding persons who purchased for purpose of resale."

Defendants filed a motion to dismiss the first amended complaint and opposition to Plaintiffs' motion for class certification on April 27, 2017 (ECF No. 78). *Id*. ¶ 9. In an Opinion and Order dated July 7, 2017, the Court granted, in part, and denied, in part, Defendants' motion to dismiss the first amended complaint and granted Plaintiffs' Motion to Certify Class (ECF No. 93). *Id*. ¶ 10. The motion to dismiss was granted with respect to Plaintiffs' UCL and FAL claims, but denied in all other respects. *Id*. The certification motion was granted in full. *Id*. The law firm of Bursor & Fisher, P.A. was appointed as Class Counsel, and Plaintiffs were appointed as Class Representatives. *Id*. On October 24, 2017, the Court approved the Notice of Pendency of Class Action, encompassing a Long Form Notice and Postcard Notice (ECF No. 110). Direct notice was disseminated to over one million identified class members in January 2018. *Id*. ¶ 11.

On March 9, 2018, Defendants filed a motion for summary judgment and a *Daubert* motion (ECF Nos. 137-40). On the same date, Plaintiffs filed two additional *Daubert* motions (ECF Nos. 130-33). *Id*. ¶ 12. In an Opinion and Order dated July 19, 2018, the Court granted, in part, and denied, in part, both of the *Daubert* motions filed by Plaintiffs (ECF No. 161). The Court also denied in full the Daubert motion filed by Defendants. *Id*. ¶ 13. In an Opinion and Order dated September 5, 2018, the Court denied Defendants' motion for summary judgment, but limited the time periods of the certified classes (ECF No. 165). The Parties submitted letters proposing new subclasses on September 26, 2018 (ECF Nos. 178, 179). *Id*. ¶ 14.

On September 19, 2018, Defendants filed a Motion for Reconsideration of the Court's summary judgment decision (ECF No. 176). Plaintiffs opposed the motion on October 10, 2018 (ECF No. 182). *Id*. ¶ 15. In a Memorandum & Order dated November 2, 2018 (ECF No. 185), the Court denied Defendants' motion for reconsideration, and adopted the following new class

definitions:

> **Nationwide Fraud Class**: "all persons who purchased one or more Bell + Howell ultrasonic pest repellers in the United States from April 20, 2011 to June 15, 2016, excluding persons who purchased for purpose of resale."

> - **Nationwide Subclass 1 (3 year statute)**: "all persons who purchased one or more Bell + Howell ultrasonic pest repellers in the states of Arizona, Arkansas, California, Colorado, Connecticut, Delaware, District of Columbia, Idaho, Maryland, Massachusetts, Mississippi, Nevada, New Hampshire, North Carolina, South Carolina, Tennessee, Utah and Washington from April 20, 2012 to June 15, 2016, excluding persons who purchased for purpose of resale."

> - **Nationwide Subclass 2 (2 year statute)**: "all persons who purchased one or more Bell + Howell ultrasonic pest repellers in the states of Alabama, Alaska, Kansas, Montana, Oklahoma, Oregon, Pennsylvania, Virginia, and West Virginia from April 20, 2013 to June 15, 2016, excluding persons who purchased for purpose of resale."

> **Multistate Breach of Express Warranty Class**: "all persons who purchased one or more Bell + Howell ultrasonic pest repellers in the states of Alaska, California, Colorado, Delaware, Iowa, Kansas, Maine, Minnesota, Missouri, Nebraska, New Hampshire, New Jersey, New York, North Carolina, Ohio, Oklahoma, Oregon, Pennsylvania, Texas, Utah, Vermont, Virginia, Washington, West Virginia, and Wyoming from April 20, 2011 to June 15, 2016, excluding persons who purchased for purpose of resale."

> - **Multistate Subclass (3 year statute)**: "all persons who purchased one or more Bell + Howell ultrasonic pest repellers in the state of Colorado from April 20, 2012 to June 15, 2016, excluding persons who purchased for purpose of resale."

> - **California Class (3 year statute)**: "all persons who purchased one or more Bell + Howell ultrasonic pest repellers in the state of California from April 20, 2012 to June 15, 2016, excluding persons who purchased for purpose of resale."

