UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------- :
JOANNE HART and SANDRA BUENO, *on* : 
*behalf of themselves and all others similarly* : 15cv4804
*situated,* :
 :
 : MEMORANDUM &
Plaintiffs, : ORDER
 :
-against- :
 :
BHH, LLC d/b/a BELL + HOWELL, *et ano.,* :
 :
Defendants. :
............................................................... :

WILLIAM H. PAULEY III, Senior United States District Judge:

>        Joanne Hart and Sandra Bueno ("Plaintiffs") bring this class-action lawsuit for

fraud, breach of warranty, and violations of the California Legal Remedies Act ("CLRA")

against Defendants BHH, LLC and Van Hauser, LLC ("BHH").  Plaintiffs move for final

approval of a settlement agreement with BHH, (ECF No. 308), and an award for attorneys'

fees, expenses, costs, and an incentive award for the class representatives, (ECF No. 301).  For

the reasons set forth below, Plaintiffs' motion for final approval of the class settlement

agreement is granted, and Plaintiffs' motion for attorneys' fees is granted in part and denied in

part.

### BACKGROUND

>        In this case, Plaintiffs allege that Defendants' ultrasonic pest repellers failed to

work as advertised.  The Proposed Settlement is the culmination of five years of intense

litigation.  The parties briefed and argued—and this Court decided—two motions to dismiss,

three <u>Daubert</u> motions, a motion for class certification, a motion for summary judgment, and

countless housekeeping motions.[1]  This case was on track for trial when the parties settled.

On September 3, 2019, Plaintiffs moved for preliminary approval of their settlement agreement.  This Court denied that motion.  See Hart v. BHH, LLC, 334 F.R.D. 74 (S.D.N.Y. 2020).  First, the proposed settlement included a "quick pay" provision that would compensate the attorneys before class members.  Plaintiffs argued this provision would disincentivize baseless objections.  But that hypothetical risk does not outweigh the "sound reasons for courts to ensure that the class has been compensated prior to attorneys in class-action settlements."  Hart, 334 F.R.D. at 77.  "Cynically, money is the best way to keep lawyers engaged."  Hart, 334 F.R.D. at 77.  Second, the parties proposed to arbitrate the award of attorneys' fees, which they determined would range from $3,000,000 to $7,500,000.  However, arbitration would usurp this Court's discretion to award fees and eviscerate its duty to "'act as a fiduciary who must serve as a guardian of the rights of absent class members.'"  Hart, 334 F.R.D. at 78 (quoting McDaniel v. Cty. of Schenectady, 595 F.3d 411, 419 (2d Cir. 2010).  After this Court denied their motion, the parties amended their settlement agreement to remove the "quick-pay" provision and Plaintiffs abandoned arbitration and agreed to seek no more than $6,500,000 in attorneys' fees from the Court (the "Proposed Settlement").  (ECF No. 296-1.)  This Court then preliminarily approved the Proposed Settlement.  (ECF No. 300.)

The Proposed Settlement seeks to provide class members with refunds for pest repeller purchases.  Class members are not required to provide proof of purchase—other than a signed attestation on the claims form.  (Decl. of Yitz Kopel, ECF No. 305 ("Kopel Decl."), ¶ 61.)  If a class member provides proof of purchase that shows the purchase price, they will receive a full refund for up to six units.  (Kopel Decl. ¶ 61.)  If the proof of purchase does not

---

[1]      See Hart v. BHH, LLC, 323 F. Supp. 3d 560, 566 (S.D.N.Y. 2018), recons. denied, 2018 WL 5729294 (S.D.N.Y. Nov. 2, 2018) Hart v. BHH, LLC, 2018 WL 3471813, at *10 (S.D.N.Y. July 19, 2018); Hart v. BHH, LLC, 2017 WL 2912519, at *9 (S.D.N.Y. July 7, 2017); Hart v. BHH, LLC, 2016 WL 2642228, at *6 (S.D.N.Y. May 5, 2016).

contain the price, the class member will receive $15 per unit for up to six units.  (Kopel Decl. ¶ 61.)  If a class member does not provide proof of purchase, he or she will receive $15 per unit for up to two units.  (Kopel Decl. ¶ 61.)

Defendants will pay all attorneys' fees, costs, and incentive awards separate from its payment to class members.  (Kopel Decl. ¶ 62.)  Plaintiffs seek incentive awards of $5,000 for each of the two class representatives.  Class Counsel seek $6,500,000 in attorneys' fees, costs, and expenses.  This includes $5,799,772.43 in attorneys' fees and $700,227.57 in litigation costs and expenses.  As of August 31, 2020, Class Counsel billed 4,475.25 hours.  (Kopel Decl., Ex. B; Decl. of Scott D. Simpkins, ECF No. 304 ("Simpkins Decl."), ¶ 4.)  This yields a lodestar amount of $2,651,175.00.  (Kopel Decl. Ex. B; Simpkins Decl. ¶ 4.)  Defendants challenge the $3,148,597.43 enhancement sought by Class Counsel beyond the loadstar amount.