*Id.*

In December 2018 and January 2019, the Parties exchanged pre-trial disclosures and submitted a joint pretrial order on January 18, 2019 (ECF No. 196). *Id.* ¶ 16. On March 1, 2019, the Parties filed several motions *in limine* (ECF Nos. 205-25), which the Court adjudicated on April 1 and April 4, orally and in a Memorandum & Order (ECF No. 259). The Court set trial in this matter for September 9, 2019 (ECF No. 272). *Id.* ¶¶ 17-18.

Negotiations regarding potential settlement were thorough, protracted and exhaustive, and involved multiple settlement conferences and/or mediation sessions. On April 8, 2019, the

Parties participated in a full-day in-person settlement conference with a mediator, the Hon. John S. Martin, Jr. (Ret.).  *Id.* ¶ 19.  Although no settlement was reached that day, the Parties agreed to continue the discussions while simultaneously preparing for trial.  Thereafter, the Parties engaged in substantial discussions in June, July, and August 2019 in an effort to resolve the Action.  *Id.* ¶ 20.  Ultimately the Settlement Agreement was executed on August 19, 2019.  *Id.* ¶ 21.

Weighing the risks and uncertainties of continued litigation and all factors bearing on the merits of settlement, Plaintiffs and Class Counsel are satisfied that the terms and conditions of this settlement are fair, reasonable, adequate, and in the best interests of the Plaintiffs and the Settlement Class Members.  *Id.* ¶ 22.

## <u>TERMS OF THE SETTLEMENT</u>

The Parties reached agreement on the proposed Settlement after spirited debate of legal and factual theories by counsel, the assistance of the Hon. John S. Martin, Jr. (Ret.), and extensive arm's-length negotiations over a four-month period beginning in April 2019.  The key terms of the Settlement are as follows:

**I.    The Class Definition**

The proposed Settlement Class (the "Settlement Class") consists of all persons previously certified by the Court in the nationwide fraud, multistate breach of express warranty, and California Classes in this action.  *See* ECF No. 296-1 ("Stipulation of Settlement") ¶ 58.

**II.    Monetary Relief**

If the Settlement is approved, Settlement Class Members will be paid cash refunds.  No proof of purchase, other than a signed attestation on the Claim Form, will be required.  However, the amount of the payment available to Settlement Class members whose purchases are documented is greater.  Settlement Class Members with Proof of Purchase showing the actual

price paid for the Repellers will be paid a full refund of the purchase price for each such Unit up to six (6) Units.  Settlement Class Members with Proof of Purchase that does not show the actual price paid for the Repellers will receive a refund of up to $90, *i.e.*, $15.00 for each such Unit up to six (6) Units.  Settlement Class Members who submit a valid Claim Form without proof of purchase will be paid up to $30, *i.e.*, $15.00 each for up to two (2) Unit purchases of the Repellers during the Settlement Class Period.  Notably, there is no limit to the total number of refunds that Defendants will pay to the Class as a whole, and Class Members' full refunds will not be prorated for any reason.

In addition, the costs of notice and administration, and any incentive awards or attorneys' fees, costs, and expenses will be paid by Defendants separately from the monetary refunds paid to Class Members.  Thus, those payments will not derogate from the amount of refunds that will be paid to Class Members under the Settlement.

## III.   Release Of Claims

In exchange for the foregoing relief, the Settlement Class Members who do not opt out of the Settlement will release Defendants and all Released Parties from all Released Claims asserted in this Action and any related claims which could be asserted arising out of or relating to the marketing, advertising, promoting, sale or distributing of Ultrasonic Pest Repellers.  *Id.* ¶¶ 96-98.

## IV.   Notice, Claims Process, And Settlement Administration

Defendants have agreed to bear the costs of providing notice and administration of the Settlement, including processing Claim Forms and requests for exclusion.  *Id.* ¶ 74.[3]

---

[3] Defendants have separately provided notification of the Settlement to Attorney General of the United States, and the attorneys general of each state or territory in which a Settlement Class Member resides in accordance with the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1715(b).