Digital Settlement Group, LLC ("DSG") is the court-appointed notice and claims administrator.  (ECF No. 300, at 4.)  DSG sent approximately 900,000 notices to potential class members and published the notice on a website it created.  (Decl. of Mark Schey, ECF No. 311 ("Schey Decl."), ¶¶ 8, 11.)  DSG also created internet advertisements directed to reach more potential class members.  (Schey Decl. ¶ 10.)  As of August 24, 2020, DSG has received a total of 47 opt-outs and/or exclusions.  (Schey Decl. ¶ 14.)  There are no objections.  (Schey Decl. ¶ 15.)  As of August 24, 2020, class members filed 82,503 claims for 162,754 units, only 1,057 of whom provided proof of purchase.  (Schey Decl. ¶ 18.)  DSG validated 72,578 claims for 143,074 units, which is a total payout of $2,118,505.24.  (Schey Decl. ¶ 19.)  DSG flagged 9,925 claims—comprising $346,899.83—"as requiring modification based on duplication, invalid or missing information, and/or fraudulent proof of purchase."  (Schey Decl. ¶ 20.)  DSG plans to notify these class members of the issues with their claims forms.  (Schey

3

Decl. ¶ 20.)  DSG estimates that the final payout will be between $2,118,505.24 and $2,472,940.07.  (Schey Decl. ¶ 21.)  DSG incurred $525,000 in expenses in disseminating notice.  (Kopel Decl. ¶ 76.)

On September 14, 2020, this Court held a final approval hearing to determine (1) whether the proposed settlement of this action on the terms and conditions provided for in the proposed settlement agreement is fair, reasonable, and adequate and should be given final approval by this Court; (2) whether a judgment and order of dismissal with prejudice should be entered; (3) whether to approve the payment of attorneys' fees, costs, and expenses to class counsel; and (4) whether to approve the payment of an incentive award to the class representatives.

DISCUSSION

I.   Final Settlement Approval

    A.   Legal Standard

There is a "strong judicial policy in favor of settlements, particularly in the class action context."  Wal-Mart Stores, Inc. v. Visa U.S.A., Inc., 396 F.3d 96, 116 (2d Cir. 2005) (quotation marks omitted).  However, a court must "carefully scrutinize the settlement to ensure its fairness, adequacy and reasonableness, and that it was not the product of collusion."  D'Amato v. Deutsche Bank, 236 F.3d 78, 85 (2d Cir. 2001) (citations omitted).  Under this two-part inquiry, a court "must determine whether both the negotiating process leading to a settlement and the settlement itself are fair, adequate, and reasonable."  In re Currency Conversion Fee Antitrust Litig., 263 F.R.D. 110, 122 (S.D.N.Y. 2009).  In other words, the settlement must be both procedurally and substantively fair.  In re Virtus Inv. Partners, Inc. Sec. Litig., 2018 WL 6333657, at *1 (S.D.N.Y. Dec. 4, 2018).

B.  Procedural Fairness

With respect to procedural fairness, the "[n]egotiation of a settlement is presumed fair when the settlement is 'reached in arm's length negotiations conducted by experienced, capable counsel after meaningful discovery.'" Dial Corp. v. News Corp., 317 F.R.D. 426, 430 (S.D.N.Y. 2016) (quoting Wal-Mart, 396 F.3d at 116).  Indeed, "'great weight' is accorded to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation." In re PaineWebber Ltd. P'ships Litig., 171 F.R.D. 104, 125 (S.D.N.Y. 1997); accord City of Providence v. Aeropostale, Inc., 2014 WL 1883494, at *5 (S.D.N.Y. May 9, 2014). Given that the Proposed Settlement was the product of arm's length negotiations between experienced counsel, the Proposed Settlement is procedurally fair.

C.  Substantive Fairness

To determine substantive fairness, courts consider the factors set forth in City of Detroit v. Grinnell Corp.:

> (1) the complexity, expense, and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through trial; (7) the ability of the defendants to withstand greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of the litigation.

Pa. Pub. Sch. Emps.' Ret. Sys. v. Bank of Am. Corp., 318 F.R.D. 19, 24 (S.D.N.Y. 2016) (citing City of Detroit v. Grinnell, 495 F.2d 446, 463 (2d Cir. 1974), abrogated on other grounds by Golberger v. Integrated Res., Inc., 209 F.3d 43 (2d Cir. 2000)).  "[N]ot every factor must weigh in favor of settlement, rather the court should consider the totality of these factors in light of the particular circumstances." Dial Corp., 317 F.R.D. at 431 (quotation marks omitted) (alteration in original).

1.   Complexity, Expense, and Likely Duration of the Litigation

While this case was not overly complex, Defendants litigated it vigorously for five years.  And prior to that, Class Counsel invested significant resources into researching the products and potential claims.  (Kopel Decl. ¶ 5.)  Additionally, Plaintiffs sought to intervene in a related action, but their motion was denied.  Steigerwald v. BHH, LLC, 317 F.R.D. 615 (N.D. Ohio Nov. 8, 2016).  Accordingly, this factor militates in favor of approval.

2.   Reaction of the Class to the Settlement

It is well settled that "the reaction of the class to the settlement is perhaps the most significant factor to be weigh[ed] in considering its adequacy."  In re Facebook, 2018 WL 6168013, at *9 (S.D.N.Y. Nov. 26, 2018) (quotation marks omitted).  And "the absence of objections by the class is extraordinarily positive and weighs in favor of settlement."  Dial Corp., 317 F.R.D. at 431 (quotation marks omitted); accord Bank of Am. Corp., 318 F.R.D. at 24. Here, no class member objected, which strongly favors approval.