A.      Costs, Fees, And Representative Award

In recognition of their efforts on behalf of the Settlement Class, Defendants have agreed

that the Class Representatives may receive, subject to Court approval, incentive awards of

$5,000 each, as appropriate compensation for their time and efforts serving as Class

Representatives and as parties to the Action. *Id.* ¶ 88.  The Settlement also permits Class

Counsel to petition the Court for fees, costs, and expenses not to exceed $6,500,000.00, but

Defendants are permitted "to oppose any amounts sought to be recovered as attorney's fees by

Class Counsel." *Id.* ¶ 85.  Regardless of the outcome of Class Counsel's fee petition, the Parties

have agreed that the payment of all fees and costs will be separate from and in addition to the

monetary relief afforded to the Settlement Class Members. *Id.* ¶ 86.  Payment of attorneys' fees,

costs, and expenses is due at the same time as class relief:  within 30 days following final

approval. *Id.* ¶¶ 71, 87, 90.  The Stipulation of Settlement and Plaintiffs' support of the

Settlement are not conditioned upon the Court's approval of the amounts listed in this paragraph.

*Id.* ¶ 99.  These awards are subject to this Court's approval, which Plaintiffs have moved for

separately.  (ECF No. 301).

## <u>ARGUMENT</u>

## I.      THE NOTICE PLAN SATISFIES DUE PROCESS

Before final approval can be granted, due process and Rule 23 require that the notice

provided to the Settlement Class is "the best notice that is practicable under the circumstances,

including individual notice to all members who can be identified through reasonable effort."

Fed. R. Civ. P. 23(c)(2)(B); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974).  "Such

notice to class members need only be reasonably calculated under the circumstances to apprise

interested parties of the pendency of the settlement proposed and to afford them an opportunity

to present their objections." *In re Marsh & McLennan Cos., Inc. Sec. Litig.*, 2009 WL 5178546,

at *12 (S.D.N.Y. Dec. 23, 2009).  Notice must clearly state essential information regarding the settlement, including the nature of the action, terms of the settlement, and class members' options.  *See* Fed. R. Civ. P. 23(c)(2)(B).  At its core, all that notice must do is "fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings."  *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 114 (2d Cir. 2005) (citation omitted).  "It is clear that for due process to be satisfied, not every class member need receive actual notice, as long as counsel 'acted reasonably in selecting means likely to inform persons affected.'"  *In re Adelphia Commc'ns Corp. Sec. & Derivative Litigs.*, 271 F. App'x 41, 44 (2d Cir. 2008) (quoting *Weigner v. City of N.Y.*, 852 F.2d 646, 649 (2d Cir. 1988)).

At preliminary approval, the Court approved the proposed Notice, finding it met the requirements of Rule 23 and due process.  ECF No. 300 at 3.  The Notice has now been fully carried out by professional settlement administrator Digital Settlement Group ("DSG").  Specifically, DSG (1) sent email and/or postcard notice to all reasonably ascertainable Class Members; (2) published online display banner advertising specifically targeted to reach Class Members; (3) published a settlement website (www.ultrasonicpestrepellerlawsuit.com) with online claim filing capability and on which the notices and other Court documents were posted; and (5) established a toll-free information line, by which Class members were able to call 24/7 for more information about the Settlement, including, but not limited to, requesting copies of the notices and claim form.  *See* Schey Decl. ¶ 13.  With respect to direct notice, DSG mailed postcards to 531,427 class members and email notice to 361,725 class members, for a total of 893,152 class members who received direct notice.  *Id.* ¶ 8. This is a very significant number given that total sales of the Repellers are estimated to be approximately 2.2 million units (and many class members purchased multiple units).  *See* ECF No. 190 ¶ 10.  These notices also

directed Class Members to the Settlement Website and toll-free telephone number.  *See* ECF No. 296-1, Exh. D.

Given the broad reach of the Notice, and the comprehensive information provided to the Settlement Class, the requirements of due process and Rule 23 are easily met.

## II. THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE AND SHOULD BE APPROVED BY THE COURT

Final approval of the Settlement is appropriate here because it is procedurally and substantively fair, adequate, and reasonable.  *See* Fed. R. Civ. P. 23(e)(2).  To determine whether to approve a settlement, "[c]ourts examine procedural and substantive fairness in light of the 'strong judicial policy in favor of settlement' of class action suits."  *Tiro v. Public House Invs., LLC*, 2013 WL 4830949, at *5 (S.D.N.Y. Sept. 10, 2013).  "Fairness is determined upon review of both the terms of the settlement agreement and the negotiating process that led to such agreement."  *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 184 (W.D.N.Y. 2005).  "A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery."  *Wal-Mart Stores, Inc.*, 396 F.3d at 116 (internal quotations omitted).