3.   Stage of the Proceedings and the Amount of Discovery Completed

This case was nearing trial.  The parties completed dispositive motions and class certification.  Moreover, the parties completed discovery.  The Second Circuit has held that completion of these litigation stages demonstrates that "a substantial amount of work had been completed."  Wal-Mart, 396 F.3d at 118.  As such, this factor also favors approval.

4.   Risks of Establishing Liability and Damages and of Maintaining the Class Through Trial

"Courts generally consider the fourth, fifth, and sixth Grinnell factors together." Dial Corp., 317 F.R.D. at 432.  While Plaintiffs survived summary judgment, that is far short from establishing liability.  And with dueling expert reports, there was risk in establishing

6

liability, which counsels in favor of approving the settlement.  See Dial Corp., 317 F.R.D. at 432 ("Plaintiffs would have encountered additional challenges to proving damages given the parties' dueling expert reports.").  Further, it is unclear if Plaintiffs could have expected the damages for which the Proposed Settlement provides.  Here, the class effectively receives a full refund.  A jury may have awarded less.  Overall, these factors counsel in favor of approving the settlement.

### 5.   Ability of Defendants to Withstand a Greater Judgment

Class counsel avers that the two corporate entities could not have faced a higher judgment and may have resorted to chapter 11 protection.  (ECF No. 287 ¶ 38.)  Additionally, Plaintiffs allege that Defendants were not insured.  (ECF No. 287 ¶ 38.)  However, Defendants have not confirmed this fact and, at this stage, have no incentive to deny it.  Moreover, it is unclear whether Plaintiffs calculate the judgement based on the total number of unit sales or claims submitted.

Nevertheless, "while relevant to settlement approval, the ability of defendants to withstand greater judgment does not alone suggest the settlement is unfair or unreasonable."  In re Facebook, 2015 WL 6971424, at *5 (quotation marks omitted); see also D'Amato, 236 F.3d at 86 ("[T]his factor, standing alone, does not suggest that the settlement is unfair.").

### 6.   The Range of Reasonableness of the Settlement Fund in Light of the Best Possible Recovery and All the Attendant Risks of the Litigation

"The final two Grinnell factors are typically considered together."  Dial Corp., 317 F.R.D. at 432.  Here, the settlement is effectively a refund for each unit purchased by a class member.  Arguably, there are only two instances where a class member would not receive a full refund.  First, class members would not receive a refund if they did not have a receipt that displayed the price and the price paid was greater than $15 per unit.  But the parties chose $15 as the best estimate of the purchase price.  Second, class members' recovery is capped at two units

if they do not provide a receipt and six units if they do.  However, only 10.03% of the class

purchased more than two units and only 0.67% purchased more than six.  (Kopel Decl. ¶¶ 71–

72.)  Accordingly, the Proposed Settlement would not be materially better had Plaintiffs received

a jury award.

      This litigation was also hard fought and there is no indication that the Proposed

Settlement was anything but the result of an arm's length negotiation.  In re Virtus, 2018 WL

6333657, at *3.  Accordingly, these factors militate towards approval.

### 7.  Aggregation of All Factors

      Overall, the Grinnell factors counsel in favor of approving the Proposed

Settlement.  No one has objected, and this action was hotly contested and proceeded to a late

stage of litigation.  The recovery is approximately a full refund and Plaintiffs faced substantial

risks in proving loss causation.  Accordingly, this Court approves the Proposed Settlement.

## II.  Notice Plan

      "The standard for the adequacy of a settlement notice in a class action under either

the Due Process Clause or the Federal Rules is measured by reasonableness."  Wal-Mart, 396

F.3d at 113.  The Second Circuit explained that:

> There are no rigid rules to determine whether a settlement notice to the class
> satisfies constitutional or Rule 23(e) requirements; the settlement notice must
> fairly apprise the prospective members of the class of the terms of the proposed
> settlement and of the options that are open to them in connection
> with the proceedings.  Notice is adequate if it may be understood by the
> average class member.

Wal-Mart, 396 F.3d at 114 (quotation marks and citations omitted).

      The settlement notice is reasonable.  This Court preliminarily approved the notice

plan.  (ECF No. 300, at 3.)  Indeed, this occurred after counsel adopted suggested edits by this

Court.  The settlement notice also set forth the amount of the settlement, maximum amount of attorneys' fees and expenses sought, rights to object, dates and deadlines, and the plan of allocation.  DSG noticed nearly 900,000 potential class members.  (Schey Decl. ¶ 8.)

III.   Incentive Award to Class Representatives

The decision to grant the award, and the amount thereof, rests solely within the discretion of the Court.  Cline v. TouchTunes Music Corp., 765 F. App'x 488, 493 (2d Cir. 2019); see also Roberts v. Texaco, 979 F. Supp. 185, 200 (S.D.N.Y. 1997).  The "guiding standard in determining an incentive award is broadly stated as being the existence of special circumstances including the personal risk (if any) incurred by the plaintiff-applicant in becoming and continuing as a litigant, the time and effort expended by that plaintiff in assisting in the prosecution of the litigation or in bringing to bear added value (e.g., factual expertise), any other burdens sustained by that plaintiff . . . and, of course, the ultimate recovery."  Roberts, 979 F. Supp. at 200.  and, and created a conflict of interest between Johnson and other class members.