Importantly, courts and public policy considerations favor settlement, particularly in class actions and other complex cases where substantial resources can be conserved by avoiding the time, cost, and rigor of prolonged litigation.  "The compromise of complex litigation is encouraged by the courts and favored by public policy," and is particularly encouraged for the compromise of class actions.  *Id.* at 117 (internal quotations omitted).  If the settlement was achieved through arms'-length negotiations by experienced counsel, "[a]bsent fraud or collusion … [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement."  *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, 2007 WL 2230177, at *4 (S.D.N.Y. July 27, 2007).

### A.    The Proposed Settlement Is Procedurally Fair

The Settlement here is the product of intense arm's-length negotiations over a three-month period and conducted by experienced counsel who are knowledgeable in complex consumer class actions.  *See In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 173-74 (S.D.N.Y. 2000) (a settlement will enjoy a presumption of fairness if the court finds that it is the product of "arm's length negotiations conducted by experienced counsel knowledgeable in complex class litigation"), *aff'd sub nom. D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001).  The Settlement was reached four years into the case, on the cusp of trial, and after the Parties completed extensive merits and expert discovery, thirteen depositions, class certification, summary judgment, and motions *in limine*.  9/3/19 Kopel Decl. ¶ 21.

Additionally, Plaintiffs' Counsel involved in the negotiations have considerable experience in handling consumer class actions and are clearly capable of assessing the strengths and weaknesses of their respective positions.  *See id.* Ex. C.  Bursor & Fisher regularly engages in major complex litigation and has extensive experience in consumer class actions that are similar in size, scope, and complexity to this case.  *Id.* ¶ 36.  The experience of the firm and attorneys involved demonstrate that the Settlement Class Members were well-represented at the bargaining table.  *See Yang v. Focus Media Holding Ltd.*, 2014 WL 4401280, at *5 (S.D.N.Y. Sep. 4, 2014).

### B.    The Proposed Settlement Is Substantively Fair

In addition to being procedurally fair, the Settlement is also substantively fair, reasonable, and adequate.  "Courts in the Second Circuit evaluate the substantive fairness, adequacy, and reasonableness of a settlement according to the factors set out in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974)."  *In re Vitamin C Antitrust Litig.*, 2012 WL 5289514, at *4 (E.D.N.Y. Oct. 23, 2012).  The nine *Grinnell* factors include: "(1) the

complexity, expense and likely duration of the litigation; (2) the reaction of the class to the

settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks

of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the

class action through trial; (7) the ability of defendants to withstand a greater judgment; (8) the

range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the

range of reasonableness of the settlement fund to a possible recovery in light of all the attendant

risks of litigation." *Id*. at *4 (quoting *Grinnell*, 495 F.2d at 463).  However, in reviewing and

approving a settlement, "a court need not conclude that all of the *Grinnell* factors weigh in favor

of a settlement," rather courts "should consider the totality of these factors in light of the

particular circumstances." *Id*.  Here, the *Grinnell* factors weigh in favor of final approval.

### 1.    Litigation Through Trial Would Be Complex, Costly, And Long (*Grinnell* Factor 1)

The Stipulation of Settlement provides favorable monetary benefits to the Settlement

Class while avoiding the significant expenses and delays associated with litigation.  Indeed,

"[m]ost class actions are inherently complex and settlement avoids the costs, delays and

multitude of other problems associated with them." *In re Austrian & German Bank Holocaust

Litig.*, 80 F. Supp. 2d at 174.  Courts have consistently held that, unless the proposed settlement

is clearly inadequate, its acceptance and approval are preferable to the continuation of lengthy

and expensive litigation with uncertain results. *TBK Partners, Ltd. v. Western Union Corp.*, 517

F. Supp. 380, 389 (S.D.N.Y. 1981), *aff'd*, 675 F.2d 456 (2d Cir. 1982).

This case is no exception.  Plaintiffs understand that proceeding to trial is a risky and

labor-intensive undertaking.  Plaintiffs anticipate that Defendants would continue to contest the

matter at every opportunity and on all fronts.  While Plaintiffs believe that the Action has merit

and that they would ultimately prevail at trial, continued litigation would last for an extended

period before a final judgment might be entered in favor of the Class.  Any trial would likely last

at least 1-2 weeks, and involve numerous fact witnesses, experts, and the introduction of

voluminous documentary evidence.  Moreover, any judgment favorable to the Class would be

the subject of post-trial motions and appeals, which could significantly prolong the lifespan of

this Action.  *See, e.g.*, *City of Providence v. Aeropostale, Inc.*, 2014 WL 1883494, at *5