Awards on an individualized basis have generally ranged from $2,500 to $85,000.  See Dornberger v. Metro. Life Ins. Co., 203 F.R.D. 118, 125 (S.D.N.Y. 2001).  Here, Plaintiffs request $5,000 for each of the class representatives.  Both class representatives spent approximately 45–50 hours on this case.  (Decl. of Joanne Hart, ECF No. 303, ¶ 11; Decl. of Sandra Bueno ECF No. 302, ¶ 11.)  This award will also be paid directly by Defendants, not at the expense of the class.  Accordingly, the incentive award is fair and reasonable.[2]

---

[2]   The Eleventh Circuit recently held that "[a] plaintiff suing on behalf of a class can be reimbursed for attorneys' fees and expenses incurred in carrying on the litigation, but he cannot be paid a salary or be reimbursed for his personal expenses." Johnson v. NPAS Sols., LLC, --- F.3d ---, 2020 WL 5553312, at *9 (11th Cir. Sept. 17, 2020).  The Eleventh Circuit interpreted a pair of Supreme Court cases from the 1880s to hold that such awards to class representatives are in conflict with the law.  See Central Railroad & Banking Co. v. Pettus, 113 U.S. 116 (1885); Trustees v. Greenough, 105 U.S. 527 (1882). Despite the ubiquity of incentive awards in class action litigation, very few courts have grappled with these Supreme Court precedents.  Stranger still, class representative incentive awards were not created by statute, rather they are judicially forged. See William B. Rubenstein, 5 Newberg on Class Actions § 17:1 (5th ed. 2020) ("Rule 23 does not currently make, and has never made, any reference to incentive awards, service awards, or case contribution awards.  The judiciary has created these

IV.   Attorneys' Fees

Because the Proposed Settlement allows Plaintiffs to seek up to $6,500,000 in attorneys' fees and expenses, Plaintiffs move for attorneys' fees of $5,799,772.43 and expenses of $700,227.57.  In a class action settlement, courts must carefully scrutinize lead counsel's application for attorneys' fees to "ensure that the interests of the class members are not subordinated to the interests of . . . class counsel."  Maywalt v. Parker & Parsley Petroleum Co., 67 F.3d 1072, 1078 (2d Cir. 1995).  A court's role in this context is "to act as a fiduciary who must serve as a guardian of the rights of absent class members."  McDaniel v. Cty. of Schenectady, 595 F.3d 411, 419 (2d Cir. 2010).  The trend in the Second Circuit is to assess a fee application using the "percentage of the fund" approach, which "assigns a proportion of the common settlement fund toward payment of attorneys' fees."  Dial Corp., 317 F.R.D. at 433 (citing Goldberger, 209 F.3d at 53).  As a "cross-check on the reasonableness of the requested percentage," however, courts also look to the lodestar multiplier, which should be a reasonable multiple of the total number of hours billed at a standard hourly rate.  Goldberger, 209 F.3d at 53.

This case provides one unique feature absent from most class-action settlements: rather than the class members sharing from a settlement pool, the recovery to the class will be claims based.  As a result, attorneys' fees will not reduce the class recovery.  Plaintiffs advance several arguments why their fee request is reasonable.

First, in claims-based settlements, "the Court's fiduciary role in overseeing the

---

awards out of whole cloth . . . .").  No statute abrogates the holdings of Pettus or Greenough.  However, in Melito v. Experian Marketing Solutions, Inc., the Second Circuit found in passing that those holdings did not apply to the particular class-action settlement presented to them.  923 F.3d 85, 96 (2019 2d Cir.), cert. denied sub nom. Bowes v. Melito, 140 S. Ct. 677 (Dec. 16, 2019).  The Court of Appeals did not elaborate—nor can this Court discern—what facts distinguished the case from binding Supreme Court precedent.  This issue is deserving of congressional attention.

award is greatly reduced, because there is no conflict of interest between attorneys and class

members." McBean v. City of New York, 233 F.R.D. 377, 392 (S.D.N.Y.2006); see also

Steinberg v. Nationwide Mut. Ins. Co., 612 F. Supp. 2d 219, 224 (E.D.N.Y. 2009) ("[T]he Court

notes with approval that the fee award will not be drawn from the common fund but will be paid

directly by [defendant].  In this regard, the fee award, however substantial, will have no effect on

the monetary relief afforded to class members."); In re Sony SXRD Rear Projection Television

Class Action Litig., 2008 WL 1956267, at *15 (S.D.N.Y. May 1, 2008) ("[R]egardless of the

size of the fee award, class members who apply for recovery under the terms of the Settlement

will receive the same benefit; the fee award does not reduce the recovery to the class.").  But that

does not mean this Court's duty is that of a disinterested observer.  See Shapiro v. JPMorgan

Chase & Co., 2014 WL 1224666, at *25 (S.D.N.Y. Mar. 24, 2014) ("Although the fee in this

action was separately negotiated by JPMorgan subsequent to the Settlement, common fund

principles are applicable.").