(S.D.N.Y. May 9, 2014) (finding that "[e]ven if the Class could recover a judgment at trial, the

additional delay through trial, post-trial motions, and the appellate process could prevent the

Class from obtaining any recovery for years.").   By settling, Plaintiffs avoid the expenditure of

resources and risk associated with trial, and they guarantee a quicker recovery to the Class.

Because the risks of proceeding to trial are substantial, this bird in hand is worth two in the

proverbial bush, and the settlement warrants preliminary approval.  *See e.g.*, *In re Prudential*

*Sec. Inc. Ltd. P'ships Litig.*, 163 F.R.D. 200, 210 (S.D.N.Y. 1995) ("[I]t may be preferable to

take the bird in the hand instead of the prospective flock in the bush.") (internal quotation marks

omitted).

### 2.    The Reaction Of The Class Is Overwhelmingly Positive (*Grinnell* Factor 2)

With the second *Grinnell* factor, the Court judges "the reaction of the class to the

settlement."  *In re Vitamin C Antitrust Litig*, 2012 WL 5289514, at *4 (quoting *Grinnell*, 495

F.2d at 463).  "It is well settled that the reaction of the class to the settlement is perhaps the most

significant factor to be weighed in considering its adequacy."  *In re MetLife Demutualization*

*Litig.*, 689 F. Supp. 2d 297, 333 (E.D.N.Y. 2010) (internal quotation marks omitted).  This

"significant" factor weighs heavily in favor of final approval.

Here, the reaction of the Class Members to the Settlement has been overwhelmingly

positive.  Class Notice has been provided to the Settlement Class Members in accordance with

the requirements of Rule 23(c)(2)(B) and the Preliminary Approval Order (ECF No. 300 at 3-4).

In response, 82,503 people have already filed claims, <u>zero</u> objected to the Settlement, and only

47 opted-out.  Schey Decl. ¶¶ 14-15, 18-21.[4]  This respectable participation rate and lack of objections from the Settlement Class leaves no question that the class members view the Settlement favorably, which weighs heavily in favor of final approval and further supports the "presumption of fairness."  *See, e.g., Hanlon v. Chrysler*, 150 F.3d 1011, 1027 (9th Cir. 1998) ("[T]he fact that the overwhelming majority of the class willingly approved the offer and stayed in the class presents at least some objective positive commentary as to its fairness."); *Massiah v. MetroPlus Health Plan, Inc.*, 2012 WL 5874655, at *4 (E.D.N.Y. 2012) ("The fact that the vast majority of class members neither objected nor opted out is a strong indication of fairness.").

Consequently, this *Grinnell* factor weighs in favor of final approval of the Settlement.

### 3. Discovery Has Advanced Far Enough To Allow The Parties To Responsibly Resolve The Case (*Grinnell* Factor 3)

Under this factor, "[t]he pertinent question is whether counsel had an adequate appreciation of the merits of the case before negotiating."  *See Torres v. Gristede's Operating Corp.,* 2010 WL 5507892, at *5 (S.D.N.Y. Dec. 21, 2010) (internal quotation omitted).  Here, the settlement was reached on the cusp of trial, after four years of litigation, during which time the Parties completed extensive merits and expert discovery, thirteen depositions, class certification, summary judgment, and motions *in limine*.  9/3/19 Kopel Decl. ¶ 21.  Class Counsel had sufficient information to make an informed decision about the merits of this case relative to the benefits provided by the proposed Settlement.

Consequently, this *Grinnell* factor weighs in favor of final approval of the Settlement.

---

[4] As noted in the administrator's declaration, DSG received a total of 82,503 total claims, of which it has validated 72,578.  "The additional 9,925 claims have been flagged a requiring modification" and "DSG will be notifying these claimants of the need for modification of their claims."  "Thus, the final number of approved claims in this action will ultimately total between 72,578 and 82,503."  *See* Schey Decl. ¶¶ 18-21.