> Second, the attorneys' fees were negotiated after the parties reached an agreement

on class recovery.  See In re Sony, 2008 WL 1956267, at *15 ("[T]he fee was negotiated only

after agreement had been reached on the substantive terms of the Settlement benefiting the class.

This tends to eliminate any danger of the amount of attorneys' fees affecting the amount of the

class recovery." (citation omitted)); Dupler v. Costco Wholesale Corp., 705 F. Supp. 2d 231, 243

(E.D.N.Y. 2010) ("[T]he issue of attorneys' fees was not raised during the Settlement

negotiations until after the parties had already agreed upon the benefit to the class.").

> Finally, there are no objectors.  See In re Sony, 2008 WL 1956267, at *15 (noting

that the fact that "none of the objections to the Settlement took issue with the requested fee

award" demonstrates that the award is reasonable).

The structure of the settlement supports Plaintiffs' fee request. While these facts support the reasonableness of a fee award, this Court must examine the specific amount requested. Courts employ two methods for calculating fee awards: percentage of the fund and lodestar. This Court analyzes each in turn

A.  Percentage of the Fund

One of the methods for calculating fees is to award a percentage of the fund. Indeed, this is the preferred method in the Second Circuit. See Goldberger, 209 F.3d at 50. Plaintiffs urge this Court to use this method.

In traditional common fund settlements, the calculus is simple. The Defendant agrees to a global settlement amount, which becomes the denominator. Plaintiffs' counsel petitions for a fee award from the court, which is the numerator. The court simply divides the numerator by the denominator to determine the percentage of the fund that Plaintiffs request. That fee is taken from the pool. Heightened scrutiny is required in common-fund cases because each dollar awarded to counsel is taken directly from the class.

Here, there is no such pool. Rather, the benefit given to the class is determined by the number of claims submitted. Attorneys' fees are paid separately. This spawns two issues for calculating the percentage: (1) whether the unclaimed funds included in the denominator and (2) whether attorneys' fees, expenses, and costs and incentive rewards included in the denominator.

Plaintiffs argue that this Court should answer both of these questions in the affirmative. Plaintiffs argue that the denominator should be the total amount that Defendants would have had to pay had the claims process yielded 100% response rate. Specifically, that is $57,733,308.93. Using this figure, Plaintiffs assert that their fee request only comprises 10.05% of the total class recovery.

12

1.   Inclusion of Unclaimed Settlement Funds

Plaintiffs aver that this Court should calculate the total settlement amount as $57,733,308.93, rather than the $2,118,505.24 to $2,472,940.07 that will actually be distributed. This would encompass the entire potential liability that Defendants agreed to in the settlement.

The general rule in the Second Circuit is that the "allocation of fees by percentage should . . .  be awarded on the basis of the total funds made available, whether claimed or not." Masters v. Wilhelmina Model Agency, Inc., 473 F.3d 423, 437 (2d Cir. 2007).  In reaching this holding, the court focused on the "benefit achieved for class members."  Masters, 473 F.3d at 438.  Funds that were not claimed by class members but distributed under the cy pres doctrine still inured a benefit to the class.  Masters, 473 F.3d at 437–38; see also Faican v. Rapid Park Holding Corp., 2010 WL 2679903, at *3 (E.D.N.Y. July 1, 2010) ("[A]ttorney's fee in a common fund cases should be based on the total amount paid by the defendant to benefit the class, even if part of that sum is not distributed to individual class members but as donations to charities believed to indirectly benefit class members.").

Here, the difference between the claimed and unclaimed settlement amount will not be distributed through cy pres but remain in Defendants' coffers.  Plaintiffs argue that Masters still applies.  Relying on Zink v. First Niagara Bank, N.A., Plaintiffs argue that even amounts never tendered by the defendant should be included in fee percentage calculations.  2016 WL 7473278, at *7 (W.D.N.Y. Dec. 29, 2016).  There, the judge rejected other district court's interpretation of Masters that only cy pres funds are included.  Zink, 2016 WL 7473278, at *8 ("In my view, this interpretation of Masters is unduly narrow.").  The court reasoned that even if funds revert to the defendant, they are still providing an indirect benefit to the class.  Zink, 2016 WL 7473278, at *8; see also Newberg, § 15:56 ("Because there is no real common fund in a

13

claims-made settlement, fees in claims-made settlements are typically paid by the defendant, not by the class out of the fund, in addition to the amounts paid to the class members. All that said, in <u>calculating</u> those fees, a court may use the scope of the claims-made fund (or its ceiling) as a valuation measure." (emphasis in original)).

But other courts have expressly rejected <u>Zink</u>'s reasoning. <u>See, e.g.</u>, <u>Bodon v. Domino's Pizza</u>, LLC, 2015 WL 3889577 (E.D.N.Y.), <u>adopted</u>, 2015 WL 3902405 (E.D.N.Y. 2015) ("Because the class members in <u>Masters</u> thus would receive the benefit of the entire fund, plaintiffs' counsel were entitled to a percentage of the whole recovery. The Second Circuit's award of a percentage of the entire recovery in <u>Masters</u> does not, however, mean that plaintiffs' counsel are entitled to a percentage of a <u>hypothetical</u> recovery." (emphasis in original)); <u>Faican</u>, 2010 WL 2679903, at *3 (rejecting the argument that <u>Masters</u> stands for the proposition that the total benefit provided to the class includes "the amount that [defendant] would have paid to eligible class members who rejected the settlement if they had accepted the settlement").