4.    **The Continued Litigation Risks Related To Establishing Liability, Damages, And Maintaining A Class Action Through Trial Support Settlement (*Grinnell* Factors 4, 5, And 6)**

"The fourth, fifth, and sixth *Grinnell* factors all relate to continued litigation risks," *i.e.*, the risks of establishing liability, damages and maintaining the class action through trial. *In re Vitamin C Antitrust Litig.*, 2012 WL 5289514, at *5 (E.D.N.Y. Oct. 23, 2012). One purpose of a settlement is to avoid the uncertainty of a trial on the merits. Analyzing these risks "does not require the Court to adjudicate the disputed issues or decide unsettled questions; rather, the Court need only assess the risks of litigation against the certainty of recovery under the proposed settlement." *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 459 (S.D.N.Y. Nov. 24, 2004); *In re AOL Time Warner, Inc.*, 2006 WL 903236, at *11 (S.D.N.Y. Apr. 6, 2006). In other words, "the Court should balance the benefits afforded to members of the Class and the immediacy and certainty of a substantial recovery for them against the continuing risks of litigation." *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 364 (S.D.N.Y. 2002).

Notwithstanding Plaintiffs' confidence in the strength of their position, they recognize that factual issues, evidence of competing, complex scientific concepts, and/or legal defenses could pose a substantial risk of non-recovery. Plaintiffs must establish that Defendants' claims are false, misleading, and deceptive and/or that members of the public are likely to be deceived by Defendants' advertising and labeling. In contrast, Defendants point to their own and other third-party trials that they claim substantiate the advertising and labelling claims regarding the efficacy of the Repellers. In addition, in order to support their fraud cause of action, Plaintiffs must establish that Defendants made their claims with knowledge of their falsity. While Plaintiffs are confident that their evidence will prove that the Ultrasonic Pest Repellers are ineffective for their intended purpose, there is a real risk that a jury may see it differently.

Apart from the uncertainties regarding proof of Defendants' liability, there are also uncertainties in establishing damages.  Unlike the anticipated claims process in the proposed Settlement, Plaintiffs must meet certain burdens to prove damages at trial.  Plaintiffs' reliance on expert testimony to establish damages, as well as a jury's acceptance of that expert testimony is far from certain, especially when Defendants will offer competing expert testimony to the contrary.  *See In re Am. Bank Note Holographics, Inc. Sec. Litig.*, 127 F. Supp. 2d 418, 426-27 (S.D.N.Y. 2001) ("Plaintiffs' Counsel recognize the possibility that a jury could be swayed by experts for Class Defendants, who could minimize or eliminate the amount of Plaintiffs' losses."); *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 744 (S.D.N.Y. 1985) ("In this 'battle of the experts' it is virtually impossible to predict with any certainty which testimony would be credited . . ."). By contrast, the Settlement avoids the risks inherent in protracted litigation, and provides a prompt and favorable resolution to the Class.

### 5.    The Ability Of Defendants To Withstand A Greater Judgment (*Grinnell* Factor 7)

The seventh *Grinnell* factor considers whether a defendant could withstand a judgment substantially higher than the proposed settlement amount if the case were to proceed to trial. *Denney v. Jenkens & Gilchrist*, 230 F.R.D. 317, 338 (S.D.N.Y. 2005).   Class Counsel investigated the finances of the two corporate entities named as defendants in this action and concluded those entities would be unable to satisfy any substantial money judgment.  There is no insurance coverage.  Class Counsel anticipated that this action would proceed through bankruptcy if it had not been settled on these terms.  9/3/19 Kopel Decl. ¶ 38.

Consequently, this *Grinnell* factor weighs in favor of final approval of the Settlement.