The reasoning Plaintiffs advance is flawed. Any benefit from funds reverted back or never tendered by Defendants are purely hypothetical. This is distinguishable from <u>cy pres</u>, where the benefit may not be directly felt by each class member but is undoubtedly real. <u>Masters</u> stands for the proposition that the denominator should be the benefit inured to the class. Funds reverted to the defendant provide no benefit to the class.

Additionally, Plaintiffs' argument makes little practical sense. When the parties agreed to the settlement, none of them could have credibly believed that they would achieve a response rate of 100%—or, frankly, anywhere close to that number. Rather, the parties presumably expected a response rate similar to what was achieved, which is the norm for consumer class actions. (<u>See</u> Sept. 14, 2020 arg. Tr., at 2.) This point is especially salient here

because the difference between the theoretical maximum benefit given to Plaintiffs and the actual claimed benefits is stark. This is not an instance where a de minimis amount is never tendered by Defendants. By Plaintiffs' own calculation, nearly 90% of the purported settlement fund would revert to Defendants. The theoretical benefit dwarfs any real benefit the class receives. Accordingly, unclaimed funds should not be used when assessing the fee percentage.

### 2. Inclusion of Attorneys' Fees, Expenses, Costs, and Incentive Awards

Plaintiffs argue that attorneys' fees should be included in the denominator. Given the contrast between the actual settlement and the fee request, this dramatically reduces the percentage. In a typical settlement, there is a common fund from which Plaintiffs' counsel's fees are derived. That common fund serves as the denominator in the fee calculation. But that common fund would necessarily include the attorneys' fees, costs, expenses and the incentive award. It would make little sense to not apply the same logic to a claims-based settlement.

The denominator should be the total benefit given to the class. See Masters, 473 F.3d at 438. The class benefits from having counsel represent them. Therefore, even if indirectly, attorneys' fees paid directly by the defendant are a benefit to the class. See Zink, 2016 WL 7473278, at *8. This benefit is recognized in common fund cases and should be in claims-based settlements. See Gascho v. Glob. Fitness Holdings, LLC, 822 F.3d 269, 282 (6th Cir. 2016) ("When conducting a percentage of the fund analysis, courts must calculate the ratio between attorney's fees and benefit to the class. Attorney's fees are the numerator and the denominator is the dollar amount of the Total Benefit to the class (which includes the benefit to class members, the attorney's fees and may include costs of administration)."). Accordingly, this Court will include the claims class members submitted, attorneys' fees, costs, and expenses, and incentive awards to calculate the denominator.

### 3.   Percentage of the Fund in the Instant Case

Accordingly, the correct fee calculation has the attorneys' fees in the numerator. The denominator is the total benefit to the class.  This consists of the claims actually paid to the class or distributed via the cy pres doctrine plus the attorneys' fees, costs, expenses, and incentive awards.  The unclaimed funds that Defendants will not have to pay are not included. Applied here, Plaintiffs request $5,799,772.43.  The class will receive at most $2,472,940.07 from the Defendants.  Plaintiffs' counsel's costs coupled with Plaintiffs' fee request are $6,500,000.  Plaintiffs request an additional $525,000 for the costs of notice and administration. Finally, Plaintiffs request $5,000 for each of the class representatives.  Thus, the denominator is $9,507,940.07.  Accordingly, Plaintiffs' requested percentage is approximately 61.00%.

Defendants argue that Class Counsel should only receive the lodestar amount of $2,651,175.00.  (Kopel Decl. Ex. B.)  Under Defendants' proposal, the denominator would also be reduced to $6,359,342.64—the sum of the payout to the class, the lodestar, Class Counsel's expenses, notice and administrative costs, and incentive awards.  This yields a percentage of approximately 41.69%.

In assessing reasonable percentages of settlement funds, "this Court [has] cabined awards to between 12% to 28%" for "class action settlements ranging from $15 million to $336 million." Dial Corp., 317 F.R.D. at 436, 438 (awarding fees representing 20% of a $244 million settlement fund); see also In re Virtus, 2018 WL 6333657, at *4 (awarding 25% of the $5.5 million settlement fund); Bank of Am. Corp., 318 F.R.D. at 27 (allowing fees representing 12% of a $335 million settlement fund); In re Platinum & Palladium Commodities Litig., 2015 WL 4560206, at *5 (S.D.N.Y. July 7, 2015) (awarding fees representing 22.5% of the $72.5 million fund); In re Bayer AG Sec. Litig., 2008 WL 5336691, at *2, *6 (S.D.N.Y. Dec. 15, 2008)

16

(approving 12% of an $18.5 million settlement fund); <u>In re Polaroid</u>, 2007 WL 2116398, at *3

(S.D.N.Y. July 19, 2007) (approving 28% of a $15 million settlement fund); <u>see also</u> <u>In re</u>

<u>Facebook</u>, 2018 WL 6168013, at *16 (approving 25% of a $35 million settlement fund).