**6.    The Settlement Amount Is Reasonable In Light Of The Possible Recovery And The Attendant Risks Of Litigation (*Grinnell* Factors 8 And 9)**

Courts typically analyze the last two Grinnell factors together.  *See Grinnell*, 495 F.2d at 463.  In so doing, courts "consider[] and weigh[] the nature of the claim, the possible defenses, the situation of the parties, and the exercise of business judgment in determining whether the proposed settlement is reasonable."  *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 2010 WL 4537550, at *20 (S.D.N.Y. Nov. 8, 2010) (quoting *Grinnell*, 495 F.2d at 462).  The determination of whether a settlement amount is reasonable "does not involve the use of a mathematical equation yielding a particularized sum."  *Frank*, 228 F.R.D. at 186 (internal quotation marks omitted).  "Instead, 'there is a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.'"  *Id.* (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972), *cert. denied*, 409 U.S. 1039 (1972)).  Because a settlement provides certain and immediate recovery, courts often approve settlements even where the benefits obtained as a result of the settlement are less than those originally sought.  As the Second Circuit stated in *Grinnell*, "there is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth of a single percent of the potential recovery."  495 F.2d at 455 n.2.

Here, Settlement Class Members are receiving a near-complete recovery.  Settlement Class Members who purchased the Repellers at issue, and have proof of purchase, can recover the full purchase price for up to six units purchased.  Settlement Class Members with Proof of Purchase that does not show the actual price paid for the Repellers will receive a refund of up to $90, *i.e.*, $15.00 per unit up to six units.  Finally, Settlement Class Members who submit a valid Claim Form without proof of purchase will be paid up to $30, *i.e.*, $15.00 per unit up to two

17

units.  There is no limit to the total number of refunds that Defendants will pay to the Settlement

Class as a whole, and Settlement Class Members' full refunds will not be prorated for any

reason.

This is an excellent result for Settlement Class Members.  Sales data indicate that the

average retail price of the Repellers during the Class Period was between $21.61 and $24.10 and

that many Settlement Class Members paid *less than* $15 for their Repellers.  5/22/20 Kopel Decl.

(ECF No. 305) ¶¶ 78-80.  Thus, the refund of $15 per unit for those without proof of purchase

(and a full refund with proof of purchase) constitutes a very favorable result for Settlement Class

Members.  Moreover, approximately 89.97% of Settlement Class Members purchased two or

fewer units, and 99.33% purchased six or fewer units during the Class Period.  *Id.* ¶ 71-72.

Thus, the terms of the Settlement, which provide for a refund of six units with proof of purchase

and two units without proof of purchase, allow for a refund of every unit purchased for nearly

every Settlement Class Member.

Finally, the fact that the Stipulation of Settlement provides for a prompt payment to

claimants favors approval of the Settlement.  *See Teachers' Ret. Sys. of La. v. A.C.L.N., Ltd.*,

2004 WL 2997957, at *5 (S.D.N.Y. Dec. 27, 2004) ("[T]he proposed Settlement provides for

payment to Class members now, not some speculative payment of a hypothetically larger amount

years down the road . . . . Given the obstacles and uncertainties attendant to this complex

litigation, the proposed Settlement is within the range of reasonableness, and is unquestionably

better than the other likely possibility – little or no recovery.") (quoting *In re "Agent Orange"*

*Prod. Liab. Litig.*, 611 F. Supp. 1396, 1405 (E.D.N.Y. 1985), *modified on other grounds*, 818

F.2d 179 (2d Cir. 1987) ("[M]uch of the value of a settlement lies in the ability to make funds

available promptly.")).  Therefore, these factors militate in favor of preliminarily approving the

Settlement.

* * *

All of the *Grinnell* factors weigh in favor of approval, and the Settlement on its face, is "'fair, adequate, and reasonable, and not a product of collusion,'" *Frank*, 228 F.R.D. at 184 (quoting *Joel A. v. Giuliani,* 218 F.3d 132, 138-39 (2d Cir. 2000)).  The Court should therefore grant final approval.

## **CONCLUSION**

For the reasons set forth above, Plaintiffs respectfully request that the Court grant their Motion for Final Approval of the Settlement and enter the Final Approval Order in the form submitted herewith.


Dated:  August 25, 2020                             Respectfully submitted,

                                                    **BURSOR & FISHER, P.A.**

                                                    By:     */s/ Scott A. Bursor*
                                                            Scott A. Bursor

                                                    Scott A. Bursor
                                                    Joshua D. Arisohn
                                                    Yitzchak Kopel
                                                    888 Seventh Avenue
                                                    New York, NY 10019
                                                    Telephone:  (212) 989-9113
                                                    Facsimile:  (212) 989-9163
                                                    Email:  scott@bursor.com
                                                            jarisohn@bursor.com
                                                            ykopel@bursor.com

                                                    *Class Counsel*