However, in this circumstance, percentage of the fund does not appear to be a

useful metric.  Even under Defendants' proposal, Class Counsel would reap over 40% of the

benefit provided to the class.  But this is against the backdrop of the phenomenal work Class

Counsel has accomplished.  The settlement provides either a refund—or as close to a refund as

can be reasonably estimated—for the entire class.  This was no easy feat.  Plaintiffs' expended

significant time and resources in researching and pursuing their claims.  Another similar action

failed.  <u>See</u> <u>Steigerwald</u>, 2016 WL 6962593.  But here, Plaintiffs succeeded.  They overcame a

motion to dismiss, class certification, and summary judgment.  Awarding Class Counsel less than

their lodestar—or even just the lodestar—would not give due credit for their efforts or the results

achieved.  Moreover, such an award may disincentivize some plaintiffs' attorneys.  Due to the

atypical structure of the settlement, lodestar is a more accurate measure of attorneys' fees.

B.  <u>Lodestar</u>

Typically, lodestar is used as a cross check to ensure the reasonableness of the

requested fee.  However, due to the issues described above, lodestar should operate as the main

test for the fee award.

Here, Class Counsel worked 4,449.5 hours.  (Kopel Decl. Ex. B.)  Clamico Wilcox

worked 25.75 hours on the intervention.  (Decl. of Scott D. Simpkins, ECF No. 304.)  Under

Class Counsel's requested billable rate, this yields a lodestar of $2,651,175.00.  (Kopel Decl. Ex.

B.)  Class Counsel requests attorneys' fees of $5,799,772.43, (Pls. MOL), and $700,227.57 in

expenses, (Kopel Decl. ¶ 102).  This would be the result of a 2.2 multiplier.

Additionally, this Court is wary of the hourly rates Class Counsel proposes.  While the average blended rate is $592.41, Class Counsel billed two partners at a rate of $1,000 an hour.  (See Kopel Decl. Ex. B, at 2.)  While Plaintiffs provide numerous articles on law firms piercing the $1,000 an hour threshold, (see Kopel Decl. Exs. D–K), the firms they point to are global corporate defense law firms.  These firms bill on an hourly model while Class Counsel primarily depend on contingency fees.  Moreover, Class Counsel has only been awarded a maximum rate of $875 in this district, see Taylor v. Trusted Media Brands, Inc., No. 16-cv-01812, ECF No. 77-2 (S.D.N.Y. Dec. 5, 2017); see also Rodriguez v. CitiMortgage, Inc., No. 11-cv-4718, ECF No. 60-2 (S.D.N.Y. Sept. 4, 2015) (awarding Bursor & Fisher, P.A. a maximum rate of $850).  This Court will take this into account when setting a multiplier.

While 2.2 is within the range of reasonableness, it may not apply here.  This award would be over 60% of the benefit provided to the class.  Even given Class Counsel's efforts, results, and the atypical settlement structure, this percentage that cannot be ignored.

C.  Goldberger Test

Under either method, the court considers the six Goldberger factors: (1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations.  Goldberger, 209 F.3d at 50.  There is no "one-size-fits-all 'benchmark' in determining the appropriate fee"—in fact, courts should avoid that practice because it "'could easily lead to routine windfalls where the recovered fund runs into the multi-millions.'"  In re Visa Check/Mastermoney Antitrust Litig., 297 F. Supp. 2d 503, 521 (E.D.N.Y. 2003) (quoting Nasdaq, 187 F.R.D. at 486).  These factors largely overlap with the Grinnell factors and thus counsel in favor of approval.

1.   <u>Time and Labor Expended by Counsel</u>

While many class actions are filed on the heels of a government investigation, the claims in this case were formulated entirely from the findings of a private investigation.  See <u>In re Gulf Oil/Cities Serv. Tender Offer Litig.</u>, 142 F.R.D. 588, 597 (S.D.N.Y. 1992) ("[T]his is not a case where plaintiffs' counsel can be cast as jackals to the government's lion, arriving on the scene after some enforcement or administrative agency has made the kill.  They did all the work on their own.").  As recounted previously, Class Counsel worked through discovery, class certification, and dispositive motions.  They surmounted significant challenges and avoided potential setbacks at every turn.

Moreover, Class Counsel's bills were not unduly partner heavy, despite the high rate billed by partners.  See <u>In re Platinum & Palladium Commodities Litig.</u>, 2015 WL 4560206, at *4 ("Courts have reduced the fee percentage requested where, as here, the lodestar value reflects an over-allocation of work to more expensive partners.").  Plaintiffs note that their approximate $2.5 million in fees would be dwarfed by Defendants' approximate $5 million. (Kopel Decl. ¶ 103.)  One attorney for Class Counsel performed approximately 47.4% of the work in this case and was an associate for most of the time.  (Kopel Decl. ¶ 98.)  Class Counsel did not heavily rely on partners; rather 11.1% of total hours billed by paralegals, 51.5% by associates, and 37.3% by partners.  (Kopel Decl. ¶ 97.)  Accordingly, this factor favors Plaintiffs' requested award.

2.   <u>Magnitude and Complexities of Litigation</u>

Plaintiffs argue that this case was a factually and legally complex case.  While class actions themselves are considered complex, <u>In re Nasdaq Market-Makers Antitrust Litig.</u>, 187 F.R.D. 465, 477 (S.D.N.Y. 1998), this case was a fairly straightforward consumer class action.

From a factual perspective, Class Counsel engaged in significant research to bring and prosecute this case. Accordingly, this factor is neutral.

        3.  <u>Risk of Litigation</u>

The substantial risks in this litigation should be credited as "the foremost factor to be considered in determining whether to award an enhancement" of fees. <u>Goldberger</u>, 209 F.3d at 54. Plaintiffs faced formidable challenges in litigating the action to a verdict and then prevailing on appeal. Class Counsel prosecuted this case on contingency and assumed the risk of recovering nothing if the claims were dismissed at various stages. Even at such an advanced stage of litigation, serious obstacles remained. Moreover, a similar action failed. <u>See Steigerwald</u>, 2016 WL 6962593. This factor weighs toward an enhancement.

        4.  <u>Quality of Representation</u>

The results achieved through Class Counsel's efforts are a "critical element in determining the appropriate fee to be awarded," and the settlement here will undoubtedly have widespread benefits to the class. <u>Maley v. Del Global Tech. Corp.</u>, 186 F. Supp. 2d 358, 373 (S.D.N.Y. 2002). Class Counsel did a superb job in securing such an advantageous settlement for the class. Their work deserves to be commended.

        5.  <u>Requested Fee in Relation to Settlement</u>

"To avoid routine windfalls where the recovered fund runs into the multi-millions, courts typically decrease the percentage of the fee as the size of the fund increases." <u>In re Interpublic Sec. Litig.</u>, 2004 WL 2397190, at *11 (S.D.N.Y. Oct. 26, 2004) (quotation marks and citations omitted).

As discussed, the requested fees are between 40–60% of the total benefit to the class. This factor weighs against an enhancement but is mitigated by the atypical structure of the

settlement.  <u>See</u> <u>McBean</u>, 233 F.R.D. at 392.

### 6.  <u>Public Policy Considerations</u>

Public policy encourages the award of reasonable attorneys' fees, but courts must also "guard against providing a monetary windfall to [c]lass [c]ounsel to the detriment of the plaintiff class."  <u>In re NTL Inc. Sec. Litig.</u>, 2007 WL 1294377, at *8 (S.D.N.Y. May 2, 2007) (alterations in original) (quotation marks omitted).  On one hand, allowing lawyers' recovery to dwarf the settlement is against public policy.  On the other hand, Class Counsel should be rewarded for concentrating their time, effort, and resources in successfully representing the class on a contingent basis.  And, most importantly, the fee will be paid directly by Defendants and will not come at the class' expense.  Thus, this factor favors an enhancement.

### D.  <u>Fees to be Awarded</u>

Notably, the Second Circuit in <u>Masters</u> held that the "[u]se of the entire Fund as a basis for the computation does not necessarily result in a 'windfall' because the court may always adjust the percentage awarded in order to come up with a fee it deems reasonable in light of the <u>Goldberger</u> factors."  473 F.3d at 437.  Because of the atypical structure of the settlement, the high partner billing rates, and the substantial benefit given to the class, this Court exercises its informed discretion to fix the multiplier.  Here, this Court awards Class Counsel a multiplier of 1.5.  This yields attorneys' fees of $3,976,762.50.  While attorneys' fees will encompass 51.75% of the total benefit inured to the class, this Court finds that reasonable in light of the structure of the settlement, Class Counsel's efforts, and the benefit the class will receive.  These attorneys' fees may be disbursed once at least 75% of the settlement has been distributed.  <u>See</u> <u>In re Virtus</u>, 2018 WL 6333657, at *5.

V.   <u>Litigation Expenses</u>

 In addition to attorneys' fees, Class Counsel seeks to recoup $700,227.57 in out-of-pocket expenses, and DSG requests $525,000 in expenses.  "In class action settlements, [a]ttorneys may be compensated for reasonable out-of-pocket expenses incurred and customarily charged to their clients.  When the 'lion's share' of expenses reflects the typical costs of complex litigation such as experts and consultants, trial consultants, litigation and trial support services, document imaging and copying, deposition costs, online legal research, and travel expenses, courts should not depart from the common practice in this Circuit of granting expense requests."  <u>Bank of Am. Corp.</u>, 318 F.R.D. at 27 (quotation marks omitted).  Having reviewed counsels' expenses, they appear reasonable.

CONCLUSION

 For the foregoing reasons, Plaintiffs' motions are granted.  The Proposed Settlement and settlement notice are approved.  In addition, Class Counsel is awarded attorneys' fees in the amount of $3,976,762.50.  Moreover, Class Counsel may be reimbursed $700,227.57 in litigation expenses forthwith.  DSG may also be reimbursed up to $525,000 for its expenses as it submits bills.  Finally, each class representative is awarded $5,000.  The Clerk of Court is directed to terminate all pending motions and to mark this case closed.

Dated:  September 22, 2020    SO ORDERED:
  New York, New York

WILLIAM H. PAULEY III
U.S.D.J.